James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey  07068
(973) 994-1700

*Attorneys for Plaintiffs*

(Additional Counsel Appear on Signature Page)

<div align="center">

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

</div>

| | |
|---|---|
| CONNIE MCLENNAN, VIRGINIA ZONTOK, CARYL FARRELL, on behalf of themselves and all others similarly situated,<br><br><div align="center">Plaintiffs,</div><br>v.<br><br>LG ELECTRONICS USA, INC.<br><br><div align="center">Defendant.</div> | Civil Action No.<br><br><br><div align="center">**COMPLAINT and<br>DEMAND FOR JURY TRIAL**</div> |

Plaintiffs Connie McClennan, Virginia Zontok, and Caryl Farrell ("Plaintiffs"), individually and on behalf of all others similarly situated, allege on personal knowledge and on information and belief as follows:

**I.    INTRODUCTION**

1.    Plaintiffs bring this action for actual damages, equitable relief (including restitution, injunctive relief, and disgorgement of profits), and all other relief available on behalf of themselves and all similarly-situated individuals and entities who own or have owned refrigerators sold by LG Electronics USA, Inc. ("Defendant," or "LG") containing a defect that results in the failure of the interior lights of the refrigerator to turn off when the refrigerator door is closed, which in turn prevents the machine from staying cool, allows food to spoil, leads to the

882027.5

burning and melting of parts of the refrigerator, including the area surrounding the interior lights, and presents a fire and/or burn hazard to consumers. The defective refrigerators do not perform their essential function of keeping food cool, rendering the refrigerators useless or of significantly diminished value long before the end of their reasonably expected useful life. The defect also presents risks to the safety of consumers due to fire hazard and food spoilage. Upon information and belief, the defect exists in "french door" refrigerator models, including model numbers LFC25760SW and LRFC22750ST ("Affected Models").

2.      All of the claims asserted herein arise out of LG's design, manufacture, warranting, advertising and selling of the Affected Models.

3.      On information and belief, LG began designing, manufacturing, warranting, marketing, advertising and selling the Affected Models to thousands of consumers throughout the United States, commencing in or around 2005.

4.      The Affected Models are designed and manufactured with a uniform and inherent design defect that results in the failure of the interior lights of the refrigerator to turn off when the refrigerator door is closed. As a result of the defect, the Affected Models do not stay cool, allowing food to spoil, and they present a fire hazard to consumers, as reflected by a burning smell and melted refrigerator parts, including the plastic surrounding the interior lights. The defect also creates a risk that consumers could burn themselves upon contact with hot refrigerator parts or that consumers could be sickened by food that spoils due the defect's impact on the temperature of the Affected Models.

5.      LG knew, or was reckless in not knowing, at or before the time it sold the first unit, that the Affected Models contained the defect and that the refrigerators would fail prematurely due to the defect. LG had sole and exclusive possession of this knowledge.

6.      Notwithstanding this knowledge, LG made uniform and material misrepresentations and uniformly concealed material information in its marketing, advertising and sale of the Affected Models, which LG knew to be defective, both at the time of sale and on an ongoing basis.

7.      At all times, in every communication, LG made misrepresentations to and/or uniformly concealed from Plaintiffs and everyone in the chain of distribution the defects in the Affected Models, and failed to remove the Affected Models from the marketplace or take adequate remedial action.  Rather, LG sold and serviced the Affected Models even though it knew, or was reckless in not knowing, that the Affected Models were defectively designed, would fail prematurely, and would ultimately result in Plaintiffs' inability to use their refrigerators for their intended purpose during the time Plaintiffs reasonably expected they would have use of the refrigerators.

8.      Affected Models have in fact failed prematurely, whether within or outside of applicable warranty periods.

9.      As a consequence of LG's false and misleading statements and active and ongoing concealment of the defect, Plaintiffs and the Class purchased and currently own defective refrigerators and have incurred damages.

10.     Plaintiffs assert claims on behalf of themselves and the Class under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2, *et seq.* ("CFA").  Plaintiffs also assert claims on behalf of themselves and the Class for breach of implied warranties, negligent misrepresentation, and unjust enrichment under New Jersey law.

