# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

CONNIE MCLENNAN, VIRGINIA
ZONTOK, CARYL FARRELL, on behalf of
themselves and all others similarly situated,

                                 Plaintiffs,

              v

LG ELECTRONICS USA, INC.

                                 Defendant.

Civil Action No. 10 CV 3604
(WJM)(MF)

-------------------------------------------------------------------------------------------------------

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND DESIGNATION OF CLASS COUNSEL

-------------------------------------------------------------------------------------------------------

Jonathan D. Selbin
Jason Lichtman
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500

Kristen Law Sagafi
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

James Cecchi
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY &
AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

Paul Kiesel
KIESEL BOUCHER LARSON, LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
(310) 854-4444

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 2

THE PROPOSED SETTLEMENT....................................................................... 2

NOTICE TO THE CLASS ................................................................................ 4

LEGAL ARGUMENT...................................................................................... 5

    I.    THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE................................................ 5

        A.    Settlement And Class Action Approval Process........................................ 5

        B.    The Criteria For Settlement Approval Are Satisfied. ............................... 7

            1.    The Settlement Is The Product Of Extensive Arm's Length Negotiations. ................................................... 8

            2.    Counsel Are Experienced In Similar Litigation............................ 9

            3.    The Factual Record Was Well Developed Through Independent Investigation. .......................................... 10

            4.    The Settlement Provides Substantial Relief For Class Members And Treats Class Members Fairly. ............................. 10

            5.    The Settlement Is Fair And Reasonable In Light Of The Alleged Claims And Defenses. .................................... 11

            6.    The Requested Class Representative Stipends Are Reasonable. .................................................... 12

            7.    The Requested Attorneys' Fees Are Fair And Reasonable. ........ 12

        C.    Provisional Certification Of The Settlement Class Is Appropriate.......... 13

            1.    The Class Is So Numerous That Joinder Of All Members Is Impracticable.................................................. 14

            2.    There Are Numerous Common Issues Of Law And Fact............ 15

            3.    The Class Representatives' Claims Are Typical. ....................... 16

            4.    The Named Plaintiffs And Their Counsel Adequately Represent The Class.................................................. 17

            5.    The Proposed Settlement Class Satisfies The Predominance And Superiority Requirements Of Rule 23(b)(3). ..................... 18

                 a.    Common Questions Predominate. ................................... 19

936492.1

## TABLE OF CONTENTS
### (continued)

Page

b.    Class Treatment Is Superior To Alternative Methods Of Adjudication. ............................................... 19

D.    The Proposed Notice To Class Members Is Adequate. .......................... 20

E.    Scheduling Final Approval Hearings Is Appropriate.............................. 22

II.    COUNSEL QUALIFY TO ACT AS CLASS COUNSEL ................................. 23

CONCLUSION.................................................................................................................... 25

936492.1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591, 117 S. Ct. 2231 (1997)...........................................................................18, 19

*Baby Neal For & By Kanter v. Casey,*
43 F.3d 48 (3d Cir. 1994) .......................................................................................15, 16

*Bernhard v. TD Bank, N.A.,*
2009 WL 3233541 (D.N.J. Oct. 5, 2009).............................................................................6

*Bredbenner v. Liberty Travel, Inc.,*
No. 09-1248, 2011 U.S. Dist. LEXIS 38663 (D.N.J. Apr. 8, 2011)..................................9, 19

*Carson v. Am. Brands, Inc.,*
450 U.S. 79 (1981)...............................................................................................................8

*Chakejian v. Equifax Info. Servs.,*
No. 07-2211, 2011 U.S. Dist. LEXIS 63455 (E.D. Pa. June 14, 2011)...........................12, 17

*Chiang v. Veneman,*
385 F.3d 256 (3d Cir. 2004)..............................................................................................15

*Curiale v. Lenox Group, Inc.,*
2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) .......................................................................8

*Dewey v. Volkswagen of Am.,*
728 F. Supp. 2d 546 (D.N.J. 2010)....................................................................................12

*Ehrheart v. Verizon Wireless,*
609 F.3d 590 (3d Cir. Pa. 2010).......................................................................................7, 9

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156, 94 S. Ct. 2140 (1974)..................................................................................20

*Eisenberg v. Gagnon,*
766 F.2d 770 (3d Cir. 1985)..........................................................................................16, 18

*Gates v. Rohm & Haas Co.,*
248 F.R.D. 434 (E.D. Pa. 2008).......................................................................................7, 8

*Grant v. Sullivan,*
131 F.R.D. 436 (M.D. Pa. 1990).......................................................................................14

*Hall v. AT & T Mobility LLC,*
2010 WL 4053547 (D.N.J. 2007) .......................................................................................8

*In re Am. Family Enters.,*
256 B.R. 377 (D.N.J. 2000) ...............................................................................................9

*In re Auto. Refinishing Paint Antitrust Litig.,*
MDL No. 1426, 2003 U.S. Dist. LEXIS 18123 (E.D. Pa. Sept. 5, 2003)...............................7

*In re Cendant Corp. Sec. Litig.,*
109 F. Supp. 2d 255 (D.N.J. 2000) .................................................................................9, 21

# TABLE OF AUTHORITIES
## (continued)

Page

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
  269 F.R.D. 468 (E.D. Pa. 2010)............................................................................ 14, 22

*In re Community Bank of N. Va.*,
  418 F.3d 277 (3d Cir. 2005)................................................................................ 6, 14, 19

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)................................................................................... 5, 7, 17

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. N.J. 2009) ........................................................................... 8, 18

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ........................................................................... 8

*In re Lucent Techs., Inc. Sec. Litig.*,
  307 F. Supp. 2d 633 (D.N.J. 2004) ............................................................................ 16

*In re Mercedes-Benz Antitrust Litig.*,
  213 F.R.D. 180 (D.N.J. 2003).................................................................................... 19

