# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CONNIE MCLENNAN, VIRGINIA ZONTOK, CARYL FARRELL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v<br><br>LG ELECTRONICS USA, INC.<br><br>Defendant. | Civil Action No. 10 CV 3604 (WJM)(MF) |

---------------------------------------------------------------------------------------------------------------

## DECLARATION OF KRISTEN LAW SAGAFI IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

---------------------------------------------------------------------------------------------------------------

I, KRISTEN LAW SAGAFI, declare as follows:

1.    I am a partner with the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), counsel of record for Plaintiffs Connie McLennan, Virginia Zontok, and Caryl Farrell in this matter. I am a member in good standing of the bar of the State of California and admitted pro hac vice in this Court. I respectfully submit this declaration in support of Plaintiffs' unopposed motion for preliminary settlement approval. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2.    LCHB is a national law firm with offices in San Francisco, New York, and Nashville. LCHB's practice focuses on complex and class action litigation involving product liability, consumer, employment, financial, securities, environmental, and personal injury matters. Attached hereto as Exhibit A is a true and correct copy of LCHB's current firm resume, showing some of the firm's experience in complex and class action litigation. This resume is not

936937.1

a complete listing of all cases in which LCHB has been class counsel or otherwise counsel of record.

    3.  LCHB has extensive experience in the litigation, trial and settlement of class actions in complex consumer protection cases.  Cases in which LCHB has served as class counsel in such actions include:

      a.  *Carideo v. Dell, Inc.*, No. C06-1772 JLR (W.D. Wash) (nationwide settlement class involving defective computers; final approval granted in 2010)

      b.  *Ross v. Trex Company, Inc.*, No. 09-cv-00670 JF (N.D. Cal.) (nationwide partial settlement class involving defective composite decking; final approval granted in 2010);

      c.  *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC (N.D. Cal.) (nationwide settlement class involving false advertising claims related to remote controls; final approval granted in 2010);

      d.  *Create-a-Card v. Intuit*, No. CV-07-6452 WHA (N.D. Cal.) (nationwide settlement class involving faulty computer code approved in September 2009, in which Judge Alsup praised LCHB for the "excellent job in the case as class counsel," and stated that "the class has been well represented having you and your firm in the case.");

      e.  *Pelletz v. Weyerhaeuser Company and Advanced Environmental Technologies, Inc*., No. C08-0334 JCC (W.D. Wash.) (nationwide settlement class involving defective composite decking; final approval granted in 2009);

      f.  *Grays Harbor Adventist Christian School v. Carrier Corporation*, No. CV05-5437 (W.D. Wash.) (Washington litigation class involving defective furnaces certified; nationwide settlement class; final approval granted in 2008);

      g.  *Richina v. Maytag Corp.*, Case No. CV025202 (San Joaquin County, California) (California settlement class involving defective oven panels; final approval granted in 2007);

        h.       *Weekend Warrior Trailer Cases*, Judicial Coordination Proceeding No. 4455 (Orange County, CA) (nationwide settlement class involving defective recreational trailers; final approval granted in 2008);

        i.       *Lundell v. Dell, Inc.*, No. C05-3970 JW/RS (N.D. Cal.) (nationwide settlement class involving defective computers; final approval granted in 2006);

        j.       *Kan v. Toshiba America Information Systems, Inc.*, No. BC327273 (Los Angeles County, California) (nationwide settlement class involving defective computers; final approval granted in 2006);

        k.       *Behr Wood Sealant Cases*, JCCP Nos. 4132 & 4138 (San Joaquin County, California) (nationwide settlement class involving defective wood sealant; final approval granted in 2003);

        l.       *Richison v. American Cemwood Corp.*, Civil Action No. 005532 (San Joaquin County, California) (nationwide litigation class involving defective shingles certified and upheld on writ review; nationwide settlement classes final approval granted in 2000 and 2003);

        m.       *Williams v. Weyerhaeuser Co.*, Civil Action No. 995787 (San Francisco County, California) (California litigation class involving defective siding certified in 1999; nationwide settlement class final approval granted in 2000);

        n.       *Delay v. Hurd Millwork Co.*, No. 972-073710 (Spokane County, Washington) (multi-state settlement class involving defective windows; final approval granted in 1998);

        o.       *Naef v. Masonite*, No. CV-94-4033 (Mobile County, Alabama) (nationwide litigation class certified in 1995, nationwide settlement class involving defective siding final approval granted in 1998);

        p.       *Bettner v. Georgia-Pacific*, No. CV-95-3330-RGK (Mobile County, Alabama) (nationwide settlement class involving defective siding; final approval granted in 1998);

q.       *ABS Pipe Cases II*, JCCP No. 3126 (Contra Costa County, California) (nationwide settlement classes involving defective pipes; final approval granted in 1998 through 2001);

r.       *In re: Louisiana-Pacific Co. Inner-Seal Siding Litigation*, No. CV-95-879 JO-LEAD (U.S.D.C. Oregon) (nationwide settlement class involving defective siding; final approval granted in 1996); and

s.       *Cox v. Shell*, Civil No. 18,844 (Obion County, Tennessee) (nationwide settlement class involving defective polybutylene pipes; final approval granted in 1995).

4.       All of the defective products cases described in paragraph 3 above have resulted in court-approved class action settlements, with a combined total recovery for class members exceeding $2 billion.  LCHB's experience in these cases has provided LCHB's attorneys, including myself, with expertise in the legal, factual, management, notice, and administration issues that characterize product defect/property damage class actions.

5.       I am the partner at LCHB with primary responsibility for the instant litigation.

6.       LCHB has been involved in all phases of this case since its inception, from the initial investigation of user complaints through the present.

7.       LCHB has performed substantial work on behalf of Plaintiff and the Class throughout the duration of this case, including (but not limited to) the following:

a.       LCHB had primary responsibility for investigating Plaintiffs' claims and drafting Plaintiffs' Complaint.

b.       LCHB had primary responsibility for drafting Plaintiffs' Opposition to LG's Motion to Dismiss.

c.       LCHB had primary responsibility for devising all litigation and settlement strategies.

d.      LCHB played a key role at the settlement conference with Judge Martini.

e.      LCHB had primary responsibility for coordinating expert analysis undertaken throughout the litigation.

f.      LCHB had primary responsibility for all settlement negotiations and drafting settlement-related documents.

g.      Throughout the litigation, LCHB attorneys and paralegals have communicated with Class members regarding the status of the litigation and their rights under the Settlement.  Throughout the litigation, LCHB has been contacted by more than 100 consumers whose complaints regarding their LG Refrigerators mirrored those of the Plaintiffs. LCHB has answered every Class member inquiry it has received.  LCHB attorneys and paralegals continue to respond to Class member inquiries, and on behalf of Class members, LCHB attorneys will continue to monitor the claims administration process and communicate with Class members as needed.

8.      The proposed settlement is the product of hard fought and arms-length settlement negotiations.  Following the settlement conference held before Judge Martini on February 17, 2011, the parties agreed to meet again to continue negotiating Plaintiffs' claims. Along with my law partner, Jonathan D. Selbin, I personally played a key role in the further settlement meeting, which was held in New York, NY on April 20, 2011. The parties ultimately reached an agreement in principle on all substantive terms, which were recorded in a Memorandum of Understanding ("MOU") that was fully executed on May 20, 2011. The MOU was then developed into a nationwide Settlement Agreement and Release ("Settlement Agreement"), which was completed and executed on September 8, 2011.

9.      The parties negotiated the issue of attorneys fees to Plaintiffs' counsel only after the substantive terms of the settlement were agreed upon.

10.      Proposed Class Counsel, Lieff Cabraser Heimann & Bernstein, LLP; Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.; and Kiesel Boucher Larson, LLP, are

particularly experienced in the litigation, certification, trial, and settlement of nationwide class

action cases involving allegedly defective products like those at issue here.  In negotiating this

settlement, counsel had the benefit of years of relevant experience and a familiarity with the facts

of this case.  Copies of the firm resumes of Carella, Byrne, Cecchi, Olstein, Brody & Agnello,

P.C. and Kiesel Boucher Larson, LLP are attached hereto as Exhibits B and C.

    11. The named Plaintiffs provided documents, were prepared to testify at trial,

and were consulted throughout the case.

    12. As counsel for the proposed nationwide class, I am (and LCHB is) proud

of the Settlement Agreement the parties present for preliminary approval with this motion.  The

Settlement provides substantial and certain relief for the Class and avoids protracted and costly

litigation.  The relief is fair, adequate and reasonable

    13. I, on behalf of Plaintiffs, LCHB and Class Counsel, respectfully request

that the Court grant preliminary approval of this substantial and significant settlement.


    I declare under penalty of perjury under the laws of the State of California and the

United States that the foregoing is true and correct.

    Executed this 9th day of September, 2011, at Oakland, CA.

Kristen Law Sagafi

# Exhibit A

# Lieff
# Cabraser
# Heimann&
# Bernstein

Attorneys at Law

275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

One Nashville Place
150 Fourth Avenue North, Suite 1650
Nashville, TN  37219-2415
Telephone:  615.313.9000
Facsimile:  615.313.9965

E-mail:  mail@lchb.com
Website:  www.lieffcabraser.com

***FIRM PROFILE:***

Lieff Cabraser Heimann & Bernstein, LLP, is a sixty-plus attorney, AV-rated law firm founded in 1972 with offices in San Francisco, New York and Nashville.  We have a diversified practice, successfully representing plaintiffs in the fields of personal injury and mass torts, securities and financial fraud, employment discrimination and unlawful employment practices, product defect, antitrust, consumer protection, environmental and toxic exposure, False Claims Act, and human rights.  Our clients include individuals, classes or groups of persons, businesses, and public and private entities.

Lieff Cabraser has served as court-appointed Plaintiffs' Lead or Class Counsel in state and federal coordinated, multi-district, and complex litigation throughout the United States.  With co-counsel, we have represented clients across the globe in cases filed in American courts.

Lieff Cabraser is among the largest firms in the United States that only represent plaintiffs.  Described by *The American Lawyer* as "one of the nation's premier plaintiffs' firms," Lieff Cabraser enjoys a national reputation for professional integrity and the successful prosecution of our clients' claims.  We possess sophisticated legal skills and the financial resources necessary for the handling of large, complex cases, and for litigating against some of the nation's largest corporations.  We take great pride in the leadership roles our firm plays in many of this country's major cases, including those resulting in landmark decisions and precedent-setting rulings.

913000.1

Lieff Cabraser has litigated and resolved thousands of individual lawsuits and hundreds of class and group actions, including some of the most important civil cases in the United States over the past three decades.  We have assisted our clients recover over $42 billion in verdicts and settlements for clients, plus an additional $206 billion in the multi-state tobacco litigation. Fifteen cases were resolved for over $1 billion; another 30 cases resulted in verdicts or settlements in excess of $100 million.

In the 2010 edition of its annual list of the top plaintiffs' law firms, *The National Law Journal* again selected Lieff Cabraser.  In compiling the list, *The National Law Journal* examines recent verdicts and settlements and looked for firms "representing the best qualities of the plaintiffs' bar and that demonstrated unusual dedication and creativity."  Lieff Cabraser is one of only two plaintiffs' law firms in the United States to receive this honor for the last eight years.

In September 2010, *U.S. News* and *Best Lawyers* recognized Lieff Cabraser as one of the best law firms in the nation.  The publications undertook a comprehensive review of the U.S. legal profession, examining 8,782 law firms in 81 practice areas. Lieff Cabraser received a national Tier 1 ranking in the practice area of Mass Torts Litigation/Class Actions - Plaintiffs. Lieff Cabraser was one of only 22 plaintiffs' law firms nationwide to receive this ranking.

*CASE PROFILES:*

I.    <u>**Personal Injury and Products Liability Litigation**</u>

    A.    **Current Cases**

        1.    ***In Re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation***, MDL No. 2151 (C.D. Cal.).  Elizabeth J. Cabraser serves as Co-Lead Counsel for the plaintiffs in the Toyota injury cases in federal court and our firm represents individuals and families of loved ones nationwide who died in Toyota sudden acceleration accidents. Plaintiffs charge that Toyota knew of numerous complaints that its vehicles suddenly accelerated and could not be stopped by proper application of the brake pedal. Plaintiffs further charge that Toyota breached its duty to manufacture and sell safe automobiles by failing to incorporate within its vehicles a brake override system and other readily available safeguards that could have prevented sudden unintended acceleration.  On December 9, 2010, U.S. District Court Judge James V. Selna denied Toyota's motion to dismiss the lawsuits.  Discovery remains ongoing and cases are being selected and prepared for trial.

        2.    ***DePuy ASR Artificial Hip Implants Litigation***.  Lieff Cabraser represents patients nationwide personal injury claims for patients nationwide that received the ASR XL Acetabular and ASR Hip

Resurfacing systems manufactured by DePuy Orthopedics, a unit of Johnson & Johnson.  On August 26, 2010, DePuy Orthopedics announced the recall of its all-metal ASR hip implants, which were implanted in approximately 40,000 patients in the U.S. from August 2005 through August 2010.  The complaints allege that DePuy Orthopedics was aware its ASR hip implants were failing at a high rate, yet continued to manufacture and sell the product to unsuspecting physicians and patients.  In January 2011, in *In re DePuy Orthopaedics, Inc. ASR Hip Implant Products*, MDL No. 2197, the Court overseeing all DePuy recall lawsuits in federal court appointed Lieff Cabraser attorney Wendy R. Fleishman to the Plaintiffs' Steering Committee for the organization and coordination of the litigation. In July 2011, in the coordinated proceedings in California state court, the Court appointed Lieff Cabraser attorney Robert J. Nelson to serve on the Plaintiffs' Steering Committee.

3.    ***In re Zimmer Durom Cup Product Liability Litigation***, MDL No. 2158. Lieff Cabraser serves as Co-Liaison Counsel for patients nationwide injured by the defective Durom Cup manufactured by Zimmer Holdings. First sold in the U.S. in 2006, Zimmer marketed its 'metal-on-metal' Durom Cup implant as providing a greater range of motion and less wear than traditional hip replacement components.  In July 2008, Zimmer announced the suspension of Durom sales.  The complaints estimate that the failure rate of the Durom Cup so far is between 20% and 30%. The true failure rate of the Zimmer Durom Cup may climb much higher in the coming years as doctors and their patients come to realize that their implants are failing.

4.    ***Yaz, Yasmin, Ocella Litigation***.  Lieff Cabraser represents women prescribed Yasmin and Yaz oral contraceptives and their generic equivalent Ocella who suffered blood clots, deep vein thrombosis, strokes, and heart attacks, as well as the families of loved ones who died suddenly while taking these medications.  The complaints allege that Bayer, the manufacturer of Yaz and Yasmin, failed to adequately warn patients and physicians of the increased risk of serious adverse effects from Yasmin and Yaz.  The complaints also charge that these oral contraceptives posed a greater risk of serious side effects than other widely available birth control drugs.

5.    ***Luisi v. Medtronic***, No. 07 CV 4250 (D. Minn.).  Lieff Cabraser currently represents over seven hundred heart patients nationwide who were implanted with recalled Sprint Fidelis defibrillator leads manufactured by Medtronic Inc.  Plaintiffs charge that Medtronic has misrepresented the safety of the Sprint Fidelis leads and a defect in the device triggered their receiving massive, unnecessary electrical shocks.

6. ***Fen-Phen ("Diet Drugs") Litigation.*** Since the recall was announced in 1997, Lieff Cabraser has represented individuals who suffered injuries from the "Fen-Phen" diet drugs fenfluramine (sold as Pondimin) and/or dexfenfluramine (sold as Redux). We served as counsel for the plaintiff that filed the first nationwide class action lawsuit against the diet drug manufacturers alleging that they had failed to adequately warn physicians and consumers of the risks associated with the drugs. In *In re Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Management Committee which organized and directed the Fen-Phen diet drugs litigation filed across the nation in federal courts. In August 2000, the Court approved a $4.75 billion settlement offering both medical monitoring relief for persons exposed to the drug and compensation for persons with qualifying damage. We continue to represent persons that suffered valvular heart disease due to Fen-Phen and received compensation under the Diet Drugs Settlement who now require heart value surgery. These persons may be eligible to submit a new claim and receive additional compensation under the settlement.

7. ***In Re Yamaha Motor Corp. Rhino ATV Products Liability Litigation,*** MDL No. 2016 (W.D. Ky.) Lieff Cabraser serves as Plaintiffs' Lead Counsel in the litigation in federal court and Co-Lead Counsel in coordinated California state court litigation arising out of serious injuries and deaths in rollover accidents involving the Yamaha Rhino. The complaints charge that the Yamaha Rhino contains design and engineering flaws and should have been equipped with doors from inception. Our client's complaints allege also that the Yamaha Rhino is unstable due to a narrow track width and high center of gravity.

8. ***Advanced Medical Optics Complete MoisturePlus Litigation***. Lieff Cabraser represents consumers nationwide in personal injury lawsuits filed against Advanced Medical Optics arising out of the May 2007 recall of AMO's Complete MoisturePlus Multi Purpose Contact Lens Solution. The product was recalled due to reports of a link between a rare, but serious eye infection, *Acanthamoeba keratitis*, caused by a parasite and use of AMO's contact lens solution. Plaintiffs charge that though AMO aggressively promoted Complete MoisturePlus Multi Purpose as "effective against the introduction of common ocular microorganisms," the lens solution was ineffective and vastly inferior to other multipurpose solutions on the market. Several plaintiffs were forced to undergo painful corneal transplant surgery to save their vision and some have lost all or part of their vision permanently. The majority of Lieff Cabraser's clients have settled their cases with AMO on favorable, confidential terms.

9. ***Injury and Death Lawsuits Involving Defective Tires, Transmissions, Cars and/or Vehicle Parts (Seat Belts, Roof Crush, Defective seats, and Other Defects).*** Lieff Cabraser has an active practice prosecuting claims for clients injured, or the families of loved ones who have died, by wrongful driver conduct and by unsafe and defective vehicles, tires, restraint systems, seats, and other automotive equipment. We represent clients in actions involving fatalities and serious injuries from tire and transmission failures as well as rollover accidents (and defective roofs, belts, seat back and other parts) as well as defective transmissions and/or shifter gates that cause vehicles to self shift from park or false park into reverse.

## B. Successes

1. ***Multi-State Tobacco Litigation***. Lieff Cabraser represented the Attorneys' General of Massachusetts, Louisiana and Illinois, several additional states, and 21 cities and counties in California, in litigation against Philip Morris, R.J. Reynolds and other cigarette manufacturers. The suits were part of the landmark $206 billion settlement announced in November 1998 between the tobacco industry and the states' attorneys general. The states, cities and counties sought both to recover the public costs of treating smoking-related diseases and require the tobacco industry to undertake extensive modifications of its marketing and promotion activities in order to reduce teenage smoking. In California alone, Lieff Cabraser's clients were awarded an estimated $12.5 billion to be paid over the next 25 years.

2. ***In re Vioxx Products Liability Litigation***, MDL No. 1657 (E.D. La.). Lieff Cabraser represented patients that suffered heart attacks or strokes, and the families of loved ones who died, after having being prescribed the arthritis and pain medication Vioxx. In individual personal injury lawsuits against Merck, the manufacturer of Vioxx, our clients allege that Merck falsely promoted the safety of Vioxx and failed to disclose the full range of the drug's dangerous side effects. In April 2005, in the federal multidistrict litigation, the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Steering Committee, which has the responsibility of conducting all pretrial discovery of Vioxx cases in Federal court and pursuing all settlement options with Merck. In August 2006, Lieff Cabraser was co-counsel in *Barnett v. Merck*, tried in the federal Court in New Orleans. Lieff Cabraser attorneys Don Arbitblit and Jennifer Gross participated in the trial, working closely with attorneys Mark Robinson and Andy Birchfield. The jury reached a verdict in favor of Mr. Barnett, finding that Vioxx caused his heart attack, and that Merck's conduct justified an award of punitive damages. In November 2007, Merck announced it had entered into an agreement with the executive committee of the Plaintiffs' Steering Committee as well as representatives of plaintiffs' counsel in

state coordinated proceedings.  Merck paid $4.85 billion into a settlement fund for qualifying claims.

3.  ***In re Silicone Gel Breast Implants Products Liability Litigation***, MDL No. 926 (N.D. Ala.).  Lieff Cabraser served on the Plaintiffs' Steering Committee and was one of five members of the negotiating committee which achieved a $4.25 billion global settlement with certain defendants of the action.  This was renegotiated in 1995, and is referred to as the Revised Settlement Program ("RSP").  Over 100,000 recipients have received initial payments, reimbursement for the explanation expenses and/or long term benefits.

4.  ***Sulzer Hip and Knee Prosthesis Liability Litigation.***  In December 2000, Sulzer Orthopedics, Inc., announced the recall of approximately 30,000 units of its Inter-Op Acetabular Shell Hip Implant, followed in May 2001 with a notification of failures of its Natural Knee II Tibial Baseplate Knee Implant.  In coordinated litigation in California state court, *In re Hip Replacement Cases*, JCCP 4165, Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel and Co-Lead Counsel.  In the federal litigation, *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation*, MDL No. 1410, Lieff Cabraser played a significant role in negotiating a revised global settlement of the litigation valued at more than $1 billion.  The revised settlement, approved by the Court in May 2002, provided patients with defective implants almost twice the cash payment as under an initial settlement.  On behalf of our clients, Lieff Cabraser objected to the initial settlement.

5.  ***In re Bextra/Celebrex Marketing Sales Practices and Products Liability Litigation***, MDL No. 1699 (N.D. Cal.).  Lieff Cabraser served as Plaintiffs' Liaison Counsel and Elizabeth J. Cabraser chaired the Plaintiffs' Steering Committee (PSC) charged with overseeing all personal injury and consumer litigation in Federal courts nationwide arising out of the sale and marketing of the COX-2 inhibitors Bextra and Celebrex, manufactured by Pfizer, Inc and its predecessor companies Pharmacia Corporation and G.D. Searle, Inc.

Under the global resolution of the multidistrict tort and consumer litigation announced in October 2008, Pfizer paid over $800 million to claimants, including over $750 million to resolve death and injury claims.

In a report adopted by the Court on common benefit work performed by the PSC, the Special Master stated:

> [L]eading counsel form both sides, and the attorneys from the PSC who actively participated in this litigation, demonstrated the utmost skill and professionalism in

dealing with numerous complex legal and factual issues. The briefing presented to the Special Master, and also to the Court, and the development of evidence by both sides was exemplary.  The Special Master particularly wishes to recognize that leading counsel for both sides worked extremely hard to minimize disputes, and when they arose, to make sure that they were raised with a minimum of rancor and a maximum of candor before the Special Master and Court.

6.    ***In re Guidant Implantable Defibrillators Products Liability Litigation***, MDL No. 1708.  Lieff Cabraser serves on the Plaintiffs' Lead Counsel Committee in litigation in federal court arising out of the recall of Guidant cardiac defibrillators implanted in patients because of potential malfunctions in the devices.  At the time of the recall, Guidant admitted it was aware of 43 reports of device failures, and two patient deaths. Guidant subsequently acknowledged that the actual rate of failure may be higher than the reported rate and that the number of associated deaths may be underreported, since implantable cardio-defibrillators are not routinely evaluated after death.  In January 2008, the parties reached a global settlement of the action.  Guidant's settlements of defibrillator-related claims will total $240 million.

7.    ***In re Copley Pharmaceutical, Inc., "Albuterol" Products Liability Litigation***, MDL No. 1013 (D. Wyo.).  Lieff Cabraser served on the Plaintiffs' Steering Committee in a class action lawsuit against Copley Pharmaceutical, which manufactured Albuterol, a bronchodilator prescription pharmaceutical.  Albuterol was the subject of a nationwide recall in January 1994 after a microorganism was found to have contaminated the solution, allegedly causing numerous injuries including bronchial infections, pneumonia, respiratory distress and, in some cases, death.  In October 1994, the district court certified a nationwide class on liability issues.  *In re Copley Pharmaceutical*, 161 F.R.D. 456 (D. Wyo. 1995).  In November 1995, the district court approved a $150 million settlement of the litigation.

8.    ***Mraz v. DaimlerChrysler***, No. BC 332487 (Cal. Supr. Ct.).  In March 2007, the jury returned a $54.4 million verdict, including $50 million in punitive damages, against DaimlerChrysler for intentionally failing to cure a known defect in millions of its vehicles that led to the death of Richard Mraz, a young father.  Mr. Mraz suffered fatal head injuries when the 1992 Dodge Dakota pickup truck he had been driving at his work site ran him over after he exited the vehicle believing it was in park.  The jury found that a defect in the Dodge Dakota's automatic transmission, called a park-to-reverse defect, played a substantial factor in Mr. Mraz's death and that DaimlerChrysler was negligent in the design of the vehicle for

failing to warn of the defect and then for failing to adequately recall or retrofit the vehicle.

For their outstanding service to their clients in *Mraz* and advancing the rights of all persons injured by defective products, Lieff Cabraser partners Robert J. Nelson, the lead trial counsel, and Scott P. Nealey received the 2008 California Lawyer of the Year (CLAY) Award in the field of personal injury law, and were also selected as finalists for attorney of the year by the Consumer Attorneys of California and the San Francisco Trial Lawyers Association.

In March 2008, a Louisiana-state jury found DaimlerChrysler liable for the death of infant Collin Guillot and injuries to his parents Juli and August Guillot and their then 3 year old daughter Madison. The jury returned a unanimous verdict of $5,080,000 in compensatory damages. The jury found that a defect in the Jeep Grand Cherokee's transmission, called a park-to-reverse defect, played a substantial factor in Collin Guillot's death and the severe injuries suffered by Mr. and Mrs. Guillot and their daughter. Lieff Cabraser served as co-counsel in the trial.

9. ***In re Telectronics Pacing Systems Inc., Accufix Atrial "J" Leads Products Liability Litigation***, MDL No. 1057 (S.D. Ohio). Lieff Cabraser served on the court-appointed Plaintiffs' Steering Committee in a nationwide products liability action alleging that defendants placed into the stream of commerce defective pacemaker leads. In April 1997, the district court re-certified a nationwide class of "J" Lead implantees with subclasses for the claims of medical monitoring, negligence and strict product liability. A summary jury trial utilizing jury instructions and interrogatories designed by Lieff Cabraser occurred in February 1998. A partial settlement was approved thereafter by the district court, but reversed by the Court of Appeals. In March 2001, the district court approved a renewed settlement that included a $58 million fund to satisfy all past, present and future claims by patients for their medical care, injuries, or damages arising from the lead.

10. ***Blood Factor VIII And Factor IX Litigation.*** Working with counsel in Asia, Europe, Central and South America and the Middle East, Lieff Cabraser represented over 1,500 hemophiliacs worldwide, or their survivors and estates, who contracted HIV and/or Hepatitis C (HCV), and Americans with hemophilia who contracted HCV, from contaminated and defective blood factor products produced by American pharmaceutical companies. In 2004, Lieff Cabraser was appointed Plaintiffs' Lead Counsel of the "second generation" Blood Factor MDL litigation presided over by Judge Grady in the Northern District of Illinois. The case reached a global settlement in 2009.

11. ***In re Baycol Products Litigation***, MDL No. 1431 (D. Minn.).  Baycol was one of a group of drugs called statins, intended to reduce cholesterol.  In August 2001, Bayer A.G. and Bayer Corporation, the manufacturers of Baycol, withdrew the drug from the worldwide market based upon reports that Baycol was associated with serious side effects and linked to the deaths of over 100 patients worldwide.  In the federal multi-district litigation, Lieff Cabraser serves as a member of the Plaintiffs' Steering Committee (PSC) and the Executive Committee of the PSC.  In addition, Lieff Cabraser represented approximately 200 Baycol patients who have suffered injuries or family members of patients who died allegedly as a result of ingesting Baycol.  In these cases, our clients reached confidential favorable settlements with Bayer.

12. ***In re ReNu With MoistureLoc Contact Lens Solution Products Liability Litigation***, MDL No. 1785 (D. S.C.).  Lieff Cabraser served on the Plaintiffs' Executive Committee in federal court litigation arising out of Bausch & Lomb's 2006 recall of its ReNu with MoistureLoc contact lens solution.  Consumers who developed *Fusarium keratitis*, a rare and dangerous fungal eye infection, as well as other serious eye infections, alleged the lens solution was defective.  Some consumers were forced to undergo painful corneal transplant surgery to save their vision; others lost all or part of their vision permanently.  The litigation was resolved under favorable, confidential settlements with Bausch & Lomb.

## II.    Securities and Financial Fraud

### A.    Current Cases

1. ***Arkansas Teacher Retirement System v. State Street Corp.***, Case No. 11cv10230 (MLW) ("State Street II").  Lieff Cabraser is co-counsel for a proposed nationwide class of those institutional clients of State Street that currently are not, and are not ultimately revealed to be, the subject of unsealed whistleblower actions in state courts across the country.  The proposed nationwide class action, which alleges the same foreign currency exchange ("FX") manipulation that is at issue in the California whistleblower action is pending in the United States District Court for the District of Massachusetts.  Motions to dismiss have been filed and are now being briefed, with oral argument anticipated later this summer.  Lieff Cabraser is also actively involved in counseling other state pension and ERISA funds with respect to their potential exposure to FX manipulation by custodial service providers.

2. ***The Charles Schwab Corp. v. BNP Paribas Sec. Corp.***, No. CGC-10-501610 (Cal. Super. Ct.); ***The Charles Schwab Corp. v. J.P. Morgan Sec., Inc.***, No. CGC-10-503206 (Cal. Super. Ct.); ***The Charles Schwab Corp. v. J.P. Morgan Sec., Inc.***, No. CGC-10-503207 (Cal.

Super. Ct.); and *The Charles Schwab Corp. v. Banc of America Sec. LLC*, No. CGC-10-501151 (Cal. Super. Ct.). Lieff Cabraser represents The Charles Schwab Corporation ("Schwab") in four separate individual securities actions against certain issuers and sellers of mortgage-backed securities for materially misrepresenting the quality of the loans underlying the securities. Schwab's subsidiary, Charles Schwab Bank, N.A., suffered significant damages by purchasing the securities in reliance on defendants' misstatements.

3.    *International Union of Operating Engineers, Stationary Engineers Local 39 Pension Trust Fund ("IUOE Local 39") v. The Bank of New York Mellon Corporation*, No. 11-3620-LB (N.D. Cal.). Lieff Cabraser, along with co-counsel, represents a proposed nationwide class of employee benefit plans covered by the Employment Retirement Income Security Act ("ERISA") in an action against The Bank of New York Mellon Corporation ("BNY Mellon") and its predecessors and subsidiaries, alleging that defendants charged class members fictitious foreign currency exchange ("FX") rates in connection with the purchase and sale of foreign securities. The complaint charges that for the past decade, defendants consistently incorporated hidden and excessive mark-ups or mark-downs relative to the actual FX rates applicable at the times of the trades conducted for defendants' custodial FX clients. Defendants allegedly kept for themselves, as an unlawful profit, the difference between the false and actual price for each FX transaction. Plaintiffs seek relief under California law for a class of California-based ERISA funds, and under New York law for a nationwide class of ERISA funds for whom FX trades were conducted through BNY Mellon's New York FX trading desk.

4.    *DiNapoli v. Bank of America Corp.*, No. 10 CV 5563 (S.D. N.Y.). Lieff Cabraser serves as co-counsel for Thomas P. DiNapoli, Comptroller of the State of New York, in his capacity as trustee of the New York State Common Retirement Fund ("NYSCRF") in an individual securities action against Bank of America. The complaint seeks recovery of losses NYSCRF incurred based upon Bank of America's alleged misrepresentation and concealment of material facts in connection with its purchase of Merrill Lynch. Bank of America allegedly failed to inform its shareholders, before the December 5, 2008, vote on the Bank of America-Merrill Lynch merger, of Merrill Lynch's exposure to securities backed by subprime mortgages and its tremendous fourth quarter 2008 losses. Bank of America recently answered the complaint and discovery has commenced.

5.    *Ohio Police & Fire Pension Fund. v. Standard & Poor's Financial Services LLC*, No. 09 CV 1054 (S.D. Ohio). Lieff Cabraser and co-counsel are assisting Ohio Attorney General Mike DeWine in a lawsuit filed against Standard & Poor's, Moody's and Fitch alleging these

agencies provided unjustified and inflated ratings of mortgage-backed securities in exchange for lucrative fees from securities issuers.  The lawsuit, filed on behalf of the Ohio Public Employees Retirement System, the State Teachers Retirement System of Ohio, the Ohio Police & Fire Pension Fund, the School Employees Retirement System of Ohio and the Ohio Public Employees Deferred Compensation Program, charges that many mortgage-backed securities were given the highest investment-grade credit rating, often referred to as "AAA."  This rating assured institutional investors, including the plaintiff Ohio pension funds, that the investments were extremely safe with a very low risk of default.  The Ohio funds allege that they lost in excess of $457 million in investments in mortgage-backed securities that were improperly rated by the rating agencies.

**B.      Successes**

1.      ***In re First Capital Holdings Corp. Financial Products Securities Litigation***, MDL No. 901 (C.D. Cal.).  Lieff Cabraser served as Co-Lead Counsel in a class action brought to recover damages sustained by policyholders of First Capital Life Insurance Company and Fidelity Bankers Life Insurance Company policyholders resulting from the insurance companies' allegedly fraudulent or reckless investment and financial practices, and the manipulation of the companies' financial statements.  This policyholder settlement generated over $1 billion in restored life insurance policies, and was approved by both federal and state courts in parallel proceedings and then affirmed by the Ninth Circuit on appeal.

2.      ***In re Broadcom Corporation Derivative Litigation***, No. CV 06-3252-R (C.D. Cal.).  Lieff Cabraser serves as Court-appointed Lead Counsel in a shareholders derivative action arising out of stock options backdating in Broadcom securities. The suit alleges defendants intentionally manipulated their stock option grant dates between 1998 and 2003 at the expense of Broadcom and Broadcom shareholders. By making it seem as if stock option grants occurred on dates when Broadcom stock was trading at a comparatively low per share price, stock option grant recipients were able to exercise their stock option grants at exercise prices that were lower than the fair market value of Broadcom stock on the day the options were actually granted.

On December 14, 2009, U.S. District Judge Manuel L. Real granted final approval to a partial settlement in which Broadcom Corporation's insurance carriers paid $118 million to Broadcom.  The settlement released certain individual director and officer defendants covered by Broadcom's directors' and officers' policy.

Plaintiffs' counsel continued to pursue claims against William J. Ruehle, Broadcom's former Chief Financial Officer, Henry T. Nicholas, III, Broadcom's co-founder and former Chief Executive Officer, and Henry Samueli, Broadcom's co-founder and former Chief Technology Officer. On May 23, 2011, the Court granted final approval to a settlement with these defendants. The settlement provides substantial consideration to Broadcom, consisting of the receipt of cash and cancelled options from Dr. Nicholas and Dr. Samueli totaling $53 million in value, plus the release of a claim by Mr. Ruehle, which sought damages in excess of $26 million, leading to a total settlement valued at $79 million.

Coupled with the earlier $118 million partial settlement, the total recovery in the derivative action is approximately $197.5 million, which constitutes the third largest in a derivative action involving stock options backdating.

3.    ***In re Scorpion Technologies Securities Litigation I***, No. C-93-20333-EAI (N.D. Cal.); ***Dietrich v. Bauer***, No. C-95-7051-RWS (S.D.N.Y.); ***Claghorn v. Edsaco***, No. 98-3039-SI (N.D. Cal.). Lieff Cabraser served as Lead Counsel in class action suits arising out of an alleged fraudulent scheme by Scorpion Technologies, Inc., certain of its officers, accountants, underwriters and business affiliates to inflate the company's earnings through reporting fictitious sales. In Scorpion I, the Court found plaintiffs had presented sufficient evidence of liability under Federal securities acts against the accounting firm Grant Thornton for the case to proceed to trial. In re Scorpion Techs., 1996 U.S. Dist. LEXIS 22294 (N.D. Cal. Mar. 27, 1996). In 1988, the court approved a $5.5 million settlement with Grant Thornton. In 2000, the Court approved a $950,000 settlement with Credit Suisse First Boston Corporation. In April 2002, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd. The jury found that Edsaco aided Scorpion in setting up phony European companies as part of a scheme in which Scorpion reported fictitious sales of its software to these companies, thereby inflating its earnings. Included in the jury verdict, one of the largest verdicts in the U.S. in 2002, was $165 million in punitive damages. Richard M. Heimann conducted the trial for plaintiffs.

On June 14, 2002, U.S. District Court Judge Susan Illston commented on Lieff Cabraser's representation: "[C]ounsel for the plaintiffs did a very good job in a very tough situation of achieving an excellent recovery for the class here. You were opposed by extremely capable lawyers. It was an uphill battle. There were some complicated questions, and then there was the tricky issue of actually collecting anything in the end. I think based on the efforts that were made here that it was an excellent result for the class. . . [T]he recovery that was achieved for the class in this second trial is remarkable, almost a hundred percent."

4.  ***Merrill Lynch Fundamental Growth Fund and Merrill Lynch Global Value Fund v. McKesson HBOC,*** No. 02-405792 (Cal. Supr. Ct.).  Lieff Cabraser served as counsel for two Merrill Lynch sponsored mutual funds in a private lawsuit alleging that a massive accounting fraud occurred at HBOC & Company ("HBOC") before and following its 1999 acquisition by McKesson Corporation ("McKesson").  The funds charged that defendants, including the former CFO of McKesson HBOC, the name McKesson adopted after acquiring HBOC, artificially inflated the price of securities in McKesson HBOC, through misrepresentations and omissions concerning the financial condition of HBOC, resulting in approximately $135 million in losses for plaintiffs.  In a significant discovery ruling in 2004, the California Court of Appeal held that defendants waived the attorney-client and work product privileges in regard to an audit committee report and interview memoranda prepared in anticipation of shareholder lawsuits by disclosing the information to the U.S. Attorney and SEC.  *McKesson HBOC, Inc. v. Supr. Court*, 115 Cal. App. 4th 1229 (2004).  Lieff Cabraser's clients recovered approximately $145 million, representing nearly 104% of damages suffered by the funds.  This amount was approximately $115-120 million more than the Merrill Lynch funds would have recovered had they participated in the federal class action settlement.

5.  ***Informix/Illustra Securities Litigation***, No. C-97-1289-CRB (N.D. Cal.).  Lieff Cabraser represented Richard H. Williams, the former Chief Executive Officer and President of Illustra Information Technologies, Inc. ("Illustra"), and a class of Illustra shareholders in a class action suit on behalf of all former Illustra securities holders who tendered their Illustra preferred or common stock, stock warrants or stock options in exchange for securities of Informix Corporation ("Informix") in connection with Informix's 1996 purchase of Illustra.  Pursuant to that acquisition, Illustra stockholders received Informix securities representing approximately 10% of the value of the combined company.  The complaint alleged claims for common law fraud and violations of Federal securities law arising out of the acquisition.  In October 1999, U.S. District Judge Charles E. Breyer approved a global settlement of the litigation for $136 million, constituting one of the largest settlements ever involving a high technology company alleged to have committed securities fraud.  Our clients, the Illustra shareholders, received approximately 30% of the net settlement fund.

6.  ***In re Qwest Communications International Securities and "ERISA" Litigation (No. II),*** No. 06-cv-17880-REB-PAC (MDL No. 1788) (D. Colo.).  Lieff Cabraser represented the New York State Common Retirement Fund, Fire and Police Pension Association of Colorado, Denver Employees' Retirement Plan, San Francisco Employees'

Retirement System, and over thirty BlackRock managed mutual funds in individual securities fraud actions ("opt out" cases) against Qwest Communications International, Inc., Philip F. Anschutz, former co-chairman of the Qwest board of directors,  and other senior executives at Qwest.  In each action, the plaintiffs charged defendants with massively overstating Qwest's publicly-reported growth, revenues, earnings, and earnings per share from 1999 through 2002.  The cases were filed in the wake of a $400 million settlement of a securities fraud class action against Qwest  that was announced in  early 2006.  The cases brought by Lieff Cabraser's clients settled in October 2007 for recoveries totaling more than $85 million, or more than 13 times what the clients would have received had they remained in the class.

7.     ***BlackRock Global Allocation Fund v. Tyco International Ltd., et al.***, No. 2:08-cv-519 (D. N.J.); ***Nuveen Balanced Municipal and Stock Fund v. Tyco International Ltd., et al.***, No. 2:08-cv-518 (D. N.J.).  Lieff Cabraser represented multiple funds of the investment firms BlackRock Inc. and Nuveen Asset Management in separate, direct securities fraud actions against Tyco International Ltd., Tyco Electronics Ltd., Covidien Ltd, Covidien (U.S.), L. Dennis Kozlowski, Mark H. Swartz, and Frank E. Walsh, Jr.  Plaintiffs alleged that defendants engaged in a massive criminal enterprise that combined the theft of corporate assets with fraudulent accounting entries that concealed Tyco's financial condition from investors. As a result, plaintiffs purchased Tyco common stock and other Tyco securities at artificially inflated prices and suffered losses upon disclosures revealing Tyco's true financial condition and defendants' misconduct.  In 2009, the parties settled the claims against the corporate defendants (Tyco International Ltd., Tyco Electronics Ltd., Covidien Ltd., and Covidien (U.S.).  The litigation concluded in 2010.  The total settlement proceeds paid by all defendants were in excess of $57 million.

8.     ***Kofuku Bank and Namihaya Bank v. Republic New York Securities Corp.***, No. 00 CIV 3298 (S.D.N.Y.); and ***Kita Hyogo Shinyo-Kumiai v. Republic New York Securities Corp.***, No. 00 CIV 4114 (S.D.N.Y.).  Lieff Cabraser represented Kofuku Bank, Namihaya Bank and Kita Hyogo Shinyo-Kumiai (a credit union) in individual lawsuits against, among others, Martin A. Armstrong and HSBC, Inc., the successor-in-interest to Republic New York Corporation, Republic New York Bank and Republic New York Securities Corporation for alleged violations of federal securities and racketeering laws.  Through a group of interconnected companies owned and controlled by Armstrong—the Princeton Companies—Armstrong and the Republic Companies promoted and sold promissory notes, known as the "Princeton Notes," to more than eighty of the largest companies and financial institutions in Japan.  Lieff

Cabraser's lawsuits, as well as the lawsuits of dozens of other Princeton Note investors, alleged that the Princeton and Republic Companies made fraudulent misrepresentations and non-disclosures in connection with the promotion and sale of Princeton Notes, and that investors' moneys were commingled and misused to the benefit of Armstrong, the Princeton Companies and the Republic Companies.  In December 2001, the claims of our clients and those of the other Princeton Note investors were settled. As part of the settlement, our clients recovered more than $50 million, which represented 100% of the value of their principal investments less money they received in interest or other payments.

9.     ***Alaska State Department of Revenue v. America Online***, No. 1JU-04-503 (Alaska Supr. Ct.).  In December 2006, a $50 million settlement was reached in a securities fraud action brought by the Alaska State Department of Revenue, Alaska State Pension Investment Board and Alaska Permanent Fund Corporation against defendants America Online, Inc. ("AOL"), Time Warner Inc. (formerly known as AOL Time Warner ("AOLTW")), Historic TW Inc.  When the action was filed, the Alaska Attorney General estimated total losses at $70 million.  The recovery on behalf of Alaska was approximately 50 times what the state would have received as a member of the class in the federal securities class action settlement.  The lawsuit, filed in 2004 in Alaska State Court, alleged that defendants misrepresented advertising revenues and growth of AOL and AOLTW along with the number of AOL subscribers, which artificially inflated the stock price of AOL and AOLTW to the detriment of Alaska State funds.

The Alaska Department of Law retained Lieff Cabraser to lead the litigation efforts under its direction.  "We appreciate the diligence and expertise of our counsel in achieving an outstanding resolution of the case," said Mark Morones, spokesperson for the Department of Law, following announcement of the settlement.

10.     ***Allocco v. Gardner***, No. GIC 806450 (Cal. Supr. Ct.).  Lieff Cabraser represents Lawrence L. Garlick, the co-founder and former Chief Executive Officer of Remedy Corporation and 24 other former senior executives and directors of Remedy Corporation in a private (non-class) securities fraud lawsuit against Stephen P. Gardner, the former Chief Executive Officer of Peregrine Systems, Inc., John J. Moores, Peregrine's former Chairman of the Board, Matthew C. Gless, Peregrine's former Chief Financial Officer, Peregrine's accounting firm Arthur Andersen and certain entities that entered into fraudulent transactions with Peregrine. The lawsuit, filed in California state court, arises out of Peregrine's August 2001 acquisition of Remedy.  Plaintiffs charge that they were induced to exchange their Remedy stock for Peregrine stock on the basis of false and

misleading representations made by defendants. Within months of the Remedy acquisition, Peregrine began to reveal to the public that it had grossly overstated its revenue during the years 2000-2002, and eventually restated more than $500 million in revenues.

After successfully defeating demurrers brought by defendants, including third parties who were customers of Peregrine who aided and abetted Peregrine's accounting fraud under California common law, plaintiffs reached a series of settlements. The settling defendants included Arthur Andersen, all of the director defendants, three officer defendants and the third party customer defendants KPMG, British Telecom, Fujitsu, Software Spectrum and Bindview. The total amount received in settlements is approximately $45 million.

11.    *In re Cablevision Systems Corp. Shareholder Derivative Litigation*, No. 06-cv-4130-DGT-AKT (E.D.N.Y.). Lieff Cabraser served as Co-Lead Counsel in a shareholders' derivative action against the board of directors and numerous officers of Cablevision. The suit alleged that defendants intentionally manipulated stock option grant dates to Cablevision employees between 1997 and 2002 in order to enrich certain officer and director defendants at the expense of Cablevision and Cablevision shareholders. According to the complaint, Defendants made it appear as if stock options were granted earlier than they actually were in order to maximize the value of the grants. In September 2008, the Court granted final approval to a $34.4 million settlement of the action. Over $24 million of the settlement was contributed directly by individual defendants who either received backdated options or participated in the backdating activity.

12.    *In re Media Vision Technology Securities Litigation*, No. CV-94-1015 (N.D. Cal.). Lieff Cabraser served as Co-Lead Counsel in a class action lawsuit which alleged that certain of Media Vision's officers, outside directors, accountants and underwriters engaged in a fraudulent scheme to inflate the company's earnings, and issued false and misleading public statements about the company's finances, earnings and profits. By 1998, the Court had approved several partial settlements with many of Media Vision's officers and directors, accountants and underwriters which totaled $31 million. The settlement proceeds have been distributed to eligible class members. The evidence that Lieff Cabraser developed in the civil case led prosecutors to commence an investigation and ultimately file criminal charges against Media Vision's former Chief Executive Officer and Chief Financial Officer. The civil action against Media Vision's CEO and CFO was stayed pending the criminal proceedings against them. In the criminal proceedings, the CEO pled guilty on several counts, and the CFO was convicted at trial. In October, 2003, the Court granted Plaintiffs'

motions for summary judgment and entered a judgment in favor of the class against these two defendants in the amount of $188 million.

13. ***In re National Century Financial Enterprises, Inc. Investment Litigation***, MDL No. 1565 (S.D. Ohio).  Lieff Cabraser served as outside counsel for the New York City Employees' Retirement System, Teachers' Retirement System for the City of New York, New York City Police Pension Fund, and New York City Fire Department Pension Fund in this multidistrict litigation arising from fraud in connection with NCFE's issuance of notes backed by healthcare receivables.  The New York City Pension Funds recovered more than 70% of their $89 million in losses, primarily through settlements achieved in the federal litigation and another NCFE-matter on their behalf by Lieff Cabraser.

14. ***In re California Micro Devices Securities Litigation***, No. C-94-2817-VRW (N.D. Cal.).  Lieff Cabraser served as Liaison Counsel for the Colorado Public Employees' Retirement Association and the California State Teachers' Retirement System, and the class they represented.  Prior to 2001, the Court approved $19 million in settlements.  In May 2001, the Court approved an additional settlement of $12 million, which, combined with the earlier settlements, provided class members an almost complete return on their losses.  The settlement with the company included multi-million dollar contributions by the former Chairman of the Board and Chief Executive Officer.

Commenting in 2001 on Lieff Cabraser's work in *Cal Micro Devices*, U.S. District Court Judge Vaughn R. Walker stated, "It is highly unusual for a class action in the securities area to recover anywhere close to the percentage of loss that has been recovered here, and counsel and the lead plaintiffs have done an admirable job in bringing about this most satisfactory conclusion of the litigation."  One year later, in a related proceeding and in response to the statement that the class had received nearly a 100% recovery, Judge Walker observed, "That's pretty remarkable.  In these cases, 25 cents on the dollar is considered to be a magnificent recovery, and this is [almost] a hundred percent."

15. ***In re Network Associates, Inc. Securities Litigation***, No. C-99-1729-WHA (N.D. Cal.).  Following a competitive bidding process, the Court appointed Lieff Cabraser as Lead Counsel for the Lead Plaintiff and the class of investors.  The complaint alleged that Network Associates improperly accounted for acquisitions in order to inflate its stock price.  In May 2001, the Court granted approval to a $30 million settlement.

In reviewing the *Network Associates* settlement, U.S. District Court Judge William H. Alsup observed, "[T]he class was well served at a good price by excellent counsel . . .  We have class counsel who's one of the

foremost law firms in the country in both securities law and class actions. And they have a very excellent reputation for the conduct of these kinds of cases . . ."

16. ***In re FPI/Agretech Securities Litigation***, MDL No. 763 (D. Haw., Real, J.). Lieff Cabraser served as Lead Class Counsel on behalf of multiple classes of investors defrauded in a limited partnership investment scheme. The Court approved $15 million in partial pretrial settlements. At trial, the jury returned a $25 million verdict, which included $10 million in punitive damages plus costs, interest, and attorneys' fees, against non-settling defendant Arthur Young & Co. on securities and tort claims arising from its involvement in the fraud. Richard M. Heimann served as Lead Trial Counsel in the class action trial. On appeal, the compensatory damages judgment was affirmed and the case was remanded for retrial on punitive damages. In 1994, the Court approved a $17 million class settlement with Ernst & Young.

17. ***Nguyen v. FundAmerica***, No. C-90-2090 MHP (N.D. Cal., Patel, J.), 1990 Fed. Sec. L. Rep. (CCH) ¶¶ 95,497, 95,498 (N.D. Cal. 1990). Lieff Cabraser served as Plaintiffs' Class Counsel in this securities/RICO/tort action seeking an injunction against alleged unfair "pyramid" marketing practices and compensation to participants. The District Court certified a nationwide class for injunctive relief and damages on a mandatory basis and enjoined fraudulent overseas transfers of assets. The Bankruptcy Court permitted class proof of claims. Lieff Cabraser obtained dual District Court and Bankruptcy Court approval of settlements distributing over $13 million in FundAmerica assets to class members.

18. ***In re Brooks Automation, Inc. Securities Litigation***, No. 06 CA 11068 (D. Mass.). Lieff Cabraser served as Court-Appointed Lead Counsel for Lead Plaintiff the Los Angeles County Employees Retirement Association and co-plaintiff Sacramento County Employees' Retirement System in a class action lawsuit on behalf of purchasers of Brooks Automation securities. Plaintiffs charged that Brooks Automation, its senior corporate officers and directors violated federal securities laws by backdating company stock options over a six year period, and failed to disclose the scheme in publicly filed financial statements. Subsequent to Lieff Cabraser's filing of a consolidated amended complaint in this action, both the Securities and Exchange Commission and the United States Department of Justice filed complaints against the Company's former C.E.O., Robert Therrien, related to the same alleged practices. In October 2008, the Court approved a $7.75 million settlement of the action.

19. ***DiNapoli v. Merrill Lynch & Co.***, No. 10-cv-5562 (S.D. N.Y.). Lieff Cabraser, together with co-counsel, represented Thomas P. DiNapoli, Comptroller of the State of New York, in his capacity as trustee of the New

York State Common Retirement Fund ("NYSCRF") in an individual securities action against Merrill Lynch for allegedly failing to adequately disclose its losses arising from its exposure to subprime mortgages and other securities, in violation of federal securities laws.   The case was successfully resolved in 2011.

20.    ***Albert v. Alex. Brown Management Services; Baker v. Alex. Brown Management Services*** (Del. Ch. Ct.).  In May 2004, on behalf of investors in two investment funds controlled, managed and operated by Deutsche Bank and advised by DC Investment Partners, Lieff Cabraser filed lawsuits for alleged fraudulent conduct that resulted in an aggregate loss of hundreds of millions of dollars.  The suits named as defendants Deutsche Bank and its subsidiaries Alex Brown Management Services and Deutsche Bank Securities, members of the funds' management committee, as well as DC Investments Partners and two of its principals. Among the plaintiff-investors were 70 high net worth individuals.  In the fall of 2006, the cases settled by confidential agreement.

## III.    <u>Employment Discrimination and Unfair Employment Practices</u>

### A.    Current Cases

1.    ***Chen-Oster v. Goldman Sachs***, Case No. 10-6950 (S.D.N.Y.).  Lieff Cabraser serves as Co-Lead Counsel for plaintiffs in a gender discrimination class action lawsuit against Goldman Sachs. The complaint alleges that Goldman Sachs has engaged in systemic and pervasive discrimination against its female professional employees in violation of Title VII of the Civil Rights Act of 1964 and the New York City Human Rights Law.  The complaint charges that, among other things, Goldman Sachs pays its female professionals less than similarly situated males, disproportionately promotes men over equally or more qualified women, and offers better business opportunities and professional support to its male professionals.

2.    ***Calibuso v. Bank of America Corporation, Merrill Lynch & Co.***, No. CV10-1413 (E.D. N.Y.).  Lieff Cabraser serves as Co-Lead Counsel for current and former female Financial Advisors who allege that Bank of America and Merrill Lynch engaged in a pattern and practice of gender discrimination with respect to business opportunities, compensation, professional support, and other terms and conditions of employment. The complaint charges that these violations are systemic, based upon company-wide policies and practices.

3.    ***Tatum v. R.J. Reynolds Tobacco Company***, No. 1:02-cv-00373-NCT (M.D. N.C.).  Lieff Cabraser serves as Co-Lead Trial Counsel in this class action on behalf of over 3,500 employees of R.J. Reynolds Tobacco

Company ("RJR") brought under the Employment Retirement Income Security Act (ERISA).  Plaintiffs allege that RJR breached its duty of prudence in administering the employee 401(k) retirement plan.  The 6-week bench trial occurred in January-February 2010 and December 2010, and post-trial briefing concluded in February 2011.

4.    ***Vedachalam v. Tata Consultancy Services, LTD.***, C 06-0963 CW (N.D. Cal.).  Lieff Cabraser and co-counsel represent a proposed class of non-U.S.-citizen employees in a nationwide class action lawsuit against Tata.  Plaintiffs allege that Tata unjustly enriched itself by requiring all of its non-U.S.-citizen employees to endorse and sign over their federal and state tax refund checks to Tata.  The suit also alleges other violations of California and federal law, including that Tata did not pay its non-U.S.-citizen employees the amount promised to those employees before they came to the United States.  In 2007 and again in 2008, the District Court denied Tata's motions to compel arbitration of Plaintiffs' claims in India.  The Court held that no arbitration agreement existed because the documents purportedly requiring arbitration in India applied one set of rules to the Plaintiffs and another set to Tata.  In 2009, the Ninth Circuit Court of Appeals affirmed this decision.  In July 2011, the District Court denied in part Tata's motion for summary judgment, allowing Plaintiffs' legal claims for breach of contract and certain violations of California wage laws to go forward.

5.    ***Board of Trustees of the National Elevator Industry Health Benefit Fund v. AXA Rosenberg Group, LLC***, No. 0897 (N.D. Cal).  Lieff Cabraser, with co-counsel, represents the Board of Trustees of the National Elevator Industry Health Benefit Fund ("NEI") in this multi-plan class action under the Employee Retirement Income Security Act ("ERISA") against AXA Rosenberg Group, LLC and its affiliates ("AXA").  Plaintiffs allege that AXA violated various duties under ERISA, including the duty of loyalty and the duty of prudence, to NEI and other ERISA-covered investors when it allowed a material computer error in its proprietary system to go unnoticed and unremedied for years, and also directed a cover-up of the error.

6.    ***Holloway v. Best Buy,*** No. C05-5056 PJH (N.D. Cal.).  Lieff Cabraser, with co-counsel, represents a proposed class of current and former employees of Best Buy in a federal class action civil rights lawsuit.  Plaintiffs allege that Best Buy stores nationwide discriminate against women, African Americans, and Latinos.  These employees charge that they are assigned to less desirable positions and denied promotions, and that class members who attain managerial positions are paid less than white males.  The suit also alleges that Best Buy discriminates against African Americans in entry-level hiring decisions.  On August 3, 2011, the Court granted preliminary approval of a class action settlement.

7.  ***Winnett v. Caterpillar***, No. 3:06-cv-00235 (M.D. Tenn.).  Lieff Cabraser serves as co-counsel representing retirees in a nationwide class action lawsuit against Caterpillar, Inc.  In October 2004, Caterpillar began charging monthly premiums despite longstanding contracts that promise free healthcare to certain participants and their spouses.  The lawsuit seeks to end these charges and restore the plaintiffs and similarly situated retirees to the position they would have been but for Caterpillar's contractual violations.  In July 2007, the Court granted the plaintiffs' class certification motion.

## B.  Successes

1.  ***Butler v. Home Depot***, No. C94-4335 SI (N.D. Cal.).  Lieff Cabraser and co-counsel represented a class of approximately 25,000 female employees and applicants for employment with Home Depot's West Coast Division who alleged gender discrimination in connection with hiring, promotions, pay, job assignment, and other terms and conditions of employment.  The class was certified in January 1995.  In January 1998, the court approved a $87.5 million settlement of the action that included comprehensive injunctive relief over the term of a five-year Consent Decree.  Under the terms of the settlement, Home Depot modified its hiring, promotion, and compensation practices to ensure that interested and qualified women were hired for, and promoted to, sales and management positions.

    On January 14, 1998, U.S. District Judge Susan Illston commented that the settlement provides "a very significant monetary payment to the class members for which I think they should be grateful to their counsel. . . . Even more significant is the injunctive relief that's provided for . . ."  By 2003, the injunctive relief had created thousands of new job opportunities in sales and management positions at Home Depot, generating the equivalent of over approximately $100 million per year in wages for female employees.

    In 2002, Judge Illston stated that the injunctive relief has been a "win/win . . . for everyone, because . . . the way the Decree has been implemented has been very successful and it is good for the company as well as the company's employees."

2.  ***Rosenburg v. IBM,*** No. C 06-0430 PJH (N.D. Cal.).  In July 2007, the Court granted final approval to a $65 million settlement of a class action suit by current and former technical support workers for IBM seeking unpaid overtime.  The settlement constitutes a record amount in litigation seeking overtime compensation for employees in the computer industry.  Plaintiffs alleged that IBM illegally misclassified its employees who install

or maintain computer hardware or software as "exempt" from the overtime pay requirements of federal and state labor laws.

3. ***Satchell v. FedEx Express***, No. C 03-2659 SI; C 03-2878 SI (N.D. Cal.).  In 2007, the Court granted final approval to a $54.9 million settlement of the race discrimination class action lawsuit by African American and Latino employees of FedEx Express.  The settlement requires FedEx to reform its promotion, discipline, and pay practices. Under the settlement, FedEx will implement multiple steps to promote equal employment opportunities, including making its performance evaluation process less discretionary, discarding use of the "Basic Skills Test" as a prerequisite to promotion into certain desirable positions, and changing employment policies to demonstrate that its revised practices do not continue to foster racial discrimination.  The settlement, covering 20,000 hourly employees and operations managers who have worked in the western region of FedEx Express since October 1999, was approved by the Court in August 2007.

4. ***Gonzalez v. Abercrombie & Fitch Stores***, No. C03-2817 SI (N.D. Cal.).  In April 2005, the Court approved a settlement, valued at approximately $50 million, which requires the retail clothing giant Abercrombie & Fitch to provide monetary benefits of $40 million to the class of Latino, African American, Asian American and female applicants and employees who charged the company with discrimination.  The settlement also requires the company to institute a range of policies and programs to promote diversity among its workforce and to prevent discrimination based on race or gender.  Lieff Cabraser serves as Lead Class Counsel and prosecuted the case with a number of co-counsel firms, including the Mexican American Legal Defense and Education Fund, the Asian Pacific American Legal Center and the NAACP Legal Defense and Educational Fund, Inc.  Implementation of the consent decree continues into 2011.

5. ***Giles v. Allstate***, JCCP Nos. 2984 and 2985.  Lieff Cabraser represented a class of Allstate insurance agents seeking reimbursement of out-of-pocket costs.  The action settled for approximately $40 million.

6. ***Frank v. United Airlines***, No. C-92-0692 MJJ (N.D. Cal.).  Lieff Cabraser and co-counsel obtained a $36.5 million settlement in February 2004 for a class of female flight attendants who were required to weigh less than comparable male flight attendants.

Former U.S. District Court Judge Charles B. Renfrew (ret.), who served as a mediator in the case, stated, "As a participant in the settlement negotiations, I am familiar with and know the reputation, experience and skills of lawyers involved.  They are dedicated, hardworking and able

counsel who have represented their clients very effectively." U.S. District Judge Martin J. Jenkins, in granting final approval to the settlement, found "that the results achieved here could be nothing less than described as exceptional," and that the settlement "was obtained through the efforts of outstanding counsel."

7.  ***Barnett v. Wal-Mart***, No. 01-2-24553-SNKT (Wash.). On July 21, 2009, the Court gave final approval to a settlement valued at up to $35 million on behalf of workers in Washington State who alleged they were deprived of meal and rest breaks and forced to work off-the-clock at Wal-Mart stores and Sam's Clubs. In addition to monetary relief, the settlement provided injunctive relief benefiting all employees. Wal-Mart was required to undertake measures to prevent wage and hour violations at its 50 stores and clubs in Washington, measures that included the use of new technologies and compliance tools.

Plaintiffs filed their complaint in 2001. Three years later, the Court certified a class of approximately 40,000 current and former Wal-Mart employees. The eight years of litigation were intense and adversarial. Wal-Mart, currently the world's third largest corporation, vigorously denied liability and spared no expense in defending itself.

This lawsuit and similar actions filed against Wal-Mart across America served to reform the pay procedures and employment practices for Wal-Mart's 1.4 million employees nationwide. In a press release announcing the Court's approval of the settlement, Wal-Mart spokesperson Daphne Moore stated, "This lawsuit was filed years ago and the allegations are not representative of the company we are today." Lieff Cabraser served as court-appointed Co-Lead Class Counsel.

8.  ***Amochaev. v. Citigroup Global Markets, d/b/a Smith Barney***, No. C 05-1298 PJH (N.D. Cal.). On August 13, 2008, the Court granted final approval to a settlement of the gender discrimination case against Smith Barney. Lieff Cabraser represented Female Financial Advisors who charged that Smith Barney, the retail brokerage unit of Citigroup, discriminated against them in account distributions, business leads, referral business, partnership opportunities, and other terms of employment. The Court approved a four-year settlement agreement that provides for comprehensive injunctive relief and significant monetary relief of $33 million for the 2,411 members of the Settlement Class. The comprehensive injunctive relief provided under the settlement is designed to increase business opportunities and promote equality in compensation for female brokers.

9.  ***Giannetto v. Computer Sciences Corporation***, No. 03-CV-8201 (C.D. Cal.). In one of the largest overtime pay dispute settlements ever in

913000.1

- 23 -

the information technology industry, the Court in July 2005 granted final approval to a $24 million settlement with Computer Sciences Corporation.  Plaintiffs charged that the global conglomerate had a common practice of refusing to pay overtime compensation to its technical support workers involved in the installation and maintenance of computer hardware and software in violation of the Fair Labor Standards Act, California's Unfair Competition Law, and the wage and hour laws of 13 states.

10.    *Church v. Consolidated Freightways*, No. C90-2290 DLJ (N.D. Cal.).  Lieff Cabraser was the Lead Court-appointed Class Counsel in this class action on behalf of the exempt employees of Emery Air Freight, a freight forwarding company acquired by Consolidated Freightways in 1989.  On behalf of the employee class, Lieff Cabraser prosecuted claims for violation of the Employee Retirement Income Security Act, the securities laws, and the Age Discrimination in Employment Act.  The case settled in 1993 for $13.5 million.

11.    *Gerlach v. Wells Fargo & Co.,* No. C 05-0585 CW (N.D. Cal.).  In January 2007, the Court granted final approval to a $12.8 million settlement of a class action suit by current and former business systems employees of Wells Fargo seeking unpaid overtime.  Plaintiffs alleged that Wells Fargo illegally misclassified those employees, who maintained and updated Wells Fargo's business tools according to others' instructions, as "exempt" from the overtime pay requirements of federal and state labor laws.

12.    *Buccellato v. AT&T Operations*, No. C10-00463-LHK (N.D. Cal.).  Lieff Cabraser represents a group of current and former AT&T technical support workers who allege that AT&T misclassified them as exempt and failed to pay them for all overtime hours worked in violation of federal and state overtime pay laws.  On June 30, 2011, the Court granted final approval of a $12.5 million collective and class action settlement.

13.    *Buttram v. UPS*, No. C-97-01590 MJJ (N.D. Cal.).  Lieff Cabraser and several co-counsel represented a class of approximately 14,000 African-American part-time hourly employees of UPS's Pacific and Northwest Regions alleging race discrimination in promotions and job advancement. In 1999, the Court approved a $12.14 million settlement of the action. Under the injunctive relief portion of the settlement, among other things, Class Counsel continues to monitor the promotions of African-American part-time hourly employees to part-time supervisor and full-time package car driver.

14.    *Goddard, et al. v. Longs Drug Stores Corporation, et al.*, No. RG04141291 (Cal. Supr. Ct.).  Store managers and assistant store

managers of Longs Drugs charged that the company misclassified them as exempt from overtime wages. Managers regularly worked in excess of 8 hours per day and 40 hours per week without compensation for their overtime hours. Following mediation, in 2005, Longs Drugs agreed to settle the claims for a total of $11 million. Over 1,000 current and former Longs Drugs managers and assistant managers were eligible for compensation under the settlement, over 98% of the class submitted claims.

15.    ***Trotter v. Perdue Farms***, No. C 99-893-RRM (JJF) (MPT) (D. Del.). Lieff Cabraser represented a class of chicken processing employees of Perdue Farms, Inc., one of the nation's largest poultry processors, for wage and hour violations. The suit challenged Perdue's failure to compensate its assembly line employees for putting on, taking off, and cleaning protective and sanitary equipment in violation of the Fair Labor Standards Act, various state wage and hour laws, and the Employee Retirement Income Security Act. Under a settlement approved by the Court in 2002, Perdue paid $10 million for wages lost by its chicken processing employees and attorneys' fees and costs. The settlement was in addition to a $10 million settlement of a suit brought by the Department of Labor in the wake of Lieff Cabraser's lawsuit.

16.    ***Gottlieb v. SBC Communications***, No. CV-00-04139 AHM (MANx) (C.D. Cal.). With co-counsel, Lieff Cabraser represented current and former employees of SBC and Pacific Telesis Group ("PTG") who participated in AirTouch Stock Funds, which were at one time part of PTG's salaried and non-salaried savings plans. After acquiring PTG, SBC sold AirTouch, which PTG had owned, and caused the AirTouch Stock Funds that were included in the PTG employees' savings plans to be liquidated. Plaintiffs alleged that in eliminating the AirTouch Stock Funds, and in allegedly failing to adequately communicate with employees about the liquidation, SBC breached its duties to 401k plan participants under the Employee Retirement Income Security Act. In 2002, the Court granted final approval to a $10 million settlement.

17.    ***In Re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation***, MDL No. 1439 (D. Ore.). Lieff Cabraser and co-counsel represented claims representatives of Farmers' Insurance Exchange seeking unpaid overtime. Lieff Cabraser won a liability phase trial on a classwide basis, and then litigated damages on an individual basis before a special master. The judgment was partially upheld on appeal. In August 2010, the Court approved an $8 million settlement.

18.    ***Zuckman v. Allied Group***, No. 02-5800 SI (N.D. Cal.). In September 2004, the Court approved a settlement with Allied Group and Nationwide Mutual Insurance Company of $8 million plus Allied/Nationwide's share

of payroll taxes on amounts treated as wages, providing plaintiffs a 100% recovery on their claims. Plaintiffs, claims representatives of Allied / Nationwide, alleged that the company misclassified them as exempt employees and failed to pay them and other claims representatives in California overtime wages for hours they worked in excess of eight hours or forty hours per week. In approving the settlement, U.S. District Court Judge Susan Illston commended counsel for their "really good lawyering" and stated that they did "a splendid job on this" case.

19.     ***Thomas v. California State Automobile Association***, No. CH217752 (Cal. Supr. Ct.). With co-counsel, Lieff Cabraser represented 1,200 current and former field claims adjusters who worked for the California State Automobile Association ("CSAA"). Plaintiffs alleged that CSAA improperly classified their employees as exempt, therefore denying them overtime pay for overtime worked. In May 2002, the Court approved an $8 million settlement of the case.

20.     ***Higazi v. Cadence Design Systems,*** No. C 07-2813 JW (N.D. Cal.). In July 2008, the Court granted final approval to a $7.664 million settlement of a class action suit by current and former technical support workers for Cadence seeking unpaid overtime. Plaintiffs alleged that Cadence illegally misclassified its employees who install, maintain, or support computer hardware or software as "exempt" from the overtime pay requirements of federal and state labor laws.

21.     ***Sandoval v. Mountain Center, Inc., et al.,*** No. 03CC00280 (Cal. Supr. Ct.). Cable installers in California charged that defendants owed them overtime wages, as well as damages for missed meal and rest breaks and reimbursement for expenses incurred on the job. In 2005, the Court approved a $7.2 million settlement of the litigation, which was distributed to the cable installers who submitted claims.

22.     ***Lewis v. Wells Fargo***, No. 08-cv-2670 CW (N.D. Cal.). Lieff Cabraser served as Lead Counsel on behalf of approximately 330 I/T workers who alleged that Wells Fargo had a common practice of misclassifying them as exempt and failing to pay them for all overtime hours worked in violation of federal and state overtime pay laws. In April 2011, the Court granted collective action certification of the FLSA claims, and approved a $6.72 million settlement of the action.

23.     ***Kahn v. Denny's***, No. BC177254 (Cal. Supr. Ct.). Lieff Cabraser brought a lawsuit alleging that Denny's failed to pay overtime wages to its General Managers and Managers who worked at company-owned restaurants in California. The Court approved a $4 million settlement of the case in 2000.

24. ***Wynne v. McCormick & Schmick's Seafood Restaurants***, No. C 06-3153 CW (N.D. Cal.).  In August 2008, the Court granted final approval to a settlement valued at $2.1 million, including substantial injunctive relief, for a class of African American restaurant-level hourly employees.  The consent decree created hiring benchmarks to increase the number of African Americans employed in front of the house jobs (*e.g.*, server, bartender, host/hostess, waiter/waitress, and cocktail server), a registration of interest program to minimize discrimination in promotions, improved complaint procedures, and monitoring and enforcement mechanisms.

25. ***Sherrill v. Premera Blue Cross***, No. 2:10-cv-00590-TSZ (W.D. Wash.). In April 2010, a technical worker at Premera Blue Cross filed a lawsuit against Premera seeking overtime pay from its misclassification of technical support workers as exempt.  In June 2011, the Court approved a collective and class action settlement of $1.45 million.

26. ***Lyon v. TMP Worldwide***, No. 993096 (Cal. Supr. Ct.).  Lieff Cabraser served as Class Counsel for a class of certain non-supervisory employees in an advertising firm.  The settlement, approved in 2000, provided almost a 100% recovery to class members.  The suit alleged that TMP failed to pay overtime wages to these employees.

Lieff Cabraser attorneys have also had experience working on several other employment cases, including cases involving race, gender, and age discrimination, ERISA, breach of contract claims, and wage/hour claims.  Lieff Cabraser attorneys frequently write amici briefs on cutting-edge legal issues involving employment law.  Lieff Cabraser is currently investigating charges of race, gender and/or age discrimination, and wage/hour violations against several companies.  In 2010 and 2011, the *Legal 500* guide to the U.S. legal profession recognized Lieff Cabraser as having one of the leading plaintiffs' employment practices in the nation.

Kelly M. Dermody chairs the firm's employment practice group and leads the firm's employment cases.  In 2011, the *Daily Journal* recognized her as one of the top labor and employment lawyers in California.  The *Daily Journal* has also twice recognized Ms. Dermody as one of the "Top Women Litigators in California."  For the past two years, *Best Lawyers In America* has selected Ms. Dermody as one of "San Francisco's Best Lawyers."  In 2007, *California Lawyer* magazine awarded Ms. Dermody its prestigious California Lawyer Attorney of the Year (CLAY) Award.

## IV.    <u>Consumer Protection</u>

### A.    Current Cases

1. ***Gutierrez v. Wells Fargo Bank***, No. C 07-05923 WHA (N.D. Cal.).  Following a two week bench class action trial, on August 10, 2010, U.S. District Court Judge William Alsup held in a 90-page opinion that Wells

Fargo violated California law by improperly and illegally assessing overdraft fees on its California customers and ordered $203 million in restitution to the certified class. Instead of posting each transaction chronologically, the evidence presented at trial showed that Wells Fargo deducted the largest charges first, drawing down available balances more rapidly and triggering a higher volume of overdraft fees. The Court entered judgment and the case is on appeal. For his outstanding work as Lead Trial Counsel and the significance of the case, *California Lawyer* magazine recognized Lieff Cabraser attorney Richard M. Heimann with a California Lawyer of the Year (CLAY) Award.

2.    ***In re Checking Account Overdraft Litigation***, MDL No. 2036 (S.D. Fl.). Lieff Cabraser serves on the plaintiffs' executive committee in a MDL action before U.S. District Court Judge James Lawrence King in Miami, Florida, against the nation's major banks for the collection of excessive overdraft fees. The alleged common nucleus of specific facts asserts a common practice by banks to enter charges debiting customer's accounts from the "largest to the smallest" thus maximizing the overdraft fee revenue for themselves. In March 2010, the Court denied defendants' motions to dismiss the complaints. In May 2011, the Court granted preliminary approval to a $410 million settlement of the case against Bank of America. The Court has scheduled a final approval hearing in November 2011.

3.    ***Brazil v. Dell***, No. C-07-01700 RMW (N.D. Cal.). Lieff Cabraser represents a class certified by U.S. District Court Judge Ronald M. Whyte in the Northern District of California of online purchasers of Dell computers who were victims of Dell's alleged deliberate scheme of misrepresenting price discounts through a systematic web-based false advertising campaign. The complaint charges that Dell advertised "limited time" specific-dollar discounts from expressly referenced former prices, but that the discounts are false because the reference prices are inflated beyond Dell's true regular prices. The certified class consists of consumers in the State of California who on or after March 23, 2003, purchased via Dell's Home & Home Office Web site any Dell-branded products advertised with a supposed former sales price, typically appearing as a price with a "Slash-Thru" alongside the actual selling price.

4.    ***Payment Protection Credit Card Litigation***. Lieff Cabraser represents consumers in a series of federal court cases against some of the nation's largest credit card issuers, challenging the imposition of charges for so-called "payment protection" or "credit protection" programs. Plaintiffs allege that the credit card companies make promises that under these "payment protection programs," payment of credit card debt will be suspended or canceled if borrowers experience major life events such as unemployment or disability. However, plaintiffs allege that they never

agreed to sign-up or pay for these programs, and even those customers who attempt to avail themselves of the programs' supposed protections discover that they have been misled about the programs' benefits and exclusions.  In response to the complaints, the credit card-issuing banks have filed motions to dismiss or motions to compel arbitration, most of which are pending.  On February 17, 2011, a federal court in Florida denied defendants Citigroup, Inc., Citicorp U.S.A., Inc., and Citibank South Dakota N.A.'s motion to compel arbitration, allowing a proposed class of Florida residents to proceed in court.

5.     ***In re Neurontin Marketing and Sales Practices Litigation***, No. 04-CV-10739-PBS (D. Mass.).  Lieff Cabraser serves on the Plaintiffs' Steering Committee in multidistrict litigation arising out of the sale and marketing of the prescription drug Neurontin, manufactured by Parke-Davis, a division of Warner-Lambert Company, which was later acquired by Pfizer, Inc.  Lieff Cabraser is also of counsel to Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals ("Kaiser") in the litigation.  On March 25, 2010, a federal court jury determined that Pfizer Inc. violated a federal antiracketeering law by promoting its drug Neurontin for unapproved uses and found Pfizer must pay Kaiser damages up to $142 million.  At trial, Kaiser presented evidence that Pfizer knowingly marketed Neurontin for unapproved uses without proof that it was effective.  Kaiser said it was misled into believing neuropathic pain**,** migraines and bipolar disorder were among the conditions that could be treated effectively with Neurontin, which was approved by the FDA as an adjunctive therapy to treat epilepsy and later for post-herpetic neuralgia, a specific type of neuropathic pain.  On November 3, 2010, the Court issued Findings of Fact and Conclusions of Law on Kaiser's claims arising under the California Unfair Competition Law, finding Pfizer liable and ordering that it pay restitution to Kaiser of approximately $95 million.

6.     ***Estate of Holman v. Noble Energy***, No. 03 CV 9 (Dist. Ct., Weld County, Co.); ***Droegemueller v. Petroleum Development Corporation***, No. 07 CV 2508 JLK (D. Co.); ***Anderson v. Merit Energy Co.***, No. 07 CV 00916 LTB (D. Co.); ***Holman v. Petro-Canada Resources (USA)***, No. 07 CV 416 (Dist. Ct., Weld County, Co.).  Lieff Cabraser and co-counsel represent owners of natural gas royalties in a number of lawsuits filed against gas producers and operators.  Plaintiffs allege that defendants improperly deducted from royalty payments certain costs associated with defendants' extraction and processing of natural gas from wells owned by plaintiffs.  Since 2007, our clients have recovered more than $150 million.

7.     ***In re Chase Bank USA, N.A. "Check Loan" Contract Litigation***, MDL No. 2032 (N.D. Cal.).  Lieff Cabraser serves as Plaintiffs' Liaison

Counsel in a nationwide class action charging that Chase Bank breached its contract with cardholders and violated consumer protection statutes by unilaterally modifying the terms of long-term fixed rate loans.  In May 2011, the Court granted plaintiffs' motion for class certification.

8.   ***In re Ocwen Federal Bank FSB Mortgage Servicing Litigation***, MDL No. 1604 (N.D. Ill.).  Lieff Cabraser serves as Co-Lead Plaintiffs' Counsel in a nationwide class action against Ocwen Financial Corporation, Ocwen Federal Bank FSB, and their affiliates ("Ocwen"). This lawsuit arises out of charges against Ocwen of misconduct in servicing its customers' mortgage loans and in its provision of certain related services, including debt collection and foreclosure services.  On January 10, 2011, the Court granted preliminary approval of a nationwide settlement that provides monetary relief, cash-equivalent benefits, and injunctive relief.  Final approval was granted to the settlement on July 6, 2011.

9.   ***In re SIGG Switzerland (USA), Inc. Aluminum Bottles Marketing and Sales Practices Litigation***, MDL No. 2137 (W.D. Ky.).  Lieff Cabraser, along with co-counsel, represents a class of consumers who were victims of SIGG's alleged misrepresentations and omissions regarding the presence of the toxic chemical Bisphenol A (BPA) in their water bottles produced prior to August 2008.  The complaint charges that SIGG's concealment misled consumers into thinking their water bottles were BPA-free, when the manufacturer knew the plastic bottle liner contained BPA.  In January 2011, the court denied Defendant's motion to dismiss plaintiffs' consumer fraud claims.

**B.    Successes**

1.   ***Kline v. The Progressive Corporation***, Circuit No. 02-L-6 (Circuit Court of the First Judicial Circuit, Johnson County, Illinois).  Lieff Cabraser served as settlement class counsel in a nationwide consumer class action challenging Progressive Corporation's private passenger automobile insurance sales practices.  Plaintiffs alleged that the Progressive Corporation wrongfully concealed from class members the availability of lower priced insurance for which they qualified.  In 2002, the Court approved a settlement valued at approximately $450 million, which included both cash and equitable relief.  The claims program, implemented upon a nationwide mail and publication notice program, was completed in 2003.

2.   ***Catholic Healthcare West Cases***, JCCP No. 4453 (Cal. Supr. Ct.). Plaintiff alleged that Catholic Healthcare West ("CHW") charged uninsured patients excessive fees for treatment and services, at rates far higher than the rates charged to patients with private insurance or on

Medicare.  In January 2007, the Court approved a settlement that provides discounts, refunds and other benefits for CHW patients valued at $423 million.  The settlement requires that CHW lower its charges and end price discrimination against all uninsured patients, maintain generous charity case policies allowing low-income uninsureds to receive free or heavily discounted care, and protect uninsured patients from unfair collections practices.  Lieff Cabraser served as Lead Counsel in the coordinated action.

3.    ***Sutter Health Uninsured Pricing Cases***, JCCP No. 4388 (Cal. Supr. Ct.).  Plaintiffs alleged that they and a Class of uninsured patients treated at Sutter hospitals were charged substantially more than patients with private or public insurance, and many times above the cost of providing their treatment.  In December 2006, the Court granted final approval to a comprehensive and groundbreaking settlement of the action.  As part of the settlement, Class members will be entitled to make a claim for refunds or deductions of between 25% to 45% from their prior hospital bills, at an estimated total value of $276 million.  For the next three years, Sutter will maintain discounted pricing policies for uninsureds that will make Sutter's pricing for uninsureds comparable to or better than the pricing for patients with private insurance.  In addition, Sutter agreed to maintain more compassionate collections policies that will protect uninsureds who fall behind in their payments.  Lieff Cabraser served as Lead Counsel in the coordinated action.

4.    ***Citigroup Loan Cases***, JCCP No. 4197 (San Francisco Supr. Ct., Cal.).  In 2003, the Court approved a settlement that provided approximately $240 million in relief to former Associates' customers across America.  Prior to its acquisition in November 2000, Associates First Financial, referred to as The Associates, was one of the nation's largest "subprime" lenders.  Lieff Cabraser represented former customers of The Associates charging that the company added on mortgage loans unwanted and unnecessary insurance products and engaged in improper loan refinancing practices.  Lieff Cabraser served as nationwide Plaintiffs' Co-Liaison Counsel.

5.    ***Thompson v. WFS Financial.***, No. 3-02-0570 (M.D. Tenn.); ***Pakeman v. American Honda Finance Corporation***, No. 3-02-0490 (M.D. Tenn.); ***Herra v. Toyota Motor Credit Corporation***, No. CGC 03-419 230 (San Francisco Supr. Ct.).  Lieff Cabraser with co-counsel litigated against several of the largest automobile finance companies in the country to compensate victims of—and stop future instances of—racial discrimination in the setting of interest rates in automobile finance contracts.  The litigation led to substantial changes in the way Toyota Motor Credit Corporation ("TMCC"), American Honda Finance Corporation ("American Honda") and WFS Financial, Inc., sell

automobile finance contracts, limiting the discrimination that can occur.

In approving the settlement in Thompson v. WFS Financial, the Court recognized the "innovative" and "remarkable settlement" achieved on behalf of the nationwide class.  In 2006 in Herra v. Toyota Motor Credit Corporation, the Court granted final approval to a nationwide class action settlement on behalf of all African-American and Hispanic customers of TMCC who entered into retail installment contracts that were assigned to TMCC from 1999 to 2006.  The monetary benefit to the class was estimated to be between $159-$174 million.

6.      ***In re John Muir Uninsured Healthcare Cases***, JCCP No. 4494 (Cal. Supr. Ct.).  Lieff Cabraser represented nearly 53,000 uninsured patients who received care at John Muir hospitals and outpatient centers and were charged inflated prices and then subject to overly aggressive collection practices when they failed to pay.  On November 19, 2008, the Court approved a final settlement of the *John Muir* litigation.  John Muir agreed to provide refunds or bill adjustments of 40-50% to uninsured patients that received medical care at John Muir over a six year period, bringing their charges to the level of patients with private insurance, at a value of $115 million.  No claims were required, so every class member received a refund or bill adjustment.  Furthermore, John Muir was required to (1) maintain charity care policies to give substantial discounts—up to 100%—to low income, uninsured patients who meet certain income requirements; (2) maintain an Uninsured Patient Discount Policy to give discounts to all uninsured patients, regardless of income, so that they pay rates no greater than those paid by patients with private insurance; (3) enhance communications to uninsured patients so they are better advised about John Muir's pricing discounts, financial assistance, and financial counseling services; and (4) limit the practices for collecting payments from uninsured patients.

7.      ***Providian Credit Card Cases***, JCCP No. 4085 (San Francisco Supr. Ct.).  Lieff Cabraser served as Co-Lead Counsel for a certified national Settlement Class of Providian credit cardholders who alleged that Providian had engaged in widespread misconduct by charging cardholders unlawful, excessive interest and late charges, and by promoting and selling to cardholders "add-on products" promising illusory benefits and services.  In November 2001, the Court granted final approval to a $105 million settlement of the case, which also required Providian to implement substantial changes in its business practices.  The $105 million settlement, combined with an earlier settlement by Providian with Federal and state agencies, represents the largest settlement ever by a U.S. credit card company in a consumer protection case.

8.     ***In re Synthroid Marketing Litigation***, MDL No. 1182 (N.D. Ill.). Lieff Cabraser served as Co-Lead Counsel for the purchasers of the thyroid medication Synthroid in litigation against Knoll Pharmaceutical, the manufacturer of Synthroid.  The lawsuits charged that Knoll misled physicians and patients into keeping patients on Synthroid despite knowing that less costly, but equally effective drugs, were available.  In 2000, the District Court gave final approval to a $87.4 million settlement with Knoll and its parent company, BASF Corporation, on behalf of a class of all consumers who purchased Synthroid at any time from 1990 to 1999. In 2001, the Court of Appeals upheld the order approving the settlement and remanded the case for further proceedings.  264 F.3d 712 (7th Cir. 2001).  The settlement proceeds were distributed in 2003.

9.     ***R.M. Galicia v. Franklin; Franklin v. Scripps Health***, No. IC 859468 (San Diego Supr. Ct., Cal.).  Lieff Cabraser served as Lead Class Counsel in a certified class action lawsuit on behalf of 60,750 uninsured patients who alleged that the Scripps Health hospital system imposed excessive fees and charges for medical treatment.  The class action originated in July 2006, when uninsured patient Phillip Franklin filed a class action cross-complaint against Scripps Health after Scripps sued Mr. Franklin through a collection agency.  Mr. Franklin alleged that he, like all other uninsured patientsof Scripps Health, was charged unreasonable and unconscionable rates for his medical treatment.  In June 2008, the Court granted final approval to a settlement of the action which includes refunds or discounts of 35% off of medical bills, collectively worth $73 million.  The settlement also requires Scripps Health to modify its pricing and collections practices by (1) following an Uninsured Patient Discount Policy, which includes automatic discounts from billed charges for Hospital Services; (2) following a Charity Care Policy, which provides uninsured patients who meet certain income tests with discounts on Health Services up to 100% free care, and provides for charity discounts under other special circumstances; (3) informing uninsured patients about the availability and terms of the above financial assistance policies; and (4) restricting certain collections practices and actively monitoring outside collection agents.  The prospective future discounts are worth many millions more in savings to uninsureds over the next four years.

10.     ***In re Lawn Mower Engine Horsepower Marketing and Sales Practices Litigation***, MDL No. 1999 (E.D. Wi.). Lieff Cabraser served as co-counsel for consumers that alleged manufacturers of certain gasoline-powered lawn mowers misrepresented, and significantly overstated, the horsepower of the product. As the price for lawn mowers is linked to the horsepower of the engine -- the higher the horsepower, the more expensive the lawn mower -- defendants' alleged misconduct caused

consumers to purchase expensive lawn mowers that provided lower horsepower than advertised. In August 2010, the Court approved a $65 million settlement of the action.

11. ***Strugano v. Nextel Communications***, No. BC 288359 (Los Angeles Supr. Crt). In May 2006, the Los Angeles Superior Court granted final approval to a class action settlement on behalf of all California customers of Nextel from January 1, 1999 through December 31, 2002, for compensation for the harm caused by Nextel's alleged unilateral (1) addition of a $1.15 monthly service fee and/or (2) change from second-by-second billing to minute-by-minute billing, which caused "overage" charges (*i.e.*, for exceeding their allotted cellular plan minutes). The total benefit conferred by the Settlement directly to Class Members was between approximately $13.5 million and $55.5 million, depending on which benefit Class Members selected.

12. ***Curry v. Fairbanks Capital Corporation***, No. 03-10895-DPW (D. Mass.). In 2004, the Court approved a $55 million settlement of a class action lawsuit against Fairbanks Capital Corporation arising out of charges against Fairbanks of misconduct in servicing its customers' mortgage loans. The settlement also required substantial changes in Fairbanks' business practices and established a default resolution program to limit the imposition of fees and foreclosure proceedings against Fairbanks' customers. Lieff Cabraser served as nationwide Co-Lead Counsel for the homeowners.

13. ***California Title Insurance Industry Litigation.*** Lieff Cabraser, in coordination with parallel litigation brought by the Attorney General, reached settlements in 2003 and 2004 with the leading title insurance companies in California, resulting in historic industry-wide changes to the practice of providing escrow services in real estate closings. The settlements brought a total of $50 million in restitution to California consumers, including cash payments. In the lawsuits, plaintiffs alleged, among other things, that the title companies received interest payments on customer escrow funds that were never reimbursed to their customers. The defendant companies include Lawyers' Title, Commonwealth Land Title, Stewart Title of California, First American Title, Fidelity National Title, and Chicago Title.

14. ***White v. Experian Information Solutions***, No. 05-CV-1070 DOC (C.D. Cal.). In July 2011, the Court granted final approval of a $45 million settlement of a class action lawsuit against the nation's three largest repositories of consumer credit information, Experian Information Solutions, Inc., Trans Union, LLC, and Equifax Information Services, LLC. Plaintiffs charged that defendants violated the Fair Credit Reporting Act ("FCRA") by recklessly failing to follow reasonable procedures in the

reporting, and reinvestigation of reporting, of debts discharged in Chapter 7 bankruptcy proceedings. The $45 million settlement constitutes the second largest settlement ever in a lawsuit alleging violations of the FCRA. In addition to the monetary settlement, in August 2008, the Court approved a historic settlement for injunctive relief requiring detailed procedures for the retroactive correction and updating of consumers' credit file information concerning discharged debt as well as new procedures to ensure that debts subject to future discharge orders will be similarly treated. Lieff Cabraser served as Co-Lead Counsel in the nationwide class action lawsuit.

15.     ***Morris v. AT&T Wireless Services***, No. C-04-1997-MJP (W.D. Wash.). Lieff Cabraser served as class counsel for a nationwide settlement class of cell phone customers subjected to an end of billing cycle cancellation policy implemented by AT&T Wireless in 2003 and alleged to have breached customers' service agreements. In May 2006, the New Jersey Superior Court granted final approval to a class settlement that guarantees delivery to the class of $40 million in benefits. Class members received cash-equivalent calling cards automatically, and had the option of redeeming them for cash. Lieff Cabraser had been prosecuting the class claims in the Western District of Washington when a settlement in New Jersey state court was announced. Lieff Cabraser objected to that settlement as inadequate because it would have only provided $1.5 million in benefits without a cash option, and the court agreed, declining to approve it. Thereafter, Lieff Cabraser negotiated the new settlement providing $40 million to the class, and the settlement was approved.

16.     ***Berger v. Property I.D. Corporation***, No. CV 05-5373-GHK (C.D. Cal.). In January 2009, the Court granted final approval to a $39.4 million settlement with several of the nation's largest real estate brokerages, including companies doing business as Coldwell Banker, Century 21, and ERA Real Estate, and California franchisors for RE/MAX and Prudential California Realty, in an action under the Real Estate Settlement Procedures Act on behalf of California home sellers. Plaintiffs charged that the brokers and Property I.D. Corporation set up straw companies as a way to disguise kickbacks for referring their California clients' natural hazard disclosure report business to Property I.D. (the report is required to sell a home in California). Under the settlement, hundreds of thousands of California home sellers were eligible to receive a full refund of the cost of their report, typically about $100.

17.     ***In re Tri-State Crematory Litigation***, MDL No. 1467 (N.D. Ga.). In March 2004, Lieff Cabraser delivered opening statements and began testimony in a class action by families whose loved ones were improperly cremated and desecrated by Tri-State Crematory in Noble, Georgia. The

families also asserted claims against the funeral homes that delivered the decedents to Tri-State Crematory for failing to ensure that the crematory performed cremations in the manner required under the law and by human decency. One week into trial, settlements with the remaining funeral home defendants were reached and brought the settlement total to approximately $37 million. Trial on the class members' claims against the operators of crematory began in August 2004. Soon thereafter, these defendants entered into a $80 million settlement with plaintiffs. As part of the settlement, all buildings on the Tri-State property were razed. The property will remain in a trust so that it will be preserved in peace and dignity as a secluded memorial to those whose remains were mistreated, and to prevent crematory operations or other inappropriate activities from ever taking place there. Earlier in the litigation, the Court granted plaintiffs' motion for class certification in a published order. 215 F.R.D. 660 (2003).

18.  ***In re American Family Enterprises***, MDL No. 1235 (D. N.J.). Lieff Cabraser served as Co-Lead Counsel for a nationwide class of persons who received any sweepstakes materials sent under the name "American Family Publishers." The class action lawsuit alleged that defendants deceived consumers into purchasing magazine subscriptions and merchandise in the belief that such purchases were necessary to win an American Family Publishers' sweepstakes prize or enhanced their chances of winning a sweepstakes prize. In September 2000, the Court granted final approval of a $33 million settlement of the class action. In April 2001, over 63,000 class members received refunds averaging over $500 each, representing 92% of their eligible purchases. In addition, American Family Publishers agreed to make significant changes to the way it conducts the sweepstakes.

19.  ***Cincotta v. California Emergency Physicians Medical Group,*** No. 07359096 (Cal. Supr. Ct.). Lieff Cabraser served as class counsel for nearly 100,000 uninsured patients that alleged they were charged excessive and unfair rates for emergency room service across 55 hospitals throughout California. The settlement, approved on October 31, 2008, provided complete debt elimination, 100% cancellation of the bill, to uninsured patients treated by California Emergency Physicians Medical Group during the 4-year class period. These benefits were valued at $27 million. No claims were required, so all of these bills were cancelled. In addition, the settlement required California Emergency Physicians Medical Group prospectively to (1) maintain certain discount policies for all charity care patients; (2) inform patients of the available discounts by enhanced communications; and (3) limit significantly the type of collections practices available for collecting from charity care patients.

20.    **In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation**, MDL No. 1715.  Lieff Cabraser served as Co-Lead Counsel for borrowers who alleged that Ameriquest engaged in a predatory lending scheme based on the sale of loans with illegal and undisclosed fees and terms.  In August 2010, the Court approved a $22 million settlement.

21.    ***Yarrington v. Solvay Pharmaceuticals***, No. 09-CV-2261 (D. Minn.).  In March 2010, the Court granted final approval to a $16.5 million settlement with Solvay Pharmaceuticals, one of the country's leading pharmaceutical companies.  Lieff Cabraser served as Co-Lead Counsel, representing a class of persons who purchased Estratest—a hormone replacement drug.  The class action lawsuit alleged that Solvay deceptively marketed and advertised Estratest as an FDA-approved drug when in fact Estratest was not FDA-approved for any use.  Under the settlement, consumers obtained partial refunds for up to 30% of the purchase price paid of Estratest.  In addition, $8.9 million of the settlement was allocated to fund programs and activities devoted to promoting women's health and well-being at health organizations, medical schools, and charities throughout the nation.

22.    ***Reverse Mortgage Cases***, JCCP No. 4061 (San Mateo County Supr Ct., Cal.).  Transamerica Corporation, through its subsidiary Transamerica Homefirst, Inc., sold "reverse mortgages" marketed under the trade name "Lifetime."  The Lifetime reverse mortgages were sold exclusively to seniors, *i.e.*, persons 65 years or older.  Lieff Cabraser, with co-counsel, filed suit on behalf of seniors alleging that the terms of the reverse mortgages were unfair, and that borrowers were misled as to the loan terms, including the existence and amount of certain charges and fees.  In 2003, the Court granted final approval to an $8 million settlement of the action.

## V.    Antitrust/Trade Regulation/Intellectual Property

### A.    Current Cases

1.    ***In re TFT-LCD (Flat Panel) Antitrust Litigation,*** MDL No. 1827 (N.D. Cal.).  Representing direct purchasers of flat-panel TV screens and other products incorporating liquid crystal displays, Lieff Cabraser serves as court appointed Co-Lead Counsel in nationwide class action litigation against the world's leading manufacturers of Thin Film Transistor Liquid Crystal Displays.  TFT-LCDs are used in flat-panel televisions as well as computer monitors, laptop computers, mobile phones, personal digital assistants and other devices.  Plaintiffs charge that defendants conspired to raise, fix and stabilize the prices of TFT-LCDs.  On March 3, 2009, U.S. District Court Judge Susan Illston denied defendants' motions to dismiss direct purchaser plaintiffs' First Amended Consolidated Complaint.  The

Court found that the plaintiffs' amended consolidated complaints "more than adequately allege the involvement of each defendant and put defendants on notice of the claims against them." On March 28, 2010, the Court certified a class of all persons and entities that directly purchased TFT-LCDs from January 1, 1999 through December 31, 2006.

2.     ***In re Static Random Access Memory (SRAM) Antitrust Litigation***, MDL No. 1819 (N.D. Cal.). Plaintiffs allege that from November 1, 1996 through December 31, 2006, the defendant manufacturers conspired to fix and maintain artificially high prices for SRAM, a type of memory used in many products, including smartphones and computers. Lieff Cabraser serves as one of three members of the Steering Committee for consumers and other indirect purchasers of SRAM. In February 2008, U.S. District Court Judge Claudia Wilken denied most aspects of defendants' motions to dismiss plaintiffs' complaints. In November 2009, the Court certified a nationwide class seeking injunctive relief and twenty-seven state classes seeking damages. In 2010, the Court granted final approval of settlements reached as of that hearing date. There will be a hearing on the remaining settlements that plaintiffs have proposed in 2011.

3.     ***Sullivan v. DB Investments***, No. 04-02819 (D. N.J.). Lieff Cabraser serves as class counsel for consumers who purchased diamonds from 1994 through March 31, 2006, in a class action lawsuit against the De Beers group of companies. Plaintiffs charge that De Beers conspired to monopolize the sale of rough diamonds. In May 2008, the Court granted final approval of a settlement that provides $295 million to purchasers of diamonds and diamond jewelry, including $130 million to consumers. The settlement also prevents De Beers from continuing its illegal business practices and requires De Beers to submit to the jurisdiction of the Court to enforce the settlement. The case is presently on appeal.

4.     ***Charles Schwab Bank, N.A. v. Bank of America Corp.***, No. 11 cv 4187 (N.D. Cal.). Lieff Cabraser represents The Charles Schwab Corporation and its affiliates Charles Schwab Bank, N.A., and Charles Schwab & Co., Inc., which manages the investments of the Charles Schwab Bank, N.A., (collectively "Schwab") in a lawsuit against Bank of America Corporation, Credit Suisse Group AG; J.P. Morgan Chase & Co., Citibank, Inc., and additional banks for allegedly manipulating the London Interbank Offered Rate ("LIBOR"). The complaint alleges that beginning in 2007 the defendants conspired to understate their true costs of borrowing, causing the calculation of LIBOR to be set artificially low. As a result, Schwab received less than its rightful rates of return on its investments. The complaint asserts claims under federal antitrust and securities laws, the federal Racketeer Influenced and Corrupt Organizations Act, and the statutory and common law of California.

5.  ***Coalition for Elders' Independence, Inc. v. Biovail Corporation,*** No. CV023320 (Cal. Supr. Ct.).  Lieff Cabraser serves as Co-Lead Counsel for class of consumers who purchased the drug Adalat, also known as Nifedipine.  Plaintiffs allege that two generic manufacturers of Adalat entered into an agreement to allocate the dosages markets for generic Adalat, thereby substantially reducing competition and unlawfully inflating prices on both generic and brand-name Adalat, in violation of state antitrust laws.

6.  ***Electrical Carbon Products Cases***, JCCP No. 4294 (San Francisco Supr. Court).  Lieff Cabraser represents the City and County of San Francisco and a class of indirect purchasers of carbon brushes and carbon collectors on claims that producers fixed the price of carbon brushes and carbon collectors in violation of the Cartwright Act and the Unfair Competition Law.  Lieff Cabraser also represents the People of the State of California in claims arising from the Unfair Competition Law.

7.  ***In re ATM Antitrust Litigation***, No. C-04-2676 (N.D. Cal.).  Lieff Cabraser represents a putative class of ATM users against a number of banks comprising the Star ATM Network, alleging that those banks conspired to fix the price of ATM interchange fees, thereby unlawfully inflating fees paid by ATM users in the network. Plaintiffs timely filed an amended notice of appeal on December 1, 2010.

## B.   Successes

1.  ***Natural Gas Antitrust Cases***, JCCP Nos. 4221, 4224, 4226 & 4228 (Cal. Supr. Ct.).  In 2003, the Court approved a landmark of $1.1 billion settlement in class action litigation against El Paso Natural Gas Co. for manipulating the market for natural gas pipeline transmission capacity into California.  Lieff Cabraser served as Plaintiffs' Co-Lead Counsel and Co-Liaison Counsel in the *Natural Gas Antitrust Cases I-IV.*

In June 2007, the Court granted final approval to a $67.39 million settlement of a series of class action lawsuits brought by California business and residential consumers of natural gas against a group of natural gas suppliers, Reliant Energy Services, Inc., Duke Energy Trading and Marketing LLC, CMS Energy Resources Management Company, and Aquila Merchant Services, Inc.

Plaintiffs charged defendants with manipulating the price of natural gas in California during the California energy crisis of 2000-2001 by a variety of means, including falsely reporting the prices and quantities of natural gas transactions to trade publications, which compiled daily and monthly natural gas price indices; prearranged wash trading; and, in the case of Reliant, "churning" on the Enron Online electronic trading platform,

which was facilitated by a secret netting agreement between Reliant and Enron.

The 2007 settlement followed a settlement reached in 2006 for $92 million partial settlement with Coral Energy Resources, L.P.; Dynegy Inc. and affiliates; EnCana Corporation; WD Energy Services, Inc.; and The Williams Companies, Inc. and affiliates.

2.  ***Wholesale Electricity Antitrust Cases I & II***, JCCP Nos. 4204 & 4205 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Lead Counsel in the private class action litigation against Duke Energy Trading & Marketing Reliant Energy, and The Williams Companies for claims that the companies manipulated California's wholesale electricity markets during the California energy crisis of 2000-2001.  Extending the landmark victories for California residential and business consumers of electricity, in September 2004, plaintiffs reached  a $206 million settlement with Duke Energy Trading & Marketing, and in August 2005, plaintiffs reached a $460 million settlement with Reliant Energy, settling claims that the companies manipulated California's wholesale electricity markets during the California energy crisis of 2000-01.  Lieff Cabraser earlier entered into a settlement for over $400 million with The Williams Companies.

3.  ***In re Brand Name Prescription Drugs***, MDL No. 997 (N.D. Ill.).  Lieff Cabraser served as Class Counsel for a class of tens of thousands of retail pharmacies against the leading pharmaceutical manufacturers and wholesalers of brand name prescription drugs for alleged price-fixing from 1989 to 1995 in violation of the federal antitrust laws.  Plaintiffs charged that defendants engaged in price discrimination against retail pharmacies by denying them discounts provided to hospitals, health maintenance organizations, and nursing homes.  In 1996 and 1998, the Court approved settlements with certain manufacturers totaling $723 million.

4.  ***Microsoft Private Antitrust Litigation.***  Representing businesses and consumers, Lieff Cabraser prosecuted multiple private antitrust cases against Microsoft Corporation in state courts across the country, including Florida, New York, North Carolina, and Tennessee.  Plaintiffs alleged that Microsoft had engaged in anticompetitive conduct, violated state deceptive and unfair business practices statutes, and overcharged businesses and consumers for Windows operating system software and for certain software applications, including Microsoft Word and Microsoft Office.  In August 2006, the New York Supreme Court granted final approval to a settlement that made available up to $350 million in benefits for New York businesses and consumers.  In August 2004, the Court in the North Carolina action granted final approval to a settlement valued at over $89 million.  In June 2004, the Court in the Tennessee

action granted final approval to a $64 million settlement.  In November 2003, in the Florida Microsoft litigation, the Court granted final approval to a $202 million settlement, one of the largest antitrust settlements in Florida history.  Lieff Cabraser served as Co-Lead Counsel in the New York, North Carolina and Tennessee cases, and held leadership roles in the Florida case.

5.    *In re Linerboard Antitrust Litigation*, MDL No. 1261 (E.D. Pa.).  Lieff Cabraser served as Class Counsel on behalf of a class of direct purchasers of linerboard.  The Court approved a settlement totaling $202 million.

6.    *Azizian v. Federated Department Stores,* No. 3:03 CV 03359 SBA (N.D. Cal.).  In March 2005, the Court granted final approval to a settlement that Lieff Cabraser and co-counsel reached with numerous department store cosmetics manufacturers and retailers.  The settlement is valued at $175 million and includes significant injunctive relief, for the benefit of a nationwide class of consumers of department store cosmetics.  The complaint alleged the manufacturers and retailers violated antitrust law by engaging in anticompetitive practices to prevent discounting of department store cosmetics.

7.    *Pharmaceutical Cases I, II, and III*, JCCP Nos. 2969, 2971 & 2972 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Lead and Co-Liaison Counsel representing a certified class of indirect purchasers (consumers) on claims against the major pharmaceutical manufacturers for violations of the Cartwright Act and the Unfair Competition Act.  The class alleged that defendants unlawfully fixed discriminatory prices on prescription drugs to retail pharmacists in comparison with the prices charged to certain favored purchasers, including HMOs and mail order houses.  In April 1999, the Court approved a settlement providing $148 million in free, brand-name prescription drugs to health agencies that serve California's poor and uninsured.  In October 2001, the Court approved a settlement with the remaining defendants in the case, which provided an additional $23 million in free, brand-name prescription drugs to these agencies.

8.    *In re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass.).  In May 2005, the Court granted final approval to a settlement of a class action lawsuit by patients, insurance companies and health and welfare benefit plans that paid for Lupron, a prescription drug used to treat prostate cancer, endometriosis and precocious puberty.  The settlement requires the defendants, Abbott Laboratories, Takeda Pharmaceutical Company Limited, and TAP Pharmaceuticals, to pay $150 million, inclusive of costs and fees, to persons or entities who paid for Lupron from January 1, 1985 through March 31, 2005.  Plaintiffs charged that the defendants conspired to overstate the drug's average

wholesale price ("AWP"), which resulted in plaintiffs paying more for Lupron than they should have paid.  Lieff Cabraser served as Co-Lead Plaintiffs' Counsel.

9.     ***California Vitamins Cases***, JCCP No. 4076 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Liaison Counsel and Co-Chairman of the Plaintiffs' Executive Committee on behalf of a class of California indirect vitamin purchasers in every level of the chain of distribution.  In January 2002, the Court granted final approval of a $96 million settlement with certain vitamin manufacturers in a class action alleging that these and other manufacturers engaged in price fixing of particular vitamins.  In December 2006, the Court granted final approval to over $8.8 million in additional settlements.

10.    ***In re Buspirone Antitrust Litigation***, MDL No. 1413 (S.D. N.Y.).  In November 2003, Lieff Cabraser obtained a $90 million cash settlement for individual consumers, consumer organizations, and third party payers that purchased BuSpar, a drug prescribed to alleviate symptoms of anxiety.  Plaintiffs alleged that Bristol-Myers Squibb Co. (BMS), Danbury Pharmacal, Inc., Watson Pharmaceuticals, Inc. and Watson Pharma, Inc. entered into an unlawful agreement in restraint of trade under which BMS paid a potential generic manufacturer of BuSpar to drop its challenge to BMS' patent and refrain from entering the market.  Lieff Cabraser served as Plaintiffs' Co-Lead Counsel.

11.    ***In re Travel Agency Commission Antitrust Litigation***, MDL No. 1058 (D. Minn.).  Lieff Cabraser served as Co-Lead Counsel for a certified class of U.S. travel agents on claims against the major U.S. air carriers, who allegedly violated the federal antitrust laws by fixing the commissions paid to travel agents.  In 1997, the Court approved an $82 million settlement.

12.    ***In re Commercial Explosives Antitrust Litigation***, MDL No. 1093 (D. Utah).  Lieff Cabraser served as Class Counsel on behalf of direct purchasers of explosives used in mining operations.  In 1998, the Court approved a $77 million settlement of the litigation.

13.    ***In re Toys 'R' Us Antitrust Litigation***, MDL No. 1211 (E.D. N.Y.).  Lieff Cabraser served as Co-Lead Counsel representing a class of direct purchasers (consumers) who alleged that Toys 'R' Us conspired with the major toy manufacturers to boycott certain discount retailers in order to restrict competition and inflate toy prices.  In February 2000, the Court approved a settlement of cash and product of over $56 million.

14.    ***Meijer v. Abbott Laboratories***, Case No. C 07-5985 CW (N.D. Cal.).  Lieff Cabraser serves as co-counsel for the group of retailers charging that

Abbott Laboratories monopolized the market for AIDS medicines used in conjunction with Abbott's prescription drug Norvir. These drugs, known as Protease Inhibitors, have enabled patients with HIV to fight off the disease and live longer. In January 2011, the Court denied Abbott's motion for summary judgment on plaintiffs' monopolization claim. Trial commenced in February 2011. After opening statements and the presentation of four witnesses and evidence to the jury, plaintiffs and Abbott Laboratories entered into a $52 million settlement. The Court granted final approval to the settlement in August 2011.

15.     ***In re Carpet Antitrust Litigation***, MDL No. 1075 (N.D. Ga.). Lieff Cabraser served as Class Counsel and a member of the trial team for a class of direct purchasers of twenty-ounce level loop polypropylene carpet. Plaintiffs, distributors of polypropylene carpet, alleged that Defendants, seven manufacturers of polypropylene carpet, conspired to fix the prices of polypropylene carpet by agreeing to eliminate discounts and charge inflated prices on the carpet. In 2001, the Court approved a $50 million settlement of the case.

16.     ***In re High Pressure Laminates Antitrust Litigation***, MDL No. 1368 (S.D. N.Y.). Lieff Cabraser served as Trial Counsel on behalf of a class of direct purchasers of high pressure laminates. The case in 2006 was tried to a jury verdict. The case settled for over $40 million.

17.     ***Schwartz v. National Football League***, No. 97-CV-5184 (E.D. Pa.). Lieff Cabraser served as counsel for individuals who purchased the "NFL Sunday Ticket" package of private satellite transmissions in litigation against the National Football League for allegedly violating the Sherman Act by limiting the distribution of television broadcasts of NFL games by satellite transmission to one package. In August 2001, the Court approved of a class action settlement that included: (1) the requirement that defendants provide an additional weekly satellite television package known as Single Sunday Ticket for the 2001 NFL football season, under certain circumstances for one more season, and at the defendants' discretion thereafter; (2) a $7.5 million settlement fund to be distributed to class members; (3) merchandise coupons entitling class members to discounts at the NFL's Internet store which the parties value at approximately $3 million; and (4) $2.3 million to pay for administering the settlement fund and notifying class members.

18.     ***In re Lasik/PRK Antitrust Litigation***, No. CV 772894 (Cal. Supr. Ct.). Lieff Cabraser served as a member of Plaintiffs' Executive Committee in class actions brought on behalf of persons who underwent Lasik/PRK eye surgery. Plaintiffs alleged that defendants, the manufacturers of the laser system used for the laser vision correction surgery, manipulated fees charged to ophthalmologists and others who

performed the surgery, and that the overcharges were passed onto consumers who paid for laser vision correction surgery.  In December 2001, the Court approved a $12.5 million settlement of the litigation.

19.    ***Quantegy Recording Solutions, LLC, et al. v. Toda Kogyo Corp., et al.***, No. C-02-1611 (PJH).  In August 2006 and January 2009, the Court approved the final settlements in antitrust litigation against manufacturers, producers, and distributors of magnetic iron oxide ("MIO").  MIO is used in the manufacture of audiotape, videotape, and data storage tape.  Plaintiffs alleged that defendants violated federal antitrust laws by conspiring to fix, maintain, and stabilize the prices and to allocate the worldwide markets for MIO from 1991 to October 12, 2005.  The value of all settlements reached in the litigation was $6.35 million.  Lieff Cabraser served as Plaintiffs' Co-Lead Counsel.

20.    ***Carbon Fiber Cases I, II, III***, JCCP Nos. 4212, 4216 & 4222 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Liaison Counsel on behalf of indirect purchasers of carbon fiber.  Plaintiffs alleged that defendants illegally conspired to raise prices of carbon fiber.  Settlements have been reached with all of the defendants.

21.    ***Methionine Cases I and II***, JCCP Nos. 4090 & 4096 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Lead Counsel on behalf of indirect purchasers of methionine, an amino acid used primarily as a poultry and swine feed additive to enhance growth and production.  Plaintiffs alleged that the companies illegally conspired to raise methionine prices to super-competitive levels.  The case settled.

22.    ***McIntosh v. Monsanto***, No. 4:01CV65RSW (E.D. Mo.).  Lieff Cabraser served as Co-Lead Counsel in a class action lawsuit against Monsanto Company and others alleging that a conspiracy to fix prices on genetically modified Roundup Ready soybean seeds and Yieldgard corn seeds.  The case settled.

23.    ***Tortola Restaurants v. Minnesota Mining and Manufacturing***, No. 314281 (Cal. Supr. Ct).  Lieff Cabraser served as Co-Lead Counsel on behalf of indirect purchasers of Scotch-brand invisible and transparent tape.  Plaintiffs alleged that defendant 3M conspired with certain retailers to monopolize the sale of Scotch-brand tape in California.  The case was resolved as part of a nationwide settlement that Lieff Cabraser negotiated, along with co-counsel.

24.    ***In re Compact Disc Antitrust Litigation***, MDL No. 1216 (C.D. Cal.).  Lieff Cabraser served as Co-Lead Counsel for the direct purchasers of compact discs on claims that the producers fixed the price of CDs in violation of the federal antitrust laws.

25.     ***In re Electrical Carbon Products Antitrust Litigation***, MDL No. 1514 (D.N.J.).  Lieff Cabraser represented the City and County of San Francisco and a class of direct purchasers of carbon brushes and carbon collectors on claims that producers fixed the price of carbon brushes and carbon collectors in violation of the Sherman Act.

## VI.    Economic Injury Product Defects

### A.    Current Cases

1.     ***In re Mercedes-Benz Tele-Aid Contract Litigation***, MDL No. 1914 (D. N.J.).  With co-counsel, Lieff Cabraser represents owners and lessees of Mercedes-Benz cars and SUVs equipped with the Tele-Aid system, an emergency response system which links subscribers to road-side assistance operators by using a combination of global positioning and cellular technology.  In 2002, the Federal Communications Commission issued a rule, effective 2008, eliminating the requirement that wireless phone carriers provide analog-based networks.  The Tele-Aid system offered by Mercedes-Benz relied on analog signals.  Plaintiffs charge that Mercedes-Benz committed fraud in promoting and selling the Tele-Aid system without disclosing to buyers of certain model years that the Tele-Aid system as installed would become obsolete in 2008.

In an April 2009 published order, the Court certified a nationwide class of all persons or entities in the U.S. who purchased or leased a Mercedes-Benz vehicle equipped with an analog-only Tele Aid system after August 8, 2002, and (1) subscribed to Tele Aid service until being informed that such service would be discontinued at the end of 2007, or (2) purchased an upgrade to digital equipment.  On May 10, 2011, the Court granted preliminary approval of a settlement that provides class members between a $650 check or a $750 to $1,300 certificate toward the purchase or lease of new Mercedes-Benz vehicle, depending upon whether or not they paid for an upgrade of the analog Tele Aid system and whether they still own their vehicle.

2.     ***In re Burnham Hydronics, Inc. Litigation,*** No. 10-cv-3968-MAM (E.D. Penn).  Lieff Cabraser serves as Co-Counsel for customers who purchased residential boilers. In the Limited Water Warranty, Burnham claimed its Burnham V7 and V8 series boilers were durable and "free of defects." Plaintiffs allege that certain V7 and V8 series boilers contain inherent defects in the heat exchanger that cause the boilers block to crack, corrode, and fail prematurely.

3.     ***In re Whirlpool Corporation Front-Loading Washer Products Liability Litigation***, MDL No. 2001 (N.D. Ohio).  Lieff Cabraser serves as Lead Counsel in class action litigation against Whirlpool Corporation.

913000.1                                    - 45 -

The complaint charges that certain Whirlpool high-efficiency front-loading automatic washers develop mold, resulting in a moldy odor on clothes and permeates the washing machines and customers' homes. Although many class members have spent money for repairs and on other purported remedies, the complaint alleges that none of these remedies eliminates the problem.

**B.    Successes**

1.    ***Cartwright v. Viking Industries***, No. 2:07-cv-2159 FCD (E.D. Cal.) Lieff Cabraser represented California homeowners in a class action lawsuit which alleged that over one million Series 3000 windows produced and distributed by Viking between 1989 and 1999 were defective. The plaintiffs charged that the windows were not watertight and allowed for water to penetrate the surrounding sheetrock, drywall, paint or wallpaper. Under the terms of a settlement approved by the Court in August 2010, all class members who submitted valid claims were entitled to receive as much as $500 per affected property.

2.    ***Pelletz. v. Advanced Environmental Recycling Technologies*** (W.D. Wash.). Lieff Cabraser served as Co-Lead Counsel in a case alleging that ChoiceDek decking materials, manufactured by AERT, developed persistent and untreatable mold spotting throughout their surface. In a published opinion in January 2009, the Court approved a settlement that provided affected consumers with free and discounted deck treatments, mold inhibitor applications, and product replacement and reimbursement.

3.    ***Create-A-Card v. Intuit***, No. C07-6452 WHA (N.D. Cal.). Lieff Cabraser, with co-counsel, represented business users of QuickBooks Pro for accounting that lost their QuickBooks data and other files due to faulty software code sent by Intuit, the producer of QuickBooks. In September 2009, the Court granted final approval to a settlement that provided all class members who filed a valid claim with a free software upgrade and compensation for certain data-recovery costs. Commenting on the settlement and the work of Lieff Cabraser on September 17, 2009, U.S. District Court Judge William H. Alsup stated, "I want to come back to something that I observed in this case firsthand for a long time now. I think you've done an excellent job in the case as class counsel and the class has been well represented having your and your firm in the case."

4.    ***Grays Harbor Adventist Christian School v. Carrier Corporation***, No. 05-05437 (W.D. Wash.). In April 2008, the Court granted final approval to a nationwide settlement in a class action lawsuit filed by current and past owners of high-efficiency furnaces manufactured and sold by Carrier Corporation and equipped with polypropylene-

laminated condensing heat exchangers ("CHXs"). Carrier sold the furnaces under the Carrier, Bryant, Day & Night and Payne brand-names. Plaintiffs alleged that starting in 1989 Carrier began manufacturing and selling high efficiency condensing furnaces manufactured with a secondary CHX made of inferior materials. Plaintiffs alleged that as a result, the CHXs, which Carrier warranted and consumers expected to last for 20 years, failed prematurely. The settlement provides an enhanced 20-year warranty of free service and free parts for consumers whose furnaces have not yet failed. The settlement also offers a cash reimbursement for consumers who already paid to repair or replace the CHX in their high-efficiency Carrier furnaces.

An estimated three million or more consumers in the U.S. and Canada purchased the furnaces covered under the settlement. Plaintiffs valued the settlement to consumers at over $300 million based upon the combined value of the cash reimbursement and the estimated cost of an enhanced warranty of this nature.

5.    ***Weekend Warrior Trailer Cases***, JCCP No. 4455 (Cal. Supr. Ct.). Lieff Cabraser, with co-counsel, represented owners of Weekend Warrior trailers manufactured between 1998 and 2006 that were equipped with frames manufactured, assembled, or supplied by Zieman Manufacturing Company. The trailers, commonly referred to as "toy haulers," were used to transport outdoor recreational equipment such as motorcycles and all-terrain vehicles. Plaintiffs charged that Weekend Warrior and Zieman knew of design and performance problems, including bent frames, detached siding, and warped forward cargo areas, with the trailers, and concealed the defects from consumers. In February 2008, the Court approved a $5.5 million settlement of the action that provided for the repair and/or reimbursement of the trailers. In approving the settlement, California Superior Court Judge Thierry P. Colaw stated that class counsel were "some of the best" and "there was an overwhelming positive reaction to the settlement" among class members.

6.    ***Lundell v. Dell***, No. C05-03970 (N.D. Cal.). Lieff Cabraser served as Lead Class Counsel for consumers who experienced power problems with the Dell Inspiron 5150 notebook. In December 2006, the Court granted final approval to a settlement of the class action which extended the one-year limited warranty on the notebook for a set of repairs related to the power system. In addition, class members that paid Dell or a third party for repair of the power system of their notebook were entitled to a 100% cash refund from Dell.

7.    ***Kan v. Toshiba American Information Systems***, No. BC327273 (Los Angeles Super. Ct.). Lieff Cabraser served as Co-Lead Counsel for a class of all end-user persons or entities who purchased or otherwise

acquired in the United States, for their own use and not for resale, a new Toshiba Satellite Pro 6100 Series notebook. Consumers alleged a series of defects were present in the notebook. In 2006, the Court approved a settlement that extended the warranty for all Satellite Pro 6100 notebooks, provided cash compensation for certain repairs, and reimbursed class members for certain out-of-warranty repair expenses.

8.  ***Foothill/DeAnza Community College District v. Northwest Pipe Company***, No. C-00-20749 (N.D. Cal.). In June 2004, the court approved the creation of a settlement fund of up to $14.5 million for property owners nationwide with Poz-Lok fire sprinkler piping that fails. Since 1990, Poz-Lok pipes and pipe fittings were sold in the U.S. as part of fire suppression systems for use in residential and commercial buildings. After leaks in Poz-Lok pipes caused damage to its DeAnza Campus Center building, Foothill/DeAnza Community College District in California retained Lieff Cabraser to file a class action lawsuit against the manufacturers of Poz-Lok. The college district charged that Poz-Lok pipe had manufacturing and design defects that resulted in the premature corrosion and failure of the product. Under the settlement, owners whose Poz-Lok pipes are leaking today, or over the next 15 years, may file a claim for compensation.

9.  ***Toshiba Laptop Screen Flicker Settlement.*** Lieff Cabraser negotiated a settlement with Toshiba America Information Systems, Inc. ("TAIS") to provide relief for owners of certain Toshiba Satellite 1800 Series, Satellite Pro 4600 and Tecra 8100 personal notebook computers whose screens flickered, dimmed or went blank due to an issue with the FL Inverter Board component. In 2004 under the terms of the Settlement, owners of affected computers who paid to have the FL Inverter issue repaired by either TAIS or an authorized TAIS service provider recovered the cost of that repair, up to $300 for the Satellite 1800 Series and the Satellite Pro 4600 personal computers, or $400 for the Tecra 8100 personal computers. TAIS also agreed to extend the affected computers' warranties for the FL Inverter issue by 18 months.

10. ***McManus v. Fleetwood Enterprises, Inc.***, No. SA-99-CA-464-FB (W.D. Tex.). Lieff Cabraser served as Class Counsel on behalf of original owners of 1994-2000 model year Fleetwood Class A and Class C motor homes. In 2003, the Court approved a settlement that resolved lawsuits pending in Texas and California about braking while towing with 1994 Fleetwood Class A and Class C motor homes. The lawsuits alleged that Fleetwood misrepresented the towing capabilities of new motor homes it sold, and claimed that Fleetwood should have told buyers that a supplemental braking system is needed to stop safely while towing heavy items, such as a vehicle or trailer. The settlement paid $250 to people

who bought a supplemental braking system for Fleetwood motor homes that they bought new.

11.    ***Richison v. American Cemwood Corp.***, No. 005532 (San Joaquin Supr. Ct., Cal.).  Lieff Cabraser served as Co-Lead Class Counsel for an estimated nationwide class of 30,000 owners of homes and other structures on which defective Cemwood Shakes were installed.  In November 2003, the Court granted final approval to a $75 million Phase 2 settlement in the American Cemwood roofing shakes national class action litigation.  This amount was in addition to a $65 million partial settlement approved by the Court in May 2000, and brought the litigation to a conclusion.  The claims period runs through 2015.

12.    ***ABS Pipe Litigation***, JCCP No. 3126 (Contra Costa County Supr. Ct., Cal.).  Lieff Cabraser served as Lead Class Counsel on behalf of property owners whose ABS plumbing pipe was allegedly defective and caused property damage by leaking.  Six separate class actions were filed in California against five different ABS pipe manufacturers, numerous developers of homes containing the ABS pipe, as well as the resin supplier and the entity charged with ensuring the integrity of the product.  Between 1998 and 2001, we achieved 12 separate settlements in the class actions and related individual lawsuits for approximately $78 million.

Commenting on the work of Lieff Cabraser and co-counsel in the case, California Superior Court (now appellate) Judge Mark B. Simons stated on May 14, 1998: "The attorneys who were involved in the resolution of the case certainly entered the case with impressive reputations and did nothing in the course of their work on this case to diminish these reputations, but underlined, in my opinion, how well deserved those reputations are."

13.    ***Williams v. Weyerhaeuser***, No. 995787 (San Francisco Supr. Ct.).  Lieff Cabraser served as Class Counsel on behalf of a nationwide class of hundreds of thousands or millions of owners of homes and other structures with defective Weyerhaeuser hardboard siding.  A California-wide class was certified for all purposes in February 1999, and withstood writ review by both the California Court of Appeal and Supreme Court of California.  In 2000, the Court granted final approval to a nationwide settlement of the case which provides class members with compensation for their damaged siding, based on the cost of replacing or, in some instances, repairing, damaged siding.  The settlement has no cap, and requires Weyerhaeuser to pay all timely, qualified claims over a nine year period.  The claims program is underway and paying claims.

14.    ***Naef v. Masonite***, No. CV-94-4033 (Mobile County Circuit Ct., Ala.).  Lieff Cabraser served as Co-Lead Class Counsel on behalf of a nationwide

Class of an estimated 4 million homeowners with allegedly defective hardboard siding manufactured and sold by Masonite Corporation, a subsidiary of International Paper, installed on their homes. The Court certified the class in November 1995, and the Alabama Supreme Court twice denied extraordinary writs seeking to decertify the Class, including in *Ex Parte Masonite*, 681 So. 2d 1068 (Ala. 1996). A month-long jury trial in 1996 established the factual predicate that Masonite hardboard siding was defective under the laws of most states. The case settled on the eve of a second class-wide trial, and in 1998, the Court approved a settlement. Under a claims program established by the settlement that ran through 2008, class members with failing Masonite hardboard siding installed and incorporated in their property between January 1, 1980, and January 15, 1998, were entitled to make claims, have their homes evaluated by independent inspectors, and receive cash payments for damaged siding. Combined with settlements involving other alleged defective home building products sold by Masonite, the total cash paid to homeowners exceeded $1 billion.

15.   ***In re General Motors Corp. Pick-Up Fuel Tank Products Liability Litigation***, MDL No. 961 (E.D. Pa.). Lieff Cabraser served as court-appointed Co-Lead Counsel representing a class of 4.7 million plaintiffs who owned 1973-1987 GM C/K pickup trucks with allegedly defective gas tanks. The Consolidated Complaint asserted claims under the Lanham Act, the Magnuson-Moss Act, state consumer protection statutes, and common law. In 1995, the Third Circuit vacated the District Court settlement approval order and remanded the matter to the District Court for further proceedings. In July 1996, a new nationwide class action was certified for purposes of an enhanced settlement program valued at a minimum of $600 million, plus funding for independent fuel system safety research projects. The Court granted final approval of the settlement in November 1996.

16.   ***In re Louisiana-Pacific Inner-Seal Siding Litigation***, No. C-95-879-JO (D. Ore.). Lieff Cabraser served as Co-Lead Class Counsel on behalf of a nationwide class of homeowners with defective exterior siding on their homes. Plaintiffs asserted claims for breach of warranty, fraud, negligence, and violation of consumer protection statutes. In 1996, U.S. District Judge Robert E. Jones entered an Order, Final Judgment and Decree granting final approval to a nationwide settlement requiring Louisiana-Pacific to provide funding up to $475 million to pay for inspection of homes and repair and replacement of failing siding over the next seven years.

17.   ***In re Intel Pentium Processor Litigation***, No. CV 745729 (Santa Clara Supr. Ct., Cal.). Lieff Cabraser served as one of two court appointed Co-Lead Class Counsel, and negotiated a settlement, approved by the

Court in June 1995, involving both injunctive relief and damages having an economic value of approximately $1 billion. The chip replacement program has been implemented, and is ongoing.

18.    ***Cox v. Shell***, No. 18,844 (Obion County Chancery Ct., Tenn.). Lieff Cabraser served as Class Counsel on behalf of a nationwide class of approximately 6 million owners of property equipped with defective polybutylene plumbing systems and yard service lines. In November 1995, the Court approved a settlement involving an initial commitment by Defendants of $950 million in compensation for past and future expenses incurred as a result of pipe leaks, and to provide replacement pipes to eligible claimants. The deadline for filing claims expired in 2009.

19.    ***Hanlon v. Chrysler Corp.***, No. C-95-2010-CAL (N.D. Cal.). In 1995, the district court approved a $200+ million settlement enforcing Chrysler's comprehensive minivan rear latch replacement program, and to correct alleged safety problems with Chrysler's pre-1995 designs. As part of the settlement, Chrysler agreed to replace the rear latches with redesigned latches. The settlement was affirmed on appeal by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (1998).

20.    ***Gross v. Mobil***, No. C 95-1237-SI (N.D. Cal.). Lieff Cabraser served as Plaintiffs' Class Counsel in this nationwide action involving an estimated 2,500 aircraft engine owners whose engines were affected by Mobil AV-1, an aircraft engine oil. Plaintiffs alleged claims for strict liability, negligence, misrepresentation, violation of consumer protection statutes, and for injunctive relief. Plaintiffs obtained a preliminary injunction requiring Defendant Mobil Corporation to provide notice to all potential class members of the risks associated with past use of Defendants' aircraft engine oil. In addition, Plaintiffs negotiated a proposed Settlement, granted final approval by the Court in November 1995, valued at over $12.5 million, under which all Class Members were eligible to participate in an engine inspection and repair program, and receive compensation for past repairs and for the loss of use of their aircraft associated with damage caused by Mobil AV-1.

## VII.    **Environmental and Toxic Exposures**

### A.    **Current Cases**

1.    ***In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico***, MDL No. 2179 (E.D. La.). Lieff Cabraser serves on the Court-appointed Plaintiffs' Steering Committee and with co-counsel represents fishermen, property owners, business owners, wage earners, and other harmed parties in class action litigation against BP, Transocean, Halliburton, Cameron, and other defendants involved in the Deepwater

Horizon oil rig blowout and resulting oil spill in the Gulf of Mexico on April 20, 2010. The Master Complaints allege that the defendants were insouciant in addressing the operations of the well and the oil rig, ignored warning signs of the impending disaster, and failed to employ and/or follow proper safety measures, worker safety laws, and environmental protection laws in favor of cost-cutting measures.

2. ***Kingston, Tennessee TVA Coal Ash Spill Litigation***, No. 3:09-cv-09 (E.D. Tenn.). On December 22, 2008, more than a billion gallons of coal fly ash spilled when a dike burst on a retention pond at the Kingston Fossil Plant operated by the Tennessee Valley Authority (TVA) in Roane County, Tennessee. Coal ash is the byproduct of burning coal and is considered toxic. The catastrophic failure is the largest environmental disaster involving a spill of coal ash in United States history. Lieff Cabraser represents impacted property owners and businesses. In March 2010, the Court denied in major part TVA's motion to dismiss the litigation. In March 2011, the Court granted in part and denied in part TVA's second motion for summary judgment and delineated the claims plaintiffs could proceed to trial on. Importantly, the Court denied TVA's motion for summary judgment as it related to TVA's liability for its failure to properly train its personnel; its negligence in implementing and enforcing its policies; its negligence in overseeing the construction of and maintaining the coal ash impoundment. Trial is set to commence regarding these issues on September 14, 2011.

3. ***Shomo v. EI DuPont De Nemours***, No. 1:11-cv-00633-UNA (D. Del.). On July 18, 2011, a Pennsylvania homeowner and an Indiana golf course company filed a nationwide class action lawsuit against E.I. du Pont de Nemours & Company ("DuPont"), charging that its herbicide Imprelis is causing widespread death among trees and other non-targeted vegetation across the country. Lieff Cabraser serves as plaintiffs' co-counsel in this lawsuit. Promoted as effective against turfgrass weeds and safer for the environment than predecessors, DuPont introduced Imprelis to the market in late 2010. The complaint charges that DuPont failed to disclose the risks Imprelis poses to trees, even when applied as directed, and failed to provide instructions for the safe application of Imprelis.

**B.    Successes**

1. ***In re Exxon Valdez Oil Spill Litigation***, No. 3:89-cv-0095 HRH (D. Al.). The *Exxon Valdez* ran aground on March 24, 1989, spilling 11 million gallons of oil into Prince William Sound. Lieff Cabraser served as one of the court-appointed Plaintiffs' Class Counsel. The class consisted of fisherman and others whose livelihoods were gravely affected by the disaster. In addition, Lieff Cabraser served on the Class Trial Team that tried the case before a jury in federal court in 1994. The jury

returned an award of $5 billion in punitive damages.

In 2001, the Ninth Circuit Court of Appeals ruled that the original $5 billion punitive damages verdict was excessive.  In 2002, U.S. District Court Judge H. Russell Holland reinstated the award at $4 billion.  Judge Holland stated that, "Exxon officials knew that carrying huge volumes of crude oil through Prince William sound was a dangerous business, yet they knowingly permitted a relapsed alcoholic to direct the operation of the *Exxon Valdez* through Prince William Sound."  In 2003, the Ninth Circuit again directed Judge Holland to reconsider the punitive damages award under United States Supreme Court punitive damages guidelines.  In January 2004, Judge Holland issued his order finding that Supreme Court authority did not change the Court's earlier analysis.

In December 2006, the Ninth Circuit Court of Appeals issued its ruling, setting the punitive damages award at $2.5 billion.  Subsequently, the U.S. Supreme Court further reduced the punitive damages award to $507.5 million, an amount equal to the compensatory damages.  With interest, the total award to the plaintiff class was $1.515 billion.

2.    *In re GCC Richmond Works Cases*, JCCP No. 2906 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Liaison Counsel and Lead Class Counsel in coordinated litigation arising out of the release on July 26, 1993, of a massive toxic sulfuric acid cloud which injured an estimated 50,000 residents of Richmond, California.  The Coordination Trial Court granted final approval to a $180 million class settlement for exposed residents.

3.    *In re Unocal Refinery Litigation*, No. C 94-04141 (Cal. Supr. Ct.).  Lieff Cabraser served as one of two Co-Lead Class Counsel and on the Plaintiffs' Steering Committee in this action against Union Oil Company of California ("Unocal") arising from a series of toxic releases from Unocal's San Francisco refinery in Rodeo, California.  The action was settled in 1997 on behalf of approximately 10,000 individuals for $80 million.

4.    *West v. G&H Seed Co., Aventis CropSciences USA, LLP*, No. 99-C-4984-A (La. State Ct.).  With co-counsel, Lieff Cabraser represented a class of 1,500 Louisiana crawfish farmers.  The farmers sued Bayer CropScience LP claiming the pesticide ICON killed their crawfish and caused economic ruin.  In 2004, the Court approved a $45 million settlement.  The settlement was reached after the parties had presented nearly a month's worth of evidence at trial, and were on the verge of making closing arguments to the jury.

5.    *In re Sacramento River Spill Cases I and II*, JCCP Nos. 2617 & 2620 (Cal. Supr. Ct.).  On July 14, 1991, a Southern Pacific train tanker car

derailed in northern California, spilling 19,000 gallons of a toxic pesticide, metam sodium, into the Sacramento River near the town of Dunsmir.  The metam sodium mixed thoroughly with the river water, and had a devastating effect on the river and surrounding ecosystem.  In addition, many residents living along the river became ill with symptoms that included headaches, shortness of breath, and vomiting.  Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel, Lead Class Counsel, and chaired the Plaintiffs' Litigation Committee in coordinated proceedings that included all of the lawsuits arising out of this toxic spill.  Settlement proceeds of approximately $16 million were distributed pursuant to Court approval of a plan of allocation to four certified plaintiff classes: personal injury, business loss, property damage/diminution, and evacuation.

6. ***Craft v. Vanderbilt University***, Civ. No. 3-94-0090 (M.D. Tenn.). Lieff Cabraser served as Lead Counsel of a certified class of over 800 pregnant women and their children who were intentionally fed radioactive iron without their consent while receiving prenatal care at defendant Vanderbilt's hospital in the 1940s.  The facts surrounding the administration of radioactive iron to the pregnant women and their children *in utero* came to light as a result of Energy Secretary Hazel O'Leary's 1993 disclosures of government-sponsored human radiation experimentation during the Cold War.  Defendants' attempts to dismiss the claims and decertify the class were unsuccessful.  The case was settled in July 1998 for a total of $10.3 million and a formal apology from Vanderbilt.

7. ***Kentucky Coal Sludge Litigation***, No. 00-CI-00245 (Cmmw. Ky.). On October 11, 2000, near Inez, Kentucky, a coal waste storage facility ruptured, spilling 300 million gallons of coal sludge (a wet mixture produced by the treatment and cleaning of coal) into waterways in the region and contaminating hundreds of properties.  This was one of the worst environmental disasters in the Southeastern United States.  With co-counsel, Lieff Cabraser represented over 400 clients in property damage claims, including claims for diminution in the value of their homes and properties.  In April 2003, the parties reached a confidential settlement agreement on favorable terms to the plaintiffs.

8. ***Toms River Childhood Cancer Incidents***, No. L-10445-01 MT (Sup. Ct. NJ).  With co-counsel, Lieff Cabraser represented 69 families in Toms River, New Jersey, each with a child having cancer, that claimed the cancers were caused by environmental contamination in the Toms River area.  Commencing in 1998, the parties—the 69 families, Ciba Specialty Chemicals, Union Carbide and United Water Resources, Inc., a water distributor in the area—participated in an unique alternative dispute resolution process, which lead to a fair and efficient consideration of the

factual and scientific issues in the matter.  In December 2001, under the supervision of a mediator, a confidential settlement favorable to the families was reached.

## VIII.  **False Claims Act**

### A.   **Current Cases**

1.   ***United States ex rel. Dye v. ATK Launch Systems***, No. 1:06CV39TS (D. Utah).  Lieff Cabraser represents a whistleblower who alleges that Defendant ATK Launch Systems knowingly sold defective and potentially dangerous illumination flares to the United States military in violation of the federal False Claims Act.  The case is currently in discovery, with a trial date set for early 2012.

2.   ***State of California ex rel. Associates Against FX Insider Trading v. State Street Corp.***, No. 34-2008-00008457 (Sacramento Supr. Crt., Cal.) ("***State Street I***").  Lieff Cabraser serves as co-counsel for the whistleblowers in this action against State Street Corporation which serves as the contractual custodian for over 40% of public pension funds in the United States.  As the contractual custodian, State Street is responsible for undertaking the foreign currency exchange (FX) transactions necessary to facilitate a customer's purchases or sales of foreign securities.  The complaint charges that State Street violated the California False Claims Act by systematically manipulating the timing of its execution and reporting of FX trades in order to enrich itself, at the expense of California custodial public pension fund clients, including the California Public Employees' Retirement System and the California State Teachers' Retirement System.  The case is in the discovery stage after the trial court denied State Street's demurrer.

3.   ***State of California ex rel. Rockville Recovery Associates v. Multiplan***, No. 34-2010-00079432 (Sacramento Supr. Crt., Cal.).  Lieff Cabraser represents whistleblower Rockville Recovery Associates in a qui tam suit for treble damages and penalties under the California Insurance Frauds Prevention Act, Cal. Insurance Code § 1871.7. The Act is designed to prevent fraud against insurers and, by extension, their policyholders.  The complaint alleges that Sutter hospitals throughout California submit fraudulent bills for anesthesia services to insurers and other payors.

In January 2011, the Court denied Sutter's motion to compel arbitration and sustained in part and overruled in part Sutter's demurrer with leave to amend. In April 2011, the California Insurance Commission moved to join the litigation against Sutter hospitals.

B.    **Successes**

1.    ***United States of America ex rel. Mary Hendow and Julie
      Albertson v. University of Phoenix***, No. 2:03-cv-00457-GEB-DAD
      (E.D. Cal.).  Lieff Cabraser obtained a record whistleblower settlement
      against the University of Phoenix that charged the university had violated
      the incentive compensation ban of the Higher Education Act (HEA) by
      providing improper incentive pay to its recruiters.  The HEA prohibits
      colleges and universities whose students receive federal financial aid from
      paying their recruiters based on the number of students enrolled, which
      creates a risk of encouraging recruitment of unqualified students who,
      Congress has determined, are more likely to default on their loans.  High
      student loan default rates not only result in wasted federal funds, but the
      students who receive these loans and default are burdened for years with
      tremendous debt without the benefit of a college degree.

      The complaint specifically alleged that the University of Phoenix
      defrauded the U.S. Department of Education by obtaining federal student
      loan and Pell Grant monies from the federal government based on false
      statements of compliance with HEA.  In December 2009, the parties
      announced a $78.5 million settlement.  The settlement constitutes the
      second-largest settlement ever in a False Claims Act case in which the
      federal government declined to intervene in the action and largest
      settlement ever involving the Department of Education.   The University
      of Phoenix case led to the Obama Administration passing new regulations
      that took away the so-called "safe harbor" provisions that for-profit
      universities relied on to justify their alleged recruitment misconduct.  For
      his outstanding work as Lead Counsel and the significance of the case,
      *California Lawyer* magazine recognized Lieff Cabraser attorney Robert J.
      Nelson with a California Lawyer of the Year (CLAY) Award.

2.    ***United States of America ex rel. Mauro Vosilla and Steven
      Rossow v. Avaya, Inc.***, Case No. Case No.  CV04-8763 PA JTLx (C.D.
      Cal.).  Lieff Cabraser represented whistleblower in litigation alleging that
      defendants Avaya, Lucent Technologies, and AT&T violated the Federal
      Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, as amended, and False
      Claims Acts of California and several other states.  The complaint alleged
      that defendants charged governmental agencies for the lease, rental, and
      post-warranty maintenance of telephone communications systems and
      services that the governmental agencies no longer possessed and/or were
      no longer maintained by defendants.  In November 2010, the parties
      entered into a $21.75 million settlement of the litigation.

IX.    **International and Human Rights Litigation**

A.    **Successes**

1.    ***Holocaust Cases***.  Lieff Cabraser is one of the leading firms that prosecuted claims by Holocaust survivors and the heirs of Holocaust survivors and victims against banks and private manufacturers and other corporations who enslaved and/or looted the assets of Jews and other minority groups persecuted by the Nazi Regime during the Second World War era.  We serve as Settlement Class Counsel in the case against the Swiss banks that the Court approved a U.S. $1.25 billion settlement in July 2000.  Lieff Cabraser donated its attorneys' fees in the Swiss Banks case, in the amount of $1.5 million, to endow a Human Rights clinical chair at Columbia University Law School.  We were also active in slave labor and property litigation against German and Austrian defendants, and Nazi-era banking litigation against French banks.  In connection therewith, Lieff Cabraser participated in multi-national negotiations that led to Executive Agreements establishing an additional approximately U.S. $5 billion in funds for survivors and victims of Nazi persecution.  Our website provides links to the websites of settlement and claims administrators in these cases.

Commenting on the work of Lieff Cabraser and co-counsel in the litigation against private German corporations, entitled *In re Holocaust Era German Industry, Bank & Insurance Litigation* (MDL No. 1337), U.S. District Court Judge William G. Bassler stated on November 13, 2002:

>    Up until this litigation, as far as I can tell, perhaps with some minor exceptions, the claims of slave and forced labor fell on deaf ears.  You can say what you want to say about class actions and about attorneys, but the fact of the matter is, there was no attention to this very, very large group of people by Germany, or by German industry until these cases were filed. . . .  What has been accomplished here with the efforts of the plaintiffs' attorneys and defense counsel is quite incredible. . . .  I want to thank counsel for the assistance in bringing us to where we are today.  Cases don't get settled just by litigants.  It can only be settled by competent, patient attorneys.

2.    ***Cruz v. U.S., Estados Unidos Mexicanos, Wells Fargo Bank, et al.***, No. 01-0892-CRB (N.D. Cal.).  Working with co-counsel, Lieff Cabraser succeeded in correcting an injustice that dated back 60 years.  The case was brought on behalf of Mexican workers and laborers, known as Braceros ("strong arms"), who came from Mexico to the United States pursuant to bilateral agreements from 1942 through 1946 to aid American

farms and industries hurt by employee shortages during World War II in the agricultural, railroad, and other industries.  As part of the braceros program, employers held back 10% of the workers' wages, which were to be transferred via United States and Mexican banks to savings accounts for each Bracero.  The Braceros were never reimbursed for the portion of their wages placed in the forced savings accounts.

Despite significant obstacles including the aging and passing away of many Braceros, statutes of limitation hurdles, and strong defenses to claims under contract and international law, plaintiffs prevailed in a settlement in February 2009.  Under the settlement, the Mexican government provided a payment to Braceros, or their surviving spouses or children, in the amount of approximately $3,500 (USD).  In approving the settlement on February 23, 2009, U.S. District Court Judge Charles Breyer stated:

> I've never seen such litigation in eleven years on the bench that was more difficult than this one.  It was enormously challenging. . . .  It had all sorts of issues . . . that complicated it:  foreign law, constitutional law, contract law, [and] statute of limitations. . . .  Notwithstanding all of these issues that kept surfacing . . . over the years, the plaintiffs persisted.  I actually expected, to tell you the truth, at some point that the plaintiffs would just give up because it was so hard, but they never did.  They never did.  And, in fact, they achieved a settlement of the case, which I find remarkable under all of these circumstances.

**FIRM BIOGRAPHY:**

**PARTNERS**

**_ELIZABETH J. CABRASER_**, Admitted to practice in California, 1978; U.S. Supreme Court, 1996; U.S. Tax Court, 1979; California Supreme Court, 1978; U.S. District Court, Northern District of California, 1978; Eastern District of California, 1979; Central District of California and Southern District of California, 1992; U.S. District Court, Eastern District of Michigan (2005); U.S. Court of Appeals, Second Circuit, 2009; Third Circuit, 1994; Fifth Circuit, 1992; Sixth Circuit, 1992; Seventh Circuit, 2001; Ninth Circuit, 1979; Tenth Circuit, 1992; Eleventh Circuit, 1992; U.S. District Court, District of Hawaii, 1986.  _Education_:  Boalt Hall School of Law, University of California (J.D., 1978); University of California at Berkeley (A.B., 1975).  _Awards and Honors_:  AV Peer Review Rated, _Martindale-Hubbell_; _The Best Lawyers in America_, based on peer and blue ribbon panel review, selected for list of "_San Francisco's Best Lawyers_," 2005-2012; "Lawdragon 500 Leading Lawyers in America," _Lawdragon_, 2005-2011; "Margaret Brent Women Lawyers of Achievement Award," American Bar Association

Commission on Women in the Profession, 2010; "Top 100 Attorneys in California," *Daily Journal*, 2002-2007, 2010; "Top California Women Litigators," *Daily Journal*, 2007, 2010; "Top 10 Northern California Super Lawyer," *Super Lawyers*, 2011; "Northern California Super Lawyer," *Super Lawyers*, 2004-2011; "Top 100 Northern California Super Lawyers," *Super Lawyers*, 2005-2011; "Top 50 Female Northern California Super Lawyers," *Super Lawyers*, 2005-2011; "Edward Pollock Award," Consumer Attorneys of California, 2008; "Top Women Litigators in California," *Daily Journal*, 2007; "Lawdragon 500 Leading Plaintiffs' Lawyers," *Lawdragon*, Winter 2007; "50 Most Influential Women Lawyers in America," *The National Law Journal*, 1998 & 2007; "Award For Public Interest Excellence," University of San Francisco School of Law Public Interest Law Foundation, 2007; "Top 75 Women Litigators," *Daily Journal*, 2005-2006; "Lawdragon 500 Leading Litigators in America," *Lawdragon*, 2006; "Distinguished Leadership Award," Legal Community Against Violence, 2006; "Women of Achievement Award," Legal Momentum (formerly the NOW Legal Defense & Education Fund), 2006; "100 Most Influential Lawyers in America," *The National Law Journal*, 1997, 2000 & 2006; "Top 30 Securities Litigator," *Daily Journal*, 2005; "Top 50 Women Litigators," *Daily Journal*, 2004; "Citation Award," University of California, Berkeley Boalt Hall, 2003; "Distinguished Jurisprudence Award," Anti-Defamation League, 2002; "Top 30 Women Litigators," *California Daily Journal*, 2002; "Top Ten Women Litigators," *The National Law Journal*, 2001; "Matthew O. Tobriner Public Service Award," Legal Aid Society, 2000; "California Law Business Top 100 Lawyers," *California Daily Journal*, 1998-2000; "California Lawyer of the Year (CLAY)," *California Lawyer*, 1998; "Presidential Award of Merit," Consumer Attorneys of California, 1998; "Public Justice Achievement Award," Public Justice, 1997. *Publications & Presentations*: "Due Process Pre-Empted: Stealth Preemption As a Consequence of Agency Capture" (2009); "Just Choose: The Jurisprudential Necessity to Select a Single Governing Law for Mass Claims Arising from Nationally Marketed Consumer Goods and Services," *Roger Williams University Law Review* (Winter 2009); "California Class Action Classics," Consumer Attorneys of California (January/February Forum 2009); Co-Author with Joy A. Kruse, Bruce Leppla, "Selective Waiver: Recent Developments in the Ninth Circuit and California," (pts. 1 & 2), *Securities Litigation Report* (West Legalworks May & June 2005); "The Manageable Nationwide Class: A Choice-of-Law Legacy of Phillips Petroleum Co. v. Shutts," *University of Missouri- Kansas City Law Review*, Volume 74, Number 3, Spring 2006; Co-Author with Fabrice N. Vincent, "Class Actions Fairness Act of 2005," *California Litigation*, Vol. 18, No. 3 (2005); Editor-in-Chief, *California Class Actions Practice and Procedures* (2003); "A Plaintiffs' Perspective On The Effect of State Farm v. Campbell On Punitive Damages in Mass Torts" (May 2003); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law*, updated and re-published in *5 Newberg on Class Actions* (ABA 2001-2004); Co-Author, "Mass But Not (Necessarily) Class: Emerging Aggregation Alternatives Under the Federal Rules," *ABA 8th Annual National Institute on Class Actions*, New York (Oct. 15, 2004), New Orleans (Oct. 29, 2004); Co-Author, "2004 ABA Toxicology Monograph-California State Law," (January 2004); "Human Rights Violations as Mass Torts: Compensation as a Proxy for Justice in the United States Civil Litigation System"; Co-Author with Fabrice N. Vincent, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-Author with Fabrice N. Vincent, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims

Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002); Coordinating Editor and Co-Author of California section of the *ABA State Class Action Survey* (2001-2002); "Unfinished Business: Reaching the Due Process Limits of Punitive Damages in Tobacco Litigation Through Unitary Classwide Adjudication," *36 Wake Forest Law Review 979* (Winter 2001); "Symposium: Enforcing the Social Contract through Representative Litigation," *33 Connecticut Law Review 1239* (Summer 2001); "Equity for the Victims, Equity for the Transgressor: The Classwide Treatment of Punitive Damages Claims," *74 Tulane Law Review 2005* (June 2000); "Class Action Trends and Developments After Amchem and Ortiz," in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study 1999); Contributor/Editor, *Moore's Federal Practice* (1999); Co-Author, "Preliminary Issues Regarding Forum Selection, Jurisdiction, and Choice of Law in Class Actions," (December 1999); "Life After Amchem: The Class Struggle Continues," *31 Loyola Law Review 373* (1998); "Recent Developments in Nationwide Products Liability Litigation: The Phenomenon of Non-Injury Products Cases, the Impact of Amchem and the Trend Toward State Court Adjudication," *Products Liability* (ABA February 1998); Contributor/Editor, *California Causes of Action* (1998); "Beyond Bifurcation: Multi-Phase Structure in Mass Tort Class Actions," *Class Actions & Derivative Suits* (Spring 1997); "The Road Not Taken: Thoughts on the Fifth Circuit's Decertification of the Castano Class," *SB24 ALI-ABA 433* (1996); "Getting the Word Out: Pre-Certification Notice to Class Members Under Rule 23(d)(2)," *Class Actions & Derivative Suits Newsletter* (October 1995); "Mass Tort Class Action Settlements," *24 CTLA Forum 11* (January-February 1994); "Do You Know the Way from San Jose? The Evolution of Environmental and Toxic Nuisance Class Actions," *Class Actions & Derivative Suits* (Spring 1994); "An Oracle of Change? Realizing the Potential of Emerging Fee Award Methodologies for Enhancing The Role and Control of Investors in Derivative and Class Action Suits," *Principles of Corporate Governance* (ALI October 1994); "How To Streamline Complex Litigation: Tailor a Case Management Order to Your Controversy," *21 The Brief 12* (ABA/TIPS Summer 1992); "The Applicability of the Fraud-On-The-Market Theory to Undeveloped Markets: When Fraud Creates the Market," *12 Class Action Reports 402* (1989); "Mandatory Certification of Settlement Classes," *10 Class Action Reports 151* (1987). *Member*: American Academy of Arts and Sciences (Fellow); American Association for Justice (Fight for Justice Campaign; Women Trial Lawyers Caucus; California State Liaison); American Bar Association (Committee on Mass Torts, Past Co-Chair; Committee on Class Actions and Derivative Suits; Tort and Insurance Practice Section (TIPS); Rules & Procedures Committee, Past Vice-Chair; Civil Procedure & Evidence News Letter, Contributor; Business Law Section); American Law Institute (Council; International Jurisdiction and Judgments and Aggregate Litigation Projects, Advisor); Association of Business Trial Lawyers; Bar Association of San Francisco (Past President, Securities Litigation Section; Board of Directors, 1997-1998; Judiciary Committee); Bar Association of the Fifth Federal Circuit; Bay Area Lawyers for Individual Freedom; California Constitution Revision Commission (1993-1996); California Women Lawyers; Consumer Attorneys of California; Federal Bar Association (Northern District of California Chapter); Federal Civil Rules Advisory Committee (Appointed by Supreme Court, 2011); National Center for State Courts Mass Tort Conference Planning Committee; Ninth Circuit Judicial Conference; Northern District of California Civil Justice Reform Act (Advisory Committee; Advisory Committee on Professional Conduct); Public Justice Foundation; Queen's Bench; State Bar of California.

**RICHARD M. HEIMANN**, Admitted to practice in Pennsylvania, 1972; District of Columbia, 1974; California, U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1975; U.S. Supreme Court, 1980; U.S. Court of Appeals, Second Circuit, 1980; U.S. District Court, District of Hawaii, 1986; New York, 2000. *Education*: Georgetown University (J.D., 1972); *Georgetown Law Journal*, 1971-72; University of Florida (B.S.B.A., with honors, 1969). *Employment*: Mr. Heimann served as Deputy District Attorney and Acting Assistant District Attorney for Tulare County, California, and as an Assistant Public Defender in Philadelphia, Pennsylvania, 1972-74. As a private civil law attorney, Mr. Heimann has tried over 30 civil jury cases, including complex cases such as the successful *FPI/Agretech* and *Edsaco* securities class action trials. In April 2002 in the *Edsaco* case, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd., which included $165 million in punitive damages. *Awards & Honors*: AV Peer Review Rated, Martindale-Hubbell; *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*San Francisco's Best Lawyers*," 2007-2012; California Lawyer of the Year (CLAY) Award, California Lawyer, 2011; "Lawdragon Finalist," Lawdragon, 2009-2011; "Top 100 Attorneys in California," Daily Journal, 2010; "Top Attorneys In Securities Law," Super Lawyers Corporate Counsel Edition, 2010; "Northern California Super Lawyer," Super Lawyers, 2004-2011. *Publications & Presentations:* Securities Law Roundtable, *California Lawyer* (September 2010); Securities Law Roundtable*, California Lawyer* (March 2009); Securities Law Roundtable, *California Lawyer* (April 2008); Securities Law Roundtable, *California Lawyer* (April 2007); Co-Author, "Preliminary Issues Regarding Forum Selection, Jurisdiction, and Choice of Law in Class Actions" (December 1999). *Member*: State Bar of California; Bar Association of San Francisco.

**WILLIAM BERNSTEIN**, Admitted to practice in California, 1975; U.S. Court of Appeals, Ninth Circuit, 1987; U.S. District Court, Northern District of California, 1975; New York and U.S. Supreme Court, 1985; U.S. District Court, Central and Eastern Districts of California, 1991; U.S. District Court, Southern District of California, 1992; U.S. Court of Appeals, Third Circuit, 2008. *Education*: University of San Francisco (J.D., 1975); *San Francisco Law Review*, 1974-75; University of Pennsylvania (B.A., general honors, 1972). *Community Service*: Adjunct Professor of Law, University of San Francisco, Settlement Law, 2006-present; Judge Pro Tem for San Francisco Superior Court, 2000-present; Marin Municipal Court, 1984; Discovery Referee for the Marin Superior Court, 1984-89; Arbitrator for the Superior Court of Marin, 1984-1990. *Awards & Honors*: AV Peer Review Rated, Martindale-Hubbell; "Lawdragon Finalist," *Lawdragon*, 2009-2011; Northern California Super Lawyer," *Super Lawyers*, 2004-2011; "Top Attorneys In Antitrust Law," *Super Lawyers Corporate Counsel Edition*, 2010; Princeton Premier Registry, Business Leaders and Professionals, 2008-2009; "Top 100 Trial Lawyers in California," American Trial Lawyers Association, 2008; *Who's Who Legal*, 2007; Unsung Hero Award, Appleseed, 2006. *Publications & Presentations*: "The Rise and Fall of Enron's One-To-Many Trading Platform," American Bar Association Antitrust Law Section, Annual Spring Meeting (2005); Co-Author with Donald C. Arbitblit, "Effective Use of Class Action Procedures in California Toxic Tort Litigation," *Hastings West-Northwest Journal of Environmental and Toxic Torts Law and Policy*, No. 3 (Spring 1996). *Member*: Bar Association of San Francisco; Marin County Bar Association (Admin. of Justice Committee, 1988); State Bar of California.

**JOSEPH R. SAVERI**, Admitted to practice in California, 1987; U.S. District Court, Northern District of California, 1987; Central District of California, 1995; Southern District of California, 1995; Eastern District of California, 2008; U.S. District Court, Eastern District of Michigan, 2009; U.S. District Court, Eastern District of Wisconsin, 2010; U.S. Court of Appeals, First Circuit, 2004; U.S. Court of Appeals, Second Circuit, 2006; U.S. Court of Appeals, Fifth Circuit, 2009; U.S. Court of Appeals, Seventh Circuit, 1996; U.S. Court of Appeals, Eighth Circuit, 2003; U.S. Court of Appeals, Ninth Circuit, 1987; U.S. Court of Appeals, Federal Circuit 2007; U.S. Supreme Court, 2004. *Education*: University of Virginia (J.D., 1987); University of California at Berkeley (B.A., 1984). *Awards and Honors*: *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*San Francisco's Best Lawyers*," 2012; AV Peer Review Rated, Martindale-Hubbell; "Northern California Super Lawyers," *Super Lawyers*, 2006 - 2011; "Top Attorneys In Antitrust Law," *Super Lawyers* Corporate Counsel Edition, 2010; Lawdragon Finalist," *Lawdragon*, 2009. *Publications & Presentations*: Faculty, 5th Annual Sedona Conference Program on Staying Ahead of eDiscovery Curve (2011); "Dagher: An Admirable Exercise in Restraint," Competition: The Journal of the Antitrust and Unfair Competition Law Section of the State Bar of California, Vol. 15, No. 2 (Fall/Winter 2006); Panelist, *Soaring Prices for Prescription Drugs: Just Rewards for Innovations or Antitrust Violations?*, University of San Francisco Law Review (November 13, 2004); *California Antitrust & Unfair Competition Law 3d* (Antitrust and Unfair Competition Law Section of the State Bar of California 2003); Panelist, Fordham Conference on Electronic Discovery, Discovery Subcommittee of Advisory Committee on the Rules of Civil Procedure; Contributing Author, *California Class Actions Practice and Procedure (*Elizabeth J. Cabraser editor in chief, 2003); "RICO Update," 22 *Review of Securities and Commodities Regulation*, No. 18 (Oct. 25, 1989). *Member*: American Antitrust Institute (Advisory Board); American Bar Association (Antitrust Section); Bar Association of San Francisco; Italian Lawyers Club of San Francisco; Northern District of California's Civil Rules and Practice Committee; State Bar of California; Faculty Member, Sedona Conference Institute, 2011; Ninth Circuit Judicial Conference (Lawyer Representative, 2011); Faculty Member, Sedona Conference on Antitrust Law and Litigation, 2006.

**DONALD C. ARBITBLIT**, Admitted to practice in Vermont, 1979; California and U.S. District Court, Northern District of California, 1986. *Education*: Boalt Hall School of Law, University of California (J.D., 1979); Order of the Coif; Tufts University (B.S., *magna cum laude*, 1974). *Awards and Honors: The Best Lawyers in America,* based on peer and blue ribbon panel review, selected for list of *"San Francisco's Best Lawyers,"* 2012; AV Peer Review Rated, Martindale-Hubbell; "*Lawdragon* Finalist," *Lawdragon*, 2009-2011; "Northern California Super Lawyers," *Super Lawyers*, 2004, 2006-2008. *Publications & Presentations*: Co-Author with Wendy Fleishman, "The Risky Business of Off-Label Use," *Trial* (March 2005);"Comment on Joiner: Decision on the Daubert Test of Admissibility of Expert Testimony," *6 Mealey's Emerging Toxic Torts*, No. 18 (December 1997); Co-author with William Bernstein, "Effective Use of Class Action Procedures in California Toxic Tort Litigation," *3 Hastings West-Northwest Journal of Environmental Law and Policy*, No. 3 (Spring 1996); "The Plight of American Citizens Injured by Transboundary River Pollution," *8 Ecology Law Quarterly*, No. 2 (1979). *Appointments*: Member of the Federal Court-appointed Science Executive Committee, and Chair of the Epidemiology/Clinical Trials Subcommittee, *In re Vioxx*

*Products Liability Litigation*, MDL No. 1657 (E.D. La.); Member of the Federal Court-appointed Science and Expert Witness Committees in *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), *In re Baycol Products Litigation,* MDL No. 1431 (D. Minn.) and *Rezulin Products Liability Litigation*, MDL No. 1348 (S.D.N.Y.). *Member*: State Bar of California; Bar Association of San Francisco.

     **STEVEN E. FINEMAN,** Managing Partner. Admitted to practice in California, 1989; U.S. District Court, Northern, Eastern and Central Districts of California and U.S. Court of Appeals, Ninth Circuit, 1995; U.S. Court of Appeals, Fifth Circuit, 1996; New York, U.S. District Court, Eastern and Southern Districts of New York, U.S. District Court, District of Colorado, 2006; U.S. Court of Appeals, Second Circuit and U.S. Supreme Court, 1997; U.S. District Court for the District of Columbia, 1997. *Education*: University of California, Hastings College of the Law (J.D., 1988); University of California, San Diego (B.A., 1985); Stirling University, Scotland (English Literature and Political Science, 1983-84). *Awards & Honors*: *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*The New York Area's Best Lawyers*," 2005-2012; "Lawdragon Finalist," *Lawdragon*, 2009-present; "New York Super Lawyers," *Super Lawyers*, 2006-present; "Top Attorneys In Securities Law," *Super Lawyers Business Edition*, 2008-present; Consultant to the Office of Attorney General, State of New York, in connection with an industry-wide investigation and settlement concerning health insurers' use of the "Ingenix database" to determine usual and customary rates for out-of-network services, April 2008-February 2009; "100 Managing Partners You Need to Know," *Lawdragon*, 2008; "40 under 40," selected as one of the country's most successful litigators under the age of 40, *The National Law Journal*, 2002. *Publications & Presentations*: Co-Author with Michael J. Miarmi, "The Basics of Obtaining Class Certification in Securities Fraud Cases: U.S. Supreme Court Clarifies Standard, Rejecting Fifth Circuit's 'Loss Causation' Requirement," *Bloomberg Law Reports* (July 5, 2011); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Representing Plaintiffs in Large-Scale Litigation (March 2, 2011, Stanford, California); Stanford University Law School — Panel Member, Symposium on the Future of the Legal Profession, (March 1, 2011, Stanford, California); 4th Annual International Conference on the Globalization of Collective Litigation — Panel Member, Funding Issues: Public versus Private Financing (December 10, 2010, Florida International University College of Law, Miami, Florida); "Bill of Particulars, A Review of Developments in New York State Trial Law," Column, *The Supreme Court's Decisions in Iqbol and Twombly Threaten Access to Federal Courts* (Winter 2010); American Constitution Society for Law and Policy, Access to Justice in Federal Courts — Panel Member, The Iqbal and Twombly Cases (January 21, 2010, New York, New York); American Bar Association, Section of Litigation, The 13th Annual National Institute on Class Actions — Panel Member, Hydrogen Peroxide Will Clear It Up Right Away: Developments in the Law of Class Certification (November 20, 2009, Washington, D.C.); Global Justice Forum, Presented by Robert L. Lieff and Lieff, Cabraser, Heimann & Bernstein, LLP — Conference Co-Host and Moderator of Mediation/Arbitration Panel (October 16, 2009, Columbia Law School, New York, New York); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Courts/U.S. Lawyers in Foreign Courts (April 6, 2009, Stanford, California); Stanford University Law School, Guest Lecturer for Professor

Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Courts/U.S. Lawyers in Foreign Courts (April 16, 2008, Stanford, California); Benjamin N. Cardozo Law School, The American Constitution Society for Law & Policy, and Public Justice, Co-Organizer of conference and Master of Ceremonies for conference, Justice and the Role of Class Actions (March 28, 2008, New York, New York); Stanford University Law School and The Centre for Socio-Legal Studies, Oxford University, Conference on The Globalization of Class Actions, Panel Member, Resolution of Class and Mass Actions (December 13 and 14, 2007, Oxford, England); Editorial Board and Columnist, "Federal Practice for the State Court Practitioner," New York State Trial Lawyers Association's "Bill of Particulars," (2005-present); "Bill of Particulars, A Review of Developments in New York State Trial Law," *Federal Multidistrict Litigation Practice* (Fall 2007); "Bill of Particulars, A Review of Developments in New York State Trial Law," *Pleading a Federal Court Complaint* (Summer 2007); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Courts (April 17, 2007, Palo Alto, California); "Bill of Particulars, A Review of Developments in New York State Trial Law," *Initiating Litigation and Electronic Filing in Federal Court* (Spring 2007); "Bill of Particulars, A Review of Developments in New York State Trial Law," Column, *Federal Court Jurisdiction: Getting to Federal Court By Choice or Removal* (Winter 2007); American Constitution Society for Law and Policy, 2006 National Convention, Panel Member, Finding the Balance: Federal Preemption of State Law (June 16, 2006, Washington, D.C.); Global Justice Forum, Presented by Lieff, Cabraser, Heimann & Bernstein, LLP — Conference Moderator and Panel Member on Securities Litigation (May 19, 2006, Paris, France); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Court (April 25, 2006, Stanford, California); Global Justice Forum, Presented by Lieff, Cabraser, Heimann & Bernstein, LLP — Conference Moderator and Speaker and Papers, The Basics of Federal Multidistrict Litigation: How Disbursed Claims are Centralized in U.S. Practice and Basic Principles of Securities Actions for Institutional Investors (May 20, 2005, London, England); New York State Trial Lawyers Institute, Federal Practice for State Practitioners, Speaker and Paper, *Federal Multidistrict Litigation Practice*, (March 30, 2005, New York, New York), published in "Bill of Particulars, A Review of Developments in New York State Trial Law" (Spring 2005); Stanford University Law School, The Stanford Center on Conflict and Negotiation, Interdisciplinary Seminar on Conflict and Dispute Resolution, Guest Lecturer, In Search of "Global Settlements": Resolving Class Actions and Mass Torts with Finality (March 16, 2004, Stanford, California); Lexis/Nexis, Mealey's Publications and Conferences Group, Wall Street Forum: Mass Tort Litigation, Co-Chair of Event (July 15, 2003, New York, New York); Northstar Conferences, The Class Action Litigation Summit, Panel Member on Class Actions in the Securities Industry, and Paper, Practical Considerations for Investors' Counsel - Getting the Case (June 27, 2003, Washington, D.C.); The Manhattan Institute, Center for Legal Policy, Forum Commentator on Presentation by John H. Beisner, Magnet Courts: If You Build Them, Claims Will Come (April 22, 2003, New York, New York); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's Courses on Complex Litigation, Selecting The Forum For a Complex Case — Strategic Choices Between Federal and State Jurisdictions, and Alternative Dispute Resolution ADR In Mass Tort Litigation, (March 4, 2003, Stanford, California); American Bar Association, Tort and Insurance Practice Section, Emerging Issues Committee, Member of Focus Group on Emerging Issues in Tort and Insurance Practice (coordinated event with New York University Law School

and University of Connecticut Law School, August 27, 2002, New York, New York); Duke University and University of Geneva, "Debates Over Group Litigation in Comparative Perspective," Panel Member on Mass Torts and Products Liability (July 21-22, 2000, Geneva, Switzerland); *New York Law Journal*, Article, Consumer Protection Class Actions Have Important Position, Applying New York's Statuatory Scheme (November 23, 1998); Leader Publications, Litigation Strategist, "Fen-Phen," Articles, *The Admissibility of Scientific Evidence in Fen-Phen Litigation and Daubert Developments: Something For Plaintiffs*, Defense Counsel (June 1998, New York, New York); "Consumer Protection Class Actions Have Important Position, Applying New York's Statutory Scheme," New York Law Journal (November 23, 1998); The Defense Research Institute and Trial Lawyer Association, Toxic Torts and Environmental Law Seminar, Article and Lecture, A Plaintiffs' Counsels' Perspective: What's the Next Horizon? (April 30, 1998, New York, New York); Lexis/Nexis, Mealey's Publications and Conference Group, Mealey's Tobacco Conference: Settlement and Beyond 1998, Article and Lecture, The Expanding Litigation (February 21, 1998, Washington, D.C.); New York State Bar Association, Expert Testimony in Federal Court After Daubert and New Federal Rule 26, Article and Lecture, Breast Implant Litigation: Plaintiffs' Perspective on the Daubert Principles (May 23, 1997, New York, New York); Plaintiff Toxic Tort Advisory Council, Lexis/Nexis, Mealey's Publications and Conferences Group (January 2002-2005). *Member*: American Association for Justice; American Bar Association; American Constitution Society; Association of the Bar of the City of New York; Bar Association of the District of Columbia; Civil Justice Foundation (Board of Trustees, 2004-present); Fight for Justice Camapign; Human Rights First; National Association of Shareholder and Consumer Attorneys (Executive Committee, 2009-present); New York State Bar Association; New York State Trial Lawyers Association (Board of Directors, 2001-2004); New York State Trial Lawyers Association's "Bill of Particulars" (Editorial Board and Columnist, "Federal Practice for the State Court Practitioner," 2005-present); Plaintiff Toxic Tort Advisory Council (Lexis/Nexis, Mealey's Publications and Conferences Group, 2002-2005); Public Justice Foundation (President, July 2011-present; Executive Committee, July 2006-present; Board of Directors, July 2002-present; Co-Chair, Major Donors/Special Gifts Committee, July 2009-present; Class Action Preservation Project Committee, July 2005-present); State Bar of California; Supreme Court Historical Society.

**ROBERT J. NELSON**, Admitted to practice in California, 1987; U.S. District Court, Central District of California, 1987; U.S. District Court, Northern District of California, 1988; U.S. Court of Appeals, Ninth Circuit, 1988; U.S. Court of Appeals, Sixth Circuit, 1995; District of Columbia, 1998; New York, 1999; U.S. District Court, Eastern District of New York, Southern District of New York, 2001; U.S. District Court, Eastern District of California, 2006. *Education*: New York University School of Law (J.D., 1987): Order of the Coif, Articles Editor, *New York University Law Review*; Root-Tilden-Kern Scholarship Program. Cornell University (A.B., *cum laude* 1982): Member, Phi Beta Kappa; College Scholar Honors Program. London School of Economics (General Course, 1980-81): Graded First. *Employment:* Judicial Clerk to Judge Stephen Reinhardt, U.S. Court of Appeals, Ninth Circuit, 1987-88; Assistant Federal Public Defender, Northern District of California, 1988-93; Legal Research and Writing Instructor, University of California-Hastings College of the Law, 1989-91 (Part-time position). *Awards & Honors*: *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for

list of "*San Francisco's Best Lawyers*," 2012; "Lawdragon Finalist," *Lawdragon*, 2009-2011; "California Lawyer Attorney of the Year (CLAY)" Award, *California Lawyer*, 2008, 2010; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2007, 2010; "Northern California Super Lawyer," *Super Lawyers*, 2004-2011;"San Francisco Trial Lawyer of the Year Finalist," San Francisco Trial Lawyers' Association, 2007. *Publications:* False Claims Roundtable, *California Lawyer* (June 2010); Product Liability Roundtable, *California Lawyer* (March 2010); Product Liability Roundtable, *California Lawyer* (July 2009); "Class Action Treatment of Punitive Damages Issues after *Philip Morris v. Williams*: We Can Get There from Here," 2 Charleston Law Review 2 (Spring 2008) (with Elizabeth J. Cabraser); Product Liability Roundtable, California Lawyer (December 2007); Contributing Author, California Class Actions Practice and Procedures (Elizabeth J. Cabraser editor in chief, 2003); "The Importance of Privilege Logs," The Practical Litigator, Vol. II, No. 2 (March 2000) (ALI-ABA Publication); "To Infer or Not to Infer a Discriminatory Purpose: Rethinking Equal Protection Doctrine," 61 New York University Law Review 334 (1986). *Member*: State Bar of California; District of Columbia Bar Association; New York Bar Association; American Bar Association; Fight for Justice Campaign; Bar Association of San Francisco; Consumer Attorneys of California; American Association for Justice; San Francisco Trial Lawyers Association.

**KELLY M. DERMODY**, Admitted to practice in California, 1994; U.S. District Court, Northern District of California, 1995; U.S. Court of Appeals for the Third Circuit (2001); U.S. Court of Appeals for the Fourth Circuit (2008); U.S. Court of Appeals for the Sixth Circuit (2008); U.S. Court of Appeals for the Seventh Circuit (2006); U.S. Court of Appeals for the Ninth Circuit (2007); U.S. District Court of Colorado (2007). *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D. 1993); Moot Court Executive Board (1992-1993); Articles Editor, *Industrial Relations Law Journal/Berkeley Journal of Employment and Labor Law* (1991-1992); Harvard University (A.B. *magna cum laude*, 1990), Senior Class Ames Memorial Public Service Award. *Employment*: Law Clerk to Chief Judge John T. Nixon, U.S. District Court, Middle District of Tennessee, 1993-1994; Adjunct Professor of Law, Golden Gate University School of Law, Employment Law (Spring 2001). *Awards & Honors: The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*San Francisco's Best Lawyers*," 2010-2012; "Women of Achievement Award," *Legal Momentum* (formerly the NOW Legal Defense & Education Fund), 2011; "Florence K. Murray Award," National Association of Women Judges, 2010 (for influencing women to pursue legal careers, opening doors for women attorneys, and advancing opportunities for women within the legal profession); "Top California Women Litigators," *Daily Journal*, 2007, 2010; "Irish Legal 100" Finalist, *The Irish Voice*, 2010; "Lawdragon 500 Leading Lawyers in America," *Lawdragon*, 2010; "Northern California Super Lawyer," *Super Lawyers*, 2004-2011; "Top 50 Female Northern California Super Lawyers," *Super Lawyers*, 2007-2011; "Lawdragon Finalist," *Lawdragon*, 2007-2009; "Top 100 Northern California Super Lawyers," *Super Lawyers*, 2007, 2009, 2011; "Community Service Award," Bay Area Lawyers for Individual Freedom, 2008; "Community Justice Award," Centro Legal de la Raza, 2008; "Award of Merit," Bar Association of San Francisco, 2007; "California Lawyer Attorney of the Year (CLAY) Award," *California Lawyer*, 2007; "Lawdragon 500 Leading Plaintiffs' Lawyers," *Lawdragon*, Winter 2007; "Trial Lawyer of the Year Finalist," Public Justice Foundation, 2007; California's "Top 20 Lawyers Under 40," *Daily Journal*, 2006; "Consumer Attorney of the Year" Finalist, Consumer Attorneys

of California, 2006; "Living the Dream Partner," Lawyers' Committee for Civil Rights of the San Francisco Bay Area, 2005. *Publications & Presentations*: "Class Actions: Latest Developments in Litigating and Settling Employment Discrimination Class Actions" American Bar Association Labor and Employment Section Equal Employment Opportunity Committee (Mid-Year Meeting 2001); "A Road Map to Discovery in Employment Discrimination and Wage/Hour Class Actions," with James M. Finberg, Glasser Legal Works Seminar (2000); "Employment Discrimination Class Actions in the Wake of *Allison v. Citgo Petroleum Corp.* and Fed.R.Civ.P. 23(f)," Federal Bar Association Convention (1999); Co-Author with James Finberg, "Discovery in Employment Discrimination Class Actions," *Litigation and Settlement of Complex Class Actions* (Glasser Legal Works 1998). *Member*: American Bar Association; Labor and Employment Law Section (Governing Council, 2009-present; Co-Chair, Section Conference, 2008-2009; Vice-Chair, Section Conference, 2007-2008; Co-Chair, Committee on Equal Opportunity in the Legal Profession, 2006-2007; Co-Chair Committee on Equal Employment Opportunity); Bar Association of San Francisco (Board of Directors, 2005-present; President-Elect, 2010-Present; Treasurer, 2009-2010; Secretary, 2008-2009; Litigation Section; Executive Committee, 2002-2005); Northern District of California Lawyer Representative to the Ninth Circuit Judicial Conference (2007-2010); Lawyers' Committee for Civil Rights of the San Francisco Bay Area (Board of Directors, 1998-2005; Secretary, 1999-2003; Co-Chair, 2003-2005); National Center for Lesbian Rights (Board of Directors, 2002-2008; Co-Chair, 2005-2006); National Association of Women Judges (Resource Board, 2005-present. Co-Chair, 2009-present); Carver Healthy Environments and Response to Trauma in Schools ("HEARTS") Project (Steering Committee, 2007-present); Pride Law Fund (Board of Directors, 1995-2002; Secretary, 1995-1997; Chairperson, 1997-2002); Equal Rights Advocates (Litigation Committee, 2000-2002); National Employment Lawyers Association; Consumer Attorneys of California; Bay Area Lawyers for Individual Freedom; Public Justice Foundation; State Bar of California.

**JONATHAN D. SELBIN**, Admitted to practice in California; District of Columbia; New York; U.S. Court of Appeals, Third Circuit; U.S. Court of Appeals, Fifth Circuit; U.S. Court of Appeals, Sixth Circuit; U.S. Court of Appeals Ninth Circuit; U.S. Court of Appeals, Eleventh Circuit; U.S. District Court, Northern District of California; U.S. District Court, Central District of California; U.S. District Court, Northern District of Illinois; U.S. District Court, Southern District of New York; U.S. District Court, Eastern District of New York; U.S. District Court, Eastern District of Michigan; U.S. District Court, Northern District of Florida. *Education*: Harvard Law School (J.D., *magna cum laude*, 1993); University of Michigan (B.A., *summa cum laude*, 1989). *Employment*: Law Clerk to Judge Marilyn Hall Patel, U.S. District Court, Northern District of California, 1993-95. *Awards & Honors*: "New York Super Lawyers," *Super Lawyers*, 2006-2010; "*Lawdragon* Finalist," *Lawdragon*, 2009. *Publications & Presentations*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor-in-chief, 2003); "Bashers Beware:  The Continuing Constitutionality of Hate Crimes Statutes After R.A.V.," 72 *Oregon Law Review* 157 (Spring, 1993). *Member*: American Association for Justice; American Bar Association; District of Columbia Bar Association; New York Advisory Board, Alliance for Justice; New York State Bar Association; New York State Trial Lawyers Association; State Bar of California.

**MICHELE C. JACKSON**, Admitted to bar, 1979, California; United States Supreme Court, 1988; U.S. Court of Appeals, Ninth Circuit, 1981; U.S. District Court, Central District of California, 1985; U.S. District Court, Northern District of California, 1979. *Education*: University of San Francisco School of Law (J.D., *cum laude*, 1979); Stanford University (B.A., with honors in Economics, 1976). *Employment*: Judicial Extern to Justice Wiley W. Manuel, California Supreme Court, Summer 1977. *Awards & Honors*: AV Peer Review Rated, Martindale-Hubbell; "Top Attorneys In Antitrust Law," *Super Lawyers* Corporate Counsel Edition, 2010; "Northern California Super Lawyer," *Super Lawyers*, 2007-2011; "State Bar Board of Governors Award," State Bar of California; "*Lawdragon* Finalist," *Lawdragon*, 2009. *Publications & Presentations*: Panelist, "Antitrust Dispute Resolution in Complex Business Torts and Antitrust Cases: Is There Really a Class Arbitration?" (April 2007), American Bar Association Antitrust Law Spring Meeting; Panelist, "Settlement and Mediation of Unfair Competition Disputes" (May, 2006) and other panels, State Bar of California Antitrust and Unfair Competition Section; Author, *Recent Judicial Opinions On Class And Multi-Party Arbitration In Antitrust And Consumer Cases, And Principles Underlying Those Opinions* (February 2007), American Bar Association; Chapter Co-Author with Marc Seltzer, "*State Antitrust Law and Intellectual Property*" in *California Antitrust & Unfair Competition Law* (Third), Vol. 1: Antitrust; Author, *Asserted Defenses to a § 17200 Class Action Based on Korea Supply—The Interplay With Indirect Purchaser Litigation* (2005) American Bar Association; Contributing Author, *California Class Actions Practice and Procedure* (2003). *Appointments*: Officer, Advisor and Executive Committee Member, State Bar of California Antitrust and Unfair Competition Section (terms September, 2001-2007). *Member*: American Bar Association; State Bar of California; Bar Association of San Francisco; McAuliffe Law Honor Society; Queen's Bench.

**MICHAEL W. SOBOL**, Admitted to practice in Massachusetts, 1989; California, 1998; United States District Court, District of Massachusetts, 1990; U.S. District Court, Northern District of California, 2001; U.S. District Court, Central District of California, 2005; U.S. Court of Appeals for the Ninth Circuit (2009). *Education*: Boston University (J.D., 1989); Hobart College (B.A., *cum laude*, 1983). *Prior Employment*: Lecturer in Law, Boston University School of Law, 1995-1997. *Awards & Honors*: "*Lawdragon* Finalist," *Lawdragon*, 2009. *Publications & Presentations*: Panelist, National Consumer Law Center's 15th Annual Consumer Rights Litigation Conference, Class Action Symposium; Panelist, Continuing Education of the Bar (C.E.B.) Seminar on Unfair Business Practices—California's Business and Professions Code Section 17200 and Beyond; Columnist, *On Class Actions*, Association of Business Trial Lawyers, 2005 to present; *The Fall of Class Action Waivers* (2005); *The Rise of Issue Class Certification* (2006); *Proposition 64's Unintended Consequences* (2007); *The Reach of Statutory Damages* (2008). *Member*: State Bar of California; Bar Association of San Francisco; Consumer Attorneys of California, Board of Governors, (2007-2008, 2009-2010); National Association of Consume Advocates.

**FABRICE N. VINCENT**, Admitted to practice in California, 1992; U.S. District Court, Northern District of California, Central District of California, Eastern District of California, Ninth Circuit Court of Appeals, 1992. *Education*: Cornell Law School (J.D., *cum laude*, 1992); University of California at Berkeley (B.A., 1989). *Awards & Honors: The Best Lawyers in*

*America*, based on peer and blue ribbon panel review, selected for list of "*San Francisco's Best Lawyers*," 2012; "Northern California Super Lawyer," *Super Lawyers*, 2006–2011. *Publications & Presentations*: Co-Author with Elizabeth J. Cabraser, "Class Actions Fairness Act of 2005," *California Litigation*, Vol. 18, No. 3 (2005); Co-Editor, *California Class Actions Practice and Procedures* (2003-06); Co-Author, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-author, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law* (ABA 2000-09), updated and re-published in 5 *Newberg on Class Actions* (2001-09); Coordinating Editor and Co-Author of California section of the ABA State Class Action Survey (2001-06); Co-Editor-In-Chief, *Fen-Phen Litigation Strategist* (Leader Publications 1998-2000) and author of "Off-Label Drug Promotion Permitted" (Oct. 1999); Co-Author, "The Future of Prescription Drug Products Liability Litigation in a Changing Marketplace," and "Six Courts Certify Medical Monitoring Claims for Class Treatment," 29 *Forum* 4 (Consumer Attorneys of California 1999); Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study 1999); Co-Author, "How Class Proofs of Claim in Bankruptcy Can Help in Medical Monitoring Cases," (Leader Publications 1999); Co-Author, Introduction, "Sanctioning Discovery Abuses in the Federal Court," (LRP Publications 2000); "With Final Approval, Diet Drug Class Action Settlement Avoids Problems That Doomed Asbestos Pact," (Leader Publications 2000). *Member*: State Bar of California; Bar Association of San Francisco; American Bar Association; Fight for Justice Campaign; Association of Business Trial Lawyers, Society of Automotive Engineers.

**DAVID S. STELLINGS**, Admitted to practice in New York, 1994; New Jersey; 1994; U.S. District Court, Southern District of New York, 1994. *Education*: New York University School of Law (J.D., 1993); Editor, *Journal of International Law and Politics;* Cornell University (B.A., *cum laude*, 1990). *Awards & Honors*: "*Lawdragon* Finalist, *Lawdragon*, 2009. *Member*: State Bar of New York; State Bar of New Jersey; Bar Association of the City of New York; New York State Bar Association; American Bar Association.

**ERIC B. FASTIFF,** Admitted to practice in California, 1996; District of Columbia, 1997; U.S. Courts of Appeals for the Third, Ninth and Federal Circuit; U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California, District of Columbia; U.S. District Court, Eastern District of Wisconsin. *Education*: Cornell Law School (J.D., 1995); Editor-in-Chief, *Cornell International Law Journal;* London School of Economics (M.Sc.(Econ.), 1991); Tufts University (B.A., *cum laude, magno cum honore in thesi*, 1990). *Employment*: Law Clerk to Hon. James T. Turner, U.S. Court of Federal Claims, 1995-1996. *Awards & Honors*: "Northern California Super Lawyer," *Super Lawyers*, 2010-2011; "*Lawdragon* Finalist," *Lawdragon*, 2009. *Publications & Presentations*: General Editor, *California Class Actions Practice and Procedures*, (2003-2009); Coordinating Editor and Co-Author of California section of the *ABA State Class Action Survey* (2003-2008); Author, "US Generic Drug Litigation Update," 1 *Journal of Generic Medicines* 212 (2004); Author, "The

Proposed Hague Convention on the Recognition and Enforcement of Civil and Commercial Judgments: A Solution to Butch Reynolds's Jurisdiction and Enforcement Problems," 28 *Cornell International Law Journal* 469 (1995). *Member*: State Bar of California; District of Columbia Bar Association; Bar Association of San Francisco; Bar of the U.S. Court of Federal Claims; Children's Day School (Board of Trustees); Editorial Board Member, *Journal of Generic Medicines*, 2003-present; Jewish Home for the Aged (Board of Trustees); Menorah Park (Board of Trustees); SF Works (Board of Trustees); Children's Day School (Board of Trustees).

**WENDY R. FLEISHMAN**, Admitted to practice in Pennsylvania, 1977; New York, 1992. *Education*: University of Pennsylvania (Post-Baccalaureate Pre-Med, 1982); Temple University (J.D., 1977); Sarah Lawrence College (B.A., 1974). *Employment*: Skadden, Arps, Slate, Meagher & Flom LLP in New York (Counsel in the Mass Torts and Complex Litigation Department), 1993-2001; Fox, Rothschild O'Brien & Frankel (partner), 1988-93 (tried more than thirty civil, criminal, employment and jury trials, and AAA arbitrations, including toxic tort, medical malpractice and serious injury and wrongful death cases); Ballard Spahr Andrews & Ingersoll (associate), 1984-88 (tried more than thirty jury trials on behalf of the defense and the plaintiffs in civil personal injury and tort actions as well as employment—and construction—related matters); Assistant District Attorney in Philadelphia, 1977-84 (in charge of and tried major homicide and sex crime cases). *Awards and Honors*: "New York Super Lawyers," *Super Lawyers*, 2006-2010; "*Lawdragon* Finalist," *Lawdragon*, 2009. *Publications & Presentations*: Editor, Brown & Fleishman, "Proving and Defending Damage Claims: A Fifty-State Guide" (2007-2010); Co-Author with Donald Arbitblit, "The Risky Business of Off-Label Use," *Trial* (March 2005); Co-Author, "From the Defense Perspective," *Scientific Evidence, Chapter 6, Aspen Law Pub* (1999); Editor, *Trial Techniques Newsletter*, Tort and Insurance Practices Section, American Bar Association (1995-1996; 1993-1994); "How to Find, Understand, and Litigate Mass Torts," NYSTLA Mass Torts Seminar (April 2009); "Ethics of Fee Agreements in Mass Torts," AAJ Education Programs (July 2009). *Appointments*: Co-Liaison, *In re Zimmer Durom Cup Hip Implant Litigation*; Plaintiffs' Steering Committee, Depuy ASR Hip Implant Litigation; Liaison, NJ Ortho Evra Patch Product Liability Litigation; Co-Liaison, NJ Reglan Mass Tort Litigation; Co-Chair, Mealey's Drug & Medical Device Litigation Conference (2007); Executive Committee, *In re ReNu MoistureLoc Product Liability Litigation*, MDL; Discovery Chair, *In re Guidant Products Liability Litigation*; Co Chair Science Committee, *In re Baycol MDL Litigation*; Pricing Committee, *In re Vioxx MDL Litigation*. *Member*: New York State Trial Lawyers Association (Board of Directors, 2004-Present); Association of the Bar of the City of New York (Judiciary Committee, 2004-Present); American Bar Association (2000, Affair Chair, ABA Annual Meeting, Torts & Insurance Practices Section, NYC; 1997, Chair, Trial Techniques Committee, Tort & Insurance Practices; 1996, Chair Elect, Trial Techniques Committee, Tort & Insurance Practices); American Association for Justice (Section Officer); Pennsylvania Bar Association (Committee on Legal Ethics and Professionalism, 1993-Present; Committee on Attorney Advertising, 1993-Present; Vice-Chair, Task Force on Attorney Advertising, 1991-92); State Bar of New York, Federal Bar Association; Member, Gender and Race Bias Task Force of the Second Circuit, 1994-present; Deputy Counsel, Governor Cuomo's Screening Committee for New York State Judicial Candidates, 1993-94; New York State Trial Lawyers Association; New York Women's Bar Association; Association of the Bar of the City of New York (Product Liability Committee, 2007-

present); New York County Lawyers; Fight for Justice Campaign; NYTLA; PATLA; Philadelphia Bar Association (Member of Committee on Professionalism 1991-92).

**PAULINA do AMARAL**, Admitted to practice in New York, 1997; California, 1998; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Southern District of New York, 2004; U.S. District Court, Western District of Michigan, 2004; U.S. District Court, Eastern District of Michigan, 2007. *Education*: University of California Hastings College of Law (J.D., 1996); Executive Editor, *Hastings Constitutional Law Quarterly*; National Moot Court Competition Team, 1995; Moot Court Executive Board; University of Rochester (B.A., 1988). *Employment*: Law Clerk to Chief Judge Richard Alan Enslen, U.S. District Court, Western District of Michigan, 1996-98. *Member*: Association of the Bar of the City of New York, (2007-2010, Committee on the Judiciary); American Bar Association; State Bar of New York; State Bar of California; Bar Association of San Francisco; American Trial Lawyers Association; New York State Trial Lawyers Association.

**KATHRYN E. BARNETT**, Admitted to practice in Tennessee, 1992; Sixth Circuit Court of Appeals, 2000; Eleventh Circuit Court of Appeals, 2003; United States District Court, Eastern District Tennessee, 2005; United States District Court, Middle District of Tennessee, 1997; United States District Court, Western District of Tennessee, 2001. *Education*: Vanderbilt University School of Law (J.D., 1992); American Jurisprudence Awards: Torts I and Jurisprudence; Davidson College (B.A., with Honors in Philosophy, 1989), Dean Rusk Grant for International Studies. *Litigation Experience*: Ms. Barnett has tried over 15 civil and criminal trials, including complex and class action cases, as well as catastrophic personal injury cases. In 2000, Ms. Barnett obtained a verdict of nearly $6 million on behalf of parents whose unborn fetus died tragically due to medical malpractice. In March, 2004 and in August, 2004 Ms. Barnett served as Co-Lead trial counsel in the class action lawsuit of *In re Tri-State Crematory Litigation*, MDL No. 1467. The case was settled during the second week of trial. The settlements in the *Tri-State* litigation exceed $40 million. *Employment*: Judicial Intern to Judge John T. Nixon, U.S. District Court, Middle District of Tennessee, Fall 1990; Assistant Public Defender, Davidson County, Tennessee, Sept. 1992-1995. *Awards & Honors*: *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*Nashville's Best Lawyers*," 2010-2012; "Nashville Lawyers In Charge," *Nashville Post*, 2010; "Best of the Bar," *Nashville Business Journal,* 2003, 2005-2010; Mid-South Super Lawyer, *Super Lawyers*, 2006-2009; "150 Best Lawyers in Tennessee," *Business Tennessee,* 2006-2009; "*Lawdragon* Finalist," *Lawdragon*, 2009-2011. *Publications & Presentations*: "The Basics of Class Action and MDL Litigation," Tennessee Bar Association (July 2009); "Advanced Federal Court Practice," Nashville Bar Association (March 2009); Guest speaker, "Medicine, Law and Society," Vanderbilt University (March 2009) "Annual Review: Medical Malpractice Update" Tennessee Association for Justice (Oct, Dec. 2008); "Civil Procedure and Evidence Update," Tennessee Trial Lawyers (Oct. and Nov. 2006); "Pre-Trial Skills: Thinking on Your Feet," National Business Institute (Nov. 2006), "Trial Practice Institute," Nashville Bar Association (Sept. 2005); "State Law Class Actions," American Bar Association, Business Law Section (April 2005); "Power Windows Can Kill," *Trial* (April 2005); "Auto Defect Cases," Tennessee Trial Lawyers (Feb. 2005); "Limiting the Harmful Testimony of Experts on the Law," *Trial* (Jan. 2001); "Letting Focus Groups Work for You," *Trial* (April 1999); "Knocking Out Opposing

Experts," Tennessee Trial Lawyers (October and November, 2004), Nashville Bar Association (July, 2004); "Trial Practice Tips: Powerful Trial Strategies for the Absolute Litigator," Nashville Bar Association (April, 2004); "Damages," Tennessee Trial Lawyers (Oct. and Nov. 2003); "Trying the Wrongful Death Case in Tennessee," National Business Institute (Aug. 2003); "Advanced Personal Injury," National Business Institute (July 2003); "Mass Torts," Tennessee Bar Association (July 2002); "Superior Depositions Strategies in Civil Trial Practice," National Business Institute (Jan. 2002, Dec. 1999); "Lawsuits Against the Nursing Home Industry," Tennessee Trial Lawyers (Feb. 2000); "How to Prepare for Mediation and other Practice Tips," Nashville Bar Association (Oct. 2000); "Tennessee Expert Witness," Lorman Education Services (July 2000); "Using Focus Groups to Get the Settlement or Verdict Your Client Deserves," Tennessee Trial Lawyers (Feb. 1999). *Member*: Tennessee Judicial Conference, Bench/Bar Committee (Chair, 2009-2010); Tennessee Association for Justice (Vice-President for the Middle Section, 2011; Treasurer, 2010; Executive Committee, 2008-2009, Secretary, 2007-2009, Chair, Continuing Education Committee, 2004-2006, Board of Governors, 2002-2009); Nashville Bar Association, First Vice President (2007) (Board, 2005-2008); Harry Phillips American Inn of Courts, (Executive Committee, 2004-09, Member, 2004-2009, 1997-99); Nashville Bar Foundation (Fellow); Tennessee Justice Center, Inc. (Board of Directors, 2002-05, Secretary-Treasurer, 2003-04); Nashville Lawyer's Association for Women (President, 2004-2005; President-elect, 2003-2004; Director, 2002-03; Treasurer, 2000-02; Nominating Committee, 2007; Board, 1998-2005); Davidson County, Tennessee Metropolitan Board of Equalization, 2000-04; Tennessee Bar Association; American Association of Trial Lawyers.

**JOY A. KRUSE**, Admitted to practice in Washington, D.C., 1984; California; U.S. Supreme Court; U.S. Courts of Appeals for the Ninth and Federal Circuits; U.S. District Courts for the Northern, and Eastern Districts of California; U.S. District Court for the Central District of California, 2006; U.S. District Court, District of Colorado, 2006; U.S. District Court, District of Wisconsin, 2001. *Education*: Harvard Law School (J.D., 1984); Wellesley College (B.A., 1977). *Employment*: Assistant Federal Public Defender, Northern District of California, 1992-96; Public Defender Service, Washington D.C., 1984-89. *Awards & Honors:* "*Lawdragon* Finalist," *Lawdragon*, 2009. *Presentations & Publications*: Co-Author with Elizabeth J. Cabraser, Bruce Leppla, "Selective Waiver: Recent Developments in the Ninth Circuit and California," (pts. 1 & 2), *Securities Litigation Report* (West Legalworks May and June 2005). *Member*: Phi Beta Kappa; State Bar of California; Bar Association of San Francisco.

**STEPHEN H. CASSIDY**, Admitted to practice in California, 1989; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1997. *Education*: Hastings College of the Law (J.D., *magna cum laude*, 1989); Associate Managing Editor, *Hastings International and Comparative Law Review*, 1988-1989; Order of the Coif; Member, Thurston Society; Recipient, American Jurisprudence Awards for Real Property, Evidence and American Legal History; Georgetown University (B.S.F.S., 1986). *Employment*: Law Clerk to Magistrate-Judge Joan S. Brennan, U.S. District, Northern District of California, 1989-90; Motions Attorney, U.S. Court of Appeals, Ninth Circuit, 1992-94, 1996-97. *Awards & Honors:* AV Peer Review Rated, Martindale-Hubbell. *Publications & Presentations*: "Magnetix Toy Injuries: A Failure to Inform Safety Regulators," OpEd News (2009); "Restoring Patient Rights and Promoting Safer Medical Device," OpEd News (2009); "Internet Marketing for Plaintiffs'

Firms," CAOC Conference (May 2004); "Enhancing the Role of Law Firm Marketing Departments," LexisNexis Law Firm Marketers' Roundtable (November 2003); Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," in *Survey of State Class Action Law* (ABA 2001); "The Newest Member of the Nuclear Club: Pakistan's Drive for a Nuclear Weapon's Capability," 12 *Hastings Int'l & Comp. L. Rev.* 679 (1989). *Member*: State Bar of California; Bar Association of San Francisco; American Bar Association (Litigation Section); Public Justice; Fight for Justice Campaign; Consumer Attorneys of California.

**RACHEL GEMAN**, Admitted to practice in New York, 1998; Southern and Eastern Districts of New York, 1999; U.S. District Court, Eastern District of Michigan, 2005; U.S. District Court of Colorado, 2007. *Education*: Columbia University School of Law (J.D. 1997); Stone Scholar; Equal Justice America Fellow; Human Rights Fellow; Editor, *Columbia Journal of Law and Social Problems*; Harvard University (A.B. *cum laude* 1993). *Employment*: Adjunct Professor, New York Law School; Special Advisor, United States Mission to the United Nations, 2000; Law Clerk to Judge Constance Baker Motley, U.S. District Court, Southern District of New York, 1997-98. *Awards & Honors*: *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*The New York Area's Best Lawyers*," 2012; *Distinguished Honor Award*, United States Department of State, 2001. *Publications & Presentations*: Participant and Moderator, "Ask the EEOC: Current Insights on Enforcement and Litigation," ABA Section of Labor and Employment Law (2011); *The New York Employee Advocate*, Co-Editor (2005-Present); Regular Contributor (2008-present); Moderator, "Hot Topics in Wage and Hour Class and Collective Actions," American Association for Justice Tele-Seminar (2010); Author & Panelist, "Class Action Considerations: Certification, Settlement, and More," American Conference Institute Advanced Forum (2009); Panelist, "Rights Without Remedies," American Constitutional Society National Convention, Revitalizing Our Democracy: Progress and Possibilities (2008);Panelist, Fair Measure: Toward Effective Attorney Evaluations, American Bar Association Annual Meeting (2008); Panelist, "Getting to Know You: Use and Misuse of Selection Devices for Hiring and Promotion" ABA Labor & Employment Section Annual Meeting (2008); Author, "'Don't I Think I Know You Already?': Excessive Subjective Decision-Making as an Improper Tool for Hiring and Promotion," ABA Labor & Employment Section Annual Meeting (2008); Co-Author & Panelist, "Ethical Issues in Representing Workers in Wage & Hour Actions," Representing Workers in Individuals & Collective Actions under the FLSA (2007); Author & Panelist, "Evidence and Jury Instructions in FLSA Actions," Georgetown Law Center/ACL-ABA (2007); Author & Panelist, "Crucial Events in the 'Life' of an FLSA Collective Action: Filing Considerations and the Two-step 'Similarly-Situated' Analysis," National Employment Lawyers Association, Annual Convention (2006); Author & Panelist, "Time is Money, Except When It's Not: Compensable Time and the FLSA," National Employment Lawyers Association, Impact Litigation Conference (2005); Panelist, "Electronic Discovery," Federal Judicial Center & Institute of Judicial Administration, Workshop on Employment Law for Federal Judges (2005); "Image-Based Discrimination and the BFOQ Defense," *EEO Today: The Newsletter of the EEO Committee of the ABA's Section of Labor and Employment Law*, Vol. 9, Issue 1 (2004); "Fair Labor Standards Act Overtime Exemptions: Proposed Regulatory Changes," *New York State Bar Association Labor and*

*Employment Newsletter* (2004); Chair & Panelist, "Current Topics in Fair Labor Standards Act Litigation," Conference, Association of the Bar of the City of New York (2003); Moderator, "Workforce Without Borders," ABA Section of Labor & Employment Law, EEOC Midwinter Meeting (2003). *Member*: American Bar Association Labor and Employment Law Section, Standing Committee on Equal Employment Opportunity (Co-Chair, 2009-present); Association of the Bar of the City of New York; National Employment Lawyers' Association/New York (Board Member); Public Justice Foundation.

**SCOTT P. NEALEY**, Admitted to practice in California, 1997; U.S. District Court, Northern District of California, 1998; U.S. District Court, Eastern District of California, 1998; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Central District of California, 2000. *Education*: Boalt Hall School of Law, University of California (J.D., 1996); University of California at Berkeley (B.A., 1988). *Honors & Awards*: *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*San Francisco's Best Lawyers*," 2012; California Lawyer Attorneys of the Year (CLAY) Award, 2008; Finalist, San Francisco Trial Lawyer of the Year, 2008. *Employment*: Law Clerk to Chief Justice Joseph R. Weisberger, Supreme Court of Rhode Island, 1996-97. *Publications & Presentations*: Contributing Author, *California Class Actions Practice and Procedures* (Elizabeth J. Cabraser editor in chief, 2003). *Member*: Bar Association of San Francisco; State Bar of California.

**ELIZABETH A. ALEXANDER,** Admitted to practice in Tennessee, 1998; U.S. Court of Appeals, Sixth Circuit, 2001; U.S. District Court, Middle District of Tennessee, 2000; U.S. District Court, Eastern District of Tennessee, 2002. *Education*: Vanderbilt University Law School (J.D., 1998); President, Criminal Law Association; Moot Court Board Member; Vanderbilt University Honor Committee; Hollins College (B.A., 1993). *Honors & Awards*: "Rising Stars," *Super Lawyers*, 2008-2010; "*Lawdragon* 500 New Stars" and "*Lawdragon* 3000 Leading Plaintiffs' Lawyers in America," *Lawdragon*, 2006-2007. *Publications & Presentations*: Editor, Tennessee Chapter of the *ABA Survey of State Class Action Law* (2003-2010); "Consumer Class Actions Against Financial Institutions," Lorman Education Services, July 2004; Panelist, National Consumer Law Center, Consumer Rights Litigation Conference, "Pleading Standards—the Impact of *Twombly* and *Iqbal* on Class Action Complaints." *Prior Employment*: Associate, Dodson, Parker, Dinkins & Behm (2002-03); Associate, Wyatt, Tarrant & Combs (2000-2002); Law Clerk, Honorable Thomas A. Higgins, U.S. District Court for the Middle District of Tennessee (1998-2000). *Member*: American Bar Association (Labor and Employment Law Section Equal Employment Opportunity Committee, Co-Chair, Basics Committee 2005-2006; Chair of Internal Marketing and Mentoring Committee 2006-2007); Lawyers' Association for Women (Director, 2003-2005); Nashville Bar Association (Board of Directors, Young Lawyers Division); National Bar Association; National Employment Lawyers' Association; Tennessee Bar Association.

**DANIEL P. CHIPLOCK**, Admitted to practice in New York, 2001; U.S. District Court, Southern District of New York, 2001; U.S. District Court, Eastern District of New York, 2001; U.S. District Court, District of Colorado, 2006; U.S. Court of Appeals for the Second Circuit (2009); U.S. Supreme Court. *Education*: Stanford Law School (J.D., 2000); Article Review Board, *Stanford Environmental Law Journal*; Recipient, Keck Award for Public Service; Columbia University (B.A., *summa cum laude*, 1994); Phi Beta Kappa. *Member*: State Bar of

New York; American Association for Justice; Fight for Justice Campaign; Public Justice; National Association of Public Pension Attorneys (NAPPA); National Association of Public Pension Attorneys; National Association of Shareholder and Consumer Attorneys (Executive Committee); American Constitution Society for Law and Policy (Advocate's Circle).

**MARK P. CHALOS**, Admitted to practice in Tennessee, 1998; U.S. Court of Appeals, Sixth Circuit, 1998; U.S. District Court, Middle District of Tennessee, 2000; U.S. District Court, Western District of Tennessee, 2002; U.S. District Court, Eastern District of Tennessee, 2006; U.S. District Court, Northern District of Florida, 2006; U.S. District Court, Northern District of California, 2007. *Education*: Emory University School of Law (J.D., 1998); Dean's List; Award for Highest Grade, Admiralty Law; Research Editor, *Emory International Law Review*; Phi Delta Phi Legal Fraternity; Vanderbilt University (B.A., 1995). *Honors & Awards*: *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*Nashville's Best Lawyers*," 2012; AV Peer Review Rated, Martindale-Hubbell, 2003; "Best of the Bar," *Nashville Business Journal*, 2008-2009; "Top 40 Under 40," *The Tennessean*, 2004; "Rising Stars," *Super Lawyers*, 2008-2010. *Publications & Presentations*: "Successfully Suing Foreign Manufacturers," TRIAL Magazine, November 2008; "Washington Regulators Versus American Juries: The United States Supreme Court Shifts the Balance in Riegel v. Medtronic," *Nashville Bar Journal*, 2008; "Washington Bureaucrats Taking Over American Justice System," *Tennessean.com* (December 2007); "The End of Meaningful Punitive Damages," *Nashville Bar Journal*, November 2001; "Is Civility Dead?" *Nashville Bar Journal*, October 2003; "The FCC: The Constitution, Censorship, and a Celebrity Breast," Nashville Bar Journal, April 2005. *Member*: American Association for Justice; American Bar Association; (Past-Chair, YLD Criminal & Juvenile Justice Committee; Tort Trial and Insurance Practice Section Professionalism Committee); First Center for the Visual Arts (Founding Member, Young Professionals Program); Harry Phillips American Inn of Court; Kappa Chapter of Kappa Sigma Fraternity Alumni Association (President); Metropolitan Nashville Arts Commission (Grant Review Panelist); Nashville Bar Association (YLD Board of Directors; Nashville Bar Association YLD Continuing Legal Education and Professional Development Director); Nashville Bar Journal (Editorial Board); Tennessee Association for Justice (Board of Directors, 2008-2011; Legislative Committee); Tennessee Bar Association (Continuing Legal Education Committee); Tennessee Trial Lawyers Association (Board of Directors); Historic Belcourt Theatre (Past Board Chair; Board of Directors); Nashville Cares (Board of Directors).

**KRISTEN LAW SAGAFI**, Admitted to practice in California (2002); U.S. District Court, Northern District of California (2002); U.S. District Court, Central District of California (2005); US District Court; Northern District of Florida (2009); U.S. Court of Appeals for the Eleventh Circuit (2010). *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D. 2002); Executive Editor, *Ecology Law Quarterly*; Moot Court Advocacy Award; Moot Court Board; Hopi Appellate Clinic; Ohio Wesleyan University (B.A., *summa cum laude*, 1995); Presidential Scholar. *Honors & Awards*: "Northern California Rising Stars," *Super Lawyers*, 2009-2011. *Member*: Phi Beta Kappa; State Bar of California.

**JAHAN C. SAGAFI**, Admitted to practice in California, 2003; U.S. Court of Appeals for the Second Circuit, 2006; U.S. District Court, Central District of California; U.S. District Court, Northern District of California. *Education*: Harvard Law School (J.D., 2001); Senior Editor,

*Harvard Civil Rights-Civil Liberties Law Review* (1999-2001); President, Board of Student Advisers; Harvard College (B.A., *magna cum laude*, 1994). *Employment*: Law Clerk to Judge William W Schwarzer, U.S. District Court, Northern District of California, 2001-02. *Honors & Awards*: "Top 20 Under 40," *Daily Journal*, 2011; "Northern California Rising Stars," *Super Lawyers*, 2009-2011; "Community Justice Award," Centro Legal de la Raza, 2008. *Member*: American Constitution Society (Chair of Bay Area Lawyer Chapter); ACLU of Northern California (Board Member; Chair of the Legal Committee, 2010; Vice Chair, 2010; Executive Committee, 2009-present); National Employment Lawyers' Association; Consumer Attorneys of California; American Bar Association; Bar Association of San Francisco.

**KENT L. KLAUDT,** Admitted to practice in California, 1996; U.S. District Court, Northern District of California, 1997; U.S. District Court, Eastern District of California, 1998; U.S. District Court, Central District of California, 2007; California Supreme Court. *Education*: University of Minnesota Law School (J.D., 1996); Outside Articles Editor, *Journal of Law & Inequality: A Journal of Theory & Practice*; National Association of Public Interest Law (Summer Fellowship, 1995); University of Minnesota (B.A., 1991). *Employment*: BlueDog, Olson & Small, PLLP, 1995-96; Cartwright & Alexander, LLP, 1996-2001; The Cartwright Law Firm, Inc., 2001-2004. *Publications & Presentations*: "Hungary After the Revolution: Privatization, Economic Ideology, and the False Promise of the Free Market," 13 *Law & Inequality: A Journal of Theory & Practice* 301. *Member*: American Trial Lawyers Association; Consumer Attorneys of California; Public Justice; San Francisco Trial Lawyers Association; National Lawyers Guild.

**JENNIFER GROSS**, Admitted to practice in California, 1994; U.S. District Court, Central District of California, 1994. *Education*: RAND Graduate School (M. Phil., 1997); University of Southern California (J.D., 1994); Emory University (B.A., 1991). *Publications & Presentations*: Co-Author, *Intelligence, Surveillance, and Reconnaissance Force Mix Study: Final Report* (RAND 2003); Co-Author, *Asbestos Litigation Costs and Compensation: An Interim Report* (RAND 2002); Co-Author, *Asbestos Litigation in the U.S.: A New Look at an Old Issue* (RAND 2001); Co-Author, *Class Action Dilemmas: Pursuing Public Goals for Private Gain* (RAND, 2000); Co-Author, *Potential Vulnerabilities of U.S. Air Force Information Systems* (RAND, 1999); Co-Author, "Preliminary Results of the RAND Study of Class Action Litigation," (RAND, 1997). *Member*: State Bar of California.

**LEXI J. HAZAM**, Admitted to practice in California, 2003; U.S. District Court, Northern District of California, 2003; U.S. Court of Appeals for the Seventh Circuit, 2006. *Education*: Stanford University (B.A., 1995, M.A., 1996), Phi Beta Kappa; Boalt Hall School of Law, University of California, Berkeley (J.D., 2001). *Employment*: Law Clerk, Mexican American Legal Defense and Education Fund, 1999; Law Clerk, Judge Henry H. Kennedy, Jr., U.S. District Court for the District of Columbia, 2001-2002; Associate, Lieff Cabraser Heimann & Bernstein, LLP, 2002-2006; Partner, Lieff Global LLP, 2006-2008. *Honors & Awards*: "Northern California Rising Stars," *Super Lawyers*, 2009-2011. *Member*: State Bar of California; American Association for Justice; Consumer Attorneys of California.

**HEATHER A. FOSTER**, Admitted to practice in California in 1996; U.S. District Court, Northern District of California, 1996. *Education*: University of the Pacific, McGeorge School of

Law (J.D., 1996); Moot Court Honors Board, 1995-96; Trial Advocacy Honors 1996; Boston College (B.A., 1992). *Employment*: Adjunct Professor, San Francisco State University—College of Extended Learning, Paralegal and LNC program (Fall 2000–Spring 2001). *Publications & Presentations*: Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study, 1999). *Member*: American Association for Justice; American Bar Association (Litigation Section); Association of Legal Administrators; Bar Association of San Francisco; Legal Assistant Management Association; Phi Alpha Delta; State Bar of California (Volunteer Legal Services Program: Liaison for the Summer Associate Public Service Program—Homeless Advocacy Program, 2002; Teachers in the Schools Program, 2002; Pro Bono Attorney—Family Law Clinic, 1999); Trial Lawyers for Public Justice.

   **BRENDAN P. GLACKIN**, Admitted to practice in California, 1998; New York, 2000; U.S. District Court, Northern, Central, Eastern and Southern Districts of California, 2001; U.S. Court of Appeals for the Ninth Circuit, 2004; U.S. District Court, Southern District of New York, 2001; U.S. District Court, District of Colorado, 2001. *Education*: Harvard Law School (J.D., *cum laude*, 1998); University of Chicago (A.B., Phi Beta Kappa, 1995). *Employment*: Contra Costa Public Defender, 2005-2007; Boies, Schiller & Flexner, 2000-2005; Willkie Farr & Gallagher, 1999-2000; Law Clerk to Honorable William B. Shubb, U.S. District Court, Eastern District of California, 1998-1999. *Member*: State Bar of California; BASF Antitrust Section, Executive Committee. *Seminars:* Ramifications of *American Needle, Inc. v. National Football League,* 2010; Antitrust Institute 2011: Develpoments & Hot Topics, 2011.

   **DANIEL E. SELTZ**, Admitted to practice in New York, 2004; U.S. District Court, Southern District of New York; Eastern District of New York. *Education*: New York University School of Law (J.D., 2003); *Review of Law and Social* Change, Managing Editor; Hiroshima University (Fulbright Fellow, 1997-98); Brown University (B.A., *magna cum laude*, Phi Beta Kappa, 1997). *Employment*: Law Clerk to Honorable John T. Nixon, U.S. District Court, Middle District of Tennessee, 2003-04. *Publications & Presentations*: Panelist, "Taking and Defending Depositions," New York City Bar, May 20, 2009; Contributing Author, *California Class Actions Practice & Procedures* (Elizabeth J. Cabraser, Editor-in-Chief, 2008); "Remembering the War and the Atomic Bombs: New Museums, New Approaches," in *Memory and the Impact of Political Transformation in Public Space* (Duke University Press, 2004), originally published in *Radical History Review*, Vol. 75 (1998); "Issue Advocacy in the 1998 Congressional Elections," with Jonathan S. Krasno (Urban Institute, 2001); *Buying Time: Television Advertising in the 1998 Congressional Elections*, with Jonathan S. Krasno (Brennan Center for Justice, 2000); "Going Negative," in *Playing Hardball*, with Kenneth Goldstein, Jonathan S. Krasno and Lee Bradford (Prentice-Hall, 2000). *Member*: American Association for Justice; State Bar of New York.

   **TODD A. WALBURG**, Admitted to practice in California, 2001; U.S. District Court, Northern District of California, 2001; U.S. District Court, Eastern, Central and Southern Districts of California, 2006; U.S. Court of Appeals for the Ninth Circuit, 2001. *Education*: University of San Francisco School of Law (J.D. 1999); Founder and President, USF Student Chapter, Association of Trial Lawyers of America (1997-1999); Investigation Intern, San Francisco Public Defender's Office; Mediation Intern, San Francisco Small Claims Court; Mediation Intern, U.S. Equal Employment Opportunity Commission; University of California at

Los Angeles (B.A., 1995). *Awards*: "Rising Star for Northern California," Super Lawyers, 2010-2011; Leesfield / Association of Trial Lawyers of America Scholarship, National Winner (1998). *Prior Employment*: Partner, Emison Hullverson Bonagofsky, LLP (2007-2008); Associate, Lieff Cabraser Heimann & Bernstein, LLP, 2005-2007); Associate, Bennett, Johnson & Galler (2001-2005). *Publications and Presentations*: "Powerful Mediation Briefs," in The Verdict (ACCTLA 2006); "Product Liability Strategies Before Trial," SFTLA Roundtable (October, 2008). *Member*: Public Justice; American Association for Justice; American Bar Association (Tort, Trial and Insurance Practice Section); Consumer Attorneys of California; State Bar of California; San Francisco Trial Lawyers Association (Education Committee and Carlene Caldwell Scholarship Committee, 2005-2007); Alameda-Contra Costa Trial Lawyers Association (Board of Governors, 2003-2005); Bar Association of San Francisco.

    ***DANIEL M. HUTCHINSON***, Admitted to practice in California, 2005; U.S. Court of Appeals for the Ninth Circuit, 2005; U.S. District Court, Northern District of California, 2005; U.S. Court of Appeals for the Fourth Circuit, 2008. *Education:* Boalt Hall School of Law, University of California, Berkeley (J.D., 2005), Senior Articles Editor, *African-American Law & Policy Report*, Prosser Prizes in Constitutional Law and Employment Law; University of California, Berkeley Extension (Multiple Subject Teaching Credential, 2002); Brown University (B.A., 1999), Mellon Mays Fellowship (1997-1999). *Employment*: Judicial Extern to the Hon. Martin J. Jenkins, U.S. District Court, Northern District of California, 2004; Law Clerk, Lewis & Feinberg, P.C., 2003-2004; Teacher, Oakland Unified School District, 1999-2002. *Honors & Awards*: "Northern California Rising Stars," *Super Lawyers*, 2009-2011. *Publications & Presentations:* "Ten Points from *Dukes v. Wal-Mart Stores, Inc.*," 20(3) *CADS Report 1* (Spring 2010); Panelist, "Rethinking Pro Bono: Private Lawyers and Public Service in the 21st Century," UCLA School of Law (2008); Author and Panelist, "Pleading an Employment Discrimination Class Action" and "EEO Litigation: From Complaint to the Courthouse Steps," ABA Section of Labor and Employment Law Second Annual CLE Conference (2008); Co-Presenter, "Rule 23 Basics in Employment Cases," Strategic Conference on Employment Discrimination Class Actions (2008). *Member*: American Bar Association (Section of Labor & Employment Law Leadership Development Program); Association of Business Trial Lawyers (Leadership Development Committee, 2008-2010); Bar Association of San Francisco; Consumer Attorneys of California; Lawyer's Committee for Civil Rights of the San Francisco Bay Area (Board of Directors, 2009-present); National Bar Association; State Bar of California.

    ***SHARON M. LEE***, Admitted to practice in New York 2002; U.S. District Court, Southern District of New York, 2003; U.S. District Court, Eastern District of New York, 2003; Washington State, 2005. *Education*: St. John's University School of Law (J.D. 2001); *New York International Law Review*, Notes & Comments Editor, 2000-2001; St. John's University (M.A. 1998); St. John's University (B.A. 1997). *Employment*: Milberg Weiss & Bershad, LLP, 2003-2007. *Member*: American Bar Association; Washington State Bar Association; Asian Bar Association of Washington. *Publications & Presentations*: Author, *The Development of China's Securities Regulatory Framework and the Insider Trading Provisions of the New Securities Law*, 14 N.Y. Int'l L.Rev. 1 (2001); Co-author, *Post-Tellabs Treatment of Confidential Witnesses in Federal Securities Litigation*, 2 J. Sec. Law, Reg. and Compliance 205 (3d ed. 2009).

**HEATHER H. WONG**, Admitted to practice in California, 2005; U.S. Court of Appeals, Ninth Circuit, 2005; U.S. District Court, Central and Northern Districts of California, 2005, 2006; U.S. District Court, District of Colorado, 2006. *Education*: University of San Francisco (J.D. & M.B.A., 2005); Beta Gamma Sigma Honor Society (2005); Technical Editor, *Maritime Law Journal*; Staff Editor, *Journal of Law and Social Challenges*; University of California, Berkeley (B.A., 2000). *Awards & Honors*: "Northern California Rising Stars," *Super Lawyers*, 2009-2011. *Publications & Presentations*: Panelist, "It Don't Matter If You're Black or White"—or Female or Older—Primer on Title VII and ADEA," ABA Section of Labor & Employment Law's 4th Annual CLE Conference, Chicago, IL (November 2010); Panelist, "Labor and Employment Law Career Opportunities," ABA Section of Labor & Employment Law's Outreach to Law School Students Task Force Seminar, Santa Clara, CA (March 2010); Presenter, "Rule 23 Basics in Employment Cases," Impact Fund's 8th Annual Employment Discrimination Class Action Conference, Oakland, CA (February 2010); Presenter, "Updates on Employment Law," ALRP MCLE Program, San Francisco, CA (December 2009); Panelist, "EEO Law: Overview and Current Issues under Title VII, the ADEA, and the ADA," ABA Section of Labor & Employment Law's 3rd Annual CLE Conference, Washington, D.C. (November 2009); Panelist, "The Nuts & Bolts of Class and Collective Actions," National Employment Lawyers Association's 19th Annual Convention, Atlanta, GA (June 2008); (Young Lawyers Division; Labor & Employment Law Section; Section of Litigation; Employment Discrimination Law Treatise, Chapter Monitor (2007-present); California Class Action Practice and Procedure Treatise, Chapter Editor (2007-present)). *Member*: American Association for Justice; American Bar Association (Co-Chair, Leadership Development Program; Young Lawyers Division; Labor & Employment Law Section; Section of Litigation; *Employment Discrimination Law Treatise*, Chapter Monitor, 2007-present); American Constitution Society (Mentor); Asian American Bar Association; Asian American Legal Defense and Education Fund; Association of Business Trial Lawyers; Bar Association of San Francisco (Barristers Club; Labor & Employment Law Section; Litigation Section); *California Class Action Practice and Procedure Treatise* (Chapter Editor, 2007-present); Carver Healthy Environments and Response to Trauma in Schools ("HEARTS") Project (Steering Committee, 2007-present); Consumer Attorneys of California; Legal Services for Children (Pro Bono Awards Luncheon Committee, 2010-present); Minority Bar Coalition (2008 Unity Conference Planning Committee); National Employment Lawyers Association; State Bar of California (Labor & Employment Law Section; Litigation Section).

**ROGER N. HELLER**, Admitted to practice in California, 2001; U.S. District Court, Northern District of California, 2001). *Education*: Columbia University School of Law (J.D., 2001); Columbia Law Review, Senior Editor; Emory University (B.A., 1997). *Employment*: Extern, Honorable Michael Dolinger, U.S. District Court, Southern District of new York, 1999; Associate, O'Melveny & Myers LLP, 2001-2005; Senior Staff Attorney, Disability Rights Advocates, 2005-2008. *Honors & Awards*: : "Northern California Rising Stars," *Super Lawyers*, 2011; Harlan Fiske Stone Scholar. *Publications & Presentations*: Co-author, <u>Fighting For Troops on the Homefront</u>, Trial Magazine (September 2006). *Member*: American Bar Association.

**OF COUNSEL**

**ROBERT L. LIEFF**, Admitted to practice in California, 1966; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1969; U.S. Supreme Court, 1969; U.S. Court of Appeals, Seventh Circuit, 1972; U.S. Tax Court, 1974; U.S. District Court, District of Hawaii, 1986. *Education*: Columbia University (M.B.A., 1962; J.D., 1962); Cornell University; University of Bridgeport (B.A., 1958). Member, Columbia Law School Dean's Council; Member, Columbia Law School Board of Visitors (1992-present); Member, Columbia Law School Center on Corporate Governance Advisory Board (2004). *Awards & Honors*: AV Peer Review Rated, Martindale-Hubbell; "Northern California Super Lawyers," *Super Lawyers*, 2005-09, "*Lawdragon* Finalist," *Lawdragon*, 2005. *Member*: Bar Association of San Francisco; State Bar of California (Member: Committee on Rules of Court, 1971-74; Special Committee on Multiple Litigation and Class Actions, 1972-73); American Bar Association (Section on Corporation, Banking and Business Law); Lawyers Club of San Francisco; San Francisco Trial Lawyers Association; California Trial Lawyers Association; Consumer Attorneys of California; Fight for Justice Campaign.

**BRUCE W. LEPPLA**, Admitted to practice in California, New York, Ninth Circuit Court of Appeals, California District Courts (Northern, Central, Eastern), New York District Courts (Southern, Eastern), District of Colorado. *Education*: University of California (J.D., Boalt Hall School of Law, M.G. Reade Scholarship Award); University of California at Berkeley (M.S., Quantitative Economics, with honors); Yale University (B.A., *magna cum laude*, Highest Honors in Economics). *Prior Employment*: Partner, Lieff Cabraser Heimann & Bernstein, LLP (2004-2008), Counsel (2002-2003); Chairman, Leppla Capital Management LLC (2008-present); Chairman, Susquehanna Corporation (2006-present); CEO and President, California Bankers Insurance Services Inc., 1999-2001; CEO and President, Redwood Bank (1985-1998), CFO and General Counsel (1981-1984); Brobeck, Phleger & Harrison (1980); Davis Polk & Wardwell (1976-80). *Publications*: Author or co-author of 11 different U.S. and International patents in electronic commerce and commercial product design, including "A Method for Storing and Retrieving Digital Data Transmissions," United States Patent No. 5,659,746, issued August 19, 1997; "*Stay in the Class or Opt-Out? Institutional Investors Are Increasingly Opting-Out of Securities Class Litigation*," Securities Litigation Report, Vol. 3, No. 8, September 2006, West LegalWorks; reprinted by permission of the author in Wall Street Lawyer, October 2006, Vol. 10, No. 10, West LegalWorks; "*Selected Waiver: Recent Developments in the Ninth Circuit and California, Part 1*;" Elizabeth J. Cabraser, Joy A. Kruse and Bruce W. Leppla; Securities Litigation Report, May 2005, Vol. I, No. 9, pp. 1, 3-7; "*Selected Waiver: Recent Developments in the Ninth Circuit and California, Part 2*;" Elizabeth J. Cabraser, Joy A. Kruse and Bruce W. Leppla; Securities Litigation Report, June 2005, Vol. I, No. 10, pp. 1, 3-9; Author, "*Securities Powers for Community Banks,*" California Bankers Association Legislative Journal (Nov. 1987). *Teaching Positions*: Lecturer, University of California at Berkeley, Haas School of Business, Real Estate Law and Finance (1993-96); Lecturer, California Bankers Association General Counsel Seminars, Lending Documentation, Financial Institutions Litigation and similar topics (1993-96). *Panel Presentations*: Union Internationale des Avocats, Spring Meeting 2010, Frankfurt, Germany, "*Recent Developments in Cross-Border Litigation;*" Union Internationale des Avocats, Winter Meeting 2010, Park City, Utah, "*Legal and Economic Aspects of Securities Class and Opt-out Litigation;*" EPI European Pension Fund Summit, Montreux, Switzerland, "*Legal and Global Economic Implications of the U.S. Subprime*

*Lending Crisis*," May 2, 2008; Bar Association of San Francisco, "*Impact of Spitzer's Litigation and Attempted Reforms on the Investment Banking and Insurance Industries*," May 19, 2005; Opal Financial Conference, National Public Fund System Legal Conference, Phoenix, AZ, "*Basic Principles of Securities Litigation*," January 14, 2005; American Enterprise Institute, "*Betting on the Horse After the Race is Over—In Defense of Mutual Fund Litigation Related to Undisclosed After Hours Order Submission*," September 30, 2004. *Member*: State Bar of California; State Bar of New York; Member, Editorial Board, *Wall Street Lawyer*; Yale University Alumni Board of Directors (Director, 2001-2005); California Bankers Association (Director, 1993-99); California State Small Business Development Board (1989-1997); University of California at Berkeley, Boalt Hall Alumni Board of Directors (1993-96); Leadership Council, San Francisco Chamber of Commerce (1990-1992); Community Reinvestment Institute (Founding Director, 1989-1990); Member, Yale Whiffenpoofs.

**NICK R. DIAMAND**, Admitted to practice in New York, 2003; U.S. District Court, Southern, Eastern, Northern, and Western Districts of New York; US. Court of Appeals, Seventh Circuit. *Education*: Columbia University School of Law (LL.M., Stone Scholar, 2002); College of Law, London, England (C.P.E.; L.P.C.; Commendation, 1997); Columbia University (B.A., *magna cum laude,* 1992). *Employment*: Solicitor, Herbert Smith, London (1999-2001); Law Clerk to the Honorable Edward R. Korman, Chief Judge, U.S. District Court, Eastern District of New York (2002-03). *Publications & Presentations*: Contributing Author, *California Class Actions Practice and Procedure* (Elizabeth J. Cabraser, Editor-in-Chief), 2006; Panelist, "Obstacles to Access to Justice in Pharmaceutical Cases," *Pharmaceutical Regulation and Product Liability*, British Institute of International and Comparative Law, April 21, 2006; Panelist, "Pre-Trial Discovery in the United States," Union Internationale des Avocats, Winter Seminar, February 2006; Columnist, *The New York Employee Advocate*, NELA/NY, February 2006-present. *Member*: New York City Bar Association, Public Justice, American Society of International Law, Law Society of England and Wales.

**LYDIA LEE**, Admitted to practice in Oklahoma 1983; U.S. District Court, Western and Eastern Districts of Oklahoma; U.S. Court of Appeals, 10th Circuit. *Education*: Oklahoma City University, School of Law (J.D., 1983); University of Central Oklahoma (B.A., 1980). *Prior Employment*: Partner, Law Office of Lydia Lee (2005-2008); Partner, Oklahoma Public Employees Retirement System (1985-2005); Associate, law firm of Howell & Webber (1983-1985). *Publications & Presentations*: "QDROs for Oklahoma's Public Pension Plans," *Oklahoma Family Law Journal*, Vol. 13, September, 1998; Co-Author, "Special Problems in Dividing Retirement for Employees of the State of Oklahoma," *OBA/FLS Practice Manual*, Chapter 27.3, 2002; Featured Guest Speaker, *Saturday Night Law*, KTOK Radio; Contributor and Editor, INFRE Course Books for CRA program. *Member*: Oklahoma Bar Association (1983–present), Member OBA Women in Law Committee (2007-present); National Association of Public Pension Attorneys (1988-present), President (2002-2004), Vice-President (2001-2002), Executive Board member (1998-2004), Chair of Benefits Section, Emeritus Board member, (2004-present); Edmond Neighborhood Alliance Board of Directors (2005-present), President (2006-2007), Past President and Director (2007-present); Central Edmond Urban Development Board (2006-present); Midwest City Regional Hospital, Board of Governors (1992-1996), Served on Physician/Hospital Organization Board, Pension and Insurance Trust Committees, and

Chairman of Woman's Health Committee; City of Midwest City, Planning Commission (1984-1998), Chairman (1990-1995), Vice-Chairman (1987– 990), Served on Capital Improvement Committee, Airport Zoning Commission (Tinker AFB), and Parkland Review Board, served on 1991 Midwest City Legislative Reapportionment Committee.

**MORRIS A. RATNER**, Admitted to practice in California, 1991; District of Columbia, 1999; New York, 2000; U.S. District Court, Northern, Central and Southern Districts of California; and U.S. Court of Appeals, Second, Third, Sixth and Ninth Circuits. *Education*: Harvard University (J.D., 1991); Stanford University (B.A., with distinction, 1988); Phi Beta Kappa. *Publications & Presentations*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); "Factors Impacting the Selection and Positioning of Human Rights Class Actions in United States Courts: A Practical Overview," 58 *New York University Annual Survey of American Law* 623 (2003); "The Settlement of Nazi-Era Litigation Through the Executive and Judicial Branches," 20 *Berkeley Journal of International Law* 212 (No. 1, March 2002). *Faculty Appointments*: Harvard Law School, Visiting Professor (2010-2011): "Class Actions and Other Aggregate Litigation," "Remedies," "Legal Profession," and "Holocaust Litigation"; Harvard Law School, Visiting Lecturer on Law for Winter Term 2009, teaching "Holocaust Litigation." *Lectures*: Stanford University, History Department (guest lecturer, June 2008, re Holocaust-era litigation); UC Berkeley School of Law Boalt Hall (guest lecturer, 2007, re legal ethics); Columbia Law School (guest lecturer, 2004, re Holocaust litigation); New York University School of Law (guest panelist, 2003, re developments in international law). *Member*: State Bar of California; State Bar of New York; Bar of the District of Columbia.

## ASSOCIATES

**KENNETH S. BYRD**, Admitted to practice in Tennessee, 2004; U.S. District Court of Appeals, 6th Circuit, 2009; U.S. District Court, Western District of Tennessee, 2007; U.S. District Court, Eastern District of Tennessee, 2006;U.S. District Court, Middle District of Tennessee, 2005. *Education:* Boston College Law School (J.D., *cum laude*, 2004), Law Student Association (President, 2003-2004), National Moot Court Team (Regional Champion, 2003-2004), American Constitution Society (Secretary, 2002-2003), Judicial Process Clinic (2003), Criminal Justice Clinic (2003-2004); Samford University (B.S., *cum laude*, in Mathematics with Honors, minor in Journalism, 1995). *Employment:* Harwell Howard Hyne Gabbert & Manner, P.C., 2004-2010. *Member:* American Bar Association; American Constitution Society, Nashville Chapter (Member & Chair of 2008 Supreme Court Preview Event); Camp Ridgecrest Alumni & Friends (Board Member); Harry Phillips American Inn of Court, Nashville Chapter (Associate Member, 2008-2010; Barrister, 2010-2014); Historic Edgefield, Inc. (President, 2009-2011); Nashville Bar Association; Tennessee Bar Association.

**NANCY CHUNG**, U.S. Court of Appeals for the Ninth Circuit, 2003; U.S. District Court, Northern and Central Districts of California (2007, 2008). *Education*: Hasting College of Law (J.D., 2002); University of California, Santa Cruz (B.A., Language Studies, 1995). *Employment*: International Labor Organization, Geneva, Switzerland (2000-2001); Peace Corps Volunteer, Romania (1995-1997). *Member*: Bar Association of San Francisco. *Languages*: French, Romanian and Korean.

**NIMISH R. DESAI**, Admitted to practice in California, 2006; US District Court, Northern District of California, 2007; US District Court, Central District of California, 2008; US District Court; Northern District of Florida, 2009. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D., 2006), Finalist and Best Brief, McBaine Moot Court Competition (2006), Moot Court Best Brief Award (2004); University of Texas, Austin, (B.S. & B.A., High Honors, 2002). *Employment*: Extern, Sierra Club Environmental Law Program, 2004; Researcher, Public Citizen, 2003; Center for Energy and Environmental Resources, 2001-2002. *Publications & Presentations*: "BP, Exxon Valdez, and Class-Wide Punitive Damages," 21 Class Action and Derivative Suit Committee Newsletter (Fall 2010); "American Chemistry Council v. Johnson: Community Right to Know, But About What? D.C. Circuit Takes Restrictive View of EPCRA," 33 *Ecology L.Q.* 583 (Winter 2006); "Lessons Learned and Unlearned: A Case Study of Medical Malpractice Award Caps in Texas," *The Subcontinental*, (Winter 2004, Vol. 1, Issue 4, pp. 81-87); "Separation of Fine Particulate Matter Emitted from Gasoline and Diesel Vehicles Using Chemical Mass Balancing Techniques", *Environmental Science Technology*, (2003; 37(17) pp. 3904-3909); "Analysis of Motor Vehicle Emissions in a Houston Tunnel during Texas Air Quality Study 2000," *Atmospheric Environment*, 38, 3363-3372 (2004). *Member*: State Bar of California; Bar Association of San Francisco; Consumer Attorneys of California; American Bar Association; American Constitution Society; South Asian Bar Association. *Languages*: Gujarati (conversational).

**JORDAN ELIAS**, Admitted to practice in California, 2003; U.S. Court of Appeals, Seventh Circuit, 2010; U.S. District Court, District of Arizona, 2009; U.S. District Court, District of Colorado, 2009; U.S. District Court, Southern District of Florida, 2009; U.S. District Court, District of Minnesota, 2009; U.S. District Court, District of Nevada, 2009; U.S. District Court, Eastern District of Pennsylvania, 2008. *Education*: Stanford Law School (J.D., 2003); Member, *Stanford Law Review*; Yale University (B.A., Phi Beta Kappa, *magna cum laude*, 1998). *Employment*: Associate, Wilson Sonsini Goodrich & Rosati, 2004-2008; Law Clerk to the Honorable Cynthia Holcomb Hall, U.S. Court of Appeals for the Ninth Circuit, 2003-2004; Law Clerk, City Attorney of San Francisco, Summer 2002; Judicial Extern to the Honorable Charles R. Breyer, U.S. District Court, Northern District of California, Summer 2001; Website Editor, Public Agenda, 1999-2000. *Member*: State Bar of California; Bar Association of San Francisco; Arbitrator, Bar Association of San Francisco, Attorney-Client Fee Disputes Program; Member, Committee on *Iqbal v. Ashcroft*, Public Justice.

**CECILIA HAN**, Admitted to practice in California, 2005; U.S. District Court, Northern District of California, 2008; U.S. District Court, Central District of California, 2009; U.S. Court of Appeals for the Ninth Circuit (2010). *Education*: University of California, Hastings College of the Law (J.D., 2004); Executive Editor, *Hasting Constitutional Law Quarterly*, (2003-2004); Judicial Extern to Judge Anthony Kline of California Appellate Court, 2002; Judicial Extern to Magistrate Judge Edward M. Chen, 2003; University of California, Berkeley (BA., Phi Beta Kappa, 2000). *Employment*: Associate, Brayton Purcell, (2005-2007). *Member*: State Bar of California; Minority Bar Coalition; CAOC; Bar Association of San Francisco.

**DEAN M. HARVEY**, Admitted to practice in California, 2007; U.S. District Court, Northern District of California; U.S. District Court, Central District of California; U.S. District Court, Eastern District of California; U.S. District Court, Southern District of California; U.S.

Court of Appeals for the Ninth Circuit; U.S. District Court, Eastern District of Wisconsin (2010). *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D. 2006); Articles Editor, *California Law Review* (2005-2006); Assistant Editor, *Berkeley Journal of International Law* (2004); University of Minnesota, Twin Cities (B.A. *summa cum laude*, 2002). *Prior Employment*: Associate, Boies, Schiller & Flexner LLP (2007-2009); Law Clerk, The Honorable James V. Selna, U.S. District Court for the Central District of California (2006-2007); Law Clerk, U.S. Department of Justice, Antitrust Division, San Francisco Field Office (2006); Summer Law Intern, U.S. Department of Justice (2005); Summer Associate, Boies, Schiller & Flexner LLP (2005). *Awards & Honors*: "Rising Star for Northern California," Super Lawyers, 2010-2011; "William E. Swope Antitrust Writing Prize," 2006. *Publications*: Contributing Author, *ABA Annual Review of Antitrust Law Developments* (2011); Panelist, "In the Wake of *AT&T Mobility v. Concepcion*: Perspectives on the Future of Class Litigation," American Bar Association (2011). Co-Editor, *California Class Actions Practice and Procedures* (2010-2011); *New Guidance for Standard Setting Organizations: Broadcom Corp. v. Qualcomm Inc. and In the Matter of Rambus, Inc.*, 5 ABA Sherman Act Section 1 Newsl. 35 (2008); *Anticompetitive Social Norms as Antitrust Violations*, 94 Calif. L. Rev. 769 (2006). *Member*: American Bar Association (Antitrust Section).

**ANDREW S. KINGSDALE**, Admitted to practice in Massachusetts, 2007; New York, 2007; California, 2008. *Education*: Temple University School of Law (J.D. 2006); Temple Journal of Science Technology and Environmental Law; Johns Hopkins-Nanjing University Center for U.S.-China Studies, 2000; Dartmouth College (B.A. 1996). *Member*: State Bar of California, 2008; State Bar of Massachusetts, 2007; New York State Bar Association, 2007; U.S. District Court, Central District of California, 2008; U.S. District Court, Eastern District of California, 2008; U.S. District Court, Eastern District of New York, 2009; U.S. District Court, Northern District of California, 2008; U.S. District Court, Southern District of California, 2008; U.S. District Court, Southern District of New York, 2009. American Bar Association, Antitrust and Litigation Sections Member; Bar Association of San Francisco, International Law Section Member.

**DANIEL S. LEATHERS**, Admitted to practice in New York, 2010; New Jersey; Pennsylvania, 2009. *Education*: Case Western Reserve University School of Law (J.D., *cum laude*, 2009); Executive Articles Editor, *Case Western Reserve Journal of International Law*; Pennsylvania State University (B.A. in History & Journalism, 2009). *Awards & Honors*: International Academy of Trial Lawyers Award for overall Trial Advocacy excellence (May 2009); Paul J. Hergenroeder Award for excellence in Trial Tactics (May 2009); Federal Bar Association Award for excellence in Constitutional Law (May 2009); CALI Excellence for the Future Awards: Trial Tactics (May 2009), Constitutional Law I (May 2007), Constitutional Law II (December 2007). *Employment*: Judicial Law Clerk to Honorable Carol Higbee, New Jersey Superior Court, Vicinage I Civil Division Presiding Judge, 2009-2010; Summer Associate—Consumer Law Unit, The Legal Aid Society of Cleveland, 2008; Law Clerk, Zipkin Whiting Co., LPA, 2007. *Member*: New Jersey State Bar Association; New York State Bar Association, 2010; Pennsylvania State Bar Association, 2009. *Publications*: "Giving Bite to the EU-U.S. Data Privacy Safe Harbor," 41 Case W. Res. J. Int'l L. 193, Vol. 41, No. 1 (2009).

**KATHERINE LEHE**, Admitted to practice in California; U.S. Court of Appeals for the Ninth Circuit; U.S. District Court, Central District of California; U.S. District Court, Northern District of California; U.S. District Court, Southern District of California. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D., 2010), *California Law Review*; *Berkeley Journal of Gender, Law & Justice* (Articles Editor, 2007-2008); Prosser Prize in Pre-Trial Civil Litigation; Moot Court Award, Best Oral Argument; Berkeley Law Queer Caucus (Board Member, 2008-2009); Thelton E. Henderson Center for Social Justice (Student Leadership Council, 2008-2009); California Asylum Representation Clinic (2007-2008); Oberlin College (B.A. in Environmental Studies, 2003). *Publications & Presentations*: *"Cracks in the Foundation of Federal Law: Ameliorating the Ongoing Mortgage Foreclosure Crisis Through Broader Predatory Lending Relief and Deterrence,"* 98 Cal. L. Rev.2049 (2010); "Courts Consider Landlord Defenses to Source of Income Laws," 30 Housing Law Bulletin 239 (Nov./Dec. 2008); "Foreclosure Relief Legislation Includes GSE Regulation and National Housing Trust Fund," 38 Housing Law Bulletin 161 (August 2008); "Federal Court Invalidates Immigration-Based Local Rent Restrictions," 38 Housing Law Bulletin 150 (July 2008); "As Impacts Spread, Congress Considers Additional Foreclosure Policies," 38 Housing Law Bulletin 118 (June 2008); "Congress Tackles Foreclosure Relief and GSE Reform," 38 Housing Law Bulletin 109 (June 2008). *Member:* American Association for Justice; Bar Association of San Francisco; Bay Area Lawyers for Individual Freedom; Consumer Attorneys of California; National Lawyers Guild; State Bar of California.

**JASON L. LICHTMAN**, Admitted to practice in Illinois; District of Columbia; U.S. District Court, Northern District of Illinois. *Education*: University of Michigan Law School (J.D., *cum laude*, 2006), Campbell Moot Court Executive Board; Clarence T. Darrow Scholar; Northwestern University (B.A. in Economics, 2000). *Employment*: Judicial Law Clerk to Honorable Kathleen M. O'Malley, United States District Court, Northern Disctrict of Ohio, 2008-2010; Litigation Associate, Howrey LLP, 2006-2008; Summer Associate, Howrey LLP, 2005; Summer Associate, Reed Smith LLP, 2004. *Member*: Bar Association of the District of Columbia; Bar Association of Illinois.

**SARAH R. LONDON**, Admitted to practice in California, 2009; U.S. District Court, Northern District of California, 2009; U.S. Court of Appeals for the Ninth Circuit, 2009. *Education*: Boalt Hall School of Law, University of California (J.D., 2009); Northwestern University (B.A., 2002). *Member*: New Lawyers' Division, Consumer Attorneys of California.

**ANNIKA K. MARTIN**, Admitted to practice in New York, 2005; U.S. District Court, Southern District of New York, 2005; U.S. District Court Eastern District of New York. *Education:* Law Center, University of Southern California (J.D., 2004); Review of Law & Women's Studies; Jessup Moot Court; Medill School of Journalism, Northwestern University (B.S.J., 2001); Stockholm University (Political Science, 1999). *Publications & Presentations*: "Stick a Toothbrush Down Your Throat: An Analysis of the Potential Liability of Pro-Eating Disorder Websites," *Texas Journal of Women & the Law* (Volume 14 Issue 2, Spring 2005); "Welcome to Law School," monthly column on www.vault.com (2001-2004). *Awards and Honors*: 2005 Wiley W. Manuel Award for Pro Bono Legal Services awarded by the State Bar of California for voluntary provision of legal services to the poor. *Member*: New York State Bar Association; Swedish American Bar Association; American Association for Justice; New York

State Trial Lawyers Association; New York County Lawyer's Association; New York City Bar Association.  *Languages*: Swedish (fluent); French (DFA1-certified in Business French); Spanish (conversational).

**MICHAEL J. MIARMI**, Admitted to practice New York, 2006; U.S. District Court, Southern District of New York; U.S. Court of Appeals for the Third Circuit, 2007; U.S. Court of Appeals for the Eighth Circuit, 2007; U.S. Supreme Court.; *Education*: Fordham Law School (J.D., 2005); Yale University (B.A., *cum laude*, 2000).  *Publications & Presentations*: Co-Author with Steven E. Fineman, "The Basics of Obtaining Class Certification in Securities Fraud Cases: U.S. Supreme Court Clarifies Standard, Rejecting Fifth Circuit's 'Loss Causation' Requirement," *Bloomberg Law Reports* (July 5, 2011).  *Employment*: Milberg Weiss LLP, Associate, 2005-2007.  *Member:* State Bar of New York; New York State Bar Association; New York State Trial Lawyers Association; Public Justice Foundation.

**ANNE SHAVER**, Admitted to practice in California, 2008; Colorado, 2008; U.S. District Court, Northern District of California, 2009.  *Education*: Boalt Hall School of Law, University of California (J.D., 2007), Order of the Coif; University of California, Santa Cruz (B.A. *cum laude*, 2003), Phi Beta Kappa.  *Employment*: Law Clerk to Honorable Betty Fletcher, U.S. Court of Appeals for the Ninth Circuit, 2008-2009; Davis, Graham & Stubbs, LLP, Litigation Associate, 2008; Public Defender's Office of Contra Costa County, 2007; Davis, Cowell & Bowe, LLP, Summer Law Clerk, 2006; Centro Legal de la Raza, Student Director, 2005-2006; Human Rights Watch, Legal Intern, 2005.  *Publications*: "*U.S. v. Fort* and the Future of Work-Product in Criminal Discovery," 44 Cal. W. L. Rev. 127, 12293 (Fall 2007).  *Member*: State Bar of California.

**ALISON  STOCKING**, Admitted to practice in New York, 2008; U.S. Court of Appeals for the Ninth Circuit, 2010.  *Education*: Yale Law School (J.D., 2006), Editor, *Yale Human Rights and Development Law Journal*; University of Wisconsin (B.A., 1999), Hilldale Undergraduate/Faculty Research Award; American University in Cairo(1997-98).  *Prior Employment*: Law Clerk to the Honorable Barrington D. Parker, Jr., United States Court of Appeals, Second Circuit, 2008-09; Law Clerk to the Honorable John Gleeson, United States District Court, Eastern District of New York, 2006-07; Associate, Jenner & Block, New York, 2007-08.

Notice on the Firm's AV Rating:  AV is a registered certification mark of Reed Elsevier Properties, Inc., used in accordance with the Martindale-Hubbell certification procedures, standards and policies.  Martindale-Hubbell is the facilitator of a peer review process that rates lawyers.  Ratings reflect the confidential opinions of members of the Bar and the Judiciary. Martindale-Hubbell Ratings fall into two categories—legal ability and general ethical standards.

# Exhibit B

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.

**5 Becker Farm Road**
**Roseland, New Jersey 07068**
**Telephone No.: (973)994-1700**
**Telephone Fax: (973)994-1744**
**www.carellabyrne.com**

**Carella, Byrne**

## AN INTRODUCTION TO
### _CARELLA, BYRNE_

Carella, Byrne, Cecchi, Olstein, Brody & Agnello, with offices in Roseland, New Jersey, had its origins in a partnership created in 1976 by Charles C. Carella and others. Since then, the firm has grown from four attorneys to over 35 attorneys. In 1990, the firm merged with two others: Bozonelis and Woodward of Chatham, New Jersey, and Cecchi, Brody & Agnello, of Lyndhurst, New Jersey.

Throughout our history, our goal has not been growth for growth's sake, but to be a diversified full-service firm that offers our clients a depth of experience that is virtually unmatched. Most importantly, our growth has been a studied one: an approach which has enabled us to maintain the energy and cooperative spirit of a small practice, allowing us to respond quickly and creatively to our clients' problems.

We have significant strength in complex litigation, federal class action litigation, intellectual property, corporate, health care, public financing, environmental, labor, tax and administrative law. This level of experience offers our corporate clients very broad-based legal representation.

We have long been recognized as one of the leading New Jersey law firms, a reputation that has helped us attract a wide spectrum of clients -- from individuals to multinational corporations; from small businesses to non-profit organizations; from zoning boards to state governments.

Today, Carella, Byrne, Cecchi, Olstein, Brody & Agnello is an established and successful law firm that is ready to serve you or your organization with a breadth and depth of experience rare in a firm our size.

To help us serve our clients' promptly and in a cost effective manner, we have a full complement of law clerks, paralegals, word processors and support staff, and state-of-the-art computer and word processing systems, including optical scanners, laser printers, and Westlaw.

We are committed to quality and diversity in our practice areas. Diversity allows our firm to remain a competitive force in the legal marketplace. The firm's commitment to the highest quality of legal work walks hand-in-hand with its commitment to employ the highest quality of diverse people so that we can best serve all of the needs of our clients.

1

**Carella, Byrne**

### GENERAL LITIGATION

The Carella, Byrne, Cecchi, Olstein, Brody & Agnello litigation department participates in a broad range of contested matters. We represent corporations in derivative suits and with respect to allegations of breach of federal and state securities regulations. Additionally, we represent institutions and national companies in warranty, franchise and dealer termination actions; medical malpractice defense claims; and real estate matters, including planning board, board of adjustment proceedings and fair-share housing cases.

**Technical Litigation**

We are uniquely staffed to handle complex technical litigation. In addition to legal training, a number of attorneys have degrees and experience in chemical, electrical, mechanical and biomedical engineering. Litigation cases involve patents, trademarks, trade secrets, copyrights, unfair competition and construction, as well as architectural and engineering malpractice.

**Environmental Litigation**

We handle environmental cases involving current owner liability and third-party common law claims, plus cases under federal and state statutes such as the Federal Water Pollution Control Act, ECRA, the Spill Act, the Resource Conservation Recovery Act (as amended by the Hazardous and Solid Waste Amendments of 1984), the Clean Water Act, the Toxic Substances Control Act, the Comprehensive Environmental Response Compensation Liability Act of 1980 (as amended by the Superfund Amendment and Reauthorization Act of 1986), and many others. We have attorneys expertly trained in environmental matters with a background uniquely suitable to rendering appropriate advice to our corporate and individual clients.

**Medical Malpractice Defense**

Medical malpractice defense work is one of the busiest areas of our litigation practice. We represent a number of major health care institutions, and serve as primary defense counsel for insureds of major insurance companies. During our history, we have represented physicians, dentists, podiatrists, chiropractors, nurses, nurse midwives, and hospitals in a variety of complex litigated matters throughout the state courts.

**Intellectual Property Expertise**

Carella, Byrne, Cecchi, Olstein, Brody & Agnello is nationally recognized in the fields of patent, trademark, copyright, unfair competition, trade secret law and antitrust law as applied domestically and internationally. We have broad technical expertise in chemical, mechanical and electrical engineering; physics; organic chemistry; biochemistry; commercial and industrial building construction, and road and bridge construction; sewage and waste management, including toxic and hazardous waste, radwaste and environmental control. A number of our partners and associates are registered to practice before the U.S. Patent and Trademark Office.

2

## Carella, Byrne

Our particular litigation expertise is in U.S. District Courts and Circuit Courts of Appeal in California, Illinois, Texas, New York, Pennsylvania, Florida and New Jersey, as well as the Court of Appeals for the Federal Circuit.

We also maintain close ties with associate counsel in the United Kingdom, Japan, West Germany, Canada, Italy, France, Austria, Taiwan, Korea, Australia and the Peoples Republic of China. We have controlled and/or participated in patent and other intellectual property litigation in Japan, West Germany, the United Kingdom, Canada, Australia, New Zealand and Austria.

What's more, we offer many other intellectual property services, including licensing and preparation and prosecution of patent applications around the world.

### Corporate and Financial

Carella, Byrne, Cecchi, Olstein, Brody & Agnello provides all legal services involving the sale, purchase and reorganization of a business, including creation of corporations, partnerships and limited partnerships, mergers and acquisitions, public and private corporate financing, and representation in regulatory compliance cases.

### Banking

We have broad experience in commercial lending matters (secured and unsecured), representing both lenders and borrowers; and have counseled banks in all aspects of operations. We have represented institutions in both state and federal regulatory compliance, and in all phases of loan work-outs and financial restructurings. Our experience also extends to commercial litigation and foreclosures.

All too often, financial institutions face breach of both secured and unsecured loan agreements. So to help our clients preserve their banking relationships with their customers, we regularly handle work-outs, no matter how simple or complex. We've handled multiparty and multistate transactions involving construction, apartment complexes, warehouse lines of credit and inventory financing.

### Savings and Loan Conversions

We have helped savings and loan associations convert from mutual ownership to stock ownership. These include standard conversions, modified conversions, supervisory conversions and holding company formations. Services range from contract negotiation and completion, to regulatory authority application preparation and follow-up. And after conversion, we provide general counsel.

### Mergers and Acquisitions

Our firm has counseled corporate clients on mergers and acquisitions, with a special emphasis on the acquisition or divestiture of stand-alone businesses. Clients have included large corporations filling in product lines; small, privately held corporations which are

## Carella, Byrne

liquidating; and large corporate division managers involved in a management buy-out. We counsel clients on employee issues, environmental concerns, liability and contractual issues, regulatory matters and tax issues.

### Creditors' Rights and Bankruptcy

Our firm provides comprehensive legal expertise for clients involved in both corporate and individual insolvencies. We have represented corporate debtors-in-possession, corporate trustees, creditors committees and secured and priority parties in reorganizations and liquidations.

We have expertise in those areas impacting on current bankruptcies including tax (including ERISA), environmental (including state and federal regulations), labor, admiralty, intellectual property, general corporate transactions and commercial and corporate litigation.

### Public Finance

We are a nationally recognized Bond Counsel firm. This means that the investment community looks to us as an expert in public finance law, and that our approving legal opinions are relied on by investors as to the legality and enforceability of tax-exempt obligations.

We have served as Bond Counsel for the issuance of hundreds of millions of dollars of tax-exempt financings for municipalities and local, county and state authorities. And in this capacity, we have assisted in financing everything from the purchase of a town's computer system to the building of a resource recovery facility, to the repair of the Garden State Parkway.

In addition, we have served as underwriters' counsel and counsel to national investment banking firms, and as general counsel to companies obtaining tax-exempt loans for industrial development.

### Class Action Litigation

Carella Byrne is also actively involved in the prosecution of sophisticated plaintiffs' cases involving securities fraud, consumer fraud and antitrust.

#### In re Vytorin/Zetia Marketing, Sales Practices and Products Liability Litigation

Carella Byrne filed the first complaint, and numerous follow up complaints, against Schering-Plough and Merck relating to their marketing of anti-cholesterol drugs Vytorin and Zetia after it was revealed that the companies had been concealing a significant study questioning the effectiveness of the drugs.  The hundreds of cases filed across the nation were consolidated in the United States District Court for the District of New Jersey by the Judicial Panel for Multidistrict Litigation. Carella Byrne was appointed Co-Lead Class Counsel and achieved final approval of a $41.5 million settlement on behalf of consumers and third-party payors.  *In Re: Vytorin/Zetia Marketing, Sales Practices and Products Liability Litigation*, MDL No. 1938 (DMC).

## Carella, Byrne

### KPMG Tax Shelter Litigation

Carella Byrne was co-counsel for the class with respect to a class action entitled *Marvin Simon, as Authorized Representative for The Marvin Simon Trust, as amended, for Palm Investors, LLC and for The Jeffrey Markman 1993 Irrevocable Trust, Marilyn Simon, Clause Harris, Ann Harris, Ben Simon, Heidi Simon, Britt Simon, Kim Fink, Amy Goldberg, Stefan Ressing, Individually and as Trustee of The S. Ressing 1999 Trust, Fitzroy Ventures, Llc, Michael Le, Individually and as Trustee of the ML Le 1999 Trust, and Mackenzie Ventures, LLC v. KPMG LLP and Sidley Austin Brown & Wood LLP*, United States District Court, District of New Jersey, Civil Action No. 05-3189(DMC).

The *Simon* class action involved allegations against KPMG, and the law firm of Sidley Austin Brown & Wood, stemming out of their role in the promotion of fraudulent off-shore tax shelters. The case settled for approximately $200,000,000, and was approved by the United States District Court, District of New Jersey. Carella Byrne was instrumental in achieving this significant settlement over vigorous objections from certain class members. Indeed, to achieve the settlement three full days of plenary hearings were held before the District Court, where both fact witnesses and expert witnesses testified. Carella, Byrne handled all aspects of the plenary hearing.

### Exxon Dealer Class Action

In 2005, Exxon and Class Counsel reached a settlement which required Exxon to pay $1,000,070,000 into a settlement fund which would then be utilized to pay claims submitted to a Special Master by over 10,000 class members. On behalf of the State of New Jersey, Carella Byrne participated in the settlement negotiations and assisted class counsel achieve an overwhelming victory for the class.

Further, in connection with the settlement of the class' case, the Honorable Alan Gold, U.S.D.J., appointed Carella Byrne to represent the interests of 34 States as "States' Counsel", in the post-settlement claims administration process. That assignment is ongoing, *Allapattah Services, Inc. v. Exxon Corporation*, Case No. 91-0986-Civ-Gold.

### Wachovia ERISA Class Action

Carella Byrne was co-lead Class Counsel on behalf of the class in *Serio, et al. v. Wachovia Securities LLC*, Civil Action No. 06-4681(DMC), which was brought on behalf of former Prudential Financial financial advisors and branch managers whose deferred compensation contributions were forfeited when they left employment with Wachovia Securities. The plaintiffs argued that the respective deferred compensation plans are, in fact, "retirement plans" under ERISA and, as a result, the employee contributions should not have been forfeited. Alternatively, the plaintiffs argued that they were constructively discharged as a result of adverse employment conditions which made it impossible for them to perform their jobs and, as a result, their accounts should not have been forfeited under the terms of the respective plans. The settlement in this matter was approved in March 2009.

## Carella, Byrne

### Rail Fuel Surcharge Antitrust Class Action

In May 2006 Carella Byrne, along with Quinn, Emmanuel, Urquhart Olvier & Hedges and others, filed the first nation-wide class action against the five major United States railroads alleging that they engaged in a price-fixing conspiracy through the use of inflated rail fuel surcharges, *Dust Pro, Inc. v. CSX Transportation, Inc., et. al.*, Civil Action No. 07-2251 (DMC). This significant nationwide antitrust case (involving damages in the billions) has been consolidated by the Panel on Multi District Litigation in the District of Columbia with approximately 20 other complaints filed around the nation. Carella Byrne has been appointed to the five member Executive Committee who, along with two co-lead counsel, will lead this important case forward. *In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL No. 1969 (PLF).

### In re:  Mercedes-Benz Tele-Aid Contract Litigation

Carella Byrne is co-lead counsel with two other firms on behalf of the class in this multidistrict litigation arising from Mercedes-Benz's continued sales of analog Tele-Aid systems in its automobiles when it knew that FCC regulations required the discontinuance of all analog cellular communications as of February 2008.  In this action, *In re Mercedes-Benz Tele-Aid Contract Litigation*, MDL No. 1914(DRD), the plaintiffs allege claims for consumer fraud and breach of warranty. The District Court certified a national consumer fraud and unjust enrichment class in 2009. The settlement of this case has been preliminarily approved and final approval is currently scheduled for September 2011.

### Merck/Vioxx Securities Class Action

In September 2006, Carella Byrne was appointed Co-Liaison counsel for the class in the multi-billion dollar securities class action against Merck & Co. arising out of the withdrawal of the drug Vioxx from the market in 2004.  The United States Supreme Court recently agreed that the claims in this action should go forward and it is proceeding in the District Court.  *In Re: Merck & Co., Inc., Securities, Derivative & "ERISA" Litigation*, MDL No. 1658 (SRC).

### In Re Virgin Mobile USA IPO Litigation

On November 21, 2007, Carella Byrne filed the first securities class action lawsuit against Virgin Mobile USA alleging that Virgin created and distributed a materially false and misleading Registration Statement and Prospectus in connection with its October 2007 IPO.

On March 18, 2008, Carella Byrne and its co-counsel were appointed Co-Lead Counsel for the Class by the United States District Court for the District of New Jersey.  Final approval of the settlement in this matter was granted in December 2010. *In Re: Virgin Mobile USA IPO Litigation*, Lead Case No. 07-5619 (SDW).

## Carella, Byrne

### In Re: Schering-Plough/Enhance Securities Class Action Litigation

Carella Byrne filed the first case against Schering Corporation and was appointed to the leadership team as liaison counsel on behalf of the class in this securities fraud litigation related to misleading statements contained in public securities filings made by Schering-Plough Corporation related to the continued commercial viability of Vytorin and Zetia, while it was aware of the results of the Enhance study which questioned the effectiveness of both drugs. *In Re: Schering-Plough/Enhance Securities Litigation*, Lead Case No. 08-397(DMC).

### In re:  Merck & Co. Enhance Securities Class Action Litigation

Carella Byrne has been appointed to the leadership team of the case as Liaison Counsel on behalf of the class in this securities fraud litigation related to misleading statements contained in public securities filings made by Merck & Co., Inc. related to the continued commercial viability of Vytorin and Zetia, while it was aware of the results of the Enhance study which questioned the effectiveness of both drugs.  These consolidated actions are pending in the United States District Court for the District of New Jersey.  *Genessee County Employees' Retirement System v. Merck & Co., Inc., et al*, Civil Action No. 08-2177 (DMC); *Horowitz and Hoffmans v. Merck & Co., Inc., et al.*, Civil Action No. 08-2260 (DMC)

### Internet Tax Class Actions

This class action was filed in New Jersey on behalf of the Township of Lyndhurst and other New Jersey municipalities which charge occupancy taxes on hotel and motel rooms.  The complaint alleges that the defendants, travel websites, paid occupancy taxes based upon on the wholesale prices they paid for hotel and motel rooms, rather than the retail prices paid by the customer.  The suit seeks taxes on the difference between the wholesale and retail prices.  This case is currently on appeal before the United States Court of Appeals for the Third Circuit. *Township of Lyndhurst v. Priceline.com*, Civil Action No. 08-3033(JLL).

Carella Byrne was also recently appointed as co-lead counsel on behalf of the certified class in similar litigation in Florida brought by Monroe County.  *The County of Monroe, Florida v. Priceline.com*, Case No. 09-10004-CIV-MOORE/SIMONTON

### Johnson & Johnson

Carella Byrne is co-lead counsel in an action asserting shareholder derivative claims and is liaison counsel in separate securities fraud claims relating to allegations that Johnson & Johnson undertook several massive secret recalls of products, violated anti-kickback laws, and engaged in off-label marketing products which resulted in expenses and governmental fines of hundreds of millions of dollars.  *In re Johnson & Johnson Derivative Litigation*, Civil Action No. 10-2033(FLW); *Monk v. Johnson & Johnson*, Civil Action No. 10-4841(FLW)

### Pfizer Securities Litigation

Carellla Byrne is liaison counsel in this federal securities fraud class action alleging that

## Carella, Byrne

Wyeth, which was subsequently purchased by Pfizer, made false statements with respect to the projected sales for a pipeline drug to treat Alzheimer's Disease when, in fact, tests indicated that the drug was a failure. *Security Police and Fire Professionals of America Retirement Fund v. Pfizer*, Civil Action No. 10-3105(SDW)

### Sprint ETF Action

Carella Byrne was appointed as co-class counsel for a nationwide class of individuals who were charged an early termination fee by Sprint Nextel. The Sprint ETF action settled for $17,500,000 in 2009 and the Court granted final approval of the settlement in this matter by way of Opinion and Order dated January 15, 2010. *Sampang, et al. v. AT&T Mobility LLC, et al.*, Civil Action No. 07-5324(JLL).

### T-Mobile ETF Action

Carella Byrne was appointed as co-class counsel for a nationwide class of individuals who were charged an early termination fee by T-Mobile. The Court granted final approval of the $12,500,000 settlement in this matter by way of Opinion and Order dated September 10, 2009. *Milliron v. T-Mobile*, Civil Action No. 08-4149(JLL).

### AT&T ETF Action

Carella Byrne was appointed as co-class counsel for a nationwide class of individuals who were charged an early termination fee by Cingular and AT&T. The action as settled for in excess of $18,000,000 in 2009 and the Court final approval of the settlement by way of Order dated October 13, 2010. *Sampang, et al. v. AT&T Mobility LLC, et al.*, Civil Action No. 07-5324(JLL).

### UCR Litigation

Carella Byrne was appointed as a member of Plaintiffs' Executive Committee and Settlement Liaison Counsel in this litigation, which alleges that Aetna systematically underpaid out-of-network medical claims using the flawed Ingenix database. Generally, subscribers in health insurance plans receive reimbursement for out-of-network services based upon "usual and customary" rates for the applicable service. The Ingenix database was a database, allegedly of "usual and customary" rates for medical services which health insurers used for calculating out-of-network reimbursement. Plaintiffs allege that the health insurers which used the Ingenix database for calculating reimbursement knowingly submitted artificially low data to the database, which, they, in turn, used to pay artificially low reimbursement for out-of-network services. *In re Aetna UCR Litigation*, Master Docket No. 07-3541(FSH).

In a virtually identical case against CIGNA, Carella Byrne was appointed as Settlement Liaison Counsel. *Franco v. Connecticut General Life Insurance*, Master Docket No. 07-6039 (SRC).

### Schering-Plough/Merck Merger Litigation

## Carella, Byrne

Carella Byrne was appointed as co-class counsel, out of 15 competing lawsuits, in litigation challenging the merger between Schering-Plough and Merck. As co-class counsel, Carella Byrne was able to negotiate a settlement which provided for significant disclosures to shareholders for use in the vote on deciding whether to approve the merger. That settlement received final approval on April 16, 2010. *In re Schering-Plough/Merck Merger Litigation*, Civil Action No. 09-1099(DMC).

### Hertz Equipment Rental LDW Litigation

Carella Byrne is co-lead counsel in litigation challenging Hertz Equipment Rental's loss damage waiver and environmental recovery fee. In that litigation, the plaintiffs contend that those fees violate the New Jersey Consumer Fraud Act because the loss damage waiver provides no real benefit to customers and the environmental recovery fee has nothing to do with expenses related to environmental protection. Class certification was granted by way of opinion and order dated December 11, 2008. *Davis Landscape v. Hertz Equipment Rental Corporation*, Civil Action No. 06-3830(DMC).

### Patent Infringement Actions

Carella Byrne is also representing numerous pharmaceutical companies in pending patent infringement actions. The majority of these actions arise under the Hatch-Waxman Act. Representative cases include: *Aventis v. Teva Pharmaceutical*, Civil Action No. 07-2454 (JAG) (Allegra); *Schering v. Ivax Corporation*, Civil Action No. 00-2931 (Claritin); *Eli Lilly and Company v. Actiavis Elizabeth LLC et. al*., Civil Action No. 07-770; *Connetics v. Agis Industries*, Civil Action No. 05-5038 (GEB) (Olux); *Merck & Co. v. Apotex*, Civil Action No. 06-5789(MLC) (Trusopt); *Janssen Pharmaceutica v. Apotex*, Civil Action No. 06-1020(DMC) (risperidone); *Cephalon v. Mylan Pharmaceuticals, et al.*, Civil Action No. 03-1394(JCL) (Provigil); *Celgene Corp. v. Barr Laboratories*, Civil Action No. 07-286(SDW)(Thalomid); *Novartis Corp., et al. v. Lupin Ltd.*, Civil Action No. 06-5954(HAA); *Savient Pharmaceuticals v. Sandoz, et al.*, Civil Action No. 0605782(PGS) (oxandrolone).

### Trusteeship/Receiverships

In addition to these ongoing matters, Carella Byrne previously was appointed Trustee/Receiver by the United States District Court, District of New Jersey, in connection with securities law violations by Eddie Antar, founder of the defunct consumer electronics chain Crazy Eddie, *Securities and Exchange Commission v. Eddie Antar et al.*, Civil Action No. 89-3773 (JCL).

The Antar Receivership required Carella Byrne to work with the Securities and Exchange Commission ("SEC"), and to commence litigation in numerous foreign jurisdictions, including Switzerland, Canada, Liechtenstein and Israel, in an effort to repatriate and recover millions of dollars in illegally obtained assets which Mr. Antar had diverted from the Crazy Eddie chain.

## Carella, Byrne

In its capacity as Trustee/Receiver, Carella Byrne recovered over $80,000,000, which was paid to Mr. Antar's victims. The SEC has reported that the *Antar* case represented the largest asset recovery in a contested case as of that time. The investment of the assets fully funded all expenses of the receivership and contributed a substantial amount to the settlement fund, even though the receivership extended from 1990 to 2005.

In addition to its other responsibilities Carella Byrne undertook administration of the settlement fund, including addressing tax and lien issues on behalf of the funds and harmed investors, participating in obtaining a tax exempt ruling on fund income from the New Jersey Division of Taxation, and working closely with the claims administrator and the SEC. Notably, in the claims evaluation and payment process, Carella Byrne personally reviewed and evaluated each claim for payment or denial of payment, and communicated the decisions to investors, the SEC and the Court, and appeared in response to any objection or appeal of the claims decisions, none of which was reversed or modified. Carella Byrne also oversaw the distribution process consisting of payments of thousands of checks to investors in a two-tier distribution process administered by the claims administrator and the bank. Finally, investor contact information was maintained and updated for future distributions in a related case.

Carella Byrne appeared for the bankruptcy trustee in *In Re Robert E. Brennan, Debtor*, Case No. 95-35502(KCF) and *Conway v. Pirates Associates et al.*, Adv. Pro. No. 98-3245(KCF). The *Brennan* matter arose out of claims by the SEC against Robert Brennan, formerly of First Jersey Securities, for securities law violations. Litigation was pursued in various domestic and foreign jurisdictions for the recovery of assets. We were successful in identifying and piercing various off-shore trusts and recovering millions of dollars for the bankruptcy estate, which was used in part to satisfy the SEC's judgment against Brennan.

Carella Byrne has also appeared either as trustee, receiver or counsel in: *Federal Trade Commission v. Oak Tree Numismatics, et al.* (D.N.J.) (control and operation of a rare coin dealer, distributions to customers, and turn-back of the enterprise to the defendants without exception); *United States v. Sheelan* (D.N.J.) (liquidation of Rule 144 restricted stock as restitution); *Harvey, Attorney General v. Clover Merchant Group et al.*(Superior Court of New Jersey, Essex County Chancery Division) (equitable receivership for fraudulent securities dealer).

Carella Byrne attorneys have also advised and represented clients with respect to numerous antitrust issues relating to restraint of trade, price fixing and monopolization, both in court and in connection with FTC investigations. Those cases include: *Biovail Corporation International v. Hoechst AG*, 49 F.Supp.2d 750 (D.N.J. 1999); *Grace Consulting, Inc. v. Geac Computer Systems, Inc. et al.*, Civil Action No. 02-1252(KSH)(D.N.J.) and *Golden Bridge Technologies v. Nokia, et al.*, Docket No. 2:05-CV-170 (E.D.Tex).

## REAL ESTATE, LAND USE AND RESORT DEVELOPMENT

The Firm handles all aspects of transactions involving residential, commercial and industrial properties for both corporate and individual clients. Such transactions involve the preparation and review of real estate and financial documentation, environmental matters, land use regulations, and other related matters. Condominium transactions, including the formation of

## Carella, Byrne

the condominium project and its approval by the regulatory authorities, and the preparation of the registration statement are included within this area.

The Firm's representation of land developers includes the preparation with the developer of Planning Board Applications, and the appearance before such Boards in connection with applications for subdivisions, variances and site plans. In this connection, the Firm works with the developer's experts in such areas as architecture, engineering, environmental, and traffic.

The Firm has been engaged in extensive litigation in real estate and related environmental matters, and has both represented and opposed major title companies in complex litigation.

## Carella, Byrne

**Regulatory Practice**

Carella, Byrne, Cecchi, Olstein, Brody & Agnello is uniquely qualified to guide its clients through the proliferation of governmental regulation in a number of different areas of the law, from the regulation of casinos, to hospitals, from resource recovery facilities to public utilities.

**Health Care Law**

In order to effectively operate in today's competitive environment, hospitals and other health care delivery systems must keep pace with technological advances and changes in law and insurance. We do.

Currently we represent and advise a variety of health care clients, from rehabilitation facilities and nursing homes to general acute care hospitals. And our primary concern is to help each organization achieve workable solutions to operational problems. To accomplish this, we identify problems and then offer both short- and long-term recommendations to prevent exposure to legal and financial risks. Most importantly, we provide up-to-date knowledge in a constantly changing regulatory system.

We'll handle all legal matters relevant to operation; policy and regulatory requirement correction; risk management review; and efficient, effective management plan development. And we do it all with a sensitive approach to our clients' concerns.

We have extensive experience representing fiscally distressed hospitals in turn around situations. Our team of experts provides needed direction in the areas of affiliation, corporate restructuring, general workouts, and vendor negotiations, while overseeing crucial day-to-day financial and system operations.

**Public Utilities**

Our firm has a well-earned reputation for excellence in litigation and negotiation of public utility matters, with special emphasis on rate applications, alternative energy and cogeneration projects, solid waste litigation, and utility-related public issue negotiation.

In fact, we took the lead in drafting and passage of the "McEnroe Legislation" for resource recovery facilities; we have served as senior counsel in numerous cases before the Board of Public Utilities; and we have worked with major investment banks to provide financing for utility and cogeneration projects.

**Environmental Law**

We have a broad range of experience in guiding clients through the increasingly complex web of federal and state laws designed to clean up and preserve the environment. We offer counsel on compliance with all government statutes and regulations, as well as their application to commercial and real estate transactions. We can help businesses obtain the needed air, water and waste permits. And our litigation attorneys have extensive trial and appellate

## Carella, Byrne

experience in a variety of cases, including toxic tort, hazardous waste, products liability, insurance law, and more.

**Tax**

Our firm has sophisticated experience in New Jersey State tax matters. We represent multi-national and multi-state corporations in planning, compliance, and litigation cases involving corporate income tax, sales and use tax, and other state and local taxes, including property taxes. We also provide services in federal, corporation, partnership, individual and non-profit association tax matters. This includes providing representation before the U.S. Tax Court and Administrative offices of the IRS.

**Labor Relations**

Carella, Byrne, Cecchi, Olstein, Brody & Agnello handle all aspects of labor relations matters in the public and private sectors. Our labor relations practice encompasses representation of management in collective bargaining negotiations, including preparation of management's contract proposals, acting as management's chief spokesperson at negotiations, and preparation and finalization of negotiated collective bargaining agreements. In addition, we represent management in the public and private sectors in grievance, disciplinary and binding arbitration proceedings.

We also have extensive experience in handling matters before the New Jersey Public Employment Relations Commission and the National Labor Relations Board and in representing management in labor related litigation in both the state and federal courts.

**Government Affairs**

Recognizing the need for both adversarial and negotiation excellence in the modern government arena, Carella, Byrne, Cecchi, Olstein, Brody & Agnello has developed an extensive public issues practice. Our members have testified before Congress, State Legislatures, plus state, county and local governmental and regulatory agencies. To help us retain our leadership role, we are active in a public policy consortium -- the State Capital Law Firm Group -- working within a network of prestigious firms located in every state and throughout the world.

We first work to help our clients focus their concerns, then to develop strategies for implementing their proposals, and finally to act as their representative in every forum of public policy development.

With a strong emphasis on administrative law proceedings and municipal law, we have been successful in representing major national clients in government-related matters. This strength enables us to provide full-service public policy programs for clients, ranging from specific issue representation to integrated crisis management.

**International Law**

Carella, Byrne, Cecchi, Olstein, Brody & Agnello has valuable expertise in various aspects of international law.

## Carella, Byrne

Areas of note include airline transportation and trademark litigation involving gray market or parallel imports. Our foreign litigation experience is in the United Kingdom, Canada, Japan, West Germany, Austria, Australia, New Zealand and Italy.

The firm has particular expertise in taking foreign discovery for use in domestic litigation under the Hague Convention as well as Consular Treatises. Additionally, we have special expertise in the international overreach of the U.S. Antitrust Laws and the international transfer of technology. To accomplish this, we maintain a close working relationship with associate counsel in many foreign countries. These firms have special competence in dealing with economic and financial issues, both in their own countries and in regional economic blocks in their region, such as the Common Market.

In connection with our intellectual property law expertise, we file and prosecute patent and trademark applications throughout the world, including the European Patent. And we handle the sale and licensing of technology and trademarks.

**Carella, Byrne**

## PARTNERS

### CHARLES C. CARELLA
CCCarella@CarellaByrne.com

**CHARLES C. CARELLA** has been a member of Carella, Byrne, Cecchi, Olstein, Brody & Agnello since 1976 and is Chairman of the Executive Committee. He has extensive experience in many areas of corporate practice, including mergers and acquisitions, bank finance, both state and federal administrative matters, plus environmental and solid waste matters. He has appeared on numerous occasions before the Board of Public Utilities in all forms of utility matters, and has served as a Trustee/Receiver in matters initiated by the Federal Trade Commission, Securities and Exchange Commission, the Federal District Court for the District of New Jersey and has served as Provisional Director upon appointment by the Superior Court of the State of New Jersey, Chancery Division.

Mr. Carella graduated from Fordham University with a B.S. degree in 1955 (Cum Laude) and received an LL.B. degree from Rutgers University in 1958. He was admitted to the New Jersey Bar in 1959 and the New York Bar in 1983.

He has served as an Assistant Prosecutor as well as Special Prosecutor of Essex County; Director of the New Jersey State Lottery Commission, Executive Secretary to the Governor, State of New Jersey, 1975-1976; Member of the Ethical Standards Commission for the State of New Jersey; as well as Chairman, New Jersey State Racing Commission, 1976-1980. He has served as Chief Counsel to the Passaic Valley Sewerage Commissioners.

Mr. Carella is a member of the Essex County, New Jersey State, New York State and American Bar Associations, the Association of Trial Lawyers of America, and the American Judicature Society. He is a member of the Finance Board of the Archdiocese of Newark, and a Trustee Fellow of Fordham University. He was formerly Chairman of the Board of Trustees of The University of Medicine and Dentistry of New Jersey; a member of the Board of Trustees of Robert Wood Johnson University Hospital; a member of the Board of Trustees of University Health System of New Jersey; a member of the Board of Bally Gaming International, Inc., and a member of The Board of Carteret Savings Bank.

Mr. Carella has been named to *Who's Who in American Law.*

### BRENDAN T. BYRNE
BByrne@CarellaByrne.com

**BRENDAN T. BYRNE** graduated from Princeton University with an A.B. degree in 1949 and received an LL.B. degree from Harvard Law School in 1950.

He served as Prosecutor of Essex County, New Jersey; as President of the New Jersey Public Utility Commission; as Assignment Judge of the New Jersey Superior Court; and then as Governor of New Jersey from 1974-1982.

Mr. Byrne is a former Vice President of the National District Attorney's Association; Chairman of the National Commission on Criminal Justice Standards and Goals; Chairman,

15

**Carella, Byrne**

National Governors Association on International Trade; and trustee of Princeton University. He is an Editor of the New Jersey Law Journal and of Irish Law Reports; and former Chairman of the Princeton University Council on New Jersey Affairs and United States Marshals Foundation. He is a former member of the Board of Directors of Mack Cali Realty and Chelsea GCA.

Mr. Byrne was a member of the Board of Directors of Prudential Insurance Company of America, New Jersey Bell Telephone Company, Elizabethtown Water Company, Jamesway Corporation, Ingersoll-Rand and served as a Commissioner of the New Jersey Sports and Exposition Authority. He was litigation counsel to Carvel Corp. and Witco Corporation.

### JAMES E. CECCHI
JCecchi@CarellaByrne.com

**JAMES E. CECCHI** is a member of the firm's executive committee and specializes in complex civil and chancery litigation in federal and state court as well as the prosecutor of complex federal class actions involving claims arising under federal securities laws, consumer protection laws and antitrust laws. Mr. Cecchi personally handled on behalf of the firm the Exxon class action litigation, Merck Securities litigation, KPMG class action litigation and is currently prosecuting securities class actions, antitrust class actions and numerous consumer fraud class actions on behalf of the firm. Mr. Cecchi joined the firm in 1994 after serving in the United States Department of Justice as an Assistant United States Attorney for the District of New Jersey. In that capacity, Mr. Cecchi participated in numerous significant criminal prosecutions involving money laundering, narcotics smuggling and violations of federal firearms laws.

Mr. Cecchi graduated from Colgate University in 1989 with honors, majoring in History and Political Science. Mr. Cecchi was Executive Editor of the Colgate News. In 1989 he graduated from Fordham University School of Law and was a member of the International Law Journal. Mr. Cecchi served as Law Clerk to the Honorable Nicholas H. Politan in the United States District Court, District of New Jersey from 1989-1991. He is a member of the Federal, New Jersey State, Essex County and Bergen County Bar Associations.

### ELLIOT M. OLSTEIN
EOlstein@CarellaByrne.com

**ELLIOT M. OLSTEIN,** a member of the Executive Committee, has broad experience in intellectual property law including securing patent protection; licensing of technical information and patents; infringement and validity opinions; evaluating intellectual property rights for investors; and intellectual property litigation. His particular areas of expertise include chemical and biochemical inventions with particular emphasis on their medical applications.

He also has experience in corporate law and business financing, including venture capital financing, with specific emphasis on technically-oriented business.

Mr. Olstein graduated from Columbia College and Columbia School of Engineering, receiving an A.B. Degree in 1960 and a B.S.Ch.E. in 1961. He received a J.D. Degree from

**Carella, Byrne**

Georgetown University Law Center in 1965 and an LL.M. in taxation from New York University.

Mr. Olstein served for three years as Chairman of the Patents, Trademarks, Copyrights and Unfair Competition Section of the New Jersey Bar Association and is admitted to practice in the States of New Jersey, New York, and Virginia.

### ARTHUR T. VANDERBILT II
AVanderbilt@CarellaByrne.com

**ARTHUR T. VANDERBILT II** joined Carella, Byrne, Cecchi, Olstein, Brody & Agnello in 1982. Since 1978, Mr. Vanderbilt has specialized in public finance law. He has been listed in the "Red Book" of approved municipal bond attorneys in the United States for over twenty-five years. He has had broad experience in general obligation bond and revenue bond financings as Bond Counsel, underwriter's counsel, and trustee's counsel, and has been involved with billions of dollars of financings. In addition, Mr. Vanderbilt has represented many clients before the New Jersey Board of Public Utilities, and is a registered Governmental Affairs Agent.

Mr. Vanderbilt graduated with an A.B. degree from Wesleyan University (magna cum laude) in 1972 and with a J.D. degree from the University of Virginia School of Law in 1975.

After a judicial clerkship with the Hon. Herman D. Michels, Presiding Judge of the New Jersey Superior Court, Appellate Division, Mr. Vanderbilt served as Deputy Attorney General of New Jersey, and Counsel to the New Jersey Board of Public Utilities. Before joining Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart, & 0lstein, he served as Assistant Counsel to the Governor of New Jersey.

Mr. Vanderbilt is listed in *Who's Who in America,* and, as the author of many books and articles about the law, in *Contemporary Authors.* He won the American Bar Association's Scribes Award in 1976 for the best book about the law published that year, and was inducted into the New Jersey Literary Hall of Fame in 2001. Mr. Vanderbilt served as a member and chairman of a Supreme Court District Ethics Committee, and was a member of the Supreme Court's Advisory Committee on Professional Ethics and a member of the New Jersey State Bar Association's Task Force on Attorney Disciplinary System. He has served as a member and president of the Board of Trustees of the Elizabeth, New Jersey Presbytery; the Summit, New Jersey Free Public Library; The Manley-Winser Foundation and Greenwood Gardens. He is a member of the American Bar Association, the New Jersey Bar Association, and the National Association of Bond Lawyers. He was named a fellow of the American Bar Foundation in 2000.

## Carella, Byrne

### JAN ALAN BRODY
JBrody@CarellaByrne.com

**JAN ALAN BRODY** a member of the Executive Committee, became associated with the firm of Cecchi & Politan in 1976. He became a partner in 1982 and, in 1987, the firm name was changed to Cecchi, Brody & Agnello when partner Nicholas H. Politan became a United States District Court Judge.

Mr. Brody graduated from Boston University cum laude in 1973 with an A.B. degree in political science. In 1976, he graduated Boston University Law School with a Juris Doctor degree. He has had extensive experience in complex civil and chancery litigation and has a substantial family law practice.

He is a member of the American, New Jersey State, and Bergen County Bar Associations. He has also served as counsel for the Fort Lee Planning Board and as a Standing Master appointed by the United States District Court for the District of New Jersey.

### JOHN M. AGNELLO
JAgnello@CarellaByrne.com

**JOHN M. AGNELLO** joined the firm of Cecchi and Politan in 1979. In 1983, he became a partner in the firm. In 1987, he became a name partner as the firm's name was changed to Cecchi, Brody & Agnello after Nicholas H. Politan became a U.S. District Court Judge. Cecchi, Brody and Agnello merged with Carella, Byrne in 1990 at which time Mr. Agnello became a partner in Carella, Byrne.

Mr. Agnello graduated from Stevens Institute of Technology in 1975 receiving a B.E. with Honor in mechanical engineering. In 1979, he graduated from Seton Hall University School of Law receiving a J.D., Cum Laude. He has extensive experience in complex commercial litigation with particular emphasis on environmental, insurance coverage, ERISA and construction cases. Additionally, he has a substantial labor practice representing management (both public and private) in collective bargaining negotiations, labor mediation and arbitration proceedings, as well as actions before the National Labor Relations Board and the New Jersey Public Employment Relations Commission. Mr. Agnello also represents ERISA Pension and Welfare Funds.

He is a member of the American, Federal, New Jersey State, and Bergen County Bar Associations.

### CHARLES M. CARELLA
CMCarella@CarellaByrne.com

**CHARLES M. CARELLA** is experienced in general counsel law, municipal law, bankruptcy matters including corporate insolvency and creditors' rights and general litigation. He received his B.S. in mechanical engineering from Lehigh University in 1979 and his M.B.A. from Iona College's Hagan School of Business in 1985. He received his J.D. degree from Fordham University School of Law in 1989. He is admitted to the Bars of the State of New Jersey; The United States District Court for the District of New Jersey; the State of New York;

## Carella, Byrne

and the United States District Courts for the Southern and Eastern Districts of New York. He is a member of the New Jersey State and New York Bar Associations. He is currently outside General Counsel for the Archdiocese of Newark and is a member of the Professionals Group Advisory Council for Valley National Bank. He was formerly Township Attorney for the Township of Nutley, New Jersey, 1996. He formerly served as a member of the Board of Trustees of Caldwell College and a member of the Board of Governors of the CYO Youth Ministries of the Archdiocese of Newark, New Jersey.

### LINDSEY H. TAYLOR
LTaylor@CarellaByrne.com

**LINDSEY H. TAYLOR,** specializes in complex commercial litigation in federal court. He graduated received a bachelor's degree with honors from the University of North Carolina at Chapel Hill in 1983 and a juris doctor degree in 1986. He joined Carella, Byrne, Cecchi, Olstein, Brody & Agnello as of counsel in 2002 and became a partner in 2008. He is admitted to the bars of the States of New Jersey and New York, the District of Columbia, and the United States District Courts for the District of New Jersey, Southern and Eastern Districts of New York, and the Eastern District of Michigan, the United States Courts of Appeal for the Second, Third, and Sixth Circuits, and the United States Supreme Court. Reported cases: *In re Suprema Specialties*, 285 Fed.Appx. 782 (2d Cir. 2008)(whether N.J. Affidavit of Merit Statute applied to malpractice claim brought by N.Y. bankruptcy trustee against NJ based accountants); *Thoroughbred Software International, Inc. v. Dice Corp.,* 488 F.3d 352 (6th Cir. 2007) *aff'g in part and  rev'g in part* 439 F.Supp.2d 758 (E.D.Mich. 2006) *on remand* 529 F.Supp.2d 800 (E.D.Mich. 2007)(copyright infringement of computer software); *Yuen v. Bank of China*, 151 Fed.Appx. 106 (3d Cir. 2005)(whether NJ or NY law applied to oral settlement agreement); *Aetna Casualty and Surety Co. v. Aniero Concrete Co.*, 404 F.3d 566 (2d Cir. 2005)(whether construction contract was valid because of a failure to satisfy a condition precedent and remedies if there was no valid contract); *Lucent Information Management, Inc. v. Lucent Technologies, Inc.*, 186 F.3d 311 (3d Cir. 1999)(how        much "use on commerce" is necessary to obtain trademark protection); *Circle Industries USA, Inc. v. Parke Construction Group, Inc.*, 183 F.3d 105 (2d Cir.) *cert. denied* 120 S.Ct. 616 (1999)(what is the citizenship for diversity purposes for corporation which has ceased doing business); *Brown v. Grabowski*, 922 F.2d 1097 (3d Cir. 1990), *cert. denied* 111 S.Ct. 2827 (1991)(civil rights claim relating to right to protection); *Hall v. AT&T Mobility*, 608 F.Supp.2d 592 (D.N.J. 2009)(enforceability of class action waiver in arbitration clause); *In re Mercedes-Benz TeleAid Contract Litigation*, 257 F.R.D. 46 (D.N.J. 2009)(class certification of 50 state consumer fraud class); *Harper v. LG Electronics, Inc.*, 595 F.Supp.2d 486 (D.N.J. 2009)(motion to dismiss consumer fraud class action); *Coppolino v. Total Call International*, 588 F.Supp.2d 594 (D.N.J. 2008)(whether prior settlement was entitled to Full Faith and Credit); *Waudby v. Verizon Wireless Services LLC*, 228 F.R.D. 173 (D.N.J. 2008)(motion to intervene and appointment of class counsel); *In re Gabepentin Patent Litigation*, 395 F.Supp.2d 175 (D.N.J. 2005)(motion for summary judgment in Hatch-Waxman patent infringement case); *Euro-Pro Corporation v. TriStar Products*, 172 F.Supp.2d 567 (D.N.J. 2001)(whether shape of hand-held   vacuum had acquired secondary meaning for trademark protection); *Biovail Corporation International v. Hoechst AG*, 49 F.Supp.2d 750 (D.N.J. 1999)(antitrust claim related to settlement agreement to pay generic drug maker to keep product off the market); *Broadcast Music, Inc. v. 84-88 Broadway, Inc.*, 942 F.Supp. 225 (D.N.J. 1996)(copyright infringement);

## Carella, Byrne

*Broadcast Music, Inc. v. DeGallo, Inc.*, 872 F. Supp. 167 (D.N.J. 1995)(copyright infringement); *Lifschultz Fast Freight v. Rainbow Shops*, 805 F.Supp. 1119; 784 F.Supp. 89 (S.D.N.Y. 1992)(claims relating to negotiated freight charges made in excess of published tariffs); *McGill v. Mountainside Police Dept.*, 720 F.Supp. 418 (D.N.J. 1989)(civil rights claims); *In Re Sound Radio, Inc.*, 145 B.R. 193 (Bankr., D.N.J. 1992)(motions to pay professional fees from bankruptcy estate); *In Re Prestegaard*, 139 B.R. 117 (Bankr., S.D.N.Y. 1992)(extent to which homestead exemption can avoid mortgage); *Unanue v. Rennert*, 39 A.D.2d 289, 831 N.Y.S.2d 904 (1st Dept. 2007)(appeal of *sua sponte* order); *Downs v. Yuen*, 298 A.D.2d 177, 748 N.Y.S.2d 131 (1st Dept. 2002)(enforceability of Hong Kong divorce decree under international comity); *Velazquez v. Jiminez*, 336 N.J.Super. 10 (App.Div. 2000)(whether Good Samaritan statute applies to physician responding to emergency in the hospital); *Conestoga Title Insurance Co. v. Premier Title Agency*, 328 N.J.Super. 460 (App.Div. 2000)(whether corporation can make fidelity bond claim for thefts by sole owner of corporation); *Citibank v. Errico*, 251 N.J.Super. 236 (App. Div. 1991)(whether NJ or NY law applies to deficiency judgment on defaulted mortgage). Publications: "Responding to the Complaint" in *New Jersey Federal Civil Procedure,* New Jersey Law Journal Books, 3d Ed. 2009; "Applying the CISG to International Software Transactions", *Metropolitan Corporate Counsel,* October 1999, "The Digital Millennium Copyright Act: New Protections for the Computer Age", Intellectual Property Supplement, *New Jersey Law Journal,* July 26, 1999; "Copyright Basics for Occupational Therapy Practitioners", *OT Practice,* May 1999, "Facing the New Millennium-Without Bugs", *OT Practice,* December 1998; "The Year 2000 Malpractice Bug: Waiting to Trap the Unwary Attorney", for National Legal Malpractice Conference, sponsored by ABA Standing Committee on Lawyers' Professional Liability, September 1998l "Self-Help in 2000: How a business can do its own Y2K compliance without violating copyright laws", Intellectual Property Supplement, *New Jersey Law Journal,* July 20, 1998; "State and Local Taxation of Software: A Trap for the Unwary CIO" Chief Information Officer Journal, Fall 1989. Lectures: "Intellectual Property Basics for Health Care Attorneys", 2004 Health & Hospital Law Symposium, New Jersey Institute for Continuing Legal Education, October, 15, 2004; "Hot Topics in Copyright Law", 2003 Intellectual Property Summit, New Jersey Institute For Continuing Legal Education, May 2, 2003; "The Inside Track on Copyright Law", WYNY 103.5 First Annual "Country Holiday Expo" songwriters' seminar, November 18, 1995. Practice areas: Commercial Litigation; Intellectual Property Litigation; Bankruptcy. Mr. Taylor was a merit selection to the 2005, 2008, 2009 and 2010 New Jersey "Super Lawyers".

**JAMES T. BYERS**
JByers@CarellaByrne.com

**JAMES T. BYERS** has been a member of Carella, Byrne, Cecchi, Olstein, Brody & Agnello since 1981 and during that time has been engaged in general corporate, real estate and banking law and tax exempt bond financing. He has broad expertise in many areas of corporate practice, including real estate and asset based lending, mergers and acquisitions, purchase and sale of real estate and corporate counseling; and as Bond Counsel in connection with the issuance of tax exempt bonds. Mr. Byers graduated from Rutgers College with an A.B. degree in 1974 and received a J.D. degree from George Washington University in 1979. He has lectured and participated in panel discussions on financing and banking law subjects. He is a member of the American and New Jersey State Bar Associations and a member of the National Association of Bond Lawyers.

**Carella, Byrne**

### DONALD F. MICELI
DMiceli@CarellaByrne.com

**DONALD F. MICELI** specializes in financial matters including federal income taxation, state and real property taxation, taxation litigation and rate making matters before the New Jersey Board of Public Utilities. His practice also includes the representation of developers before local planning boards. He received a B.A. degree from Seton Hall University, an LL.B. degree from Rutgers University, and an LL.M. degree from New York University. He is admitted to the bar of the State of New Jersey and the United States Tax Court. Mr. Miceli has served as Assistant Corporation Counsel, City of Newark, and as Tax Consultant to the Essex County Board of Taxation.

### A. RICHARD ROSS
RRoss@CarellaByrne.com

**A. RICHARD ROSS** is a member of the Litigation and Corporate Departments of the Firm. He has broad experience in complex litigation, corporate, securities, tort and banking matters. Mr. Ross is particularly experienced in international matters including asset recovery and transnational commercial ventures. He also has extensive experience in equity practice and equitable receiverships, and has engaged in a wide range of real estate, trust and estates and commercial loan transactions. Mr. Ross graduated with a B.A. degree from Reed College in 1972, and received a J.D. degree from New York Law School in 1977. He served as a Staff Attorney in the Office of the President, New Jersey Civil Service Commission in 1977, and in the Office of Legal Counsel, New Jersey Supreme Court from 1978-1982, where he also served as an ex-officio member of the Supreme Court Committee on Civil Practice. He is a member of the New Jersey Supreme Court and District Ethics Committee, New Jersey State Bar Association and the American Bar Association (member of the International, Litigation, Business Law, Tort and Insurance and Real Estate, Property and Probate Sections). Mr. Ross has numerous reported decisions including *SEC v. Antar*, 831 F. Supp. 380 (D.N.J. 1993), *judgment aff'd* 54 F. 3d 770 (3d Cir. 1995); *In re National Smelting Inc. of New Jersey Bondholders' Litigation*, 722 F. Supp. 152 (D.N.J. 1989); and *Reinfeld Inc. v. Schieffelin & Co.*, 94 N.J.(1984). Mr. Ross was a merit selection to the 2005, 2008 and 2009 New Jersey "Super Lawyers".

### KENNETH L. WINTERS
KWinters@CarellaByrne.com

**KENNETH L. WINTERS** is primarily engaged in the areas of construction law, anti-trust, trademarks, copyrights, constitutional challenges to commercial regulatory statutes, computer and software law and general disputes. He also has extensive appellate experience. Mr. Winters graduated from the University of South Carolina in 1977 with a Bachelor of Arts Degree (magna cum laude), and became a member of Phi Beta Kappa that year. He received his J.D. degree from Duke University in 1980. He served a one year clerkship with a judge of the Superior Court of New Jersey and thereafter has been in private practice. Mr. Winters is admitted to the state and federal bars of New Jersey, and to the bars of the United States Courts of Appeal for the Third Circuit, the Federal Circuit, and the Eleventh Circuit. He is a member of the American, New Jersey State, and Essex County Bar Associations.

Carella, Byrne

### JEFFREY A. COOPER
JCooper@CarellaByrne.com

**JEFFREY A. COOPER** specializes in bankruptcy matters involving corporate insolvency and creditors' rights litigation. He received his B.A. degree in History from Yale University in 1977 and his J.D. degree from Cornell University, 1980, where he was a Member Phi Alpha Phi. Jeffrey was an Assistant Prosecutor, Essex County, New Jersey from 1981 – 1983, a Member of the Fee Arbitration Committee District VC, Essex County, 1991 – 1995 and a Master, Bankruptcy Inn of Court, 1993 – 1994. He is admitted to the Bars of the State of New Jersey; the United States District Court for the District of New Jersey; the State of New York, the United States District Courts for the Southern and Eastern Districts of New York; and the United States Courts of Appeal for the Second and Third Circuits. He is a Member, New Jersey State Bar Association and the American Bankruptcy Institute. Jeffrey has been a Member of the Merit Selection Panel (which recommends bankruptcy judge appointments to the Third Circuit Court of Appeals) in 1998, 2000 and 2001. He also has been selected as a "Super Lawyer' in 2005, 2006, 2007 and 2009. Jeffrey is a Member of the Board of Directors and also the Chair of the Bankruptcy Section of the State Capital Global Law Firm Group, an association of law firms around the world.

### CARL R. WOODWARD III
CWoodward@CarellaByrne.com

**CARL R. WOODWARD III** is experienced in environmental law, municipal law, zoning and planning, real estate, insurance, personal injury and general civil litigation. He received a B .A. degree, Rutgers University, 1965, and a J.D. degree, Rutgers University of Law, Newark, New Jersey, 1968. He served as Captain, United States Army, 1969-1971. Mr. Woodward was Law Secretary to the Honorable Baruch S. Seidman, Superior Court of New Jersey, Chancery Division. He served as Assistant United States Attorney, District of New Jersey, Chief, Environmental Protection Division, 197 1-1978. He is Township Attorney, Township of Chatham, 1992-present, Attorney, Borough of New Providence 1995-present, and Township Attorney, Township of Cranford 2007. He was formerly Attorney, Chatham Township Board of Adjustment, 1979-1992 and Attorney, Borough of New Providence Planning Board 1986-1994. He was Adjunct Professor of Law, Seton Hall University School of Law in 1985; President of the Rutgers Alumni Association from 1984-1985; and Trustee of Rutgers University from 1985-1991. He currently serves as a Trustee of the New Jersey Institute of Local Government Attorneys. He is a member of the American Bar Association, New Jersey State Bar Association, and Morris County Bar Association.

### MELISSA E. FLAX
MFlax@CarellaByrne.com

**MELISSA E. FLAX** is a member of the Litigation Department of the firm. She received an A.B. Degree from the University of Michigan; American University, London, England and a J.D. Degree from Loyola University where she was a member of Loyola University Law Review. Ms. Flax served as a Law Clerk from 1992-1993 to Hon. Julio M. Fuentes, Superior

22

## Carella, Byrne

Court of New Jersey, Essex County. She is a member of New Jersey State and New York State Bar Associations.

### DENNIS F. GLEASON
DGleason@CarellaByrne.com

**DENNIS F. GLEASON** is a graduate of the City University of New York having received a Bachelor of Arts in 1975. In 1980 he received a Master of Arts from New York University. Mr. Gleason received his *Juris Doctor* from Seton Hall University School of Law in 1986 and was admitted to practice to the New Jersey Bar and United States District Court for the District of New Jersey in 1987. He is also admitted to practice before the United States Supreme Court; the United States Courts of Appeals for the Federal, Third, Sixth, and Seventh Circuits. He has also been admitted to numerous United States District Courts throughout the country. His practice focuses on commercial and complex litigation with particular emphasis in area of the intellectual property matters including patents, trademarks, copyrights, unfair competition and trade secrets. Mr. Gleason has also litigated matters on behalf of policyholders regarding insurance coverage and defended employment discrimination claims. Mr. Gleason also lectures and publishes in the areas of litigation procedure and intellectual property litigation. Mr. Gleason is member of the American Bar Association (Litigation and Intellectual Property Sections); New Jersey Bar Association (Vice President Federal Practice and Procedure Section); and Association of the Federal Bar of the State of New Jersey.

### DAVID G. GILFILLAN
DGilfillan@CarellaByrne.com

**DAVID G. GILFILLAN,** born Washington, D.C., April 23, 1966; admitted to bar, 1993, New Jersey and U.S. District Court, District of New Jersey. Education: Boston College (B.A., 1988); Seton Hall University (J.D., 1993). Member, Worrall F. Mountain Inn of Court. Reported Cases: *Handy & Harmon, et al v. Borough of Park Ridge,* 302 N.J. Super. 558 (App. Div. 1997).

### G. GLENNON TROUBLEFIELD
GTroublefield@CarellaByrne.com

**G. GLENNON TROUBLEFIELD,** born Belleville, New Jersey, October 3, 1966; admitted to bar, 1991, New Jersey and U.S. District Court, District of New Jersey; 1992, Pennsylvania and U.S. District Court, Eastern District of Pennsylvania; registered to practice before U.S. Patent and Trademark Office. Education: University of Pittsburgh (B.S.M.E., 1988); Seton Hall University (J.D., 1991). Law Clerk to Honorable Virginia A. Long, Judge, New Jersey Superior Court, Appellate Division, 1991-1992. Member, 1989-1990, Articles Editor, 1990-1991, Seton Hall Legislative Law Journal. Member: New Jersey State, Garden State and American Bar Associations. Practice Areas: Patents; Trademarks; Copyrights; Unfair Competition; Intellectual Property Litigation.

### BRIAN H. FENLON
BFenlon@CarellaByrne.com

## Carella, Byrne

**BRIAN H. FENLON,** born New York, N.Y., October 30, 1962; admitted to bar, 1987, New Jersey and U.S. District Court, District of New Jersey. Education: Muhlenberg College (A.B., 1984); Seton Hall University (J.D., 1987). Phi Alpha Theta. Member: Morris County and Essex County Bar Associations; Worral F. Mountain Inns of Court.

### KHOREN BANDAZIAN
KBandazian@CarellaByrne.com

**KHOREN BANDAZIAN,** born Richmond, VA, February 7, 1969; admitted to bar, 1995, New Jersey, 1996, New York; Education: Northeastern University (B.S., 1991), Pace University (J.D. 1995). Mr. Bandazian represents individuals, contractors/builders, and developers in all areas of real estate acquisition, financing, leasing, development and sales. He also serves as counsel to lenders in connection with commercial lending. He is counsel to many small business and advises them on the many day-to-day legal issues which face the business community. He is active in the practice of community association law and represents developers in connection with many condominium conversion projects. He is a member of the New Jersey Community Association Institute and serves as a Board of Director for the Community Builder's Association. He is active in his community and also serves on the boards of other charitable organizations. He is president of the Board for the Co-Op where he resides in Fort Lee, New Jersey with his wife and two children.

### OF COUNSEL

**RICHARD K. MATANLE** has broad experience in real estate, banking, general contract and business matters as well as commercial litigation. Within these fields of concentration, he has extensive experience in commercial lending and real estate transactions, including commercial real property leasing. His commercial loan transaction experience includes creditors' rights, litigation and loan workouts. He received a B.A. degree from the State University of New York at Buffalo and a J.D. degree from Hofstra University School of Law. Mr. Matanle was previously Associate Counsel with the Chase Manhattan Bank, N.A. and a partner in the law firm of Blackburn, Rice and Matanle. He also served as counsel with the Federal Deposit Insurance Corporation. He is admitted to the Bars of the State of New Jersey and New York and to the Bars of the United States District Courts in both States.

**DONALD S. BROOKS** received a B.A. degree from Columbia College and an LLB degree from Columbia University Law School. He served as a Trial Attorney with the National Labor Relations Board and immediately prior to joining Carella, Byrne, he was Senior Counsel for Merck & Co., Inc. During his twenty-seven-year career with Merck, Mr. Brooks coordinated a wide variety of general corporate work for the company, including negotiations and preparation of contracts, regulatory compliance and worldwide labor relations activities. Most recently he supervised the legal aspects of the company's worldwide technology transfer activities, including planning, negotiations and drafting licensing agreements, strategic alliances and joint as well as marketing, distribution, supply and research related agreements. Mr. Brooks has also served as a U.S. delegate to the International Labor Organization in Geneva, Switzerland. He is a member of the New Jersey and Pennsylvania Bar Association and has served as Chairman of the Corporate Law Section of the New Jersey Bar Association. Mr.

24

## Carella, Byrne

Brooks is also a member of the New York Bar and has published articles on labor relations, joint ventures and training and development in corporate law departments.

**FRANCIS C. HAND,** born New York, N.Y.; admitted to bar, 1964, District of Columbia; 1965, New York; 1971, New Jersey; registered to practice before U.S. Patent and Trademark Office. Education: Manhattan College (B.C.E.); Georgetown University (J.D.). Arbitrator, American Arbitration Association. Member: New York State, New Jersey State and American Bar Associations; The District of Columbia Bar. Mr. Hand was previously a partner in the patent law firm of Kenyon & Kenyon for twenty years and presently represents domestic and foreign corporations in the prosecution of patents and trademarks and the litigation of patents in the federal courts. Practice Areas: Patents; Trademarks; Licensing; Litigation.

**AVRAM S. EULE,** born Newark, New Jersey, April 9, 1948; admitted to bar, 1971, New Jersey and U.S. District Court, District of New Jersey; 1986, U.S. Supreme Court. Education: Rutgers University (A.B., 1968); University of Oklahoma (J.D., 1971). Phi Alpha Delta. Member, Board of Governors, Rutgers Alumni Federation, 1974-1978. Board of Trustees, Temple Beth Am, 1989-1994; Task Forces, United Jewish Federation of MetroWest, 1992-1998. Member: American Bar Association. Reported Cases: *Dienco, Inc. v. Security National Bank of New Jersey,* 221 N.J.Super. 438 (App. Div. 1987). Practice Areas: Transactional Law; Real Estate Law; Commercial Litigation; Corporate Law; Loan Workouts.

**RAYMOND W. FISHER,** born Newark, New Jersey, June 8, 1949; admitted to bar, 1975, New Jersey and U.S. District Court, District Court of New Jersey; 1981, U.S. Supreme Court; 1982, U.S, Court of Appeals, Third Circuit. Education: Georgetown University (B.A., cum laude, 1971); Fordham University (J.D., 1975). Phi Beta Kappa. Member, Fordham Law Review, 1974-1975. Clerk to Honorable Thomas F. Murphy, United Stated District Court Judge, Southern District of New York, 1975-1976. Member New Jersey State and American Bar Association. Practice Areas: Litigation and Appeals in state and federal courts; General Practice; Employment Law; Commercial Law; Computer Law.

### ASSOCIATES

**RAYMOND J. LILLIE** has experience in patent and trademark cases, including patent application prosecution, interferences, and validity and infringement studies. Mr. Lillie received his B.S. degree (magna cum laude) from the University of Scranton in 1981. He received a J.D. degree from the Marshall-Wythe School of Law, College of William and Mary in 1984. He is registered to practice before the United States Patent and Trademark Office.

He is a member of the American and New Jersey State Bar Associations, and a Fourth Degree member of the Knights of Columbus.

**WILLIAM SQUIRE** graduated from Newark College of Engineering (NJIT) in 1959 with a BS degree in Mechanical Engineering. In 1968, he received his juris doctor degree from Seton Hall University, Newark, N.J. He is admitted to the bar of the State of New Jersey. He is admitted to the United States District Court for the District of New Jersey, the United States Supreme Court and the Court of Appeals for the Federal Circuit. He is a registered patent attorney in the United States Patent and Trademark Office, having been registered in 1970.

## Carella, Byrne

He is a member of the New Jersey State Bar Association, The American Intellectual Property Law Association and The New Jersey Intellectual Property Law Association.

**ALAN J. GRANT,** born Brooklyn, New York, March 8, 1950; admitted to bar, 1985, New York; 1989, U.S. District Court, Southern and Eastern Districts of New York; 1993, U.S. Court of Appeals, Federal Circuit; registered to practice before U.S. Patent and Trademark Office. (Not admitted in New Jersey). Education: St. Francis College (B.S., 1972); State University of New York, Downstate Medical Center (Ph.D., 1979); Brooklyn Law School (J.D., 1985). Member: New York State Bar Association. Practice Areas: Patent Law; Trademark; Copyright.

**MARC D. MICELI,** born Belleville, New Jersey, October 25, 1970; admitted to bar, 1999, New Jersey, Massachusetts and U.S. District Court, District of New Jersey; 2006, U.S. District Court, Southern and Eastern Districts of New York; 2001, U.S. Tax Court. Education: University of Illinois (B.A., 1994; B.M., 1994; M.M., 1995); Case Western Reserve University (J.D., 1998); Boston University (LL.M., Taxation, 2001). Member: New Jersey State, Massachusetts, American Bar Association and American Bankruptcy Institute. Practice Areas: Financial Restructuring and Bankruptcy; Federal and State Taxation; Commercial Litigation.

**RAYMOND E. STAUFFER,** born Queens, New York, February 24, 1966; admitted to bar, 2000, New York and U.S. District Court, Southern and Eastern Districts of New York; 2006, U.S. Court of Appeals for the Federal Circuit; registered to practice before U.S. Patent and Trademark Office. (Not admitted in New Jersey). Education: State University of New York at Old Westbury (B.S., Chemistry, 1993); Brooklyn Law School (J.D., 1997). Moot Court Honor Society. Member: Association of the Bar of the City of New York; American Chemical Society (Member, Section on: Chemistry and the Law); American Intellectual Property Law Association (Voting Member, Committees on: Chemical Practice; Interference; and Licensing and Management of IP Assets). Practice Areas: Patent Prosecution, Litigation, Opinion Drafting, Counseling, and Licensing, as relates to Pharmaceuticals, Chemicals, and Biotechnologies.

**STEPHEN R. DANEK,** born Newark, New Jersey, May 3, 1964; admitted to bar 1989, New Jersey and U.S. District Court, District of New Jersey, 1989. Education: Muhlenberg College (B.A., Political Science, 1986); Seton Hall School of Law (J.D. 1989). Practice Areas: Personal Injury Litigation; Environmental Law.

**DONALD ECKLUND**   Donald Ecklund focuses his practice on all aspects of complex commercial disputes, environmental litigation, consumer fraud, and class action litigation.  Prior to joining the firm, Donald was an associate at a prestigious New York law firm for four years where he represented clients in complex products liability litigation, as well as various environmental contamination cases and other matters.  Donald has served on committees in several multi-district litigations (MDLs) involving pharmaceutical drugs and medical devices. Most recently, he has been extensively involved in class action litigation arising from deceptive sales practices and engaged in commercial litigation relating to direct broadcast satellite television.

A former law clerk for the Honorable Marina Corodemus, Mass Tort Judge for

## Carella, Byrne

the State of New Jersey (Retired), where he focused on complex mass tort and environmental litigation, and for the Honorable Joseph C. Messina, Presiding Judge Chancery Division, General Equity Part, Superior Court of New Jersey (Retired) where he focused on business and commercial litigation, Donald brings unique insights and effective advocacy skills. Donald values the views of and input from his clients, and strives to meet their needs and obtain optimal outcomes.

Donald is admitted to the Bars of the States of New Jersey and New York, and the United States District Courts for the Southern and Eastern Districts of New York and the District of New Jersey.

**AUDRA E. PETROLLE** graduated with a Bachelor of the Arts from New York University in 2005. In 2008, Ms. Petrolle received a Juris Doctor Degree from Seton Hall University School of Law. Formerly, Ms. Petrolle served as a law clerk to the Honorable Dennis M. Cavanaugh, U.S.D.J. in the United States District Court for the District of New Jersey during the 2009-2010 clerkship term. In 2010, Ms. Petrolle joined this firm as an associate in the litigation department with a focus on complex civil litigation, including class action and multidistrict matters. Ms. Petrolle is admitted to practice before the New Jersey State Bar, New York State Bar and the United States District Court for the District of New Jersey.

27

**Carella, Byrne**

---

**MEMBERS OF THE FIRM**
CHARLES C. CARELLA
BRENDAN T. BYRNE
JOHN N. BAIN
PETER G. STEWART
ELLIOT M. OLSTEIN
ARTHUR T. VANDERBILT II
JAN ALAN BRODY
JOHN M. AGNELLO
CHARLES M. CARELLA
JAMES E. CECCHI
JAMES T. BYERS
DONALD F. MICELI
A. RICHARD ROSS
KENNETH L. WINTERS
JEFFREY A. COOPER
CARL R. WOODWARD III
MELISSA E. FLAX
DENNIS F. GLEASON
DAVID G. GILFILLAN
G. GLENNON TROUBLEFIELD
BRIAN H. FENLON
KHOREN BANDAZIAN
LINDSEY H. TAYLOR
RAYMOND J. LILLIE
WILLIAM SQUIRE
ALAN J. GRANT
MARC D. MICELI
RAYMOND E. STAUFFER
STEPHEN R. DANEK
ERIC MAGNELLI
DONALD A. ECKLUND
VICENZO M. MOGAVERO
AUDRA E. PETROLLE

RICHARD K. MATANLE, II
DONALD S. BROOKS
FRANCIS C. HAND
AVRAM S. EULE
RAYMOND W. FISHER

(Of Counsel)

# Exhibit C

# KBL

## Kiesel Boucher Larson LLP

8648 Wilshire Boulevard
Beverly Hills, California  90211

Telephone:  (310) 854-4444
E-mail:  info@kbla.com
Facsimile:  (310) 854-0812

www.kbla.com

**Kiesel Boucher Larson LLP** is one of the most accomplished consumer law firms in the United States.  KBL successfully represents classes or groups of persons, individuals, businesses, and public and private entities in courts worldwide in the areas of personal injury, mass torts, privacy, construction and product defects, toxic exposure, consumer protection, professional malpractice, financial fraud, insurance bad faith, and human rights.  We possess the sophisticated skills and financial resources necessary to litigate and resolve large, complex cases on our clients' behalf.

Formed in April, 1999 with the merger of Kiesel & Larson LLP and the Law Offices of Raymond P. Boucher, KBL and its predecessor firms have a long history of extensive litigation in complex matters.  KBL has litigated and resolved some of the most important civil cases in the nation.  Our attorneys possess a diverse range of professional skills and come from a wide variety of backgrounds.

## A.    CASE PROFILES

### 1.    Mass Torts

***Clergy Cases I, II, & III***, California JCCPs 4286, 4297, and 4359.  In 2002, the state of California passed a law that opened a one-year window of time to file civil suits based on claims of sexual abuse of a minor that would otherwise have been time-barred as of January 1, 2003.  That year, in the wake of the very public Clergy sexual abuse scandal involving Boston's Archdiocese, many hundreds of survivors came forward to file civil suits based on these revived claims.  These survivors alleged that the Church was liable for the molestations because, among other things, it (1) knew or had reason to know that the priests were molesting minors, and yet failed to supervise the priests to ensure that the priests would not molest again; (2) concealed facts relating to the priests' molestations; and (3) harbored, aided, and concealed the priests to avoid arrest and prosecution.

KBL led the fight for justice and accountability in California against numerous corrupt Church entities on behalf of hundreds of these survivors, and was



Kiesel, Boucher & Larson LLP
Page 2

appointed Liaison Counsel on behalf of hundreds more who filed revived claims against the Dioceses of Orange, Los Angeles, San Diego, and Fresno.

### Diocese of Orange

Ninety survivors of Clergy sexual abuse filed lawsuits against the Roman Catholic Diocese of Orange. In December 2004, after nearly two years of intense negotiations, Raymond Boucher, as one of the lead negotiators, helped to successfully settle all claims against the Roman Catholic Diocese of Orange ("Diocese of Orange") for $100 million. One of the key terms of the settlement was a promise that the secret files of the Diocese of Orange would be made public.

### Archdiocese of Los Angeles

Five-hundred and eight survivors of clergy sexual abuse filed lawsuits against the Roman Catholic Archbishop of Los Angeles ("Archdiocese of Los Angeles"). KBL was appointed Liaison Counsel on behalf of these individuals, all of whom were sexually abused as minors, and many of whom were abused by priests who were incardinated.

Over the course of five years and as a result of hard-fought discovery battles, the mountain of damning evidence in support of the plaintiffs' claims continued to grow. For example, many of the accused priests had multiple victims because they were moved by their superiors from one parish to another as accusations arose. The documents from priest-perpetrator files revealed that the Church had failed time and again to protect its most innocent and vulnerable parishioners from harm.

In July 2007, on the very eve of the first of more than a dozen scheduled trials, KBL reached an agreement with the Roman Catholic Archbishop of Los Angeles ("Archdiocese of Los Angeles") to settle all cases against it for $660 million. KBL is well-regarded for having successfully negotiated this, the largest settlement with any diocese in the United States. More importantly, KBL never faltered in keeping its promise to ensure that the Archdiocese of Los Angeles kept one of the key terms of the settlement: that it make certain of its confidential files public to shed light on exactly what Church officials knew about the abuse accusations, and when they learned about them.

### Archdiocese of San Diego

One-hundred and forty-four survivors were sexually abused by Clergy members in the Roman Catholic Diocese of San Diego under lax supervision



Kiesel, Boucher & Larson LLP
Page 3

by the Church.  In September 2007, the Diocese agreed to pay nearly $200 million to these 144 survivors. This is the second-largest settlement by a Roman Catholic diocese nationwide since claims of sexual abuse by clergy members came to light in 2002.

***Chatsworth Metrolink Collision Cases***, Lead Case No. PC043703, Los Angeles Superior Court.  On the afternoon of Friday, September 12, 2008, Metrolink Train 111 collided head-on with a Union Pacific freight train in the Chatsworth district of Los Angeles, resulting in twenty-four passenger deaths and numerous passenger injuries, many of them serious and permanent.  The National Transportation Safety Board ("NTSB") investigated the cause of the collision and concluded that the Metrolink engineer ran through a red signal before entering a section of single track where the opposing freight train had the right of way.  The NTSB determined that the engineer was distracted by text messages that he was sending while on duty.

The Union Pacific engineer triggered the emergency air brake two seconds before impact, but the Metrolink engineer never applied the brakes on his train at all.  When the two trains collided, the Metrolink train went from traveling at approximately forty-two miles per hour to traveling backward.  The Metrolink locomotive telescoped into the passenger compartment of the first passenger car, then caught fire.

Afterward, the family members of deceased passengers and most of the injured passengers filed suit against Metrolink and other defendants to recover through the California judicial system.  KBL represented passengers and family members in eleven of the cases, and in 2008 Paul Kiesel was selected and appointed Plaintiffs' Liaison Counsel in the coordinated proceedings.  Working closely with other members of the Plaintiffs' Steering Committee and with counsel for the defendants, Mr. Kiesel successfully negotiated the recovery of $200 million for the plaintiffs, the maximum amount that the defendants could be required to pay under federal law.

2.    <u>Privacy</u>

***In re: Pellicano Cases***, Lead Case No. BC316318 (Los Angeles Superior Court). Once a high-profile private investigator, Anthony Pellicano is currently serving a lengthy sentence in federal prison for unlawful wiretapping and racketeering.  In 2008, KBL was appointed Co-Lead Class Counsel in this putative class action case arising from Mr. Pellicano's wiretapping in violation of California Penal Code Sections 630 *et seq*.



Kiesel, Boucher & Larson LLP
Page 4

*Coleman v. First American Home Buyers Protection Corp*., Case No. BC420436 (Los Angeles Superior Court); *Greenberg v. E-Trade Financial Corporation*, Case No. BC360152 (Los Angeles Superior Court); *Morris v. eBay, Inc.*, Case No. BC455900 (Los Angeles Superior Court); *Mount v. Wells Fargo Home Mortgage, Inc*., Case No. BC395959 (Los Angeles Superior Court); *Raymond v. Carsdirect.com*, Case No. BC256282 (Los Angeles Superior Court). Businesses provide the familiar admonition that telephone calls with consumers "may be recorded for quality assurance and training purposes" in order to comply with California law, which requires the consent of all parties to a telephone conversation before it may be recorded.  Failure to comply with this requirement constitutes a serious personal privacy violation for which consumers may recover monetary damages.  In these cases, KBL represented classes of California individuals whose called were recorded without their knowledge or permission.

3.    <u>Construction Defect</u>

*In Re: Galvanized Steel Pipe Litigation*, Case No. BC174649  (Los Angeles Superior Court).  As Class Counsel, KBL prosecuted and settled claims made on behalf of thousands of named plaintiff and class member homeowners against the developer defendants and cross-defendants for defective plumbing in this complex suit involving nineteen separate individual and class action product liability cases.  The actions resolved for more than $41 million.

*Silver v. Del Webb*, **Nevada Case**. No. A437325.  Paul Kiesel and Bill Larson were appointed Lead Counsel in this certified class construction defect suit to recover for the installation of faulty plumbing systems in approximately 3,000 new homes in Las Vegas.  KBL negotiated a resolution of the case for $21 million on the day before trial was to begin.  At the time, this was the largest construction defect case in Nevada history.

4.    <u>Economic Injury Product Defects</u>

*In Re: Avandia Marketing, Sales Practices and Product Liability Litigation*.  The Plaintiffs' Steering Committee for this multi-district litigation selected Paul Kiesel to serve as Co-Lead Counsel for the Plaintiffs' Steering Committee in March 2011.  This national litigation involves numerous federal lawsuits brought against defendant GlaxoSmithKline PLC, manufacturer of the onetime "blockbuster" type 2 diabetes drug Avandia, which has been pulled from the shelves in Europe, India, and New Zealand, and which is only available in the United States as a drug of last resort.  KBL represents the County of Santa Clara in a claim on behalf of municipalities in the State of California for the return of all moneys used to purchase this toxic drug.



Kiesel, Boucher & Larson LLP
Page 5

*In re: Rio Hair Naturalizer Products Liability Litigation*, MDL 1055 (E.D. MI). In 1995, Paul Kiesel was appointed Co-Lead Counsel in multi-district litigation arising from a defective hair straightening product that injured over 50,000 plaintiffs. The matter resolved successfully as a limited fund, non-opt-out class action.

*In re: Packard Bell Consumer Certified Class Action Litigation*, Case No. BC125671 (Los Angeles County Superior Court). In 1995, Paul Kiesel was a member of the Plaintiffs' Steering Committee in this consumer class action involving product defect claims, and which resolved successfully.

*Mikhail v. Toshiba America Inc.*, Case No. BC278163 (Los Angeles Superior Court); *Kan v. Toshiba, Inc.*, Case No. BC327273 (Los Angeles Superior Court). KBL was appointed Lead Counsel in these class actions brought to recover for the distribution of faulty computers. The cases resolved with class members eligible to receive up to $36 million (*Kan*) and $50 million (*Mikhail*).

*Anderson v. Toshiba America*, Case No. BC299977 (Los Angeles Superior Court). In 2003, KBL was counsel for the plaintiffs in a class action alleging product defects, and which resolved successfully.

5. **Personal Injury Product Defects**

*Yaz, Yasmin and Ocella Contraceptive Cases*, California JCCP 4608. KBL was appointed Co-Liaison Counsel in this litigation arising out of injuries and deaths that occurred following the ingestion of oral contraceptives.

*Toyota Brakes Cases*, Case No. BC304565 (Los Angeles Superior Court). KBL has been appointed Liaison Counsel in this case involving defective automotive brakes. The cases are currently pending in federal court.

*Serrano v. City of Los Angeles*, Case No. BC144230, Los Angeles County Superior Court. Paul Kiesel was appointed Lead Counsel in this multi-fatality product liability litigation which led to an $8.2 million settlement.

*In Re: Diet Drug Litigation*, California JCCP 4032. In 2003, KBL served as the Plaintiffs' Lead Counsel in this action involving claims arising out of use of the diet drug Phen-Fen, and which settled confidentially.

*Algario et al. v. Eli Lilly and Company et al.*, Lead Case No. BC347855, Los Angeles Superior Court. In 2006, KBL was appointed Lead Counsel in this class action to recover for injuries resulting from ingestion of the medication Zyprexa. The case settled favorably.



Kiesel, Boucher & Larson LLP
Page 6

*In Re: Vioxx Cases*, California JCCP 4247.  In 2007, KBL served on the Plaintiffs' Executive Committee for this California JCCP which involved claims arising out of the use of the drug Vioxx.

6.    Unfair Employment Practices

*In Re: The Securitas Security Services*, California JCCP 4460.  KBL represented the plaintiffs in this class action to recover for violations of California labor laws, which resolved successfully.

7.    Toxic Exposure

*In Re: Unocal Refinery Litigation*, Case No. C94-0414.  Paul Kiesel served as a member of the Direct Action Steering Committee and as Chair of the Allocation Committee in this case involving the toxic contamination of several communities.  Mr. Kiesel developed a methodology and plan of allocation for an $80 million settlement on behalf of approximately 1,500 plaintiffs.

*Zachary et al. v. Arco et al.*, Case No. BC 209944 (Los Angeles County Superior Court).  Paul Kiesel was appointed Lead Counsel in this mass toxic tort case resulting from a ruptured oil pipeline.  The case resolved successfully.

*Tosco Refinery Fire*, Lead Case No. NC028924 (Los Angeles Superior Court).  KBL was appointed Lead Counsel in the Tosco Refinery Fire mass toxic tort litigation, in which thousands of people were affected as a result of an explosion and blaze at the Tosco refinery facility in Wilmington, California.  The toxic plume caused by this massive fire affected over three thousand people.  The matter settled with all defendants on July 1, 2005.

8.    Consumer Protection

*Pilkington v. U.S. Search.com*, Case No. BC234858 (Los Angeles Superior Court).  In 2000, Paul Kiesel was appointed Lead Counsel in this matter involving a technically flawed online search facility which purported to provide adoptees and their biological parents with information about one another upon demand.

*Black v. Blue Cross of America*, Case No. BC250339 (Los Angeles Superior Court).  KBL was co-counsel in this class action against the largest health care service plan in California for improper mid-year contract modifications.  KBL prosecuted and settled claims made on behalf of the named plaintiff and class members.  Following a finding of liability against the insurer for breach of contract and breach of the



Kiesel, Boucher & Larson LLP
Page 7

covenant of good faith and fair dealing, KBL successfully reached agreement to settle all claims for $25 million.  The terms of the settlement called for a reimbursement of 100 percent of the actual damages to nearly 66,000 overpaying subscribers.

*Draucker Development and True Communication, Inc. v. Yahoo!, Inc.*, Case No. CV06-2737 JFW (Rcx) (C.D. Cal.).  KBL was a member of the Plaintiffs' Steering Committee in this matter in which advertisers sought to recover from an online search engine for breach of contract and unfair business practices.

9.    <u>Antitrust</u>

*In re: Wholesale Electricity Antitrust Cases I & II*, California JCCP 4204-00005 and 4204-00006.  In 2000, Paul Kiesel was a member of the Plaintiffs' Steering Committee in this litigation which the plaintiffs sought to recover damages from energy traders for unfair business practices.

10.    <u>Financial Misconduct</u>

*In re: Transient Occupancy Tax Cases*, California JCCP 4472.  In 2004, KBL acted as Co-Lead Counsel representing the City of Los Angeles in a class action on behalf of all cities in the state of California to recover unremitted occupancy taxes from certain online travel companies.

*American Medical Association et al. v. Wellpoint, Inc.*, MDL 09-2074 (C.D. Cal.).  In 2009, KBL was appointed Co-Lead Counsel in this multi-district litigation in which physicians and physician groups seek to recover payments for treatment that they provided to certain of their medical patients.

*Murray v. Belka - "First Pension"*, California JCCP 3131.  KBL joined forces with Aguirre & Meyer to take on a corrupt pension plan administrator, one of the nation's largest law firms, and the world's largest accounting firm to achieve settlements in providing full restitution for 340 mostly elderly consumers who had lost their life savings to a Ponzi scheme.  In July 2000 after a six month trial, the jury found the accounting firm liable for fraud, misrepresentation, aiding and abetting a fraud, and concealment, and issued eighteen findings supporting punitive damages.  PWC subsequently settled for a confidential amount which made the investors whole.

*In re: Hilton Hotels Corporation Shareholder Litigation*, Case No. BC373765 (Los Angeles Superior Court).  In 2007, KBL was appointed Co-Lead Counsel in this class action in which Hilton shareholders sought to block a proposed merger with the Blackstone Group.



Kiesel, Boucher & Larson LLP
Page 8

11.    <u>Insurance Bad Faith</u>

*In re: Northridge Earthquake Litigation*, Lead Case No. BC265082 (Los Angeles Superior Court).  In 2002, KBL served as Plaintiffs' Liason Counsel in suits against State Farm Insurance, 21st Century Insurance, Farmers Insurance, and the USAA Insurance Company.

12.    <u>Human Rights</u>

*Project Masindi, Uganda*.  In 2010 as a participant in this project, Ray Boucher collected details to facilitate the scheduling of the trial dates in the cases of Ugandan minors accused of criminal offenses.  The minors had been languishing in custody for months or years.  As a result of this work many of the minors had their hearings quickly, were determined to be innocent, and were released.  In the remainder of the cases, hearings were scheduled to be heard in court.

13.    <u>Additional</u>

Mr. Kiesel represented Former Governor Gray Davis in a challenge to the qualification of the State's Recall Election of 2003.

B.    <u>FIRM BIOGRAPHY</u>

1.    <u>Partners</u>

**PAUL R. KIESEL,** admitted to practice in California, 1985; admitted to practice before the United States Supreme Court; United States District Court, Central District of California; United States District Court, Northern District of California; Southern District of California; United States District Court, Eastern District of California.  *Education.*  Connecticut College, B.A. 1982; Whittier College School of Law, J.D. 1985, Honorary Doctor of Law 2005.  *Awards and Honors*.  AV Peer Review Rated, Martindale-Hubbell; named one of the one hundred most influential attorneys in California by the California Business Journal; named one of the top fifty trial lawyers in Los Angeles by the Los Angeles Business Journal. *Publications and Presentations*.  Co-author, Matthew Bender Practice Guide: California Pretrial Civil Procedure (treatise); Co-author, Matthew Bender Practice Guide: California Civil Discovery (treatise); frequent presenter for continuing legal education programs; frequent speaker and writer on subjects related to technology in the practice of law.



Kiesel, Boucher & Larson LLP
Page 9

*Member*.  California State Bar Association; Appointed by California Supreme Court Chief Justice Ronald George to the California Judicial Council Civil and Small Claims Advisory Committee; Chair, Los Angeles County Bar Association Litigation Section; Board of Governors, Association of Business Trial Lawyers, 2001-2005; Emeritus Member of the Board of Governors, Consumer Attorneys of California; Emeritus Member of the Board of Governors, Consumer Attorneys Association of Los Angeles.

**RAYMOND P. BOUCHER**, admitted to practice in California, 1984; admitted to practice before the United States Supreme Court; United States District Court, Central District of California; United States District Court, Northern District of California; Southern District of California; United States District Court, Eastern District of California.  *Litigation.* Recovered in excess of $60 million in verdicts for clients in more than fifty cases; over twenty appeals before the Ninth Circuit Court of Appeals and California Courts of Appeal.  *Education.*  Fort Lewis College, B.A. 1980; Colorado State University, M.S. 1981; Pepperdine University School of Law, J.D. 1984.  *Awards and Honors*.  Los Angeles Daily Journal Trial Lawyer of the Decade, 2001-2010; Consumer Attorneys of California 2007 Trial Lawyer of the Year; Consumer Attorneys of Los Angeles 2008 Trial Lawyer of the Year; named one of the one hundred most influential attorneys in California in 2002 by the Los Angeles Daily Journal; recipient of the Consumer Attorneys Association of Los Angeles Ted Horn Memorial Award in recognition of service to the California State Bar in 2002; Pepperdine University School of Law Distinguished Alumnus Award, 2002; Trial Lawyers for Public Justice 1994 Trial Lawyer of the Year; finalist, Trial Lawyers for Public Justice 2000 Trial Lawyer of the Year; recipient of Presidential Awards, awards of merit and commendations from various bar organizations.  *Publications and Presentations*.  Frequent speaker at Consumer Attorneys of California, Consumer Attorneys Association of Los Angeles, American Association for Justice, and National College of Advocacy seminars.  *Member*. California State Bar Association; past President of the Consumer Attorneys of California; past President of the Consumer Attorneys Association of Los Angeles; Board of Directors, Trial Lawyers for Public Justice; Board of Directors, Pepperdine School of Law Board of Visitors; Board of Directors, Los Angeles County Bar Association; Board of Directors, The Diversity in Law Foundation; Board of Directors, the California State Delegation to the Association of Trial Lawyers of America; Fellow, National College of Advocacy; American Association for Justice; The Roscoe Pound Foundation; The Civil Justice Foundation;



Kiesel, Boucher & Larson LLP
Page 10

The American Bar Association; The Los Angeles County Bar Association; The Orange County Bar Association. *Community Service*. Fundraiser; pro bono litigator; legislative adviser.

**WILLIAM L. LARSON**, admitted to practice in California, 1985; admitted to practice before the United States Supreme Court; United States Court of Appeals for the Ninth Circuit; United States District Court, Central District of California; United States District Court, Northern District of California; Southern District of California; United States District Court, Eastern District of California. *Litigation*. Recovery of tens of millions of dollars for clients in cases involving construction defects, business disputes, and personal injuries. *Education*. California State University at Fullerton, B.S. with honors, 1980; Whittier Law School, J.D., top fifth percentile, 1985, Honorary Doctor of Law, 2005. *Awards and Honors*. Whittier Law School 1998 Alumnus of the Year; Super Lawyer, 2009 and 2010; American Jurisprudence Awards in Evidence, Commercial Transactions, Family Law, Legal Research and Writing; Research and Symposium Editor, Whittier Law Review. *Publications and Presentations*. *Securing the Court's Continuing Jurisdiction to Enforce Provisions of a Settlement under CCP Section 664.6*, The Advocate, December 2008. *Member*: California State Bar Association; Consumer Attorneys of California; Consumer Attorneys Association of Los Angeles; American Association for Justice.

**HELEN E. ZUKIN**, admitted to practice in California, 1985; admitted to practice before the United States Supreme Court; United States District Court, Central District of California; United States District Court, Northern District of California; Southern District of California; United States District Court, Eastern District of California. *Education*: University of California at Santa Cruz, B.A., 1980; Loyola Law School, J.D. 1985. *Employment*. Greene, O'Reilly, Agnew & Broillet, 1985-1990; Simke, Chodos, Silberfeld & Anteau, 1990-95; Special Indoor Air Quality Counsel, Carrier Corporation, Syracuse, New York, 1991-98; Law Offices of Helen E. Zukin, 1995-2007; Kiesel, Boucher & Larson, 2007-present. *Member*. Commission on Judicial Nominees Evaluation (JNE) of the State Bar of California, Chair, 1998-99, Vice-Chair, 1997-98, Review Committee Chair, 2004-05, Annual Lecturer, 1999–present, Member, 1995-99, 2002-04; Chancery Club, Los Angeles County Bar Association; Executive Committee, Litigation Section, Los Angeles County Bar Association; Board Member Emeritus, Consumer Attorneys Association of Los Angeles; Board of Governors, Consumer Attorneys Association of Los Angeles; Consumer Attorneys of California; American Association for



Kiesel, Boucher & Larson LLP
Page 11

Justice; Women Lawyers Association of Los Angeles. *Awards & Honors*. City of Los Angeles City Council Commendation for Service to the Los Angeles City Ethics Commission; Commendation, Consumer Attorneys Association of Los Angeles, 2002; President's Award for Outstanding Contribution to the Association; Consumer Attorneys Association of Los Angeles, 2000. *Publications*. Editor in Chief, *Indoor Air Pollution Law Report* (1991-94); *How to Identify a Good Toxic Tort Case*, Consumer Attorneys Association of Los Angeles, 1997; Editor, Indoor Air Quality Handbook for Building Owners and Operators, Carrier Corporation, March 1997; *Proving Causation in a Toxic Tort Case*, Consumer Attorneys Association of Los Angeles, 1996; *How to Avoid Becoming a Target Defendant in an Indoor Air Quality Case*, American Society of Heating and Refrigerating Engineers Annual Journal, April 1992; *Legal Ramifications of Indoor Air Pollution*, University of Tulsa Environmental Journal, May 1992; *The Use of Experts in an Indoor Air Quality Case*, Indoor Air Pollution Law Report, March 1992; *What Is a Sick Building Syndrome Case?*, The Advocate, February 1992; *How to Prove a Sick Building Syndrome Case*, Indoor Air Pollution Law Report, December 1992; *Emerging Issues in Toxic Tort Cases*, Environmental Law Reporter, November 1990. *Presentations*. American Institute of Architecture; American Society of Heating and Refrigerating Engineers; Building Owners & Managers Association; Consumer Attorneys Association of Los Angeles; Continuing Education of the California State Bar; The Rutter Group; Mealey's Legal Publications; University of Tulsa Annual Environmental Symposium. *Community Service*. Los Angeles City Ethics Commission, President, 2008-11, Vice President, 2007-08, Commissioner, 2006-07; Temporary Judges Program, Los Angeles Superior Court, 2005-09; Environmental Protection Agency/Santa Susan Field Laboratory Task Force, 1990-97; Board of Directors, The Buckley School; Board of Trustees, California Historical Society; Chair, Board of Directors, The Brandeis-Bardin Institute.

**STEVEN D. ARCHER**, admitted to practice in California, 1975; United States Supreme Court, 1980; United States District Court, Central District of California, 1975; United States District Court, Eastern District of California; United States District Court, Southern District of California; United States District Court, Northern District of California; United States District Court, Eastern District of Pennsylvania; United States District Court, District of South Carolina; United States Court of Appeals, Ninth Circuit; United States Court of Federal Claims. *Education*. University of California at Los Angeles, B.A. in American History, Dean's List, 1970; Loyola Law School, Los Angeles, J.D., Dean's Honor List, 1974.



Kiesel, Boucher & Larson LLP
Page 12

*Employment*.  Silber, Benezra & Taslitz, 1973-78; Belli & Choulos / Belli, Sayre, Archer & Sabih, Associate, Partner, 1978-82; Simke, Chodos, Silberfeld & Soll, Inc. / Simke, Chodos, Silberfeld & Anteau, Inc., Associate, Partner, 1982-95; Robins, Kaplan, Miller & Ciresi L.L.P., Partner, 1995-2010; Kiesel, Boucher & Larson LLP, Partner, 2010-present. *Awards & Honors*.  AV Peer Review Rated, Martindale-Hubbell; Super Lawyer, Law & Politics, 2006-present; Humanitarian Award, American Civil Liberties Union of Southern California, 2008; Advocate of the Year, Public Counsel, 2009; Nominee, Consumer Lawyer of the Year, Consumer Attorneys of California, 2009.  *Publications*.  *Update: Increased Concern over Mounting Numbers of Reported Deaths and Serious Injuries Prompt the FDA to Order Testing of Medical Devices Containing Heparin*, June 13, 2008;  *Consumer Alert: Digitek Heart Failure Medications Recalled - A Serious Risk of Injury or Death to the Patient*, May 21, 2008; *Federal Judge Approves Settlement Over Baxter Infusion Pumps*, July 13, 2006; *Consumer Alert: Bausch & Lomb's Renu with MoistureLoc  Soft Contact Lens Solution Recalled*, April 26, 2006; *The Dangers of the "Usual Stipulation" in Deposition Practice*, Los Angeles County Bar Association New Lawyers Manual, Fall 2005; *Consumer Alert: F.D.A. Orders Class 1 Recall of Baxter International's Colleague Volumetric Infusion Pumps*, July 13, 2006; *Consumer Alert: Guidant Ancure Endograft System Abdominal Aortic Stents*, September 2003; *Consumer Alert: St. Gobain Prozyr Zirconia Ceramic Coated Femoral Head Hip Implant Components*, February 2002; *A Practical Guide to Code of Civil Procedure Section 2032 - Taking Control of Defense Medical Examinations*, The Advocate, September 2000;  *Trying the Soft Tissue Damages Case in California*, The National Business Institute, October 1995 (co-authored); Auto Accident Manual, Los Angeles Trial Lawyers Association, March 1985 (contributing author); *Using Thermograms to Argue Soft Tissue Damages*, Trial Magazine, February 1983.  *Presentations*.  Using Tort Law to Effect Social Change, Pepperdine University School of Law,  November 17, 2009; Getting the Most Out of Discovery: Parts I and II, State Bar of California Continuing Education of the Bar, July 13, 2009, August 3, 2009; Discovery - Planning, Strategy and Dealing with Abusive Discovery Tactics, State Bar of California Continuing Education of the Bar, July 25, 2008; The Art of Advocacy: Tailoring the Message - Storytelling and Framing (moderator), American Association for Justice, July 14, 2008; Mock Mediation: Strategies for Successful Mediation of the Toxic Tort Case, ABA Tort Trial and Insurance Practice Section, April 12, 2008.  *Member*. State Bar of California; American Association of Justice; Public Justice; Consumer Attorneys of California, Consumer Attorneys Association of Los



Kiesel, Boucher & Larson LLP
Page 13

Angeles; Los Angeles County Bar Association. *Community Service*. Pending Legislation Sub-Committee, Consumer Attorneys of California; Past Vice-Chair, Member, Client Relations Committee, Los Angeles County Bar Association; Los Angeles County Bar Association Lawyer Referral and Information Service; Dependency Court Tort Committee, Los Angeles Juvenile Court; Advisory Board, Loyola Law School Center for Conflict Resolution; Board of Directors, Public Counsel; Board of Directors, Los Angeles Conservancy; Board of Directors, Mt. Olympus Property Owners' Association.

**THOMAS H. PETERS**, admitted to practice in California, 1992; admitted to practice before the United States Court of Appeals, 9th Circuit; United States District Court, Central District of California; United States District Court, Northern District of California; United States District Court, Southern District of California; United States District Court, Eastern District of California. *Education.* Trinity University, B.A. in philosophy and history, 1988; Duke University School of Law, J.D., 1992. *Awards and Honors.* AV Peer Review Rated, Martindale-Hubbell; Presidential Award, Consumer Attorneys Association of Los Angeles (multiple years); Southern California Super Lawyer, 2009-present; Wiley Manuel Pro Bono Award, State Bar of California, 1997; Bet Tzedek Award for Pro Bono Service (multiple years). *Presentations*. Consumer Attorneys Association of Los Angeles, Consumer Attorneys of California, Los Angeles County Bar Association, Los Angeles Superior Court, Wyoming Trial Lawyers Association. *Member*. California State Bar Association; Board of Governors, Consumer Attorneys Association of Los Angeles; Board of Trustees, Los Angeles County Bar Association; American Association for Justice; Consumer Attorneys of California. *Community Service*. Pro Bono Attorney, Bet Tzedik Legal Services. *Additional*. Licensed pilot.

## C.    Of Counsel

**ANTHONY M. DE MARCO**, admitted to practice in California, 1997; admitted to practice before the United States Supreme Court; United States District Court, Central District of California; United States District Court, Northern District of California; Southern District of California, ; United States District Court, Eastern District of California. *Education.* California State University at Los Angeles, B.A. in Journalism, 1992; Loyola Law School, Los Angeles, J.D., 1996. *Specialty*. Childhood sexual abuse. *Awards*. Finalist, National Trial Lawyer of the Year Award, Trial Lawyers for Public Justice, 2008. *Member*: California State Bar Association; Board of Governors, Consumer Attorneys of California; Los



Kiesel, Boucher & Larson LLP
Page 14

Angeles County Bar Association; Consumer Attorneys Association of Los Angeles; Trial Lawyers for Public Justice.

### D.   Senior Associates

**JEFFREY A. KONCIUS**, Admitted to practice in California, 1997; New Jersey, 1995; New York, 1997; admitted to practice before the United States District Court, Central District of California; United States District Court, Southern District of California; United States District Court, District of New Jersey; United States District Court, Eastern District of New York; United States District Court, Southern District of New York; United States Court of Appeals for the Ninth Circuit. *Education.* Johns Hopkins University, B.A., 1989; Benjamin N. Cardozo School of Law, J.D., 1995. *Reported Decisions*. *Spielman v. Ex'pression Center for New Media*, 191 Cal. App. 4th 420 (2010); *Loeffler v. Target Corporation*, 173 Cal. App. 4th 1229 (2009), *review granted* 216 P.3d 520 (2009); *Pioneer Electronics (USA) Inc. v. Superior Court*, 40 Cal. 4th 360 (2007); *Bush v. Cheaptickets, Inc.*, 425 F.3d 683 (9th Cir. 2005); *Morohoshi v. Pacific Home*, 34 Cal. 4th 482 (2004); *Bird, Marella, Boxer & Wolpert v. Superior Court*, 106 Cal. App. 4th 419 (2003). *Awards and Honors*. Supervising Editor, Cardozo Law Review, 1994-95. *Employment*. Cohn Lifland Pearlman Herrmann & Knopf, 1995-97; Law Office of Joseph J.M. Lange, 1997-2000; Lange & Koncius, LLP, 2000-11; Kiesel, Boucher & Larson, 2011-present. *Member*. California State Bar Association; New York State Bar Association; New Jersey State Bar Association; American Association for Justice, Consumer Attorneys of California, Consumer Attorneys Association of Los Angeles, Los Angeles County Bar Association, Public Justice Foundation. *Additional*. Past entrepreneur.

**SHEHNAZ M. BHUJWALA**, admitted to practice in California, 2002; United States Court of Appeals, Ninth Circuit, 2002; United States District Court, Central District of California, 2002; United States District Court, Northern District of California, 2002; United States District Court, Southern District of California, 2002; United States District Court , Eastern District of California, 2002. *Education.* University of California at Los Angeles, B.A. in Psychology, high honors, departmental honors for research in cognitive psychology, 1997; University of Southern California, Gould School of Law, J.D., 2002 (moot court quarterfinalist). *Honorable Distinctions*. Southern California Rising Star, Los Angeles Magazine & Southern California Rising Stars Magazine, 2009-11. *Publications. Redaction of Online Court Records is in the Interest of All Consumers*, Los Angeles Daily Journal, September 20, 2010. *Member*: California



Kiesel, Boucher & Larson LLP
Page 15

State Bar Association; Board of Governors, Consumer Attorneys of California; American Bar Association; American Association for Justice; Los Angeles County Bar Association; Consumer Attorneys Association of Los Angeles; Trial Lawyers for Public Justice; Public Counsel Foundation. *Employment*. Greene, Broillet, Panish & Wheeler, LLP, 2002 -04; Cooper, Phillips & Peterson, LLP, 2004-05; Wood, Smith, Henning & Berman, LLP, 2005-06; Kiesel, Boucher & Larson, LLP, 2006-present. *Community Service*. Barristers' Domestic Violence Project of the Los Angeles County Bar Association.

**E. GLENN ANAISCOURT**, admitted to practice in California, 2006; United States District Court, Central District of California, 2006; United States District Court, Northern District of California, 2010; Southern District of California, 2010; United States District Court, Eastern District of California, 2010; United States Bankruptcy Court, Central District of California, 2009. *Education.* Harvard University, *magna cum laude* in Sanskrit and Indian Studies, 1988; Anderson School at UCLA, M.B.A., 1998; Loyola Law School, Los Angeles, J.D., 2005. *Awards and Honors.* Editor in Chief, Loyola of Los Angeles Law Review, Vol. 38, 2004-05; Otto Kaus Award for legal research, writing, and editing, Loyola Law School, 2005; Dean's Service Award, Loyola Law School, 2005; faculty nominee, Marketing Student of the Year, Anderson School at UCLA, 1998; Marketing Teaching Assistant, Anderson School at UCLA, 1997-98. *Publications and Presentations*. *Fine Tuning California's Approach to Injured Participants in Active Sports*, 37 Loy. L.A. L. Rev. 1273 (2004); *In Support of Informing California Juries About the Non-Economic Damage Limitation of MICRA*, The Advocate, March 2006, co-authored with Antony Stuart; *Managing Complex Litigation with the Court*, The Advocate, Feb. 2010, co-authored with Paul R. Kiesel; *Cablegate: Turnaround is Fair Play for Government*, Los Angeles Daily Journal, Dec. 21, 2010. *Member*. California State Bar Association; American Association for Justice, Consumer Attorneys of California, Consumer Attorneys Association of Los Angeles, Los Angeles County Bar Association, Public Justice Foundation. *Community Service*. U.S. Peace Corps (Gabon), 1993-96; past President, Returned Peace Corps Volunteers of Los Angeles; past host parent, Youth Exchange and Study Program, Educational and Cultural Affairs Bureau of the United States State Department and AFS Intercultural Programs (exchange between United States and countries with significant Muslim populations). *Additional*. Aerialist, cyclist.



Kiesel, Boucher & Larson LLP
Page 16

E.   **Associates**

**KIERSTEN KROPP**, admitted to practice in California, 2010; United States District Court, Central District of California, 2010. *Education.*  University of Southern California, B.A. in Communications, B.A. in Social Sciences with emphasis in Psychology, 2007; Loyola Law School, Los Angeles, J.D., 2010 (international commercial arbitration moot team, Vienna, Austria; Scott moot court competition; coursework in international human rights and criminal law, the Netherlands); Extern to the Honorable Stephen V. Wilson at United States District Court, Central District of California. *Awards and Honors*.  St. Thomas More Honor Society, Loyola Law School.  *Member*:  State Bar of California; Consumer Attorneys Association of Los Angeles; Consumer Attorneys of California; Los Angeles County Bar Association; Public Justice.  *Community Service*. Christian Legal Aid, Angeles.  Public Interest Fellow, Alliance For Children's Rights.

**JAY M. LICHTER**, admitted to practice in California, 2009; United States District Court, Central District of California, 2009. *Education.*  University of California at Los Angeles, B.A. in English Literature with minor in Political Science, 2005; University of California, Davis School of Law, J.D., 2009. *Awards and Honors*.  Staff Editor, University of California, Davis School of Law Business Law Journal, 2007-08; Staff Editor, University of California, Davis School of Law Journal of International Law and Policy, 2007-09; moot court participant. *Member*.  State Bar of California; National Lawyers Guild, American Bar Association. *Employment*.  Legal Advocate, Legal Services of Northern California, Senior Legal Hotline, 2007; Law Clerk, Office of the Ventura County District Attorney, Major Crimes Unit, 2008; Student Extern, Public Rights Division of the Office of the Attorney General of California, 2008; Graduate Law Clerk, Office of the San Diego County District Attorney, Cold Case Homicide Unit, 2009. *Community Service*. Legal Services of Northern California (focusing on elder law); Certificates in Pro Bono Service and Public Service Law, awarded by the University of California, Davis School of Law.

**MARIA L. WEITZ**, admitted to practice in California, 2009; United States District Court, Central District of California, 2009; United States District Court, Northern District of California, 2009; Southern District of California, 2009; United States District Court, Eastern District of California, 2009. *Education:*  University of California, Davis School of Law, J.D., 2009; Executive Editor Environs Journal of Environmental Law and Policy, 2008-



Kiesel, Boucher & Larson LLP
Page 17

2009; University of California, Los Angeles, B.A., 2006. *Employment:* Law Clerk, Office of the Attorney General, Division of Public Rights, 2008 (focusing on environmental protection law compliance); Summer Associate, Klinedinst PC, 2007 (focusing on construction defect defense). *Awards and Honors*: Witkin Award for Academic Excellence in Legal Writing, 2007; Sacramento County Bar Association Diversity Fellowship, 2007; Certificate in Public Service Law, 2009. *Member*: American Bar Association, State Bar of California, Los Angeles County Bar Association, Women Lawyers of Los Angeles, Consumer Attorneys of California, Consumer Attorneys of Los Angeles. *Community Service*: Women Lawyers of Los Angeles Scholarship Committee, 2011; University of California, Davis Civil Rights Clinic (co-counsel in federal jury trial, 2009).

**MATTHEW YOUNG**, admitted to practice in California, 2009; United States Court of Appeals, Ninth Circuit, 2009; United States District Court, Central District of California, 2009. *Education*. University of California at Berkeley, B.A. with honors in Economics, 2005; University of Southern California School of Law, J.D., 2009; Southern California Interdisciplinary Law Journal, 2007-2009. *Publications*. *Adapting to Adaptive Reuse: Comments and Concerns About the Impacts of a Growing Phenomenon*, 18 S. Cal. Interdisc. L.J. 703 (2009) (proposals set forth in article subsequently adopted by the City of Los Angeles). *Member*. State Bar of California, American Bar Association, Los Angeles County Bar Association, Consumer Attorneys of California, Beverly Hills Bar Association, Public Justice Foundation. *Employment*. Los Angeles City Attorney's Office, extern, 2007-2008. *Community Service*. Oakland Asian Students Educational Services. *Additional*. Watersports.

**FONTAINE YUK**, admitted to practice in California, 2009; United States District Court, Central District of California, 2010; United States District Court, Northern District of California, 2010; United States District Court, Southern District of California, 2010; United States District Court, Eastern District of California, 2010. *Education*: University of California, Los Angeles, B.A. in Psychology, minor East Asian Languages and Cultures, 2004; Loyola Law School, Los Angeles, J.D., 2009 (Extern to the Honorable Thomas B. Donovan of the United States Bankruptcy Court, 2008; Business Law Society; Public Interest Law Foundation). *Member.* State Bar of California, American Bar Association, Los Angeles County Bar Association, Consumer Attorneys of California, Consumer Attorneys Association of Los Angeles, Women Lawyers Association of Los Angeles,

**K:L**

Kiesel, Boucher & Larson LLP
Page 18


Public Justice Foundation, Beverly Hills Bar Association.  *Community Service*.  Law Clerk, San Francisco Bay Area Legal Aid, 2007.