# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

CONNIE MCLENNAN, VIRGINIA ZONTOK, CARYL FARRELL, on behalf of themselves and all others similarly situated,

Case No. 10-cv-3604-WJM-MF

Plaintiffs,

v

LG ELECTRONICS USA, INC.

Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S UNOPPOSED APPLICATION FOR FEES, COSTS, AND SERVICE AWARDS TO THE CLASS REPRESENTATIVES

Jonathan D. Selbin
Jason L. Lichtman
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500

Kristen Law Sagafi
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

James E. Cecchi
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

Paul R. Kiesel
KIESEL BOUCHER LARSON, LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
(310) 854-4444

*Counsel for Plaintiffs*

949288.2

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................. 1

II.  FACTUAL BACKGROUND .................................................................. 2

III.  PROCEDURAL HISTORY .................................................................... 3

    A.  The Parties Have Investigated The Case Thoroughly ................................ 3

    B.  Settlement Negotiations ................................................................. 4

    C.  Preliminary Approval ..................................................................... 5

IV.  CLASS COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS'
    FEES AND COSTS IS WELL SUPPORTED ........................................... 5

    A.  Legal Standard ............................................................................. 5

    B.  Class Counsel's Fee Request Is Appropriate Under The Lodestar
    Method ...................................................................................... 7

        1.  Class Counsel's Hourly Rates Are Reasonable ........................... 8

        2.  The Number of Hours Class Counsel Worked Is
        Reasonable ............................................................................. 9

    C.  Additional Evidence That Class Counsel's Fee Request Is
    Reasonable ................................................................................ 10

        1.  The Results Achieved .............................................................. 11

        2.  The Contingent Nature Of This Case ......................................... 12

        3.  The Novelty and Difficulty Of The Questions Involved ............. 13

        4.  The Experience, Reputation, And Ability Of The Attorneys ...... 14

    D.  Class Counsel's Request For Reimbursement Of Costs Is Also
    Reasonable ................................................................................ 14

V.  THE REQUESTED CLASS REPRESENTATIVE INCENTIVE
    PAYMENTS ARE REASONABLE ...................................................... 15

VI.  CONCLUSION ................................................................................. 16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Agostino v. Quest Diagnostics Inc.*,
    256 F.R.D. 437 (D.N.J. 2009)...................................................................... 13

*Barkouras v. Hecker*,
    No. 06-366, 2007 U.S. Dist. LEXIS 44615 (D.N.J. June 20, 2007)................... 7, 8

*Blum v. Stenson*,
    465 U.S. 886 (1984)................................................................................ 8

*Bredbenner v. Liberty Travel, Inc.*,
    No. 09-1248, 2011 U.S. Dist. LEXIS 38663 (D.N.J. Apr. 8, 2011)..................... 15

*Brown v. Esmor Corr. Servs.*,
    No. 98-1282, 2005 U.S. Dist. LEXIS 17042 (D.N.J. Aug. 10, 2005).............. 6, 10

*Careccio v. BMW of N. Am. LLC*,
    Case No. 08-2619, 2010 U.S. Dist. LEXIS 42063 (D.N.J. Apr. 29, 2010).......... 14

*Dewey v. Volkswagen of Am.*,
    728 F. Supp. 2d 546 (D.N.J. 2010)............................................................. 6

*Frederick v. Range Res.-Appalachia, LLC*,
    No. 08-288, 2011 U.S. Dist. LEXIS 27350 (W.D. Pa. Mar. 17, 2011)................. 10

*Glenz v. Sharp Electronics Corp.*,
    No. 08-2352, *slip op*. 113 (Oct. 13, 2011)..................................................... 8, 11

*Godshall v. Franklin Mint Co.*,
    No. 01-CV-6539, 2004 U.S. Dist. LEXIS 23976 (E.D. Pa. Dec. 1, 2004)............ 15

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
    No. 05-05437, 2008 U.S. Dist. LEXIS 106515 (W.D. Wash. Apr. 24, 2008) ........ 9

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000)...................................................................... 12

*Hall v. AT&T Mobility LLC*,
    2010 U.S. Dist. LEXIS 109355 (D.N.J. Oct. 13, 2010)..................................... 10

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).............................................................................. 7, 9

*In re AT&T Corp. Sec. Litig.*,
    No. 00-5364, 2005 U.S. Dist. LEXIS 46144 (D.N.J. Apr. 22, 2005),
    *aff'd*, 455 F.3d 160 (3d Cir. 2006)............................................................. 7

*In re AT&T Corp. Secs. Litig.*,
    455 F.3d 160 (3d Cir. 2006)...................................................................... 5

*In re Cendant Corp. Prides Litig.*,
    243 F.3d 722 (3d Cir. 2001)...................................................................... 11

