# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CONNIE MCLENNAN, VIRGINIA ZONTOK, CARYL FARRELL, on behalf of themselves and all others similarly situated, | Case No. 10-cv-3604-WJM-MF |
| Plaintiffs, | |
| v. | |
| LG ELECTRONICS USA, INC. | |
| Defendant. | |

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

---

Jonathan D. Selbin
Jason L. Lichtman
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500

Kristen Law Sagafi
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

James E. Cecchi
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY &
AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

Paul R. Kiesel
KIESEL BOUCHER LARSON, LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
(310) 854-4444

*Counsel for Plaintiffs*

953202.1

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

I.      FACTUAL BACKGROUND .......................................................... 1

II.     SETTLEMENT NEGOTIATIONS ................................................. 2

III.    THE SETTLEMENT ...................................................................... 3

        A.    Terms. .................................................................................. 3

        B.    Notice. ................................................................................. 4

IV.     ARGUMENT ................................................................................. 4

        A.    This Court Should Certify The Settlement Class. ................ 4

              1.    The Settlement Class Satisfies Rule 23(a). ................. 5

                    a.    Numerosity. .......................................................... 6

                    b.    Commonality. ....................................................... 6

                    c.    Typicality. ............................................................ 7

                    d.    Adequacy. ............................................................. 8

              2.    The Settlement Class Satisfies Fed. R. Civ. P. 23(b)(3). ............... 9

                    a.    Common Questions Of Law And Fact Predominate. ...... 10

                    b.    A Class Action Is Superior To Numerous Individual
                          Actions. .............................................................. 10

        B.    The Settlement Is Fair, Reasonable, And Adequate. ............... 12

              1.    The Law Favors Settlement. ...................................... 12

              2.    The *Girsh* Factors. ................................................... 14

                    a.    Continued Litigation Would Be Long, Complex,
                          And Expensive. .................................................... 15

                    b.    There Have Been Few Opt-Outs And, To Date,
                          Only A Single Objection. ..................................... 16

                    c.    The Parties Have Completed Sufficient
                          Investigation And Discovery. ............................... 17

                    d.    Plaintiffs Would Have Faced Considerable Risk In
                          Proceeding to Trial. .............................................. 18

                    e.    The Risks Of Maintaining The Class Action
                          Through Trial. ...................................................... 19

**TABLE OF CONTENTS**
**(continued)**

                                                                    Page

       f.     LGEUS' Ability To Withstand Greater Judgment, Reasonableness Of The Settlement In Light Of The Best Possible Recovery, And All Attendant Risks Of Litigation.................................................................. 19

       g.    Conclusion. ................................................................. 20

  C.   The Notice Program Is Constitutionally Sound And Fully Implemented. ...................................................................... 21

CONCLUSION............................................................................................. 22

953202.1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................ 10, 11

*Backman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir. 1990)........................................................ 18

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. Pa. 1993)................................................... 16

*Bentley v. Legent Corp.*,
  849 F. Supp. 429 (E.D. Va. 1994), *aff'd without op. sub nom. Herman v.
  Legent Corp.*, 50 F.3d 6 (4th Cir. 1995) ...................................... 18

*Bredbenner v. Liberty Travel, Inc.*,
  No. 09-905, 2011 U.S. Dist. LEXIS 38663 (D.N.J. Apr. 8, 2011) ..................... 13, 15, 17, 20

*Carnegie v. Household International, Inc.*,
  376 F.3d 656 (7th Cir. 2004) ....................................................... 11, 12

*Danvers Motor Co. Inc. v. Ford Motor Co.*,
  543 F.3d 141 (3d Cir. 2008)........................................................... 7

*Dewey v. Volkswagen of Am.*,
  728 F. Supp. 2d 546 (D.N.J. 2010) ................................................. 19

*Eggleston v. Chi. Journeyman Plumbers Local Union No. 130 U.A.*,
  657 F.2d 890 (7th Cir. 1981) ........................................................ 19

*Eisenberg v. Gagnon*,
  766 F.2d 770 (3d Cir. 1985)........................................................... 6

*Grant v. Sullivan*,
  131 F.R.D. 436 (M.D. Pa. 1990)....................................................... 6

*In re American Family Enterprises*,
  256 B.R. 377 (D.N.J. 2000) ......................................................... 13, 14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)........................................................ 15, 18

*In re Cendant Corp. Sec. Litig.*,
  109 F. Supp. 2d 235 (D.N.J. 2000) ................................................ 13, 21

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
  269 F.R.D. 468 (E.D. Pa. 2010)................................................... 6, 16, 19

*In re Chambers Dev. Sec. Litig.*,
  912 F. Supp. 822 (W.D. Pa. 1995).................................................... 22

*In re Community Bank of N. Va.*,
  418 F.3d 277 (3d Cir. 2005)........................................................ 10, 13

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993) ..................................................... 19

953202.1

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995) ........................................................................ passim

*In re Ins. Brokerage Antitrust Litig.,*
  579 F.3d 241 (3d Cir. 2009) ................................................................................ 10

*In re Lucent Techs., Inc. Sec. Litig.,*
  307 F. Supp. 2d 633 (D.N.J. 2004) ...................................................................... 7

*In re Mercedes-Benz Antitrust Litig.,*
  213 F.R.D. 180 (D.N.J. 2003) .............................................................................. 10

*In re Prudential Ins. Co. of Am. Sales Practice Litig.,*
  962 F.Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) .................. passim