11.     Plaintiffs seek actual damages, injunctive relief, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Class.

## II.    PARTIES

12.    Connie McLennan is a citizen of the State of California, residing in Rocklin, California. She purchased a new LG french door refrigerator, model number LFC25760SW, from an authorized LG distributor in June 2006.  Within the one-year warranty period, Ms. McLennan discovered that the interior lights of her refrigerator did not turn off when she closed the door.  As a result, certain parts of the refrigerator were hot to the touch, the lights were fused into the sockets, screw housings in the control unit melted, and the entire control unit became detached.  The food inside the refrigerator spoiled due to the heat.  LG directed Ms. McLennan to a local serviceperson and covered the roughly $500 cost of repairs.  LG did not repair the underlying defect, however, as evidenced by the fact that the same problem with the lights recurred in May, 2010, after the warranty period had elapsed.  When Ms. McLennan notified LG that the defect in her refrigerator still existed, LG did not respond and did not contribute to the cost of repair or replacement.  Because she cannot afford to spend hundreds of dollars on repairs or buy a new refrigerator, Ms. McLennan has unscrewed the interior lights in the refrigerator, making it very difficult to see much of what is inside the refrigerator.  LG's misrepresentations and material omissions about the performance of the Affected Models were significant to Ms. McLennan's decision to purchase an LG refrigerator.  Ms. McLennan has been injured as a result of the unlawful conduct alleged herein.

13.    Virginia Zontok is a citizen of the State of Connecticut, residing in Morrid, Connecticut. She purchased a new LG french door refrigerator, model number LFC25760SW, from an authorized LG distributor in August 2006.  Within the one-year warranty period, Ms. Zontok discovered that the interior lights of her refrigerator did not turn off when she closed the door.  As a result, certain parts of the refrigerator were hot to the touch, and the light unit completely melted and detached from the refrigerator.  The food inside the refrigerator spoiled

due to the heat.  LG directed Ms. Zontok to a local serviceperson and covered the cost of repairs. LG did not repair the underlying defect, however, as evidenced by the fact that the same problem with the lights recurred within six months.  By that time, however, the one-year warranty had elapsed, and when Ms. Zontok notified LG that the defect in her refrigerator still existed, LG refused to cover the cost of repair or replacement, noting that the warranty had expired.  Ms. Zontok paid a technician roughly $200 to repair the refrigerator.  LG's misrepresentations and material omissions about the performance of the Affected Models were significant to Ms. Zontok's decision to purchase an LG refrigerator.  Ms. Zontok has been injured as a result of the unlawful conduct alleged herein.

14.    Caryl Farrell is a citizen of the State of California, residing in Carlsbad, California. She purchased a new LG french door refrigerator, model number LRFC22750ST, from an authorized LG distributor in May 2006.  In August 2007, shortly after the one-year warranty period had elapsed, Ms. Farrell discovered that the interior lights of her refrigerator did not turn off when she closed the door.  As a result, certain parts of the refrigerator were hot to the touch, the light unit completely melted, and Ms. Farrell smelled a burning smell.  The food inside the refrigerator spoiled due to the heat.  When Ms. Farrell notified LG of the defect in her refrigerator, LG refused to contribute to the cost of repair or replacement, noting that the warranty period had expired.  Ms. Farrell paid approximately $537 to repair the refrigerator. LG's misrepresentations and material omissions about the performance of the Affected Models were significant to Ms. Farrell's decision to purchase an LG refrigerator.  Ms. Farrell has been injured as a result of the unlawful conduct alleged herein.

15.    Defendant LG Electronics USA, Inc. is incorporated in Delaware and has its principal place of business in New Jersey, at 1000 Sylvan Avenue, Englewood Cliffs, New

Jersey 07632.  LG Electronics USA, Inc. is the United States subsidiary of the South Korean corporation LG Electronics, Inc.  On information and belief, all critical decisions made and executed in the United States with respect to the issues presented in this Complaint were made by LG employees located in New Jersey.

## III.  JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, there are more than 100 Class Members, and this is a class action in which at least one Class member is a citizen of a different state from LG.

17.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because LG's principal place of business is in this judicial district and LG does business throughout this district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims took place within this judicial district.

18.    The Federal Courthouse located in Newark, New Jersey is the proper vicinage for this matter because LG is located in Englewood Cliffs, New Jersey.

## IV.  FACTUAL BACKGROUND

19.    On information and belief, LG has been engaged in the business of designing, manufacturing, warranting, marketing, advertising and selling LG-brand refrigerators and other appliances in the United States since 2001.

20.    LG is one of the world's leading manufacturers of refrigerators and other appliances.  LG has designed, manufactured, warranted, marketed, advertised and sold product lines of "french door" refrigerators, including the Affected Models that are the subject of this lawsuit.

21.     LG uniformly claims that its customers "take comfort in knowing they've made a smart, informed purchase, every time." (*see* http://www.lg.com/us/about-lg/corporate-information/overview/brand-identity.jsp, last visited July 8, 2010).

<div align="center">**The Defect**</div>

22.     The Affected Models fail to perform as advertised, because their interior lights stay on even when the refrigerator door is closed. The lights become hot and melt parts of the refrigerator they are in contact with, including the plastic covering the lights, which produces a burning smell. The heat from the lights also prevents the refrigerator from staying cool, leading to spoiled food.

23.     The defect leaves the Affected Models unusable because they are unable to keep food cool when the interior lights remain on.