*In re Pet Food Prods. Liab. Litig.*,
  629 F.3d 333 (3d Cir. N.J. 2010) ............................................................................... 14

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998).................... 9, 19, 21, 22

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009)....................................................................................... 15

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)......................................................................................... 5

*Kalow & Springut, LLP v. Commence Corp.*,
  272 F.R.D. 397 (D.N.J. 2011) .................................................................................... 15

*Mack Trucks, Inc. v. Int'l Union, UAW*,
  No. 07-3737, 2011 U.S. Dist. LEXIS 51514 (E.D. Pa. May 12, 2011)......................... 8

*Mann v. TD Bank, N.A.*,
  No. 09-1062, 2010 U.S. Dist. LEXIS 112085 (D.N.J. Oct. 20, 2010) ......................... 23

*McAlarnen v. Swift Transp. Co.*,
  No. 09-1737, 2010 U.S. Dist. LEXIS 7877 (E.D. Pa. Jan. 29, 2010).......................... 16

*McGee v. Cont'l Tire N. Am., Inc.*,
  No. 06-6234, 2009 U.S. Dist. LEXIS 17199 (D.N.J. Mar. 4, 2009)............................ 16

*Mehling v. New York Life Ins. Co.*,
  246 F.R.D. 467 (E.D. Pa. 2007)............................................................................ 6, 8, 21

*Newton v. Merrill Lynch, Pierce, Fenner &Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001).................................................................................... 14, 16

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797, 105 S. Ct. 2965 (1985) ........................................................................ 20

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Serrano v. Sterling Testing Sys., Inc.*,
   711 F. Supp. 2d 402 (E.D. Pa. 2010) ................................................................ 9

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) .............................................................................. 14

*Waudby v. Verizon Wireless Servs., LLC*,
   248 F.R.D. 173 (D.N.J. 2008) ........................................................................... 23

**RULES**

Fed. R. Civ. P.
   23(a) .................................................................................................................. 14

Fed. R. Civ. P.
   23(b)(3) ........................................................................................... 14, 18, 19, 20

Fed. R. Civ. P.
   23(e) .............................................................................................................. 7, 23

Fed. R. Civ. P.
   23(e)(1)(B) ........................................................................................................ 20

Fed. R. Civ. P.
   23(e)(1)(C) .......................................................................................................... 5

Fed. R. Civ. P.
   23(g)(1)(A) ........................................................................................................ 23

Fed. R. Civ. P.
   23(g)(4) ............................................................................................................. 23

Fed. R. Civ. P.
   23(a)(2) ............................................................................................................. 16

Fed. R. Civ. P.
   23(a)(4) ....................................................................................................... 17, 18

Fed. R. Civ. P.
   23(b)(1) ............................................................................................................. 20

Fed. R. Civ. P.
   23(b)(2) ............................................................................................................. 20

Fed. R. Civ. P.
   23(g) ........................................................................................................... 18, 24

**TREATISES**

4 Newberg on Class Actions,
   § 11.25 (4th ed. 2010) ......................................................................................... 6

4 Newberg on Class Actions,
   § 11.26 ................................................................................................................. 7

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Manual for Complex Litig.*,
 § 13.14............................................................................................................. 7

*Manual for Complex Litig.*,
 § 21.62............................................................................................................ 12

*Manual for Complex Litig.*,
 § 21.63 (4th ed. 2010)...................................................................................... 6

*Manual for Complex Litig.*,
 § 21.311.......................................................................................................... 21

*Manual for Complex Litig.*,
 § 21.312.......................................................................................................... 20

Manual for Complex Litig.,
 § 21.632..................................................................................................... 7, 13

Manual for Complex Litig.,
 § 21.633.......................................................................................................... 13

## PRELIMINARY STATEMENT

Plaintiffs Connie McLennan, Virginia Zontok, and Caryl Farrell (collectively, "Plaintiffs"), with the consent and participation of Defendant LG Electronics USA, Inc. ("LGEUS"), respectfully submit this memorandum in support of their Joint Motion for Preliminary Approval of Class Settlement and Designation of Class Counsel (the "Motion"). Plaintiffs, serving as class representatives, commenced a class action lawsuit (the "Action") against LGEUS in the United States District Court, District of New Jersey, on behalf of themselves and all others similarly situated, seeking economic damages and other relief relating to their purchase of certain LG-manufactured refrigerators (the "Refrigerators"). Plaintiffs alleged in the Action that the Refrigerators contain a certain defect that causes the interior lights of the Refrigerators to remain on when the Refrigerator door is closed (the "Light Issue"). Plaintiffs further alleged that, as a result of the Light Issue, the Refrigerators failed to keep food cool.

The proposed settlement of this class action provides for an extended warranty to cover repairs necessitated by the Light Issue, as well as reimbursement for past repair costs incurred to address the Light Issue, as further explained and set forth in the fully executed Settlement Agreement. A copy of the Settlement Agreement entered into by the Parties is attached as Exhibit A to the Motion.[1] Also submitted herewith is a proposed Order Granting Preliminary Approval of Class Settlement (the "Preliminary Approval Order"). Entry of the proposed Preliminary Approval Order will allow the parties to give notice of the settlement to class members and to respond to properly filed objections, if any, and then to proceed to a hearing on final approval. As set forth more fully below, the proposed Settlement Agreement is fair,

_____

[1] Capitalized terms used but not defined herein have the meanings attributed to them in the Settlement Agreement.

reasonable, and adequate, and worthy of preliminary approval, and counsel for Plaintiffs are more than qualified to act as Class Counsel.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs commenced this putative class action lawsuit (the "Action") against LGEUS on July 16, 2010.  As set forth in the complaint, Plaintiffs sought relief on behalf of a nationwide class for alleged violations of the New Jersey Consumer Fraud Act, fraudulent concealment, breach of implied warranty, and unjust enrichment, all arising from the Light Issue.