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005)...................................................................... 6

949288.2

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Cendant Corp.*,
232 F. Supp. 2d 327 (D.N.J. 2002) ................................................................. 15

*In re Diet Drugs*,
582 F.3d 524 (3d Cir. 2009) ..................................................................... 5, 6

*In re LG/Zenith Rear Projection TV Class Action Litig.*,
No. 06-5609, 2009 U.S. Dist. LEXIS 13568 (D.N.J. Feb. 18, 2009) ................... 16

*In re Mercedes-Benz Tele Aid Contract Litig.*,
MDL No. 1914, 2011 U.S. Dist. LEXIS 101995 (D.N.J. Sept. 9, 2011)...................... passim

*In re Merck & Co. Vytorin ERISA Litig.*,
No. 08-CV-285, 2010 U.S. Dist. LEXIS 12344 (D.N.J. Feb. 9, 2010) ................... 8

*In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)........................................................................ 6

*In re Safety Components Int'l Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) ................................................................ 14

*In re Schering-Plough/Merck Merger Litig.*,
No. 09-CV-1099, 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 25, 2010).............. 6

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
426 F.3d 694 (3d Cir. 2005)......................................................................... 8

*Lealao v. Beneficial California, Inc.*,
82 Cal. App. 4th 19 (Cal. App. 2000)........................................................... 12

*Litton Industries, Inc. v. IMO Industries, Inc.*,
982 A.2d 420 (N.J. 2009)............................................................................ 7

*Lonardo v. Travelers Indem. Co.*,
706 F. Supp. 2d 766 (N.D. Ohio 2010)........................................................ 8

*Maniscalco v. Brother Int'l Corp.*,
No. 06-CV-4907, 2011 U.S. Dist. LEXIS 67772 (D.N.J. June 24, 2011) ............ 13

*McCoy v. Health Net, Inc.*,
569 F. Supp. 2d 448 (D.N.J. 2008) .................................................... 5, 14, 15

*Merola v. Atlantic Richfield Co.*,
515 F.2d 165 (3d Cir. 1975)........................................................................ 12

*Mitzel v. Westinghouse Elec. Corp.*,
72 F.3d 414 (3d Cir. 1995).......................................................................... 5

*Pelletz v. Weyerhaeuser Co.*,
592 F.Supp.2d 1322 (W.D. Wash. 2009)....................................................... 9

*Planned Parenthood of Cent. New Jersey v. Attorney General of the State of New Jersey*,
297 F.3d 253 (3d Cir. 2002).......................................................................... 6

949288.2

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Public Interest Research Group v. Windall*,
   51 F.3d 1179 (3d Cir. 1995)......................................................................................... 7

*Tenafly Eruv Ass'n v. Borough of Tenafly*,
   195 Fed. Appx. 93 (3d Cir. 2006) ................................................................................ 7

*Wade v. Colaner*,
   No. 06-3715, 2010 U.S. Dist. LEXIS 138518 (D.N.J. Dec. 28, 2010) .................................. 5

*Warren Distrib. Co. v. Inbev USA, LLC*,
   No. 07-1053, 2011 U.S. Dist. LEXIS 19721 (D.N.J. Feb. 28, 2011) ..................................... 5

*Washington v. Philadelphia County Court of Common Pleas*,
   89 F.3d 1031 (3d Cir. 1996)......................................................................................... 9

949288.2

I.    **INTRODUCTION**

On July 16, 2010, Plaintiffs filed this action on behalf of themselves and all other similarly situated individuals.  As explained below, Plaintiffs alleged that Defendant LG Electronics USA, Inc. ("LGEUS") manufactured, marketed, and sold refrigerators that were defective because they did not keep food cold; in particular, that their interior lights would remain lit even when the door was closed (the "Light Issue").  After approximately a year of litigation and mediation, Plaintiffs reached a proposed Settlement with LGEUS (Doc. 33), which this Court preliminarily approved on October 7, 2011 (Doc. 40).

The Settlement represents an outstanding result for the Class.  First, LGEUS will reimburse Class members for any repair costs (parts and labor) that they have incurred as a result of the Light Issue.  Second, while LGEUS ordinarily provides only a one-year warranty, LGEUS will pay both parts and labor for any repairs necessitated by the Light Issue for ten years from the date of purchase.