*In re Safety Components Int'l, Inc. Secs. Litig.,*
  166 F.Supp.2d 72 (D.N.J. 2001) .......................................................................... 18

*In re Schering Plough Corp. ERISA Litig.,*
  589 F.3d 585 (3d Cir. 2009) ................................................................................ 6

*In re Warfarin Sodium Antitrust Litig.,*
  391 F.3d 516 (3d Cir. 2004) ................................................................. 5, 13, 15, 20

*Lake v. First Nationwide Bank,*
  900 F. Supp. 726 (E.D. Pa. 1995) ...................................................................... 15

*Lazy Oil Co. v. Witco Corp.,*
  166 F.3d 581 (3d Cir. 1999) ................................................................................ 14

*Levinson v. Prentice-Hall, Inc.,*
  868 F.2d 558 (3d Cir. 1989) ................................................................................ 18

*McGee v. Cont'l Tire N. Am., Inc.,*
  No. 06-6234, 2009 U.S. Dist. LEXIS 17199 (D.N.J. Mar. 4, 2009) ................ 7, 16

*Mullane v. Cent. Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950) ............................................................................................ 21

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  259 F.3d 154 (3d Cir. N.J. 2001) ........................................................................ 7

*Officers for Justice v. Civil Serv. Comm'n,*
  688 F.2d 615 (9th Cir. 1982) .............................................................................. 14

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985) ...................................................................................... 11, 21

*Stewart v. Abraham,*
  275 F.3d 220 (3d Cir. 2001) ................................................................................ 6

*Stoetzner v. U. S. Steel Corp.,*
  897 F.2d 115 (3rd Cir. 1990) .............................................................................. 16

*Sullivan v. DB Invs., Inc.,*
  No. 08-2784, slip. op. (3d. Cir. Dec. 20, 2011) ............................................ passim

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Varacallo v. Massachusetts Mutual Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005) ................................................................ 11

*Vargas v. Calabrese*,
   634 F. Supp. 910 (D.N.J. 1986) .............................................................. 6

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ........................................................................ 6, 7

*Walsh v. Great Atlantic & Pacific Tea Co.*,
   726 F.2d 956 (3d Cir. 1983) ................................................................. 14

*Weiss v. York Hosp.*,
   745 F.2d 786 (3d Cir. 1983) ........................................................... passim

*Wetzel v. Liberty Mut. Ins. Co.*,
   508 F.2d 239 (3d Cir. 1975) ................................................................... 5

*Zinberg v. Wash. Bancorp, Inc.*,
   138 F.R.D. 397 (D.N.J. 1990) ............................................................... 6

### STATUTES

Fed. R. Civ. P.
   23(a) ...................................................................................................... 5
   23(b)(3) .......................................................................................... 10, 11
   23(e) .................................................................................................... 12
   23(e)(1)(B) ........................................................................................... 21

### TREATISES

Manual For Complex Litigation, Fourth § 21.312 ...................................... 21

<u>PRELIMINARY STATEMENT</u>

The Parties in this action have reached an extraordinary settlement: it provides for both the complete reimbursement of out-of-pocket expenses for repairs fixing the Light Issue (described and defined below), as well as a warranty for ten years from the date of refrigerator purchase.[1]  Accordingly, and because the proposed Settlement Class satisfies all requirements of Federal Rule of Civil Procedure 23, Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Final Approval of Class Settlement (the "Motion").

**I.      <u>FACTUAL BACKGROUND</u>**

On July 16, 2010, Plaintiffs commenced this class action lawsuit (the "Action"), in which they sought relief on behalf of a proposed nationwide class for allegedly defective refrigerators manufactured, marketed, and sold by LGEUS.  (*See* Doc. 1 ("Compl.") at ¶ 1.)  While the Complaint asserts a number of legal theories, Plaintiffs' core allegation is straightforward:  the interior lights in certain of LGEUS' refrigerators do not turn off even when the refrigerator door is closed (the "Light Issue"), which in turn prevents the machine from staying cool, allows food to spoil, leads to the burning and melting of parts of the refrigerator.  (*See id.*)

Each of the Plaintiffs asserted that she had suffered injury as a result of the defect.  (*See id.* at ¶¶ 13-14 (explaining that Caryl Farrell paid more than $537 to repair her refrigerator, and Virginia Zontok paid in excess of $200 to repair hers); *see also* Farrell Decl. at ¶ 9; Zontok Decl. at ¶ 9)  Indeed, one of the Plaintiffs testifies that, because repairs were so costly, she removed the interior lights from her refrigerator and now uses packaging tape to hold portions of her refrigerator together.  (*Id.* at ¶ 12; McLennan Decl. at ¶ 9(b).)

On October 4, 2010, LGEUS filed a motion dismiss Plaintiffs' Complaint. (*See* Doc. 7.) LGEUS asserted, among other defenses, that many of Plaintiffs' claims were barred by the

---

[1] This is described more fully in the Settlement Agreement.

statute of limitations and that LGEUS had no obligation to repair machines that failed after the expiration of their express, 1-year, warranty.  (*See generally id.*)  Plaintiffs filed a brief in opposition to that motion on November 10, 2010 (*see* Doc. 10), and LGEUS filed a reply on November 30, 2010 (*see* Doc. 16).

The Court deferred its ruling on LGEUS' motion, however, and ordered the Parties to appear for a conference with the Court to determine whether it might be possible to resolve their dispute without resort to further time-consuming and costly litigation.  (*See* Doc. 28.)