24.     After learning of the defect, consumers who unscrew the interior light bulbs have at times continued to use the refrigerators.

25.     Even if the damaged, melted, and dark refrigerators can keep food cool however, the defect still leaves the Affected Models inadequate for their intended purpose because the lack of an interior light makes it very difficult for consumers to see what they have stored in the refrigerator.

26.     The defect also presents safety hazards to consumers. First, the defect creates a fire hazard due to the burning and melting caused by the lights and related heat or electrical hazards. Second, the defect presents a risk of burn injury to consumers who come into contact with the parts of the refrigerator that are hot and/or melted due to the defect. Third, the defect creates a risk of illness for consumers due to food spoilage caused by the defect.

27.    LG failed to adequately design, manufacture, and/or test the Affected Models to ensure they were free from defects at the time of sale.

28.    At all relevant times, Plaintiffs have used their LG refrigerators in a foreseeable manner and in the manner in which they were intended to be used.

29.    The defect, which manifests during the expected useful life of the Affected Models, both within and outside applicable warranty periods, is substantially likely to prevent the Affected Models from performing their essential function, and it makes it impossible for Plaintiffs to use the Affected Models as intended during their expected useful lives.

30.    Had the defect been known to consumers, the Affected Models would not have been merchantable.

31.    The defect rendered the Affected Models unfit for the ordinary purpose for which refrigerators are sold at the time they were sold to Plaintiffs and members of the Class.

32.    The defect has necessitated and will continue to necessitate replacement and/or costly repairs to the Affected Models.

### Plaintiffs' and Class Members' Reasonable Expectations

33.    In purchasing the Affected Models, Plaintiffs legitimately expected the refrigerators to operate according to their intended purpose.

34.    Consumers reasonably expect that refrigerators like the Affected Models will function properly for at least 14 years.  Consumers do not expect that the refrigerators will come with an inherent defect that results in failure well before that expected lifetime and that may require out-of-pocket expenditure of hundreds or thousands of dollars to obtain the expected useful life.

35.     LG has indicated that the expected useful life of french-door refrigerators like the ones at issue in this Complaint is "14 years from the date of purchase."[1]

36.     Customers reasonably expected the Affected Models to effectively refrigerate perishable food items during the refrigerators' expected useful lives.

37.     Plaintiffs and members of the Class reasonably expected LG to disclose the existence of a defect that was known to LG at the time of sale and that would prevent the Affected Models from refrigerating food.

38.     Because of the defect, Plaintiffs' refrigerators failed during their expected useful lives, within or outside applicable warranty periods.

39.     As a result of the defect alleged herein, Plaintiffs have experienced failure of their refrigerators, did not get what they paid for, and have incurred actual damages.

<div align="center">**LG was Aware of the Defect**</div>

40.     Before it sold the Affected Models, LG knew, or was reckless in not knowing, that the models contained a defect that would cause the interior lights of the refrigerators to malfunction and thereby render the refrigerators unable to perform their cooling functions.

41.     LG did not implement a plan to address that defect and instead manufactured and sold subsequent models that contained the same defect.

42.     LG customers have indicated that beginning as early as 2006, they complained to LG that the interior lights stayed on and burned or melted parts of the refrigerator, and also that when the lights stayed on the refrigerator's interior was warm and the food inside was spoiled.

43.     On information and belief, the interior light defect was a known issue to LG with respect to "french door" refrigerators, including models LFC25760SW and LRFC22750ST.

---

[1]     *See* http://ca.lge.com/energystarupdate/program-details.html (last visited June 29, 2010).

44.     For those refrigerators that have failed within the applicable warranty period, LG has sponsored repairs that do not address the underlying defect and do nothing to prevent subsequent failure.

45.     LG was aware that its repairs would not cure the defect but would instead merely delay the impact of the defect.  By sponsoring such repairs, LG intended to postpone the failure of the refrigerators until after the expiration of applicable warranties.

46.     When Affected Models have failed outside the warranty period, LG has recommended that Plaintiffs incur out-of-pocket expenses to repair or replace components or the Affected Models as a whole.

47.     The repairs that LG recommends do not address the underlying defect and do nothing to prevent subsequent failure in the Affected Models.

48.     LG knew that the repairs it recommended would not cure the defect, but it advised customers to incur the related expenses nonetheless.

### LG's Omissions and Misrepresentations

49.     LG failed to adequately design, manufacture, and/or test the Affected Models to ensure that they were free from the defect, and/or knew or was reckless in not knowing of the defect when it uniformly warranted, advertised, marketed and sold the Affected Models to Plaintiffs and the Class.

50.     LG did not disclose to its customers the fact that the defect existed at the time of sale and that the defect would render the Affected Models unable to perform their essential function before the end of their expected useful lives.  Nor did LG disclose that the recommended repairs would not cure the defect and would only, at best, briefly delay the impact of the defect and thereby postpone failure in the Affected Models.