LGEUS filed its Motion to Dismiss on October 4, 2010. After the motion was fully briefed but before it was decided, this Court scheduled a settlement conference for December 15, 2010. At the parties' request, the settlement conference was continued to January 20, 2011 to allow newly-engaged Defense counsel at Riker Danzig Scherer Hyland & Perretti, LLP to acquaint themselves with the litigation.

Shortly after the January 20 settlement conference, the parties began formal discussions regarding global resolution of the claims in this case. The parties reached agreement on the key terms of settlement, which they memorialized in a Memorandum of Understanding and executed on May 20, 2011. After several months of additional negotiations, the parties finalized the Settlement Agreement.  LGEUS denies any wrongdoing, but has agreed to settle this case to avoid the further expense, inconvenience, burden, and uncertainty of the lawsuit.

The parties submit for review and preliminary approval the full terms of the Settlement Agreement of the parties.

## THE PROPOSED SETTLEMENT

The parties reached agreement on the terms of the proposed settlement through a vigorous debate of legal and factual theories by counsel and extensive arm's length negotiations. If the proposed settlement is approved by the Court, Defendant, as more fully explained in the

936492.1

Settlement Agreement, has agreed to (1) reimburse Settlement Class members for 100% of out-of-pocket costs for parts and labor necessitated to repair the Light Issue, to the extent such costs were incurred before the deadline for mailing the Summary Notice; and (2) extend the warranty with respect to the Light Issue for a period of 10 years from the date of the original retail purchase of the Refrigerator.  Defendant will separately pay attorneys' fees and costs, pursuant to the terms in the Settlement Agreement, associated with the prosecution of these claims and the administration of the settlement.  As part of the settlement, LGEUS will maintain a dedicated website to the settlement through August 1, 2018.

The proposed settlement class ("Settlement Class" or "Class") consists of all end user consumer residents of the United States who currently own or owned one or more of the LG-manufactured Refrigerators consisting of the LG-branded (the "LG Models") or Kenmore-branded (the "Kenmore Models") refrigerators that are identified on Exhibit A to the Settlement Agreement (collectively, the "Refrigerators").  Excluded from membership in the Class are the following: (a) LGEUS or its affiliates; (b) Sears, Roebuck and Co. or its affiliates ("Sears"); (c) retailers, wholesalers, and other middlemen who purchased a Refrigerator for commercial use or resale; (d) persons who timely and validly exclude themselves from the Class; (e) state and federal governmental entities; and (f) the judge to whom this case is assigned and any member of the judge's immediate family.

Additionally, the costs of notice and administration of the settlement, and all fees and costs to be paid to Class Counsel, do not affect the benefits provided to the Class.  Rather, Defendant is paying these costs in addition to—and not out of—the recovery to the Class as more fully set forth in the Settlement Agreement.  As part of the relief to be provided to the Class and subject to the Court's approval, Defendant has retained the services of Rust Consulting, Inc.

936492.1

("Rust" or "Claims Administrator") to effectuate notice to the Class and administer the reimbursement portion of the settlement.  As a matter negotiated after the relief to the Class was agreed to, Defendant will not oppose any petition by Class Counsel for fees and costs that does not exceed $1,000,000, and will pay such amounts in addition to any of the benefits to be paid and provided to the Class.  Similarly, Defendant will not oppose a petition for the payment to each Plaintiff of $1,000 as an award for service provided to the Class.

<u>**NOTICE TO THE CLASS**</u>

The Settlement Agreement provides for the best practicable notice to the Class.  If the Settlement and notice plan are preliminarily approved, LGEUS will provide direct mail or email notice to the Settlement Class to the extent that it has records of such Class members' addresses.  Based on records compiled to date, it is anticipated that approximately half of all potential Class members will receive the direct mail or email notice.[2] The mail and email notice will direct Settlement Class members to the Settlement website and Settlement toll-free number for complete information, and to request a copy of the long-form notice and the claim form.

In addition, LGEUS will maintain a settlement website, which will provide details about the settlement, key documents of the settlement and the litigation, and a copy of the claim form.  LGEUS also will print the Publication Notice, in a form substantially similar to that attached as Exhibit D to the Settlement Agreement, once in *PARADE* Magazine, which has a circulation exceeding 30 million nationwide.

LGEUS will inform its call center about this Settlement Agreement and the Refrigerators involved.  LGEUS will instruct its call center that, to the extent a Class member calls the call

---

[2] The Parties anticipate that [more than 400,000] potential Class members will receive direct mail or email notice.  LGEUS estimates that it manufactured about 617,000 Class Model Refrigerators described in Exhibit A.  However, because the Class encompasses all end-user consumer residents of the United States who currently own or owned the Refrigerators, the total Class size is difficult to estimate with precision.

936492.1

center regarding the settlement, the call center shall inform the Class member of the settlement website and telephone number of the Claims Administrator.

## LEGAL ARGUMENT

### I.    THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE

The Settlement Agreement should be approved by this Court.  The settlement is the result of months of arm's length negotiations among the parties and their highly-experienced counsel, and informed by the exchange of significant information throughout the settlement process.  The settlement provides significant monetary benefits considering all of the attendant risks of litigation.  Prior to reaching resolution, Plaintiffs' counsel thoroughly investigated the case, and in doing so, gathered ample information to assess the strengths and weaknesses of the parties' positions.  Having weighed the likelihood of success and the inherent risks and expense of litigation, Plaintiffs and their counsel strongly believe that the proposed settlement is "fair, reasonable, and adequate" as required by Fed. R. Civ. P. 23(e)(1)(C).