Class Counsel submit this uncontested motion for an award of attorneys' fees and costs totaling $1.0 million, plus an incentive payment in the amount of $1,000 to each Class Representative for the services they have rendered to the Class throughout the litigation.  The requested amount of $1.0 million is inclusive of both attorneys' fees and litigation costs.  It will be paid, subject to the Court's approval, by LGEUS, in addition to (not out of) the relief made available to the Class.  After reimbursement of $24,579.60 in out-of-pocket costs, the remainder for fees is $975,420.40. Thus, the requested fee reflects a multiplier of approximately 2.93 on Class Counsel's combined lodestar to date of $332,800.75, which does not include the substantial additional time to be expended assisting Class members with their claims and overseeing claims administration.  This unopposed request is particularly reasonable in light of the outstanding result obtained for the Class, and it is supported fully by the lodestar method of

- 1 -

calculating attorneys' fees recognized under Third Circuit and New Jersey law applicable to cases such as this, where there is no monetizable settlement fund against which to apply a percentage.

The modest incentive payments requested in this case, moreover, are both appropriate and reasonable; they do not reduce the recovery of other Class members, and they are not opposed by LGEUS. Under such circumstances, incentive payments are almost uniformly approved in this district.

For all of these reasons, and as detailed below, Class Counsel respectfully request that the Court grant their motion in full.

## II.    FACTUAL BACKGROUND

A more thorough factual background will be set forth in Plaintiffs' forthcoming brief in support of final approval. For these purposes, and in sum: Plaintiffs allege that LGEUS manufactured, marketed, and sold defective refrigerators. (*See generally* Doc. 1 ("Compl.").) In particular, Plaintiffs asserted that: (i) LGEUS' refrigerators contained a uniform defect that caused their interior lights to stay on even when the refrigerator door is closed (*id.* ¶ 22); (ii) this defect renders the refrigerators unusable because they are unable to keep food cool when the interior light is on (*id.* ¶ 23); (iii) the defect presents a number of safety hazards, including a fire hazard (*id.* ¶ 26); (iv) LGEUS was aware of this defect, but elected not to prevent it (*id.* ¶¶ 40-48); and (v) LGEUS fraudulently concealed and continued to fraudulently conceal this information from its customers (*id.* ¶¶ 58-59). LGEUS has, at all times, denied Plaintiffs' allegations and any liability arising from the marketing and/or sale of its refrigerators.

949288.2

III.    **PROCEDURAL HISTORY**

On October 4, 2010, LGEUS filed a motion to dismiss Plaintiffs' Complaint.  (Doc. 7.)

Plaintiffs responded to that motion on October 10, 2010 (Doc. 10), and LGEUS filed a Reply on

November 30, 2010 (Doc. 16).

Following submission of those papers, and prior to any hearing or ruling on the motion,

the Court called a settlement conference, ultimately held on February 17, 2011. (Doc. 28.)  The

parties, with the Court, discussed at a very general level the potential for, and possible structure

of, a settlement of these claims.  Following that conference, the parties engaged in substantive,

arm's-length discussions regarding global resolution.  They reached agreement on the material

terms of a settlement, which they memorialized in a Memorandum of Understanding executed on

May 20, 2011. (*See* Doc. 31.)  After several months of additional arm's-length negotiations, the

parties finalized the Settlement Agreement.

On September 9, 2011, Class Counsel submitted the parties' joint motion for preliminary

settlement approval (Doc. 34), and on October 7, 2011, the Court granted the motion (Doc. 40).

A.    **The Parties Have Investigated The Case Thoroughly**

Prior to filing the Complaint, Class Counsel undertook a thorough investigation to

develop Plaintiffs' allegations.  (*See generally* Doc. 1.) Class Counsel engaged a well-qualified

expert to investigate and assess the defect, and that expert's work played an important role in

Class Counsels' assessment of this case. (Doc. 35 ("Sagafi Decl.") at ¶ 7.)  Class Counsel also

were in contact with, and gathered information from, more than 100 customers who reported

their experiences with the Light Issue in the relevant models of LG Refrigerators.   (*See id.*)

As part of settlement discussions, LGEUS shared with Class Counsel documents and

information related to the manifestation of the Light Issue in the Refrigerator models included in

the Settlement. In addition, Class Counsel and LGEUS's counsel engaged in frank discussions as

- 3 -

part of the settlement negotiation, including exchange of informal discovery related to the alleged defect underlying Plaintiffs' claims.

Accordingly, Class Counsel were well-positioned to evaluate the strengths and weaknesses of their case and the appropriate basis upon which to settle it.

**B.    <u>Settlement Negotiations</u>**

The settlement negotiations involved attorneys on both sides who are experienced in the prosecution, defense, trial, and settlement of class action litigation.  This experience includes, among other things, experience litigating allegations of defective products and consumer fraud. As a result of the work discussed above (and based on their experience), the attorneys were well-versed in the factual and legal issues implicated in this case.