## II.   <u>SETTLEMENT NEGOTIATIONS</u>

On February 17, 2011, and with considerable assistance from the Court, the Parties began discussing the broad contours of a possible settlement.  (*See* Doc. 35 ("Sagafi Decl.") at ¶ 8.)  While it was far from clear that day that an early resolution to this dispute was possible, the Parties did determine that they wished to attempt to negotiate a settlement.  (*See id.*)  Accordingly, Plaintiffs and LGEUS proceeded to engage in extensive negotiations via telephone, conference calls, and email.  (*See* Doc. 42 ("Selbin Decl." at ¶ 8.)  While those negotiations were productive, there were numerous material disputes regarding the nature of the alleged defect, the measure of damages, and the contours of an appropriate remedy.  (*Id.* at ¶ 9.)

On April 20, 2011, after two months of negotiations, the Parties met again in person. (*Id.* at ¶ 8.)  At that meeting, they negotiated the outline of the settlement now before this Court, and, over the next month, the Parties reached agreement on the key terms of a Settlement.  (*See* Sagafi Decl. at ¶ 8.)  After several months of additional negotiations, the Parties finalized the Proposed Settlement Agreement.  (*See* Doc. 33.)[2]

---

[2] As explained more fully in Plaintiffs' Unopposed Motion for Attorneys' Fees, the Parties reached agreement on all material settlement terms prior to negotiating Class Counsel's attorneys' fees and costs, or the Class Representatives' incentive awards.  (*See* Sagafi Decl. at ¶ 9; Selbin II at ¶ 4.)

On September 9, 2011, Plaintiffs submitted an unopposed motion for preliminary approval of the Proposed Settlement.  (Doc. 33.)  In that motion, Plaintiffs asked this Court to: (1) provisionally certify the proposed nationwide settlement class; (2) appoint Plaintiffs as Class Representatives; (3) approve the notice plan and forms of settlement notice and order provision of such notice; (4) appoint the firms of Lieff Cabraser Heimann & Bernstein, LLP; Kiesel Boucher Larson, LLP; and Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. as Class Counsel and; (5) schedule a final fairness hearing.  (*Id.*)

On October 7, the Court granted Plaintiffs' motion and set a Final Fairness Hearing for January 17, 2012 at 11:00 am.  (*See* Doc. 40.)

## III.   THE SETTLEMENT

### A.   Terms.

The parties reached agreement on the terms of the proposed Settlement after extensive arm's length negotiations, which involved vigorous debate among counsel for Plaintiffs and LGEUS concerning both the facts and the law.[3]  As a result of those negotiations, Plaintiffs were ultimately able to secure exceptional relief for the Proposed Class.  In particular, LGEUS agreed to:  (1) reimburse Settlement Class Members for *all* out-of-pocket costs (parts and labor) to repair the Light Issue, to the extent such costs were incurred before the deadline for mailing the Summary Notice; and (2) extend the warranty with respect to the Light Issue for a period of 10 years from the date of the original retail purchase of the Refrigerator.  As part of the settlement, LGEUS will also maintain a dedicated website through August 1, 2018.[4]

---

[3] The parties have reserved all of their rights in the event the Settlement is rejected.

[4] LGEUS is paying the costs of notice and administration of the settlement, as well as attorneys' fees and costs, *in addition to, and not out of, Class members' recovery*.

### B.    Notice.

As provided in the Settlement, notice was sent to members of the Proposed Class on November 4, 2011, within thirty (30) days of Preliminary Approval.  (Johnson Decl. at ¶ 6.) LGEUS, through the Settlement Administrator, sent notices through mail or e-mail whenever possible, created a settlement website, and published the notice in PARADE Magazine. (Johnson Decl. at ¶¶ 6-9.)

Through the direct notice program, 418,411 notices were sent by First Class mail to unique class members (over 94% were "delivered").  (Johnson Decl. at ¶ 6.)  As of December 20, 2011, moreover, the dedicated website has received 17,180 hits on its main page.  (Johnson Decl. at ¶ 7.)

The notice methodology provided: an explanation of (1) the benefits available under the Settlement;  (2) the claims process and; (3) the releases that would be given to LGEUS. (Johnson Decl. Exs. A-D.)  In addition, the notice program clearly explained the right to opt-out or object to the Proposed Settlement and indicated that any opt-out or written objection had to occur on or before January 5, 2012.  (*Id.*)  Finally, the notice program explained the process for objecting to the attorneys' fees and expenses requested by Class Counsel.  (*Id.*)

## IV.   ARGUMENT

### A.    This Court Should Certify The Settlement Class.

Courts, of course, may certify class actions for the purposes of settlement only.  *See, e.g., Sullivan v. DB Invs., Inc.*, No. 08-2784, slip. op. at 68 (3d. Cir. Dec. 20, 2011) (en banc) (designated for publication); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F.Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998).  Plaintiffs respectfully submit that the Court was correct to certify the Class preliminarily under Rules 23(a) and 23(b)(3), and ask the Court to now finally certify the Class for settlement purposes, defined as:

- 4 -

953202.1

> All end user consumer residents of the United States who currently own or owned one or more of the LG-manufactured Refrigerators consisting of the LG-branded (the "LG Models") or Kenmore-branded (the "Kenmore Models") refrigerators that are identified on Exhibit A to the Settlement Agreement (collectively, the "Refrigerators").

Excluded from membership in the Class are:  (a) LGEUS or its affiliates; (b) Sears, Roebuck and Co. or its affiliates ("Sears"); (c) retailers, wholesalers, and other middlemen who purchased a Refrigerator for commercial use or resale; (d) persons who timely and validly exclude themselves from the Class; (e) state and federal governmental entities; and (f) the judge to whom this case is assigned and any member of the judge's immediate family.