51.    Instead, in its uniform marketing and advertising, LG falsely represented that the Affected Models were free from defects and that they would perform their essential function.

52.    LG knew that consumers were unaware of the defect and that they reasonably expected the refrigerators to effectively refrigerate perishable food items.  LG also knew that customers expected LG to disclose a defect that would prevent the refrigerators from performing that function long before the end of their expected useful lives, and that such disclosure would impact consumers' decision as to whether to purchase the Affected Models.  LG knew and intended for consumers to rely on its material omissions with regard to the defect when purchasing the Affected Models.

53.    As a result of LG's uniform omissions and misrepresentations in its marketing and advertising, Plaintiffs believed that the Affected Models would operate without defects to keep food cool, and Plaintiffs purchased LG refrigerators in reliance on that belief.

54.    Unfortunately for consumers, LG's representations that the Affected Models were free of defects and would adequately refrigerate perishable food items were not true.  LG knew when it sold the Affected Models that the interior lights would be adversely affected by the existing defect long before the end of the refrigerators' expected useful lives, rendering the refrigerators unable to keep food cool and/or absent interior lights.

55.    LG had the capacity to, and did, deceive consumers into believing that they were purchasing refrigerators that were free from defects and could be used safely and practically to store and cool food.

56.    LG actively concealed from and/or failed to disclose to Plaintiffs, the Class, and everyone, the true defective nature of the Affected Models, and failed to remove the Affected Models from the marketplace or take adequate remedial action.  LG represented that the Affected

Models were free of defects even though it knew when it sold the refrigerators that they contained a defect that would render the refrigerators unable to keep food cool.  Furthermore, LG sold and serviced the Affected Models even though it knew, or was reckless in not knowing, that the Affected Models were defective and that Plaintiffs and Class members would be unable to use the refrigerators for their intended purpose.

57.    To this day, LG continues to misrepresent and/or conceal material information from Plaintiffs, the Class and the public about the defect in the Affected Models.

### Fraudulent Concealment Allegations

58.    Plaintiffs' claims arise in part out of LG's fraudulent concealment of the defect. To the extent that Plaintiffs' claims arise from LG's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims. They allege that at all relevant times, including specifically at the time they purchased their refrigerators, LG knew, or was reckless in not knowing, of the defect; LG was under a duty to disclose the defect based upon its exclusive knowledge of it, its representations about its products, and its concealment of the defect; and LG never disclosed the defect to the Plaintiffs or anyone at any time or place or in any manner.

59.    Plaintiffs make the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to LG:

(a)    Who:  LG concealed the defect from Plaintiffs, the Class, and everyone in the chain of distribution.  Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those individuals at LG responsible for such decisions.

(b)    What:  LG knew at the time it sold the Affected Models, or was reckless in not knowing, the fact that an existing defect in the refrigerators would cause the interior lights of

the refrigerators to stay on when the door was closed and thereby render the Affected Models unable to perform their essential purpose of keeping food cool long before the end of their expected useful lives, within or outside the applicable warranty periods.

(c)    When:    Beginning no later than 2006, LG concealed this material information at all times with respect to the Affected Models, including through the time of sale, on an ongoing basis, and continuing to this day.

(d)    Where:  LG concealed this material information in every communication it had with Plaintiffs, the Class, and everyone in the chain of distribution.  Plaintiffs are aware of no document, communication, or other place or thing, in which LG disclosed this material information to anyone outside of LG.  Such information appears in no sales documents, no displays, no advertisements, no warranties, no owner's manual, nor on LG's website.

(e)    How:  LG concealed this material information by not disclosing it to Plaintiffs, the Class, or anyone in the chain of distribution at any time or place or in any manner, even though it knew this information and knew that it would be important to a reasonable consumer, and even though its omissions with regard to the defect and consequent premature failures of the Affected Models were contrary to its representations about the Affected Models.

(f)    Why: LG concealed this material information for the purpose of inducing Plaintiffs and Class members to purchase the Affected Models at full price rather than purchasing competitors' refrigerators or paying LG less for the Affected Models.  Had LG disclosed the truth, Plaintiffs (and reasonable consumers) would not have bought the Affected Models, or would have paid less for them.

## V.    NEW JERSEY'S SUBSTANTIVE LAW APPLIES TO THE PROPOSED NATIONWIDE CLASS

60.    New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.  New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all Class members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

61.    The application of New Jersey's laws to each of the claims alleged by the Class is also appropriate under New Jersey's choice of law rules. In particular, New Jersey law applies to the CFA claim under the most significant relationship test, and New Jersey law applies to the remaining claims under either the most significant relationship test or the government interest test.

62.    New Jersey has significant contacts and/or a significant aggregation of contacts to the claims asserted by Plaintiffs and all Class members.