### A.    Settlement And Class Action Approval Process

The Third Circuit Court of Appeals has recognized that "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation," and where the parties may "gain significantly from avoiding the costs and risks of a lengthy and complex trial."  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 784 (3d Cir. 1995) ("*G.M. Trucks*").  "These economic gains multiply when settlement also avoids the costs of litigating class status — often a complex litigation within itself."  *Id.* ; *see also In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004) ("There is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *In re Community Bank of N. Va*., 418 F.3d 277, 299 (3d

Cir. 2005) ("[A]ll Federal Circuits recognize the utility of . . . 'settlement classes' as a means to facilitate the settlement of complex nationwide class actions.").

The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements:

> (1)  Preliminary approval of the proposed settlement at an informal hearing;
>
> (2)  Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3)  A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

Fed. Jud. Ctr., *Manual for Complex Litig*., at § 21.63 (4th ed. 2010); *see also Mehling v. New York Life Ins. Co*., 246 F.R.D. 467, 472 (E.D. Pa. 2007) (identifying preliminary approval, notice to class, and a fairness hearing as process for reviewing a class settlement); *Bernhard v. TD Bank, N.A.*, 2009 WL 3233541, at *1 (D.N.J. Oct. 5, 2009) (same).  This procedure, used by courts in this Circuit and endorsed by class action commentator Professor Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests.  4 Newberg on Class Actions ("*Newberg*") § 11.25 (4th ed. 2010).  "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Bernhard*, 2009 WL 3233541, at *1.

With this motion, Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed settlement.  At the preliminary approval stage, the question for this Court is whether the settlement falls within the "range of reasonableness," and is sufficiently fair, reasonable, and adequate to warrant dissemination of notice apprising class members of the proposed settlement and to establish

procedures for a final settlement hearing under Rule 23(e).  4 *Newberg* § 11.26; *see also Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 445 (E.D. Pa. 2008) ("[T]he proposed Settlement is within the range of reasonableness and is not obviously deficient in any respect. Thus, preliminary approval is appropriate.").

The Court's grant of preliminary approval will allow all Settlement Class members to receive notice of the proposed settlement's terms and the date and time of the "final fairness hearing," or final settlement approval hearing, at which Settlement Class members may be heard regarding the settlement, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.  *See Manual for Complex Litig.*, at § 13.14, § 21.632.  While the final fairness hearing is a crucial step in the settlement approval process, neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion.  *Id.* at § 13.14; *cf. In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2003 U.S. Dist. LEXIS 18123, at *2 (E.D. Pa. Sept. 5, 2003) ("On March 17, 2003, we granted preliminary approval and directed that notice of the proposed settlement and formal fairness hearing be disseminated to the Class.").

**B.**    **The Criteria For Settlement Approval Are Satisfied.**

In deciding whether to grant preliminary approval, there is "an initial presumption of fairness" for settlements negotiated at arm's length by experienced counsel informed by sufficient discovery.  *G.M. Trucks*, 55 F.3d at 785; *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 604, n.6 (3d Cir. Pa. 2010); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638

(E.D. Pa. 2003).[3]  The only issue before the Court is whether the settlement "discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval."  *Mehling*, 246 F.R.D. at 472 (citations omitted).  At this stage, the court "need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute."  *Id.*; *see also Mack Trucks, Inc. v. Int'l Union, UAW*, No. 07-3737, 2011 U.S. Dist. LEXIS 51514, at *7-8 (E.D. Pa. May 12, 2011).  In determining whether class action settlements should be approved, "[c]ourts judge the fairness of a proposed compromise by weighing the Plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. . . .  They do not decide the merits of the case or resolve unsettled legal questions."  *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981) (citation omitted); *see also Mack Trucks,* 2011 U.S. Dist. LEXIS 51514, at *7-8; *Mehling*, 246 F.R.D. at 472.  "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court."  *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 256 (3d Cir. 2009) (citation and quotation marks omitted)..

### 1.    The Settlement Is The Product Of Extensive Arm's Length Negotiations.

"[T]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."  *Hall v. AT & T Mobility LLC*, 2010 WL 4053547, at *7 (D.N.J. 2007) (internal

---

[3] The Court of Appeals for the Third Circuit has adopted a nine-factor test for determining whether a settlement is fair, reasonable, and adequate at the final approval stage.  *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. N.J. 2009).  For purposes of preliminary approval, however, the Court need not address all of these factors, as "the standard for preliminary approval is far less demanding."  *Gates v. Rohm & Haas Co*., 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008); *see also Curiale v. Lenox Group, Inc.*, 2008 WL 4899474, at *9 n.4 (E.D. Pa. Nov. 14, 2008).

quotation marks omitted); *see also Bredbenner v. Liberty Travel, Inc.*, No. 09-1248, 2011 U.S. Dist. LEXIS 38663, at *30 (D.N.J. Apr. 8, 2011). In this litigation, Judge Martini assisted the parties in reaching the Settlement Agreement by overseeing an initial settlement conference from which fruitful settlement terms were negotiated.

Here, the material terms of the proposed Settlement Agreement are the product of two separate in-person settlement sessions; the first conducted by this Court and the second conducted between the parties in New York on April 20, 2011. Thereafter, the settlement was negotiated over many months of extensive, hard-fought negotiations via telephone, conference calls and email. The Settlement Agreement was the result of arm's length negotiation between the parties.

**2.      Counsel Are Experienced In Similar Litigation.**

Recommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997), *aff'd*, 148 F.3d 283, 311 (3d Cir. 1998); *cf. Ehrheart*, 609 F.3d at 594 ("The settlement agreement was negotiated through and executed by experienced counsel on both sides . . . ."). "[S]ignificant weight" should be given "to the belief of experienced counsel that settlement is in the best interest of the class, so long as the Court is satisfied that the settlement is the product of good faith, arms-length negotiations." *In re Am. Family Enters.*, 256 B.R. 377, 421 (D.N.J. 2000) (internal quotation marks omitted); *see also Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 414 (E.D. Pa. 2010); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 255 (D.N.J. 2000).