The Settlement was the product of two separate in-person settlement sessions: the first conducted by this Court and the second conducted between the parties in New York on April 20, 2011.  Thereafter, the Settlement was negotiated over many months of extensive, hard-fought, negotiations via telephone, conference calls, and email.  The Settlement was the result of negotiations that were at all times arm's-length. (Doc. 35 ("Sagafi Decl.") at ¶ 8.)  Throughout the course of the negotiations, there were material disputes regarding, among other things, the presence of a defect, the measure of damages, and the contours of a remedy that would make the Class whole.  Selbin Decl. at ¶ 9.  On each of these points, the parties had significant disagreement.  *Id.*  The extensive negotiations between Plaintiffs' counsel and LGEUS, however, culminated in a memorandum of understanding, which reflected an agreement in principle on all material terms of a nationwide settlement.  (Doc. 35 ("Sagafi Decl.") at ¶ 8.)  Importantly, the parties reached agreement on all material settlement terms prior to negotiating Class Counsel's attorneys' fees and costs, or the Class Representatives' incentive awards.  (*Id.* at ¶ 9.)

949288.2

### C.    Preliminary Approval

On September 9, 2011, the Parties submitted a joint motion for preliminary approval of the Settlement.  (Doc. 33.)  The Parties requested that the Court provisionally certify the proposed nationwide settlement class, appoint Plaintiffs as Class Representatives, approve the notice plan and forms of settlement notice and order provision of such notice, appoint the firms of Lieff Cabraser Heimann & Bernstein, LLP; Kiesel Boucher Larson, LLP; and Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. as Class Counsel, and schedule a final fairness hearing. (*Id*.)  The Court granted that motion on October 7, 2011.  (Doc. 40.)

## IV.    CLASS COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND COSTS IS WELL SUPPORTED

### A.    Legal Standard

Plaintiffs assert claims under New Jersey law, which also governs the award of attorneys' fees here.  *Warren Distrib. Co. v. Inbev USA, LLC*, No. 07-1053, 2011 U.S. Dist. LEXIS 19721, at *24 (D.N.J. Feb. 28, 2011) (citing *Mitzel v. Westinghouse Elec. Corp.*, 72 F.3d 414, 417 (3d Cir. 1995).  Under both New Jersey and Third Circuit precedent, a court may exercise its discretion to award attorneys' fees by applying either the lodestar/multiplier method or the percentage-of-the-fund method.  *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006).  The Third Circuit has explained that the former "multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services," while the latter "applies a certain percentage to the [settlement] fund."  *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009) (citations and quotations marks omitted); *see also McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 475 (D.N.J. 2008).

The lodestar is "presumptively reasonable."  *Wade v. Colaner*, No. 06-3715, 2010 U.S. Dist. LEXIS 138518, at *8-9 (D.N.J. Dec. 28, 2010) (citing *Planned Parenthood of Cent. New*

- 5 -

*Jersey v. Attorney General of the State of New Jersey*, 297 F.3d 253, 265 n. 5 (3d Cir. 2002)).  In practice, "[t]o arrive at the ultimate fee, this lodestar figure is usually multiplied by a factor to reflect the degree of success, the risk of non-payment the attorneys faced and perhaps the delay in payment that they encountered."  *Brown v. Esmor Corr. Servs.*, No. 98-1282, 2005 U.S. Dist. LEXIS 17042, at *36-37 (D.N.J. Aug. 10, 2005); *see also In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 340 (3d Cir. 1998).

The lodestar method is particularly appropriate in a case like this one, in which parties reach a settlement with a claims-made structure that has no upper cap on relief.  This is because a claims-made settlement has an indefinite total value and cannot be characterized as a true "common fund" for the purpose of a percentage-of-the-fund fee analysis.  *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 593 (D.N.J. 2010) (citation omitted); *see also In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099, 2010 U.S. Dist. LEXIS 29121, at *53-54 (D.N.J. Mar. 25, 2010) (citations omitted).[1]

Unenhanced lodestar does not accurately reflect every foreseeable scenario.  For this reason, courts consider a variety of factors to ensure that a particular fee request is reasonable, including: (1) the results obtained on behalf of the class by plaintiff's counsel; (2) the contingent nature of the case; (3) the novelty and difficulty of the questions involved; (4) the skill and quality of representation; and (5) the extent to which the litigation precluded other employment by the attorneys.  *See, e.g., Tenafly Eruv Ass'n v. Borough of Tenafly*, 195 Fed. Appx. 93, 96 (3d

---

[1] The lodestar method "is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation," *Diet Drugs*, 582 F.3d at 540 (citation and quotation marks omitted), whereas the percentage-of-the-fund method is appropriate for cases when an attorneys' "efforts create, discover, increase, or preserve a fund to which others also have a claim," *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) (citation omitted).  Additionally, because attorneys' fees will be assessed against LGEUS without reducing the relief available to consumers, the lodestar method is appropriate.