### 1.      The Settlement Class Satisfies Rule 23(a).

The first question before the Court is whether the proposed class satisfies Rule 23(a). Under this rule, a class may only be certified if:

> [it is] so numerous that joinder of all members is impracticable;
>
> there [are] questions of law or fact common to the class;
>
> the claims or defenses of the representative parties [are] typical of the claims or defenses of the class; and
>
> the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *Weiss v. York Hosp.*, 745 F.2d 786, 807 (3d Cir. 1983); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 246 n.7 (3d Cir. 1975).  Generally, these requirements are referred to as numerosity, commonality, typicality, and adequacy.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004).  As explained below, Plaintiffs and the Proposed Class meet these requirements.

### a.   __Numerosity.__

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.  *See, e.g., Zinberg v. Wash. Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990); *Vargas v. Calabrese*, 634 F. Supp. 910, 918 (D.N.J. 1986).  There is no "magic number" that satisfies this requirement.  *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 477 (E.D. Pa. 2010) .  This said, there is little question that numerosity is satisfied here:  the proposed class includes many hundreds of thousands of individuals.  (*See* Johnson Decl. at ¶ 6); c*f. Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)  ("[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."); *Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985) (finding numerosity satisfied where the proposed class consisted of "more than 90 geographically dispersed plaintiffs"); *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990)  (observing that courts have certified classes with as few as 14 persons).

### b.   __Commonality.__

Rule 23(a)(2) provides that a suit may be maintained as a class action if "there are questions of law or fact common to the class."  The Supreme Court has emphasized, however, that "[e]ven a single [common] question" satisfies this requirement. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011); *see also Sullivan*, No. 08-2784, slip. op. at 42; *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009).  Commonality is present when there is a "common contention . . . of such a nature that it is capable of classwide resolution" and when resolution of that common contention will meaningfully advance the litigation.  *Wal-Mart*, 131 S. Ct. at 2551.

Class members share numerous questions capable of classwide resolution, including: (a) whether the Refrigerators contain common design and/or manufacturing defects; (b) whether

LGEUS knew and/or was reckless in not knowing of the defect in the Refrigerators; (c) whether LGEUS engaged in a pattern of fraudulent, deceptive, and misleading conduct involving the marketing and sale of the Refrigerators; (d) whether LGEUS consciously concealed or failed to disclose material facts to Plaintiffs and other members of the Class with respect to the defect in the Refrigerators; (e) whether, as a result of LGEUS's misconduct, Class members suffered an ascertainable loss by purchasing defective refrigerators that are unable to perform their essential function of keeping food cool (and require additional expenditures in order to reach their expected useful life) and; (f) whether Class members are entitled to recover damages in connection with LGEUS's alleged unlawful conduct.[5]  The answer to any one of these questions would meaningfully advance this litigation; accordingly, Rule 23(a)(2) 's commonality requirement is fully satisfied.  *Wal-Mart*, 131 S. Ct. at 2551, 2556; *Sullivan*, No. 08-2784, slip. op. at 42.

### c.     <u>Typicality.</u>

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class."  There is a "low threshold" for satisfying this requirement.  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. N.J. 2001); *see also McGee v. Cont'l Tire N. Am., Inc.*, No. 06-6234, 2009 U.S. Dist. LEXIS 17199, at *27 (D.N.J. Mar. 4, 2009).  It is satisfied whenever the named Plaintiffs and the absent class members "point to the same broad course of alleged fraudulent conduct to support a claim for relief."  *In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 640 (D.N.J. 2004); *see also Danvers Motor Co. Inc. v. Ford Motor Co.*, 543 F.3d 141, 150 (3d Cir. 2008).

Here, the claims of the named Plaintiffs are typical:  (1) the named Plaintiffs' claims, like those of all Class members, arise out of the same alleged defect and same alleged representations

---

[5] LGEUS steadfastly denies all of these allegations.

made by LGEUS about its refrigerators;  (2) the named Plaintiffs have the same legal claims as

do all Class members;  (3)  the named Plaintiffs bring those claims based on the same facts

applicable to the claims of all Class members.; and (4)  Plaintiffs and all Class members have

been injured in the same manner by this conduct.  Plaintiffs, therefore, satisfy the typicality

requirement.

### d.    <u>Adequacy.</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class."  It consists of two separate inquiries, each of which is "intended to

assure that the absentees' interests are fully pursued."  *In re Gen. Motors Corp. Pick-Up Truck

Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995) ("*GM Trucks*"); *see also

Chakejian v. Equifax Info. Servs.*, 275 F.R.D. 201, -- (E.D. Pa. 2011).  The first compares the

proposed class representatives to the absentee class members and determines whether their

"interests are sufficiently aligned."  *GM Trucks*, 55 F.3d at 800.  The second "tests the

qualifications of the counsel to represent the class."  *Id.*  Plaintiffs satisfy both prongs of the

adequacy requirement.

With respect to the first prong, the named Plaintiffs' claims are co-extensive with those

of all Class members.  Put another way, the named Plaintiffs and the Class members share an

identical interest in establishing LGEUS's liability.  In particular, both the named Plaintiffs and

the Class members have been injured in precisely the same manner and, accordingly, possess the

same legal claims predicated on the same legal theories (entitling them to the same potential

relief).  The named Plaintiffs are particularly well-suited to represent the Class members:  they

have actually suffered injury and incurred damages as a result of the Light Issue, have assumed

the responsibility of representing the Class, stood ready to represent the Class at trial, and are

prepared to continue to diligently pursue this action in cooperation with counsel.