63.    New Jersey has a materially greater interest than any other State in enforcing its laws with respect to the conduct of corporations, like LG, located in and doing business principally in New Jersey.  The application of New Jersey law to the conduct of corporations based in New Jersey furthers strong fundamental public policies of the State of New Jersey.

64.    Specifically, New Jersey's interest in this case and in regulating conduct under its laws arise from, among other things, the following:

(a)    LG's headquarters and principal place of business are located in New Jersey;

(b)    LG owns property and conducts substantial business in New Jersey;

- 14 -

(c)  upon information and belief, LG pays corporate income taxes to the State of New Jersey, giving New Jersey an interest (among other interests) in potential judgments affecting its revenue;

(d)  LG receives in New Jersey the revenues generated by the sale of the Affected Models;

(e)  New Jersey has an interest in deterring unlawful conduct on the part of its resident corporations;

(f)  the justified expectations of the parties would be best served by applying New Jersey law, since LG is based in New Jersey;

(g)  some members of the proposed Class reside and/or purchased Affected Models in New Jersey;

(h)  New Jersey is the State from which LG's misconduct emanated. Upon information and belief, LG became aware of the defect in, and its nondisclosure scheme was orchestrated from, the location of its present headquarters in New Jersey. LG's marketing efforts relating to the Affected Models were created and orchestrated from its headquarters in New Jersey. LG also disseminated from its New Jersey headquarters the marketing materials relating to the Affected Models; and

(i)  Upon information and belief, LG's warranty and customer affairs departments are located at its New Jersey headquarters, and LG's correspondence with consumers regarding the defect alleged herein and its decision to refuse to correct the defect in Affected Models occurred from its New Jersey headquarters.

## VI.    **TOLLING**

65.  **Discovery Rule:** The causes of action alleged herein accrued upon discovery of the defective nature of the Affected Models. Because the defect is latent, and LG took steps to

actively misrepresent and conceal it, among other reasons, Plaintiffs and members of the Class did not discover and could not have discovered the defect through reasonable and diligent investigation. Moreover, reasonable and diligent investigation into the cause of the malfunctioning lights did not and could not reveal a factual basis for a cause of action based on LG's misrepresentation and concealment of the defect.

66.     **Fraudulent Concealment Tolling:** Any applicable statutes of limitation have been tolled by LG's knowing and active misrepresentation, concealment and denial of the facts as alleged herein, which concealment is ongoing. Plaintiffs and the Class have been kept ignorant by LG of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiff and members of the Class could not reasonably have discovered the true, latently defective nature of the Affected Models.

67.     **Estoppel:** LG was and is under a continuous duty to disclose to the Plaintiffs and the Class the true character, quality, and nature of the Affected Models. LG knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Affected Models, which concealment is ongoing. Plaintiffs reasonably relied upon LG's knowing, affirmative, and/or active and ongoing concealment. Based on the foregoing, LG is estopped from relying on any statues of limitation in defense of this action.

## VII.   CLASS ACTION ALLEGATIONS

68.     Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

69.     The Class that Plaintiffs seek to represent is defined as follows:

All persons or entities residing in the United States who own or have owned LG french-door refrigerator models LFC25760SW, LRFC22750ST and other models containing a defect that causes the interior lights of the refrigerator to stay on when the door is closed.

Excluded from the Class are (a) LG, any entity in which LG has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors, (b) the United States government and any agency or instrumentality thereof; (c) the judge to whom this case is assigned and any member of the judge's immediate family; and (d) claims for personal injury, wrongful death and/or emotional distress.

70.     **Numerosity/Impracticability of Joinder**:   The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed Class includes tens of thousands of members.  The Class is composed of an easily ascertainable, self-identifying set of individuals and entities that purchased new Affected Models.  The precise number of Class members can be ascertained by reviewing documents in LG's possession, custody, and control.

71.     **Commonality and Predominance**:  There are common questions of law and fact that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, include, but are not limited to, the following:

(a)     Whether the Affected Models contain common design and/or manufacturing defects;

(b)     Whether the Affected Models are substantially certain to prematurely fail;

(c)     Whether the Affected Models are not of merchantable quality;

(d)     Whether the existence of the defect in the Affected Models is a material fact reasonable purchasers would have considered in deciding whether to purchase a refrigerator;

(e)     Whether LG knew and/or was reckless in not knowing of the defect in the Affected Models;

(f)     Whether LG engaged in a pattern of fraudulent, deceptive, and misleading conduct involving the marketing and sale of the Affected Models;

(g)    Whether LG consciously concealed or failed to disclose material facts to Plaintiffs and other members of the Class with respect to the defect in the Affected Models;

(h)    Whether LG knew that consumers were unaware of the defect and that they expected the refrigerators to be free from defects at the time of sale;