Counsel for Plaintiffs are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases involving allegedly defective products like the Refrigerators at issue here. (Declaration of Kristen Law Sagafi ("Sagafi Decl.") ¶¶ 2-3,10 and

-9-

Exs. A-C.)  In negotiating this settlement, Plaintiffs' counsel had the benefit of years of relevant experience and a familiarity with the facts of this case.  (*Id.* ¶¶ 5-7, 10.)

### 3. The Factual Record Was Well Developed Through Independent Investigation.

The complaint filed by the named Plaintiffs indicates that Class Counsel undertook a thorough investigation in developing Plaintiffs' allegations.  In addition, counsel for Plaintiffs and Defendant have had frank discussions as part of the settlement negotiation, including informal discovery related to the alleged defect underlying Plaintiffs' claims.

Plaintiffs' counsel thoroughly investigated and analyzed Plaintiffs' claims, and also had the benefit of information gathered from more than 100 customers who reported their experiences with the Light Issue in the relevant models of LG Refrigerators.  (*Id.* ¶ 7.) Moreover, as a result of the parties' settlement discussions, LGEUS shared documents and information related to the manifestation of the Light Issue in the Refrigerator models included in the settlement. As a result, Plaintiffs' counsel was well-positioned to evaluate the strengths and weaknesses of their case and the appropriate basis upon which to settle it.

The record developed in the course of reaching an agreement to settle claims of Plaintiffs and the Class, and this Court's familiarity with the case, provide sufficient information for this Court to determine that the proposed settlement is fair.

### 4. The Settlement Provides Substantial Relief For Class Members And Treats Class Members Fairly.

As further explained in the Settlement Agreement, Defendant has agreed to (1) reimburse Settlement Class members for 100% of out-of-pocket costs for parts and labor necessitated to repair the Light Issue, to the extent such costs were incurred before the deadline for mailing the Summary Notice; and (2) extend the warranty with respect to the Light Issue from 1 year to a period of 10 years from the date of the original retail purchase of the Refrigerator.   In addition,

Defendant will provide ongoing notice of this extended warranty by maintaining the settlement website through August 1, 2018. Without class litigation, Class members would not have been in a position to achieve these benefits through individual lawsuits.

### 5.    The Settlement Is Fair And Reasonable In Light Of The Alleged Claims And Defenses.

Entering the settlement conference with this Court in January 2011, Plaintiffs and Plaintiffs' counsel were confident in the strength of their case, but also pragmatic in their awareness of the risks inherent to litigation and the various defenses available to LGEUS. The reality that Class members could end up recovering only a fraction of the settlement benefits or even losing at trial was significant enough to convince Plaintiffs and Plaintiffs' counsel that the settlement reached with LGEUS outweighs the gamble of continued litigation.

Throughout the negotiation process, for example, LGEUS has steadfastly maintained that they did not owe a duty to Class members whose Refrigerators displayed the Light Issue after the expiration of the 1-year warranty, or that an actionable defect even existed regarding the Light Issue. If, for example, LGEUS were able to convince a jury that the failures associated with the Refrigerators at issue were not the result of defects that existed at the time of sale but instead resulted from technical failures that developed in the Refrigerators after a period of use, LGEUS could effectively reduce the recoverable damages or eliminate them altogether.

Furthermore, there is a substantial risk of losing inherent in any jury trial. Even if Plaintiffs did prevail, any recovery could be delayed for years by an appeal. The Settlement provides substantial monetary relief to Class members without further delay.

Taking into account Plaintiffs' chances of ultimate success on the merits, the time and expense involved in litigating the case to conclusion, and the inherent risks of litigation, the

936492.1

parties believe that the Settlement Agreement is fair and reasonable under all the facts and circumstances and all of the attendant risks of litigation.

### 6.  The Requested Class Representative Stipends Are Reasonable.

Enhancement award for class representatives like the ones requested here are appropriate. *See Chakejian v. Equifax Info. Servs.*, No. 07-2211, 2011 U.S. Dist. LEXIS 63455, at *57-58 (E.D. Pa. June 14, 2011); *see also Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 609-10 (D.N.J. 2010).  Small incentive awards, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.  *See Manual for Complex Litig*. § 21.62 n. 971 (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery").  Such awards are generally proportional to the representatives' losses or claims, and can range from several hundred dollars to many thousands of dollars.

Here, the Settlement Agreement provides that Plaintiffs may seek $1,000 stipends for Plaintiffs McLennan, Zontok, and Farrell in recognition of their service to and efforts on behalf of the proposed Settlement Class.  The named Plaintiffs greatly assisted Plaintiffs' counsel in investigating the claims, preparing the complaint, and understanding the factual background of the lawsuit.  The named Plaintiffs provided documents, were prepared to testify at trial, and were consulted throughout the case.  (Sagafi Decl. ¶ 11.)  Defendant will not oppose a petition for the payment to each Plaintiff of $1,000.

### 7.  The Requested Attorneys' Fees Are Fair And Reasonable.

Subject to the Court's approval, and as further explained in the Settlement Agreement, LGEUS has agreed to pay up to $1,000,000 in fees and costs to Class Counsel, and to pay such amounts in addition to any of the benefits to be paid and provided to the Class.  The parties negotiated this amount only after the substantive terms of the settlement were agreed upon.  Prior

to final approval, Class Counsel will file a separate motion for attorneys' fees and costs describing the reasonableness of their fee request in light of the amount of work done by counsel, the results obtained, the quality of representation, and the complexity and novelty of the issues presented. Class Counsel's motion for an award of attorneys' fees and costs and service awards for the Named Plaintiffs will be posted on the settlement website in advance of the opt-out and objection deadline so that Class members may review and comment on the application if they wish.