Cir. 2006) (unpublished) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983); *Public Interest Research Group v. Windall*, 51 F.3d 1179, 1185 n.8 (3d Cir. 1995)); *Litton Industries, Inc. v. IMO Industries, Inc.*, 982 A.2d 420, 428-29 (N.J. 2009).  Regardless of the method a court applies or the specific factors considered, the fundamental requirement is that any fee be fair and reasonable.  *See In re AT&T Corp. Sec. Litig.*, No. 00-5364, 2005 U.S. Dist. LEXIS 46144, at *29 (D.N.J. Apr. 22, 2005), *aff'd*, 455 F.3d 160 (3d Cir. 2006).

As demonstrated below, the request for $1.0 million in attorneys' fees and costs is both fair and reasonable.

### B.    Class Counsel's Fee Request Is Appropriate Under The Lodestar Method

The lodestar method provides courts with an objective basis upon which to determine the value of the services provided by counsel.  *Hensley*, 461 U.S. at 433.  As indicated above, multiplying the numbers of hours counsel worked by a reasonable hourly rate establishes the lodestar. After examining the time and labor required, the Court may consider the lodestar in light of certain factors, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill necessary; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount at controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Barkouras v. Hecker*, No. 06-366, 2007 U.S. Dist. LEXIS 44615, at *11-12 (D.N.J. June 20, 2007) (citing *Hensley*, 461 U.S. at 429-30 n.3; *Pub. Interest Research Group*, 51 F.3d at 1185 n.8).

Consideration of these factors supports Class Counsel's request for attorneys' fees here.

949288.2

1.      **Class Counsel's Hourly Rates Are Reasonable**

Class Counsel's hourly rates are reasonable, and have been expressly evaluated and approved by Judges in this District.  *See In re Mercedes-Benz Tele Aid Contract Litig.*, MDL No. 1914, 2011 U.S. Dist. LEXIS 101995, at *19 (D.N.J. Sept. 9, 2011) ("These rates reflect the experience and skill of the lawyers involved and are comparable to rates the courts have approved in similar cases in other metropolitan areas."); *see also Glenz v. Sharp Electronics Corp.*, No. 08-2352, *slip op.* 113 (Oct. 13, 2011).

In assessing the reasonableness of an attorney's hourly rate, courts consider the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  *Barkouras*, 2007 U.S. Dist. LEXIS 44615, at *12 (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 & n.11 (1984)).  Courts look to the forum in which the District is located to determine the hourly rates that should apply.  *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 704 (3d Cir. 2005).

In this case, Class Counsel are among the most experienced lawyers in the country in the fields of consumer class actions and complex class action litigation.  *See* Selbin Decl.; Cecchi Decl.; Kiesel Decl.  Class Counsel's customary rates, which were used for purposes of calculating lodestar here, have been approved by numerous federal courts in this district as well as districts with lower and similar prevailing fee structures.  *See Tele Aid*, 2011 U.S. Dist. LEXIS 101995 at *18-20; *In re Merck & Co. Vytorin ERISA Litig.*, No. 08-CV-285, 2010 U.S. Dist. LEXIS 12344, at *44-46 (D.N.J. Feb. 9, 2010); *see also, e.g.*, *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 794 (N.D. Ohio 2010) (O'Malley, J.); *Pelletz v. Weyerhaeuser Co.*, 592

- 8 -

F.Supp.2d 1322, 1326-27 (W.D. Wash. 2009); *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, No. 05-05437, 2008 U.S. Dist. LEXIS 106515, at *5-7 (W.D. Wash. Apr. 24, 2008).[2]

**2.      The Number of Hours Class Counsel Worked Is Reasonable**

The number of hours worked is also reasonable.  With this motion, Class Counsel are submitting summary time and cost records that reflect the work performed in this case.[3]  All firms made every effort to prevent the duplication of work or inefficiencies that might have resulted from having multiple firms working on the case.  *See, e.g.*, Selbin Decl. at ¶ 14.

The work Class Counsel did was both challenging and meaningful. Class Counsel: (1) investigated and filed the action; (2) responded to inquiries throughout their investigation and collected purchase information and other facts from Class members who made inquiries; (3) retained and worked with experts; (4) opposed a motion to dismiss, (5) crafted a Settlement after meaningful investigation and extensive arm's-length negotiations, including mediation before this Court; (6) successfully moved for preliminary approval of the Settlement; (7) worked with counsel for LGEUS to develop the class notice materials and claim form; and (8) responded to Class member questions concerning the class notice and Settlement.  *See* Selbin Decl. at ¶ 7; Cecchi Decl. at ¶  4; (*see also* Doc. 40.).