The second prong is also readily satisfied. As discussed more fully in Plaintiffs' brief seeking Preliminary Approval, Class Counsel have extensive experience and expertise prosecuting complex class actions, including specifically consumer protection claims arising from allegedly defective products. (*See* Sagafi Decl. ¶¶ 2-3, 10 and Exs. A-C.) Indeed, other judges in this district have reserved high praise for Class Counsel:

> In *In Re Mercedes-Benz Tele Aid Contract Litigation*, Judge Dickinson R. Debevoise stated: "I want to thank counsel for the. . . very effective and good work. . . . It was carried out with vigor, integrity and aggressiveness with never going beyond the maxims of the Court."

> In *Glenz v. Sharp Electronics Corp.*, Judge Faith S. Hochberg stated: I want to commend counsel for all the hard work you all put into this case, for retaining an excellent mediator, for getting it managed efficiently and settled expeditiously, rather than letting the case drag on endlessly without settling it. It really is the way they should be done. I wish they were all done this way. That doesn't always happen, as I'm sure you know. I'm particularly concerned about this proliferation of multiple class actions being filed with races to courts by lawyers who really are just fighting over fees. It's an enormous waste of judicial resources. So when that happens — didn't happen here, I'm delighted.

(*See* Selbin Decl. ¶ 4.)

### 2.    The Settlement Class Satisfies Fed. R. Civ. P. 23(b)(3).

In addition to meeting the requirements of Rule 23(a), the Class also must satisfy Rule 23(b)(3). This Rule provides:

> (b)    Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> * * *

> (3)    the court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

953202.1

Fed. R. Civ. P. 23(b)(3) .  This is commonly referred to as the "predominance requirement," and it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also Sullivan*, No. 08-2784, slip. op. at 44; *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009).

      **a.**       **Common Questions Of Law And Fact Predominate.**

As explained above, a class action is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Put another way, "[c]ommon issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members."  *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003); *see also In re Community Bank of N. Va.*, 418 F.3d 277, 309 (3d Cir. 2005).  In cases alleging consumer fraud, this requirement is "readily met."  *In re Prudential*, 148 F.3d at 314 (quoting *Amchem*, 521 U.S. at 625); *Sullivan*, No. 08-2784, slip. op. at 44.

The same common questions (and answers) relevant to the Rule 23(a)(2) analysis, discussed above, predominate over any individual inquiries that might be relevant.  This includes, most importantly, the central questions of whether:  (1) the Refrigerators suffer from the alleged defect; (2) LGEUS misrepresented the cooling ability of the Refrigerators and; (3) LGEUS knowingly concealed the alleged defect at the time of sale.[6]  The predominance requirement is thus satisfied.

      **b.**       **A Class Action Is Superior To Numerous Individual Actions.**

Rule 23(b)(3) sets forth certain factors that may be pertinent in considering whether a class action is a superior method by which to adjudicate a controversy.  *See In re Mercedes-Benz*,

---

[6] As indicated above, LGEUS has at all times denied these allegations.

213 F.R.D at 186 ("The Rule sets forth a non-exhaustive list of factors to be weighed.").  The

Rule provides that these factors include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigations of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).[7]

A class action is superior to other available methods for the fair and efficient adjudication

of this litigation within the meaning of Rule 23(b)(3) because:

> (i)      absent class action certification, the Court is faced with the potential burden of litigating numerous individual lawsuits, all of which would arise out of the same set of operative facts alleged in the Complaint;

> (ii)     the resolution of common issues alleged in one action will both produce an efficient use of judicial resources and result in a single outcome that is binding on all Class Members;

> (iii)    any administrative difficulties in handling potential individual issues under the class action device are less burdensome than the problems that are likely to arise in handling the same claims in numerous separate actions and;

*See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *Varacallo*, 226 F.R.D. at

234 ("Without question, class adjudication of this matter will achieve an appreciable savings of

effort, time and expense, and will promote uniformity of decision on the issues resolved and to

which the parties will be bound."); *see also Carnegie v. Household International, Inc.*, 376 F.3d

656, 661 (7th Cir. 2004)  ("The more claimants there are, the more likely a class action is to yield

---

[7] When certifying a settlement only class, there is no need to inquire whether the case, if tried, would pose intractable management problems; obviously, if a settlement is approved, there will be no trial.  *See Amchem*, 521 U.S. at 620; *cf. Varacallo v. Massachusetts Mutual Life Ins. Co.*, 226 F.R.D. 207, 234 (D.N.J. 2005) ("For the purposes of settlement, concentrating litigation in one forum is desirable.").

substantial economies in litigation.  It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30.").

There is one final reason that superiority is met.  In this case, Class members' claims are *de minimis* in comparison to the costs of litigation or arbitration against LGEUS.  Each claim would cost thousands (likely tens of thousands) of dollars to litigate, thus making them "negative-value claims."  Judge Richard Posner has observed that in such cases:

> The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.

*Carnegie*, 376 F.3d at 661.  In other words, given the expense of maintaining individual actions, denial of class certification would prevent most individuals from asserting any claims against LGEUS at all.  Superiority, then, is satisfied.

**B.       The Settlement Is Fair, Reasonable, And Adequate.**

In addition to satisfying the class certification requirements under Rule 23(a) and (b), a proposed settlement must be "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e); *see also In re Prudential*, 148 F.3d at 316 ("Rule 23(e) imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the class claims."); *see also Sullivan*, No. 08-2784, slip. op. at 85.  As explained more fully herein, the Settlement, which ensures that Class members are reimbursed 100% for money they previously expended to address the Light Issue and receive a 10 year extended settlement warranty regarding the Light Issue,[8] easily meets this requirement.