(i)    Whether LG knew that consumers would expect their refrigerators to effectively cool perishable food items;

(j)    Whether LG knew that customers would expect it to disclose the existence of a known defect that would prevent the refrigerators from keeping food items cool, and that such disclosure would impact consumers' decision as to whether to purchase the Affected Models;

(k)    Whether LG intended that Plaintiffs and the other members of the Class rely on its acts of concealment and omissions when purchasing the Affected Models;

(l)    Whether as a result of the foregoing acts, omissions, and practices, Plaintiffs and other members of the Class have suffered an ascertainable loss by purchasing defective refrigerators that are unable to perform their essential function of keeping food cool, require additional expenditures in order to reach their expected useful life, and that present a risk to the safety of Plaintiffs and members of the Class in the form of risk of fire and/or burning and risk of illness due to food spoilage.

(m)    Whether LG's false and misleading statements of facts and concealment of material facts regarding the defect in the Affected Models were likely to deceive the public;

(n)    Whether LG's acts and omissions violated the New Jersey CFA;

(o)    Whether LG fraudulently concealed from and/or failed to disclose to Plaintiffs and the Class the defect in the Affected Models;

(p)    Whether LG's conduct breached implied warranties;

(q)    Whether LG has been unjustly enriched at the expense of Plaintiffs and Class members;

(r)    Whether Plaintiffs and Class members suffered any ascertainable loss of money or property as a result of the false promise or misrepresentation, or concealment, suppression or omission of material fact;

(s)    Whether LG should be declared financially responsible for notifying all Class members of the defective Affected Models and for the costs and expenses of repair and replacement of all such defective components therein;

(t)    Whether Plaintiffs and Class members are entitled to recover damages, including refunds, treble the damages sustained, interest, attorneys' fees, filing fees, and reasonable costs of suit in connection with LG's unlawful conduct as alleged herein;

(u)    Whether, as a result of LG's misconduct, Plaintiffs and the Class are entitled to equitable relief and other relief, and, if so, the nature of such relief;

(v)    Whether New Jersey law can be applied to the claims of Plaintiffs and the Class; and

(w)    Whether the actions of LG were willful and malicious, or manifested knowing and reckless indifference and disregard toward the rights of Plaintiffs and the Class.

72.    **Typicality**:  Plaintiffs' claims are typical of the claims of the members of the Class.  Plaintiffs and all Class members have been injured by the same wrongful practices by LG.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal and remedial theories.

73.    **Adequacy**:  Plaintiffs will fully and adequately assert and protect the interests of the Class, and they have retained class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiffs nor their attorneys have any interests that are contrary to or conflicting with the Class.

74.    **Superiority**:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are in the millions of dollars, and are no less than five million dollars upon information and belief, the individual damages incurred by each Class member resulting from LG's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  In addition, LG has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

**FIRST COUNT**
**(Violations Of New Jersey Consumer Fraud Act**
**("CFA") (N.J.S.A. § 56:8-2 *et seq.*))**

75.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

76.     Plaintiffs and other members of the Class are "consumers" within the meaning of the CFA.

77.     The Affected Models are "goods" within the meaning of the CFA.

78.     At all relevant times material hereto, LG conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

79.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under other remedies.

80.     LG has engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the marketing and sale of refrigerators it knew to be defective.

81.     LG had exclusive knowledge of the defect at the time of sale.  The defect is latent and not something that Plaintiffs or Class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

82.     LG represented that its goods, merchandise or services had characteristics, uses, benefits, or quantities that they did not have, and that its goods, merchandise and services were of a particular standard, quality or grade that they were not.

83.     In its marketing and sale of the Affected Models, LG undertook active and ongoing steps to conceal the defects and has consciously withheld material facts from Plaintiffs and other members of the Class with respect to the defect in the Affected Models.  Plaintiffs are aware of nothing in LG's advertising, publicity, or marketing materials that discloses the truth about the defect, despite LG's awareness of the problem.

84.    LG's conduct was objectively deceptive and had the capacity to deceive reasonable consumers under the circumstances.  The fact that a defect in the Affected Models would prevent the interior lights from turning off and thereby pose safety risks to consumers and render the refrigerators unable to perform their essential purpose of keeping food cool was a material fact that a reasonable and/or unsophisticated consumer would attach importance to at the time of purchase and that would influence reasonable consumers' choice of action during the purchase of their refrigerators.

85.    LG intended that Plaintiffs and the other members of the Class rely on its acts of concealment and omissions, so that Plaintiffs and other Class members would purchase the Affected Models at full price rather than paying less for them or purchasing competitors' refrigerators.

86.    Plaintiffs and members of the Class purchased the Affected Models in the wake of LG's knowing concealment and omissions.