### C.    **Provisional Certification Of The Settlement Class Is Appropriate.**

This Court has not yet certified this case as a class action. For settlement purposes only, Plaintiffs request that the Court provisionally certify the nationwide Settlement Class defined above. At this point in the approval process, provisional certification permits notice of the proposed settlement to issue to inform Settlement Class members of the existence and terms of the proposed settlement, their right to be heard on its fairness, their right to opt out, and the date, time, and place of the formal fairness hearing. *See Manual for Complex Litig.*, at § 21.632, § 21.633.[4]

As set forth in the Settlement Agreement, the Settlement Class comprises all end user consumer residents of the United States who currently own or owned one or more of the LG-manufactured Refrigerators consisting of the LG-branded (the "LG Models") or Kenmore-branded (the "Kenmore Models") refrigerators that are identified on Exhibit A to the Settlement Agreement (collectively, the "Refrigerators"). Excluded from membership in the Class are the following: (a) LGEUS or its affiliates; (b) Sears, Roebuck and Co. or its affiliates ("Sears"); (c) retailers, wholesalers, and other middlemen who purchased a Refrigerator for commercial use or

---

[4] LGEUS denies the allegations regarding certification, but stipulates to certification for the sole purpose of effectuating this Settlement. LGEUS reserves the right to challenge certification if this Settlement fails to be considered "Final" as that term is defined in the Settlement Agreement.

resale; (d) persons who timely and validly exclude themselves from the Class; (e) state and federal governmental entities; and (f) the judge to whom this case is assigned and any member of the judge's immediate family.

"[R]egardless of whether a district court certifies a class for trial or for settlement, it must first find that the class satisfies all the requirements of Rule 23." *In re Community*, 418 F.3d at 300. For settlement purposes, LGEUS has conditionally stipulated that Plaintiffs satisfy the class certification requirements set forth in Rule 23. Additionally, for the reasons below, this Class meets all of the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).

### 1.   The Class Is So Numerous That Joinder Of All Members Is Impracticable.

Numerosity requires a finding that the class is "so numerous that joinder of all members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner &Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001); *see also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 342 n.14 (3d Cir. N.J. 2010). While "[n]o magic number exists satisfying the numerosity requirement," *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 477 (E.D. Pa. 2010) (quotation marks and citation omitted), the requirement is satisfied here. *See Id.*; *see also Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."); *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (observing that courts have certified classes with as few as 14 persons).

Here, the parties estimate that the Class includes more than 600,000 customers nationwide. Thus, the high number of potential Class members overwhelms any workable prospect of joinder. The Class therefore satisfies Rule 23(a)'s numerosity requirement.

## 2.    <u>There Are Numerous Common Issues Of Law And Fact.</u>

The commonality requirement is satisfied if the named plaintiff shares at least one question of fact or law with the complaints of the prospective class.  *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009); *see also Baby Neal For & By Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) ("Because the requirement may be satisfied by a single common issue, it is easily met . . . .").  "[C]lass members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are *subject* to the same harm will suffice."  *Kalow & Springut, LLP v. Commence Corp.*, 272 F.R.D. 397, 403 (D.N.J. 2011); *see also Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004) (the commonality requirement "is not a high bar" and is satisfied "if the named plaintiffs share at least one question of law or fact with the grievances of the prospective class") (internal quotes and citations omitted).

Class members share numerous common questions, including:  (a) whether the Refrigerators contain common design and/or manufacturing defects; (b) whether LGEUS knew and/or was reckless in not knowing of the defect in the Refrigerators; (c) whether LGEUS engaged in a pattern of fraudulent, deceptive, and misleading conduct involving the marketing and sale of the Refrigerators; (d) whether LGEUS consciously concealed or failed to disclose material facts to Plaintiffs and other members of the Class with respect to the defect in the Refrigerators; (e) whether, as a result of LGEUS's misconduct, Plaintiffs and other members of the Class suffered an ascertainable loss by purchasing defective refrigerators that are unable to perform their essential function of keeping food cool, and require additional expenditures in order to reach their expected useful life; and  (f) whether Plaintiffs and Class members are entitled to recover damages in connection with LGEUS's alleged unlawful conduct.  LGEUS steadfastly denies all of these allegations.

Because Plaintiffs have identified numerous questions of law and fact common to all members of the class, Rule 23(a)(2)'s commonality requirement is fully satisfied.

### 3.    The Class Representatives' Claims Are Typical.

Typicality is satisfied if the plaintiff's claims are not "markedly different" from those of other class members, *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985); *see also McAlarnen v. Swift Transp. Co.*, No. 09-1737, 2010 U.S. Dist. LEXIS 7877, at *12 (E.D. Pa. Jan. 29, 2010), and Plaintiffs and the Class "point to the same broad course of alleged fraudulent conduct to support a claim for relief." *In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 640 (D.N.J. 2004). "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal*, 43 F.3d at 58. "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Id.* (internal quotation marks omitted). Indeed, the Third Circuit recognizes a "low threshold" for satisfying typicality. *Newton*, 259 F.3d at 183-84; *see also McGee v. Cont'l Tire N. Am., Inc.*, No. 06-6234, 2009 U.S. Dist. LEXIS 17199, at *27 (D.N.J. Mar. 4, 2009) ("As with numerosity, the Third Circuit has 'set a low threshold for satisfying' typicality . . .").

Here, the claims of the named Plaintiffs are typical of those of the Class. Like those of the Class, their claims arise out of representations made by LGEUS about its products purchased by Plaintiffs and members of the Class. Plaintiffs have precisely the same claims as the Settlement Class, and must satisfy the same elements of each of those claims, as must other Settlement Class members. Supported by the same legal theories, Plaintiffs and all Settlement Class members share claims based on the same alleged course of conduct—LGEUS's alleged

-16-

misrepresentations concerning the ability of the Refrigerators to keep food cool and whether LGEUS knew of the Light Issue in the Refrigerators at the time of sale. Plaintiffs and all Settlement Class members have been injured in the same manner by this conduct. Plaintiffs therefore satisfy the typicality requirement.