Class Counsel's responsibilities will not end with final approval. Class Counsel will remain available to answer any Class member inquiries, oversee the claims administration

---

[2] In addition, LCHB has several sophisticated commercial clients that pay the hourly rates LCHB has used to calculate its lodestar in this matter.  Selbin Decl. at ¶ 12.

[3] Class Counsel need not "record in great detail how each minute of his time was expended." *Hensley*, 461 U.S. at 437 n.12.  Instead, counsel need only "identify the general subject matter of his time expenditures."  *Id.*  (citations omitted); *see also Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996) ("We explained that specificity should only be required to the extent necessary for the district court to determine if the hours claimed are unreasonable for the work performed." (citation and quotation marks omitted)).  If the Court prefers to review Class Counsel's detailed time records, of course, Class Counsel will make them available for *in camera* review.

949288.2

process, and work with LGEUS to remedy any issues that may arise with respect to this Settlement. Based on prior experience, this ongoing work will likely add many hours of work by Class Counsel and their staff.  Selbin Decl. at ¶ 18.

Not only were the hours that Class Counsel invested in this case reasonable, Class Counsel's efforts have served an important public purpose by obtaining for Class members compensation for their damages, as well as future benefits in the form of the extended warranty now provided for replacement Lamps.

### C. Additional Evidence That Class Counsel's Fee Request Is Reasonable

After calculating the lodestar amount, "[t]o arrive at the ultimate fee, this lodestar figure is usually multiplied by a factor to reflect the degree of success, the risk of non-payment the attorneys faced and perhaps the delay in payment that they encountered."  *Brown v. Esmor Corr. Servs.*, No. 98-1282, 2005 U.S. Dist. LEXIS 17042, at *36-37 (D.N.J. Aug. 10, 2005).

Here, the requested fee amount of $1.0 million includes both attorneys' fees and costs. Of the requested $1.0 million total, $24,579.60 is for reimbursement of out-of-pocket costs, leaving $975,420.40 for attorneys' fees.  Class Counsel's total hours are 773 to date, which, when multiplied by their hourly rates, results in a total lodestar of $332,800.75. Selbin Decl. at ¶ 19. The resulting multiplier of 2.93 falls well within the range for approval.  *See, e.g.*, *Frederick v. Range Res.-Appalachia, LLC,* No. 08-288, 2011 U.S. Dist. LEXIS 27350, at *36 (W.D. Pa. Mar. 17, 2011) ("Federal courts in this circuit have frequently approved fee award multipliers in the range of 1 to 4." (collecting cases)); *Hall v. AT&T Mobility LLC*, 2010 U.S. Dist. LEXIS 109355, at *44 (D.N.J. Oct. 13, 2010) ("In fact, in *Cendant PRIDES*, the Third Circuit approved a lodestar multiplier of 2.99 in a case it described as 'relatively simple in terms of proof' in which 'discovery was virtually nonexistent.'" (quoting *In re Cendant Corp. Prides Litig.*, 243

F.3d 722, 735-36 (3d Cir. 2001)); *Tele Aid*, 2011 U.S. Dist. LEXIS 101995 at *19 ("Lodestar

multipliers of up to four have been awarded.").

A review of the relevant factors indicates that an award of this 2.93 multiplier is

appropriate here. Indeed, while the deadline to object is January 5, 2012, to date there is not a

single objection to Class Counsel's fee petition (or the proposed Settlement). Class Counsel will

update the Court regarding the number and nature of any fee objections that do come in, as well

as respond to them substantively as necessary, in their Reply due to be filed on January 10, 2012.

### 1.    The Results Achieved

As Plaintiffs have outlined in their memorandum in support of Preliminary Approval, the

Settlement represents an outstanding result for the Class. LGEUS has agreed to reimburse Class

members *100%* of the costs they incurred repairing their refrigerators (parts and labor), and

LGEUS has agreed to pay for all repair costs for Class members for ten years from the date of

purchase (although the refrigerators are warranted for only one year). Put another way, LGEUS

has agreed to pay *more than 100% of expectation damages*. And, because LGEUS is paying fees

and costs in addition to, not out of, this recovery, Class members retain all of this award, with no

reduction for attorneys' fees or costs. This is an exceptional result by any measure. Importantly,

Class Counsel achieved this result in a time-efficient manner, without expending thousands of

additional hours taking depositions, defending against summary judgment motions, preparing

detailed expert reports, or incurring any of the other expense and risk of protracted litigation. As

Judge Faith S. Hochberg of this Court said earlier this year of Lieff Cabraser, approving another

consumer class action settlement in *Glenz v. Sharp Electronics Corp.*, "I want to commend

counsel for all the hard work you all put into this case, for retaining an excellent mediator, for

getting it managed efficiently and settled expeditiously, rather than letting the case drag on

949288.2

endlessly without settling it. It really is the way they should be done. *I wish they were all done this way*. That doesn't always happen, as I'm sure you know."  *See* Selbin Decl. at ¶ 4.