**1.       The Law Favors Settlement.**

The ultimate question before this Court is whether a settlement is fair, reasonable, and adequate.  *See, e.g.*, *GM Trucks*, 55 F.3d at 784.  This said, "[t]he law favors settlement,

---

[8] Measured from the original retail purchase.

particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation" and where the parties may "gain significantly from avoiding the costs and risks of a lengthy and complex trial." *GM Trucks*, 55 F.3d at 784. In a case such as this one, which settled prior to any motions practice directed at class certification, the "economic gains [from settlement] multiply." *Id.*; *see also In re Community Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("[A]ll Federal Circuits recognize the utility of . . . 'settlement classes' as a means to facilitate the settlement of complex nationwide class actions."); *In re Warfarin*, 391 F.3d at 535 ("There is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

When a settlement is the product of arm's length negotiation between experienced counsel, moreover, there is a presumption that it should be approved:

> A class settlement is entitled to an "initial presumption of fairness" when "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."

*Bredbenner v. Liberty Travel, Inc.*, No. 09-905, 2011 U.S. Dist. LEXIS 38663, at *29-30 (D.N.J. Apr. 8, 2011) (*quoting GM Trucks*, 55 F.3d at 785); *see also In re American Family Enterprises*, 256 B.R. 377, 421 (D.N.J. 2000) ("Significant weight should be attributed 'to the belief of experienced counsel that the settlement is in the best interest of the class.'") (citation omitted); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235 (D.N.J. 2000).

One final point is worthy of emphasis: a fair, reasonable, and adequate settlement is not necessarily an "ideal settlement." *Prudential*, 962 F. Supp. at 534 (explaining that a settlement is "a compromise, a yielding of the highest hopes in exchange for certainty and resolution"). Indeed:

953202.1

> [T]he court's intrusion upon what is otherwise a private consensual
> agreement negotiated between the parties to a lawsuit must be
> limited to the extent necessary to reach a reasoned judgment that
> the agreement is not the product of fraud or overreaching by, or
> collusion between, the negotiating parties, and that the settlement,
> taken as a whole, is fair, reasonable and adequate to all
> concerned . . . *The proposed settlement is not to be judged against*
> *a hypothetical or speculative measure of what might have been*
> *achieved . . . .*

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (emphasis added).

Here, however, the Proposed Settlement may well be hard to distinguish from the "ideal" one.

## 2.     The *Girsh* Factors.

While appellate courts generally encourage settlement, the final approval of a proposed

class action settlement is within the sound and independent discretion of the court.  *Lazy Oil*

*Co. v. Witco Corp.*, 166 F.3d 581, 587 (3d Cir. 1999); *see also Sullivan*,  No. 08-2784, slip. op. at

86-87; *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956 at 965 (3d Cir. 1983); *Girsh v.*

*Jepson*, 521 F.2d 153, 156 (3d Cir. 1975).  In exercising that discretion, the Third Circuit has

articulated nine factors, generally referred to as the *Girsh* factors, that district courts should

employ to determine whether a settlement is fair, reasonable and adequate:

> (1) the complexity and duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings; (4) the
> risks of establishing liability; (5) the risks of establishing damages;
> (6) the risks of maintaining a class action [through trial]; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement in light of the best
> recovery; and (9) the range of reasonableness of the settlement in
> light of all the attendant risks of litigation.

*GM Trucks*, 55 F.3d at 785; *Girsh*, 521 F.2d at 157.

As explained below, the *Girsh* factors and related settlement principles strongly favor

approval of this Settlement.  *Cf. In re American Family*, 256 B.R. at 418 ("These factors are a

guide and the absence of one or more does not automatically render the settlement unfair.").

- 14 -

**a.   Continued Litigation Would Be Long, Complex, And Expensive.**

The first *Girsh* factor is whether the settlement avoids lengthy, complex, and expensive continuation of litigation.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 233-34 (3d Cir. 2001) ("[This factor] captures the probable costs, in both time and money, of continued litigation." (internal quotation marks omitted)); *see also Sullivan*, No. 08-2784, slip. op. at 88-89.  Perhaps unsurprisingly, "[w]here the complexity, expense, and duration of litigation are significant, the Court will view this factor as favoring settlement."  *Bredbenner*, 2100 U.S. Dist. Lexis 38663 at 33; *see also GM Trucks*, 55 F.3d at 812; *Lake v. First Nationwide Bank*, 900 F. Supp. 726 at 732 (E.D. Pa. 1995).

This case, of course, involves complex questions of law and fact (*see generally* Compl.; Doc. 7; Doc. 10; Doc. 16) and there is little doubt that continued litigation would be both time-consuming and expensive (Selbin II at ¶ 5).  First, discovery would have been lengthy and unwieldy; for example, it may well have required the translation of documents from Korean and included depositions in Korea, where LGEUS' parent company is located.  (*Id.*)  Second, given that the claims encompass failures in more than a dozen models of refrigerators, extensive work from experts might have been necessary to frame the wrongdoing on a classwide basis.  (*Id.*)  Finally, trial would have involved extensive pretrial motions involving complex questions of law and fact, and the trial itself would have been lengthy and complicated.  *Cf.  Weiss*, 899 F. Supp. at 1301 ("Mercedes was prepared to contest this class action vigorously.").