87.    Had LG disclosed all material information regarding the defect to Plaintiffs and other members of the Class, they may not have purchased the Affected Models, or they would have paid less for the Affected Models.

88.    LG's general course of conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

89.    As a result of the foregoing acts, omissions, and practices, Plaintiffs and other members of the Class have suffered an ascertainable loss by purchasing defective refrigerators that are unable to perform their essential function of keeping food cool for their expected useful life and that present a risk to the safety of Plaintiffs and members of the Class in the form of risk of fire and/or burning and risk of illness due to food spoilage.  Plaintiffs and members of the

Class may have also incurred additional costs to replace and/or repair the Affected Models. Plaintiffs are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees, and costs of suit.

90.    Application of the CFA to all Class members, regardless of their state of residence, is appropriate as described herein and because, *inter alia*:

(a)    LG controlled and directed its nationwide sales operations and support operations from New Jersey;

(b)    LG's marketing and customer support operations and decisions were made in New Jersey, LG's headquarters;

(c)    LG's principal place of business is located in New Jersey;

(d)    A significant percentage of LG's key employees are based in New Jersey; and

(e)    The facts and circumstances of this case reflect numerous contacts with the State of New Jersey so as to create a state interest in applying the CFA to LG, thereby making application of New Jersey law to the entire Class appropriate.

## SECOND COUNT
### (Fraudulent Concealment/Nondisclosure)

91.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

92.    LG knew at the time of sale that the Affected Models are defective in that they are substantially certain to fail well in advance of their anticipated useful life.

93.    LG fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs, the Class, and all others in the chain of distribution (e.g., concealments and omissions

in LG's communications with wholesalers, retailers, and others in the chain of distribution that were ultimately passed on to Plaintiffs and the Class) the true nature of the Affected Models.

94.    LG had exclusive knowledge of the defect at the time of sale.  The defect is latent and not something that Plaintiffs or Class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

95.    LG had the capacity to, and did, deceive consumers into believing that they were purchasing refrigerators that could be used safely and practically to store and cool food.

96.    LG undertook active and ongoing steps to conceal the defect.  Plaintiffs are aware of nothing in LG's advertising, publicity, or marketing materials that discloses the truth about the defect, despite LG's awareness of the problem.

97.    The facts concealed and/or not disclosed by LG to Plaintiffs and the Class are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay the same price for) a refrigerator.

98.    LG had a duty to disclose the fact that a defect existed at the time of sale.  LG knew that consumers were unaware of the defect and that they reasonably expected the refrigerators to effectively refrigerate perishable food items.  LG also knew that customers expected LG to disclose a defect that would prevent the refrigerators from performing that function long before the end of the refrigerators' expected useful life, and that such disclosure would impact consumers' decision as to whether to purchase the Affected Models.  LG knew and intended for consumers to rely on its material omissions with regard to the defect when purchasing the Affected Models.

99.    LG intentionally concealed and/or failed to disclose the problems with the Affected Models for the purpose of inducing Plaintiffs and the Class to act thereon.

100.    Plaintiffs and the Class justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment, as evidenced by their purchase of the Affected Models and/or replacement parts for the Affected Models.

101.    Had Plaintiffs and the Class known of the defect they would not have purchased (or would have paid less for) their Affected Models.

102.    As a direct and proximate cause of LG's misconduct, Plaintiffs and Class members have suffered actual damages in that they bought and own refrigerators that contain an inherent defect and that have prematurely failed or are substantially certain to prematurely fail within and outside applicable warranty periods, and they will be required to incur costs to repair and/or replace the defective components or the refrigerators as a whole.

103.    LG's conduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

104.    LG has acted with malice by engaging in conduct that was and is intended by LG to cause injury to the Plaintiffs and the Class.

105.    LG has committed fraud through its concealment of material facts known to LG with the intent to cause injury to the Plaintiffs and the Class.

106.    Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against LG for actual and punitive damages for themselves and each member of the Class, plus attorneys' fees for the establishment of a common fund, interest, and costs.

## THIRD COUNT
### (Breach of Implied Warranties)

107.    Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

108.   At all times relevant herein, LG was in the business of manufacturing and selling refrigerators.

109.   LG has brought itself into privity with Plaintiffs and the Class members by warranting the Affected Models to them directly and/or through the agency doctrine.

110.   At all times relevant herein, LG impliedly warranted in a uniform manner to Plaintiffs and the proposed Class that the Affected Models were of the same or greater quality as generally accepted for refrigerators, and were safe and fit for their intended use as refrigerators.

111.   Contrary to LG's implied warranties, the Affected Models were not of merchantable quality at the time of sale, as they were not fit for the ordinary purposes for which such goods are used, and/or do not conform to the promises or affirmations of fact made in the promotional literature. The Affected Models contained an inherent defect at the time of sale that was substantially certain to result in malfunction during the useful life of the product such that the refrigerators would be unable to keep food cool.