### 4.    The Named Plaintiffs And Their Counsel Adequately Represent The Class.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "The adequacy of representation inquiry has two components intended to assure that the absentees' interests are fully pursued". *G.M. Trucks*, 55 F.3d at 800; *see also Chakejian,* 2011 U.S. Dist. LEXIS 63455, at *19-20. First, "it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees' [interests]." *G.M. Trucks*, 55 F.3d at 800. Second, "it tests the qualifications of the counsel to represent the class." *Id.* Plaintiffs satisfy both prongs of the adequacy requirement.

First, Plaintiffs' claims are co-extensive with those of the Settlement Class. Plaintiffs and each Class member have an identical interest in establishing LGEUS's liability. Plaintiffs and each Class member have been injured in the same manner. Plaintiffs assert the same legal claims and theories as those of all Class members. Plaintiffs seek the identical relief that would be sought by all members of the Class. There is no conflict between Plaintiffs' claims and those of the proposed Settlement Class; indeed, Plaintiffs are each in the best position to represent such claims since they have alleged to have actually incurred damages as a result of the Light Issue. Each named Plaintiff has assumed the responsibility of representing the Settlement Class and has stood ready to represent the class at trial if necessary. Plaintiffs are prepared to continue to diligently pursue this action in cooperation with counsel. Plaintiffs have taken seriously their obligations to the Settlement Class. Nothing more is required.

Second, Class Counsel has extensive experience and expertise in prosecuting complex class actions, including consumer and product defect actions.  (Sagafi Decl. ¶¶ 2-3,10 and Exs. A-C.)  As discussed below with respect to the requirements of Rule 23(g), Plaintiffs' counsel are active practitioners who are highly experienced in class action, product liability, and consumer fraud litigation.

In pursing this litigation, Plaintiffs and Plaintiffs' counsel have advanced and will continue to advance and fully protect the common interests of all members of the Class. Accordingly, Rule 23(a)(4) is satisfied.

### 5.     The Proposed Settlement Class Satisfies The Predominance And Superiority Requirements Of Rule 23(b)(3).

To certify a class under Rule 23(b)(3), the Court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The existence of individual questions of fact does not *per se* preclude class certification.  *Eisenberg*, 766 F.2d at 787.  Rather, the predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249 (1997); *see also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009).

The proposed Settlement Class is well-suited for certification under Rule 23(b)(3) because questions common to the Settlement Class members predominate over questions affecting only individual Settlement Class members, and the class action device provides the best method for the fair and efficient  resolution of the Settlement Class members' claims against LGEUS.  When addressing the propriety of Settlement Class certification, courts take into

account the fact that a trial will be unnecessary and that manageability, therefore, is not an issue. *Amchem*, 521 U.S. at 620.

### a.       Common Questions Predominate.

A class action is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members". Fed. R. Civ. P. 23(b)(3). "Common issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members." *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003); *see also In re Community Bank*, 418 F.3d at 309 (predominance requirement satisfied where "[a]ll plaintiffs' claims arise from the same alleged fraudulent scheme"; "[t]he presence of potential state or federal claims that were not asserted by the named plaintiffs does not defeat a finding of predominance"). The Third Circuit has noted that the predominance requirement is "readily met" in certain cases alleging consumer fraud. *In re Prudential*, 148 F.3d at 314 (quoting *Amchem*, 521 U.S. at 625).

As discussed above, the same common questions relevant to the Rule 23(a)(2) analysis predominate, including the central questions of whether LGEUS  misrepresented the cooling ability of the Refrigerators and whether it knowingly concealed defects that existed in the Refrigerators' interior lights at the time of sale.  The predominance requirement is satisfied.

### b.       Class Treatment Is Superior To Alternative Methods Of Adjudication.

The Court should certify the Settlement Class if it finds that a "class action is superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Class certification is superior where individual claims are small or modest.  *In re Prudential*, 148 F.3d at 316; *see also Bredbenner,* 2011 U.S. Dist. LEXIS 38663, at *26-27.

Class treatment here will facilitate the favorable resolution of all Settlement Class members' claims.  Given the large numbers of Settlement Class members and the multitude of common issues present, the class device is also the most efficient and fair means of adjudicating these claims.  Class treatment in the settlement context is superior to multiple individual suits or piecemeal litigation because it greatly conserves judicial resources and promotes consistency and efficiency of adjudication.  Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of many thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication.  *See* Fed. R. Civ. P. 23(b)(3).

In addition, each Class member's claims, individually, are of relatively low value.  As a practical matter, absent the use of the class action device, it would be too costly and inefficient for any individual plaintiff to finance a lawsuit asserting such claims through trial and appeal.

For these reasons, the superiority requirement is satisfied.

### D.    **The Proposed Notice To Class Members Is Adequate.**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)."  *Manual for Complex Litig.*, *supra*, at § 21.312.  Many of the same considerations govern both certification and settlement notices.  In order to protect the rights of absent class members, the Court must provide the best notice practicable to class members.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12, 105 S. Ct. 2965 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-175, 94 S. Ct. 2140 (1974).  "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts.  Those who cannot be readily

identified must be given 'the best notice practicable under the circumstances.'" *Manual for Complex Litig., supra*, at § 21.311.

To satisfy due process concerns, "notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mehling*, 246 F.R.D. at 477 (internal quotation marks omitted). "To meet this standard, notice must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the fairness hearing and that objectors may be heard." *Id.* (internal quotation marks omitted); *see also In re Cendant*, 109 F. Supp. 2d at 254; *In re Prudential*, 962 F. Supp. at 527.