Courts have long recognized that the result obtained by Class Counsel is a principal factor in considering an enhanced lodestar multiplier.  As one court explained, "counsel should be rewarded, not punished" for helping to obtain a prompt settlement without running up lodestar through needless litigation.  *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 52 (Cal. App. 2000).  Accordingly, the lodestar method "permits the court to recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested."  *Merola v. Atlantic Richfield Co.*, 515 F.2d 165, 168 (3d Cir. 1975); *cf. Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) ("Commentators discussing fee awards have correctly noted that 'one purpose of the percentage method' of awarding fees--rather than the lodestar method, which arguably encourages lawyers to run up their billable hours--'is to encourage early settlements by not penalizing efficient counsel . . . .'" (citations omitted)).

In this case, Class Counsel avoided considerable burden and expense to the parties and the judicial system by conducting a thorough investigation and achieving a favorable Settlement in a timely fashion. The outstanding results achieved by Class Counsel here fully support the requested fee.

### 2.      The Contingent Nature Of This Case

From the outset of the case to the present, prosecution of this action has involved financial risk for Class Counsel.  Class Counsel prosecuted this matter on a wholly contingent basis, which placed at risk their own resources, with no guarantee of recovery.  Selbin Decl. at ¶¶ 17, 21.  There was no guarantee that Plaintiffs would succeed in substantive motion practice, at trial, or on appeal.  LGEUS has at no time conceded liability, the appropriateness of class

certification, the availability of damages, or the proper measure thereof, and has retained able counsel to litigate this matter.  In short, since the beginning of this litigation, recovery by Plaintiffs was far from assured. Class Counsel expended significant time and resources to prosecute the case successfully on behalf of the Class, and will continue to assist Class members and oversee claims administration until conclusion of the claims process. Counsel's willingness to take this risk weighs in favor of a finding that Counsel's requested fees are reasonable.

### 3.    The Novelty and Difficulty Of The Questions Involved

Virtually all consumer class actions are complex and involve risk.  While Class Counsel are confident in their arguments against LGEUS's motion to dismiss, success on that motion was by no means assured.  And while Class Counsel believe that a nationwide class could and would be certified here, the outcome of a class certification motion is by no means assured.  Indeed, as one Judge in this District has written, there is an "apparent split amongst courts in this District in this context." *Maniscalco v. Brother Int'l Corp.*, No. 06-CV-4907, 2011 U.S. Dist. LEXIS 67772, at *34 (D.N.J. June 24, 2011); *compare, e.g., Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 463 (D.N.J. 2009) (rejecting a nationwide consumer class under New Jersey law), *with, e.g., Tele Aid*, 257 F.R.D. 46, 67-69 (D.N.J. 2009) (certifying a nationwide consumer class under New Jersey law).[4]  Similarly, while Class Counsel believe that, had they overcome those procedural hurdles, a jury would have found in favor of the Class on the merits, that outcome, too, was by no means assured.  Indeed, it is not uncommon for cases like this to be litigated for years, with the Class succeeding every step of the way, only to lose at trial or on appeal, resulting in both the Class, and Class Counsel, recovering nothing. *E.g.*, Selbin Decl. at ¶ 21.

---

[4] Although it is possible to harmonize *Agostino* and *Tele Aid*, nonetheless, they are unquestionably in tension.

949288.2

### 4.    The Experience, Reputation, And Ability Of The Attorneys

The reputation, experience, and ability of Class Counsel were essential to success in this litigation.  As explained more fully in the attached declarations, Class Counsel have substantial experience in consumer class action litigation.  *See* Selbin Decl.; Cecchi Decl.; Kiesel Decl. Indeed, just in the last few months, two Judges in this District praised several of Class Counsel here for their work on behalf of classes in other cases.  *See* Selbin Decl. at ¶ 4 (quoting Judge Dickinson R. Debevoise in *In Re Mercedes-Benz Tele Aid Contract Litigation*, referring to both Lieff Cabraser and Carella Byrne) ("I want to thank counsel for the. . . very effective and good work. . . . It was carried out with vigor, integrity and aggressiveness with never going beyond the maxims of the Court."); *see also id*. (quoting Judge Faith S. Hochberg, commending the work of Lieff Cabraser).