The risks of substantial delay are also meaningful.  It likely would take years to bring this case to trial, for example.  Even if Plaintiffs were successful at trial, LGEUS would undoubtedly appeal an adverse judgment, adding further time to a final resolution of this matter if it were litigated.  *Id.* at 536 ("[I]t was inevitable that post-trial motions and appeals would not only

953202.1

further prolong the litigation but also reduce the value of any recovery to the class"). Under all of the circumstances, a certain result now, rather than an uncertain result many years in the future, weighs in favor of approving the Proposed Settlement.

### b.      There Have Been Few Opt-Outs And, To Date, Only Two Objections.

Although there are approximately 600,000 members of the Settlement Class, and notice was implemented as ordered by the Court, including direct mail to some 418,411 Class members, to date there have been only 76 opt-outs and only two objections. (*See* Johnson Decl. at ¶ 11)[9] Under *Girsh*, a small number of negative responses weighs in favor of final approval. *See Sullivan*, No. 08-2784, slip. op. at 89-90; *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313-14 (3d Cir. Pa. 1993). Indeed, "[t]he Third Circuit has looked to the number of objectors from the class as an indication of the reaction of the class." *In re CertainTeed*, 269 F.R.D. at 485 (citing In re Cendant, 264 F.3d at 234-35); *see also Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115, 119 (3rd Cir. 1990) (explaining that objections from only 29 members of a class comprised of 281 "strongly favors settlement"); *Prudential*, 962 F.Supp. at 537; *Weiss*, 899 F. Supp. at 1301.[10] The presence of only two objections to the Proposed Settlement is another indication of its reasonableness.

---

[9] As noted above, opt outs from and formal objections to the Settlement are not due until January 5, 2012. Plaintiffs will update the Court with final numbers, and respond to the substantive issues raised therein, in their reply, due on January 10, 2012. Class counsel received one objection on December 20, 2012 and another on December 2012, shortly before filing this brief.

[10] The percentage of Class Members that object to the settlement is also an appropriate gauge of the reaction of the class as a whole. *See Weiss* at 1313-14; *McGee v. Continental Tire North America, Inc.*, 2009 WL 539893, at *4 (D.N.J. March 4, 2009). Here, the percentage is infinitesimal.

953202.1

c.      **The Parties Have Completed Sufficient Investigation And Discovery.**

This factor "considers the degree of case development accomplished by counsel prior to settlement."  *Bredbenner*, 2100 U.S. Dist. Lexis 38663 at 3.  Even settlements reached at a very early stage and prior to formal discovery, however, may be appropriate when there is no evidence of collusion and the settlement represents substantial concessions by both sides.  *See, e.g.*, *Weiss*, 899 F.Supp. at 1301 ("Admittedly, the case is still in the early stages of discovery.").

In this case, settled while a motion to dismiss was pending, no *formal* discovery occurred. Yet, the record before the Court reveals that, even prior to filing the Complaint, Class Counsel undertook a thorough investigation to develop Plaintiffs' allegations.  (*See generally* Compl.) So, too, Class Counsel engaged a well-qualified expert to investigate and assess the Light Issue, and that expert's work played an important role in Class Counsel's understanding and assessment of this case.  (Sagafi Decl. at ¶ 7.)  Class Counsel also were in contact with, and gathered information from, more than 100 customers who reported their experiences with the Light Issue in the relevant models of LG Refrigerators.  (*See id.*)  As part of settlement discussions, moreover, LGEUS provided Class Counsel via informal discovery documents and information related to the manifestation of the Light Issue in the Refrigerator models included in the Settlement.  In addition, Class Counsel and LGEUS's counsel engaged in frank discussions as part of the settlement negotiation, including exchange of informal discovery related to the alleged defect underlying Plaintiffs' claims.

Thus, while discovery was not advanced here, this factor does not weigh against final approval.

**d.     Plaintiffs Would Have Faced Considerable Risk In Proceeding to Trial.**

The fourth and fifth *Girsh* factors (the risks of establishing liability and damages) should be considered to "examine what potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *In re Cendant*, 264 F.3d at 237 (quoting *GM Trucks*, 55 F.3d at 814); *see also Sullivan*, No. 08-2784, slip. op. at 91.  In assessing the fairness, reasonableness, and adequacy of the Settlement, a court must balance the risks of establishing liability and damages against the benefits afforded to the members of the Class, as well as the immediacy and certainty of a substantial recovery against the risks of continuing litigation.  *Girsh*, 521 F.2d at 157; *see also In re Safety Components Int'l, Inc. Secs. Litig.*, 166 F.Supp.2d 72, 89 (D.N.J. 2001) ("The inquiry requires a balancing of the likelihood of success if the case were taken to trial against the benefits of immediate settlement.").

Put simply, "the risks surrounding a trial on the merits are always considerable." *Weiss*, 899 F. Supp. at 1301.[11]  This is particularly true here; even a "successful" trial might well have resulted in exactly the same relief obtained through the Settlement.