112.   LG was aware of this defect, but sold the Affected Models without disclosing the defect to Plaintiffs.

113.   At the times that LG marketed and sold the Affected Models for use by Plaintiffs and the proposed Class, LG had actual or constructive knowledge of the particular purposes for which the Affected Models would be used.

114.   At the times that LG marketed and sold the Affected Models for use by Plaintiff and the proposed Class, LG had actual or constructive knowledge that Plaintiffs and the proposed Class would and did rely upon the skill and judgment of LG to select and furnish refrigerators that were suitable for residential and non-residential use.

115.    Contrary to LG's implied warranty, the Affected Models were not fit for their intended and known use by Plaintiff and the proposed Class.  The Affected Models contain inherent defects which are substantially certain to result in malfunction during the useful life of the product.

116.    LG was aware of the defect in the Affected Models and did not act on that knowledge.  LG continued to actively conceal from customers that the refrigerators they purchased were defective at the time of sale.

117.    Had the defect that existed at the time of sale been known, the Affected Models could not have been sold, or could not have been sold at the same price.

118.    Had Plaintiffs been aware of the defect that existed at the time of sale, they would not have purchased the Affected Models, or would have paid less for them.

119.    LG has received timely notice of the breach of implied warranties alleged herein. LG has been put on notice by the Class as a whole by reason of its own knowledge of the defect, and by warranty claims and other complaints made by Plaintiffs and Class members.

120.    Any express limitation or negation of LG's implied warranties that the Affected Models were fit to perform their essential purpose, when such was not the case, would be unreasonable and unconscionable and, accordingly, is unenforceable.

121.    As a direct and legal result of the breach of implied warranties by LG, Plaintiffs and the members of the proposed Class sustained actual and consequential damages in an amount to be determined according to proof at time of trial.

**FOURTH COUNT**
**(Unjust Enrichment)**

122.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

123.    LG has been unjustly enriched by the sale of the Affected Models to Plaintiffs and the Class members.

124.    Plaintiffs seek to recover for LG's unjust enrichment under New Jersey State law.

125.    Plaintiffs and the Class members conferred a benefit on LG, but LG failed to disclose its knowledge that Plaintiffs did not receive what they paid for and misled Plaintiffs and the Class regarding the qualities of the Affected Models while profiting from this deception.

126.    The circumstances are such that it would be inequitable, unconscionable, and unjust to permit LG to retain the benefit of these profits that it unfairly has obtained from Plaintiffs and the Class members.

127.    Plaintiffs and the Class members, having been injured by LG's conduct, are entitled to restitution or disgorgement of profits as a result of the unjust enrichment of LG to their detriment.

WHEREFORE, Plaintiffs on behalf of themselves and the Class, pray for judgment against LG granting the following relief:

1.    An order certifying this case as a class action and appointing Plaintiffs to represent the Class and Plaintiffs' counsel as Class counsel;

2.    Restitution and disgorgement of all amounts obtained by LG as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

3.    All recoverable compensatory and other damages sustained by Plaintiffs and the Class;

4.    Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class in the maximum amount permitted by applicable law, including mandatory treble damages pursuant to the New Jersey Consumer Fraud Act;

5.    An order (1) requiring LG to immediately cease its wrongful conduct as set forth above; (2) enjoining LG from continuing to conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; and (3) requiring LG to refund to Plaintiffs and all members of the Class the funds necessary to repair or replace the Affected Models as appropriate;

6.    Statutory pre judgment and post judgment interest on the Class damages;

7.    Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

8.    Such other relief as the Court may deem just and proper.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys For Plaintiffs and The Putative Class

By:   /s/ James E. Cecchi
        JAMES E. CECCHI

Dated: July 16, 2010

Kristen Law Sagafi                          Paul R. Kiesel
LIEFF, CABRASER, HEIMANN &   KIESEL, BOUCHER, & LARSON LLP
BERNSTEIN, LLP                          8648 Wilshire Boulevard
275 Battery Street, 29th Floor          Beverly Hills, California 90211-2910
San Francisco, California 94111-3336   (310) 854-4444
(415) 956-1000

Jonathan D. Selbin
Alison Stocking
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York  10013
(212) 355-9500

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all causes of action so triable.

> CARELLA, BYRNE, CECCHI,
> OLSTEIN, BRODY & AGNELLO, P.C.
> Attorneys For Plaintiffs
> and The Putative Class
>
> By:    /s/ James E. Cecchi
>         JAMES E. CECCHI

Dated: July 16, 2010

Kristen Law Sagafi
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111-3336
(415) 956-1000

Jonathan D. Selbin
Alison Stocking
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York  10013
(212) 355-9500

Paul R. Kiesel
KIESEL, BOUCHER, & LARSON LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
(310) 854-4444