The proposed forms of notice, attached as Exhibits B-D to the Settlement Agreement, satisfy all of the criteria above. The Parties have prepared, three notice forms: (1) a long-form notice, attached as Exhibit B to the Settlement Agreement, which will be transmitted to any one who requests it over the Settlement website or toll-free number; (2) summary notice, attached as Exhibit C to the Settlement Agreement, which will be direct mailed to all potential Class Members for whom a mailing address is known; and (3) publication notice, attached as Exhibit D to the Settlement Agreement, which will be published in *Parade* magazine. The language of the proposed notices and accompanying claim form is plain and easily understood, providing neutral and objective information about the nature of the settlement.

The notices provide all pertinent information and fully inform the Class members of this litigation, the Settlement, and what actions they may take. The summary notice identifies the refrigerators that are subject to the Settlement Agreement, explains the benefits of the Settlement, how to obtain a reimbursement, the potential Class members' other rights (*i.e.* the

936492.1

right to opt-out, right to object, the release of claims against Sears and LGEUS, and their right to

hire an attorney) and how to obtain additional information and a claim form. (*See*, Settlement

Agreement Ex. C.)  The long-form notice provides additional detail and includes the definition of

the Settlement Class, a statement of each Settlement Class member's rights (including the right

to opt-out of the Settlement Class or object to the settlement), detailed explanations of how to

submit a claim and share in the settlement funds, a statement of the consequences of remaining

in the Settlement Class, an explanation of how Settlement Class members can exclude

themselves from the Settlement Class or object to the settlement, the time and place of the

fairness hearing (to be decided by the Court), and methods for contacting Plaintiffs' counsel and

obtaining more information.  (*See* Settlement Agreement Ex. B.)

The notices are clear and straightforward, providing putative Class members with enough

information to evaluate the settlement, and to object to the settlement if desired.  The summary

notice will be sent directly to every potential Class member for whom a mailing address is

known.  It is estimated that approximately 50% of the potential Class will receive direct notice.[5]

In addition, the publication notice will be published in *Parade* magazine, which has a national

circulation exceeding 30 million.  All notices and the claim form, as well as the full settlement

agreement, will be posted on the Internet on a settlement-specific website. (*See* Settlement

Agreement Ex. D.)  This notice is adequate under Rule 23(c)(2).  *See In re Prudential*, 962 F.

Supp. at 527 (D.N.J. 1997) (actual notice by mail and published notice was "ideal"); *see also In

re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 482 (E.D. Pa. 2010).

**E.**     **Scheduling Final Approval Hearings Is Appropriate.**

The last step in the settlement approval process is a final fairness hearing at which the

Court may hear all evidence and argument necessary to make its settlement evaluation.

---

[5] *See*, *supra*, footnote 2.

Proponents of the settlement may explain the terms and conditions of the settlement, and offer argument in support of final approval.  In addition, Settlement Class members, or their counsel, may be heard in support of or in opposition to the Settlement Agreement.  The Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a final order and judgment under Rule 23(e).  Plaintiffs request that the Court set a date for a Final Approval hearing 100 days after the entry of an Order Granting Preliminary Approval or at the Court's earliest convenience thereafter.

## II.    COUNSEL QUALIFY TO ACT AS CLASS COUNSEL

Rule 23(g) requires a court to appoint class counsel when it certifies a class.  Class counsel must "fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(4).  Factors to be considered include "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class".  Fed. R. Civ. P. 23(g)(1)(A); *see also Mann v. TD Bank, N.A.*, No. 09-1062, 2010 U.S. Dist. LEXIS 112085, at *51-52 (D.N.J. Oct. 20, 2010); *Waudby v. Verizon Wireless Servs., LLC*, 248 F.R.D. 173, 175-76 (D.N.J. 2008).

Plaintiffs' counsel conducted sufficient preliminary investigation to identify a problem in Defendant's Refrigerators beyond those only of their clients. Throughout the early stages of litigation and the settlement process, Plaintiffs' counsel secured additional information from LGEUS customers and LGEUS itself, sufficient to determine the scope of the alleged defect.  As a result, they have obtained relief for customers who owned 13 models of LG-branded Refrigerators, but also 10 models of Kenmore-branded Refrigerators (manufactured by LG), all of which share common characteristics with regard to the Light Issue.

Proposed Class Counsel have extensive experience in prosecuting claims on behalf of consumer classes.  Indeed, as their firm resumes attest, Lieff Cabraser Heimann & Bernstein, LLP; Kiesel Boucher Larson, LLP; and Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. have experience in a variety of complex litigation matters, including leadership position in national complex and class action litigations.  (Sagafi Decl., Exs. A-C.)  This experience has provided proposed Class Counsel with extensive knowledge of the applicable law.

Finally, with the resources available to proposed Class Counsel, there can be no doubt that they have resources to commit to this litigation, and have fully met each challenge encountered in the course of this case.

For the purposes of Rule 23(g), the Court should appoint Kristen Law Sagafi of Lieff Cabraser Heimann & Bernstein and James Cecchi of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. to act as Class Counsel for the purposes of this Settlement Class.

## **CONCLUSION**

The proposed class action settlement is fair, reasonable, and adequate.  For the foregoing reasons, the parties request that this Court approve the Settlement Agreement on a preliminary basis so that Notice may be sent and set a hearing for final approval of the settlement.

Dated:  September 9, 2011                            Respectfully submitted,

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP

/s/ Kristen Law Sagafi
By: Kristen Law Sagafi
275 Battery Street, 30th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

Jonathan D. Selbin
Jason Lichtman

936492.1

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500

James Cecchi
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

Paul Kiesel
KIESEL BOUCHER LARSON, LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
(310) 854-4444

*Counsel for Plaintiffs*

936492.1