Class Counsel's history of aggressive and successful prosecution of nationwide consumer class actions, moreover, made credible their commitment to pursue this litigation until LGEUS provided a fair result for the Class members. Through their skill, reputation, and ability, Class Counsel were able to obtain a settlement that provides an outstanding result for the Class, one that likely could not have been achieved by less experienced or less capable counsel.

### D.    Class Counsel's Request For Reimbursement Of Costs Is Also Reasonable

There is little question that "[c]ounsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action."  *Careccio v. BMW of N. Am. LLC*, Case No. 08-2619, 2010 U.S. Dist. LEXIS 42063 (D.N.J. Apr. 29, 2010) (quoting *In re Safety Components Int'l Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001)); *see also McCoy,* 569 F. Supp. 2d at 479.

Over the past three years, Class Counsel incurred unreimbursed, out-of-pocket litigation costs totaling $24,579.60.  Selbin Decl. at ¶ 19.  These costs included, without limitation: (1)

949288.2

filing fees; (2) copying, mailing, faxing and serving documents; (3) conducting computer research; (4) travel; and (5) expert fees. *Id*. at Ex. C. Class Counsel advanced these out-of-pocket costs without assurance that they would ever be repaid, and they were necessary to secure the resolution of this litigation. *See McCoy*, 569 F. Supp. 2d at 479 (approving such expenses); *In re Cendant Corp.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002) (collecting cases for the proposition that such expenses are "reasonably incurred in connection with the prosecution of a large litigation").

As noted above, Class Counsel are not seeking recovery of such costs in addition to their requested fee, but out of it. And, as with that fee, none of these costs are being borne by, or reducing the recovery of, any Class member. LGEUS is paying them in addition to, not out of, Class member relief.

## V.    THE REQUESTED CLASS REPRESENTATIVE INCENTIVE PAYMENTS ARE REASONABLE

It is clear that "[c]ourts have ample authority to award incentive or 'service' payments to particular class members where the individual provided a benefit to the class or incurred risks during the course of litigation." *Bredbenner v. Liberty Travel, Inc.*, No. 09-1248, 2011 U.S. Dist. LEXIS 38663, at *64-65 (D.N.J. Apr. 8, 2011) (collecting cases); *see also Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 U.S. Dist. LEXIS 23976, at *21 (E.D. Pa. Dec. 1, 2004) (granting special award of $ 20,000 to each named plaintiff for their work as class representatives); *cf. McCoy*, 569 F. Supp. 2d at 479-80 (finding incentive payments of $60,000 to each plaintiff appropriate when the named plaintiffs "sacrificed personal and medical privacy for the good of the class"). The incentive payments in this case are particularly uncontroversial; they do not reduce the recovery of other Class members, and they are not opposed by LGEUS. *See Tele Aid*, 2011 U.S. Dist. LEXIS 101995 at *18-20; *see also In re LG/Zenith Rear Projection*

- 15 -

*TV Class Action Litig.,* No. 06-5609, 2009 U.S. Dist. LEXIS 13568, at *25 (D.N.J. Feb. 18, 2009) ("Here, the [$1500 - $3000] incentive payment is small, and will not decrease the recovery of other class members." (citation omitted)).

The efforts of the representative Plaintiffs on behalf of the Class underscore the propriety of the requested incentive awards. Throughout the litigation, Plaintiffs performed the following tasks, among others: (1) assisted counsel with the preparation of the complaint and amended complaint; (2) supplied documentation to support their claims; (3) stayed abreast of the settlement negotiations; and (4) reviewed and approved settlement terms. In addition, they will prepare and submit declarations to the Court in support of final approval of the Settlement. Selbin Decl. at ¶ 10. Plaintiffs' efforts were instrumental in achieving the Settlement on behalf of the Class, and justify the modest incentive payment requested here.

## VI.    <u>CONCLUSION</u>

For the reasons stated above, Class Counsel respectfully request that the Court grant their Motion for Attorneys' Fees and Costs, and award Class Counsel $1.0 million in attorneys' fees and costs, and award the Class Representatives incentive payments of $1,000 each.


Dated:  November 21, 2011                          Respectfully submitted,

                                                   LIEFF CABRASER HEIMANN &
                                                   BERNSTEIN, LLP

                                                   By: /s/ Jason Louis Lichtman___
                                                   Jonathan D. Selbin
                                                   Jason L. Lichtman
                                                   LIEFF, CABRASER, HEIMANN &
                                                   BERNSTEIN, LLP
                                                   250 Hudson Street, 8th Floor
                                                   New York, NY 10013
                                                   Telephone: (212) 355-9500

Kristen Law Sagafi
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

James E. Cecchi
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

Paul R. Kiesel
KIESEL BOUCHER LARSON, LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
(310) 854-4444

*Counsel for Plaintiffs*

949288.2