To be clear:  Plaintiffs believe in the merits of their claims.  (Selbin II at ¶ 6.)  But success at trial would by no means be guaranteed, particularly given that LGEUS would zealously defend against these claims absent the Settlement.  *See In re Merck & Co. Vytorin ERISA Litig.*, No. 08-CV-28, 2010 U.S. Dist. LEXIS 12344, at *30 (D.N.J. Feb. 9, 2010) ( "[I]n the absence of settlement, Defendants will continue to zealously advocate in defense of their

---

[11] Decisions that demonstrate the enormous risks of litigation include:  *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd without op. sub nom. Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (en banc) (after jury verdict in favor of plaintiffs and the Class, reversing the district court's denial of judgment n.o.v. for defendants and remanding with instruction to dismiss the complaint); *Levinson v. Prentice-Hall, Inc.*, 868 F.2d 558, 564-65 (3d Cir. 1989) (jury award of $2.3 million in punitive damages overturned).

products.").  The risks and delays inherent in taking the case to trial (and appeal), viewed against the certainty of the benefits of the Settlement, weigh heavily in favor of final approval.  (Selbin II at ¶ 6.)

> **e.**     **The Risks Of Maintaining The Class Action Through Trial.**

As explained above, Class Counsel believe this case is appropriate for class certification in the litigation context.  There is, however, always a risk that this Court would disagree.  Even if class certification were granted, moreover, class certification can always be reviewed or modified before trial; "the specter of decertification makes settlement an appealing alternative." *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 585 (D.N.J. 2010); *see also Sullivan*, No. 08-2784, slip. op. at 92-93.  As one court observed when approving a settlement:

> To paraphrase Benjamin Franklin, plaintiffs now have their class action, the question is [. . . ] can they keep it.

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 317 (N.D. Ga. 1993) (citations omitted); *see also Eggleston v. Chi. Journeyman Plumbers Local Union No. 130 U.A.*, 657 F.2d 890, 896 (7th Cir. 1981) ("[A] favorable class determination by the court is not cast in stone.").

> **f.**     **LGEUS' Ability To Withstand Greater Judgment, Reasonableness Of The Settlement In Light Of The Best Possible Recovery, And All Attendant Risks Of Litigation.**

The last three *Girsh* factors are the reasonableness of the settlement in light of: (i) Defendant's ability to withstand a greater judgment; (ii) the best possible recovery and; (iii) all the attendant risks of litigation.  These factors, too, support approval of this Settlement and its significant benefits.

First, there is obviously no dispute that LGEUS is a valuable company with ample resources.  But this factor is *neutral* when the defendant's ability to pay greatly exceeds the potential liability, and was not a factor in settlement negotiations.  *See In re CertainTeed*, 269

F.R.D. at 489 ("[B]ecause ability to pay was not an issue in the settlement negotiations, this factor is neutral"); *In re Warfarin*, 391 F.3d at 538 ("[The] fact that [Defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached"); *Bredbenner*, at *15 ("[C]ourts in this district regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts.").

As to the final two factors, this Court must "measure[] the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *GM Trucks*, 55 F.3d at 806. The Third Circuit explained:

> [I]n cases primarily seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement . . . The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.

*Id.* (citations omitted). Of great weight here, even had LGEUS been largely "unsuccessful" over the course of litigation, Plaintiffs may well have recovered nothing more at the end of litigation than they have today.

### g.   Conclusion.

Overall, the *Girsh* factors militate strongly in favor of approving the Settlement. The Settlement provides all Class members a substantial and real recovery today, and protection going forward, rather than forcing the Class to wait years for a *potential* recovery that might have been no more than the amount of the Settlement. Class Counsel have fully evaluated the relevant facts and law and believe that, under all of the facts and circumstances, the Settlement is not only fair and reasonable, but represents an extraordinary result.

953202.1

### C.   <u>The Notice Program Is Constitutionally Sound And Fully Implemented.</u>

To protect the rights of absent Class members, the Court must ensure that the best

practicable notice is provided to the Class  *See* Fed. Rule Civ. P. 23(e)(1)(B); *Phillips Petroleum*

*Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).  The best practicable notice is that which is

"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections."  *Mullane v. Cent.*

*Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Both the content and the means of

dissemination of the notice must satisfy the "best practicable notice" standard.

The Manual For Complex Litigation provides that notice of a class settlement should:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Provide information regarding attorneys' fees;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

Manual For Complex Litigation, Fourth § 21.312; *see also In re Cendant.*, 109 F. Supp. at 254.

As detailed above, Class members have received notice of the Settlement in conformance

with Rule 23(e)(1)(B), and it was the best practicable notice under the circumstances.  Over

953202.1

418,411 summary notices to unique individuals who were determined to be Class members were

mailed, and the wider publication notice, including the website, has informed the Class members

fully of their rights and benefits under the Settlement.  All required points of information,

moreover, have been fully and clearly presented.  Accordingly, this notice is adequate under

Rule 23.  *Prudential*, 962 F. Supp. at 527 (actual notice by mail and published notice was

"ideal"); *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 836 (W.D. Pa. 1995) (actual notice

by mail and published notice was "best possible notice.")

<u>**CONCLUSION**</u>

For all the reasons set forth above, Plaintiffs respectfully ask this Court to certify the

Class for Settlement, and grant their motion to approve the  Settlement as fair, adequate, and

reasonable.


Dated:  December 21, 2011          Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:     */s/ Jason Louis Lichtman*   _____
           Jonathan D. Selbin
           Jason L. Lichtman
           LIEFF, CABRASER, HEIMANN &  BERNSTEIN, LLP
           250 Hudson Street, 8th Floor
           New York, NY 10013
           Telephone: (212) 355-9500

           Kristen Law Sagafi
           LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
           275 Battery Street, 30th Floor
           San Francisco, CA 94111
           Telephone: (415) 956-1000

James E. Cecchi
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY &
AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

Paul R. Kiesel
KIESEL BOUCHER LARSON, LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
(310) 854-4444

*Counsel for Plaintiffs*

953202.1