UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CONNIE MCLENNAN, VIRGINIA ZONTOK, CARYL FARRELL, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**LG ELECTRONICS USA, INC.,**<br><br>**Defendant.** | Civ. No. 2:10-cv-03604 (WJM)<br><br>**AMENDED OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiffs Connie McLennan, Virginia Zontok, and Caryl Farrell filed this action on behalf of themselves and others similarly situated, alleging that Defendant LG Electronics USA, Inc. ("LG") manufactured, marketed, and sold refrigerators that were defective because their interior lights would remain lit even when the door was closed (the "Light Issue"). After approximately a year of litigation and mediation, Plaintiffs reached a proposed settlement with LG, which this Court preliminarily approved on October 7, 2011. Plaintiffs now move to finalize a revised version of the proposed settlement[1] (the "Settlement"), requesting that the Court certify the proposed class for settlement purposes, approve the Settlement, and grant Plaintiffs' motion for attorneys' fees. The Court reviewed the parties' submissions and held a Fairness Hearing on January 17, 2012 to consider these motions. For the reasons set forth below, the proposed class is **CERTIFIED**, the Settlement is **APPROVED**, and Plaintiffs' motion for attorneys' fees is **GRANTED**.

**I.     BACKGROUND**

---

[1] The revised version of the proposed settlement adopts the modified language for paragraph 12(a) set forth in pages 4 and 5 of Plaintiffs' Reply in Support of Final Approval of Class Settlement (ECF No. 61).

1

On July 16, 2010, Plaintiffs commenced this action, seeking relief on behalf of a proposed nationwide class (the "Class") for allegedly defective refrigerators manufactured, marketed, and sold by LG. *See* Compl. ¶ 1, ECF No. 1. While the Complaint asserts a number of legal theories, Plaintiffs' core allegation is that the interior lights in certain LG refrigerators do not turn off even when the refrigerator doors are closed. *See id.* The Light Issue allegedly prevents the machine from staying cool, allows food to spoil, and may lead to the burning and melting of parts of the refrigerator. *See* Compl. ¶ 23, 26. LG has, at all times, denied Plaintiffs' allegations and any liability arising from the marketing or sale of its refrigerators.

On October 4, 2010, LG filed a motion to dismiss Plaintiffs' Complaint. ECF No. 7. Plaintiffs responded to that motion on October 10, 2010, and LG filed a reply on November 30, 2010. ECF Nos. 10, 16.

Following the submission of those papers, and prior to any hearing or ruling on the motion, the Court called a settlement conference, which was held on February 17, 2011. *See* ECF No. 28. Following that conference, the parties engaged in negotiations and reached an agreement on the material terms of a settlement, which they memorialized in a Memorandum of Understanding executed on May 20, 2011. ECF No. 31. After several months of additional negotiations, the parties finalized the proposed Settlement. ECF No. 33. On September 9, 2011, Plaintiffs submitted the parties' joint motion for preliminary settlement approval. ECF No. 34. On October 7, the Court granted the motion and set a Fairness Hearing for January 17, 2012. *See* ECF No. 40.

The terms of the Settlement provide, among other things, that LG will: (1) reimburse Settlement Class members for all out-of-pocket costs (parts and labor) to repair the Light Issue, to the extent such costs were incurred before Class notice was mailed; and (2) extend the warranty with respect to the Light Issue for a period of 10 years from the date of the original retail purchase of the refrigerator. Settlement ¶¶ 2, 4, ECF No. 33-1. The extended warranty will cover in-home refrigerator repair performed by LG, and, in some cases, will cover a replacement refrigerator. *Id.* ¶¶ 2-3.

On November 4, 2011, LG, through a claims administrator, sent individual notices summarizing the litigation and Settlement ("Summary Notice") to Class members through direct mail or e-mail. Johnson Decl. ¶ 6, ECF No. 49. The Summary Notice informed Class members that they could opt-out of or object to the Settlement by January 5, 2012, and that they could appear at the Fairness Hearing on January 17, 2012. *See* Johnson Decl. Ex. A, ECF No. 49. Of the 600,000 Class members, the direct notice program reached 418,411 members. Johnson Decl. ¶ 6. Notice of the settlement was published in *Parade* magazine on November 20, 2011. *Id.* ¶ 8. The claims administrator also established a dedicated toll-free telephone number for the Settlement, and activated a Settlement notification website containing links to the Settlement documents and the

pleadings filed in the litigation.  *See* Johnson Decl. Ex. C, ECF No. 49.  *Id.* ¶¶ 7, 9.  As of December 11, 2011, the website had received 17,180 hits.  *Id.* ¶ 7.

By January 5, 2012, 107 Class members opted out of the Settlement.  Supp. Johnson Decl. ¶ 11, ECF No. 65.  To date, six Class members have submitted objections to the Settlement.[2]  Letters of Objection, ECF Nos. 54, 56-60, 64, 67, and 69.  The objections primarily pertain to problems with LG refrigerators other than the Light Issue.

On January 17, 2012, the Court held a Fairness Hearing to determine whether the class should be certified, whether the proposed Settlement was fair, reasonable, and adequate, and whether the requested attorneys' fees were reasonable.  Prior to the hearing, Plaintiffs had fully briefed and supported their positions with extensive affidavits and exhibits.  At the hearing, both Class counsel and counsel for LG made presentations.  No objectors attended the hearing.

## II.   DISCUSSION

In order to approve a class action settlement, a court must find that: (A) class certification is appropriate; (B) the settlement is fair, reasonable, and adequate; and (C) the request for attorneys' fees is reasonable.  *See Krell v. Prudential Ins. Co. of Am. ("In re Prudential")*, 148 F.3d 283 (3d Cir. 1998).  Each issue will be addressed in turn.

### A.  CLASS CERTIFICATION

In order to certify a class for trial or settlement, a court must find that the proposed class satisfies the requirements of Rule 23.  *See Amchem Prods. Inc. v. Windsor* ("*Amchem*"), 117 S. Ct. 2231, 2248 (1997); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*G.M. Trucks*"), 55 F.3d 768, 799 (3d Cir. 1995) (Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiff's and counsel's ability to fairly and adequately protect class interests).  Specifically, in this case, the Court must find that the Class meets the class certification requirements set forth in Rule 23(a) and Rule 23(b)(3).

On October 7, 2011, the Court preliminarily certified the proposed Class.  Plaintiffs now ask the Court to finally certify the Class for settlement purposes only.  Plaintiffs have defined the Class as follows:

> All end user consumer residents of the United States who currently own or owned one or more of the LG-manufactured refrigerators consisting of the LG-branded or Kenmore-branded refrigerators that are identified on Exhibit A to the Settlement Agreement.

---

[2] Nine objections were filed in total, but David and Loretta Sutter, Elaine Cohen, and Michael Selvaggio each filed two identical or nearly identical objections.  Thus, the Court will treat each of these as a single objection.

Settlement ¶ 1. Excluded from membership in the Class are: (a) LG or its affiliates; (b) Sears, Roebuck and Co. or its affiliates ("Sears"); (c) retailers, wholesalers, and other middlemen who purchased a refrigerator for commercial use or resale; (d) persons who timely and validly exclude themselves from the Class; (e) state and federal governmental entities; and (f) the judge to whom this case is assigned and any member of the judge's immediate family. *Id.*

For the reasons set forth below, the Court finds that the proposed Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3).

### a. Rule 23(a) Requirements

In order to be certified, a class must satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

#### 1. Numerosity.

Rule 23(a)(1) requires that the class be so numerous that "joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). In this case, there is little question that the numerosity requirement is satisfied, as the proposed class includes hundreds of thousands of individuals.

#### 2. Commonality.

The commonality prong of Rule 23(a) asks whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has emphasized that "[e]ven a single [common] question" satisfies this requirement. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). In this case, class members share numerous questions capable of classwide resolution, including: (1) whether the refrigerators at issue contain common design or manufacturing defects; (2) whether LG knew of the defect in the refrigerators; (3) whether Class members suffered an ascertainable loss by purchasing refrigerators that experienced the Light Issue; and (4) whether Class members are entitled to recover damages. The answer to any one of these questions would meaningfully advance the litigation; accordingly, Rule 23(a)(2)'s commonality requirement is satisfied. *See Wal-Mart*, 131 S. Ct. at 2551, 2556.

#### 3. Typicality.

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). Here, the claims of the named Plaintiffs are typical: (1) the named Plaintiffs' claims, like those of all Class members, arise out of the same alleged defect; (2) the named Plaintiffs have the same legal claims as do all Class members; and (3) the named Plaintiffs bring those claims based on the same facts applicable to the claims of all Class members. Plaintiffs, therefore, satisfy the typicality requirement.

#### 4. Adequacy.

4

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Rule consists of two separate inquiries, each of which is designed to protect the interests of absentee class members. First, the adequacy of representation inquiry "tests the qualifications of the counsel to represent the class." *G.M. Trucks*, 55 F.3d at 800. Second, it "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 117 S. Ct. at 2250. The Court finds that both class counsel and the named plaintiffs satisfy these tests.

With respect to the first prong, the Court finds that Class counsel have extensive experience and expertise prosecuting complex class actions, including consumer protection claims arising from allegedly defective products. *See* Sagafi Decl. ¶¶ 2-3, 10 and Exs. A-C, ECF No. 35. The second prong is also readily satisfied. The named Plaintiffs and the Class members share an identical interest in establishing LG's liability: both the named Plaintiffs and the Class members possess the same legal claims predicated on the same legal theories. The adequacy requirement is therefore satisfied.

### b. Rule 23(b) Requirements

If the Rule 23(a) criteria are satisfied, the Court must also find that the class fits within one of the three categories of class actions set forth in Rule 23(b). In this case, the parties seek to certify the Class under Rule 23(b)(3). In order to pass muster under Rule 23(b)(3), a court must determine that (1) common questions of law or fact predominate, and (2) the class action mechanism is the superior method for adjudicating the case. Fed. R. Civ. P. 23(a)(1). Courts commonly certify class actions for the purposes of settlement only under Rule 23(b)(3). *See Amchem*, 117 S. Ct. at 2247 (1997) (noting that "among current applications of Rule 23(b)(3), the 'settlement only' class has become a stock device [and] all Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes.").

### 1. Predominance.

The same common questions relevant to the Rule 23(a)(2) analysis predominate over any individual inquiries that might be relevant. This includes, most importantly, the questions of: (1) whether the refrigerators at issue contain common design or manufacturing defects; and (2) whether LG knew of the defect. The predominance requirement is thus satisfied.

### 2. Superiority.

A class action is superior to other available methods for the fair and efficient adjudication of this litigation within the meaning of Rule 23(b)(3) for several reasons. First, Class members' claims in this case are *de minimis* in comparison to the costs of litigation or arbitration against LG. Given the expense of maintaining individual actions, denial of class certification would prevent most individuals from asserting any claims against LG at all. Second, the resolution of common issues alleged in one action is an

efficient use of judicial resources and results in a single outcome that is binding on all Class Members. The superiority requirement is therefore satisfied.

### c. Conclusion

Because the Court finds that the class certification requirements set forth in Rule 23(a) and Rule 23(b)(3) have been met, the Court will certify the class for settlement purposes only.

## B. THE FAIRNESS OF THE PROPOSED SETTLEMENT

Even if the requirements for class certification have been met, a class action settlement cannot be approved without a court determination that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also In re Prudential*, 148 F.3d at 316 ("Rule 23(e) imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the class claims."). To determine whether a settlement is fair, reasonable, and adequate, courts in this circuit address the nine factors set forth in *Girsh v. Jepson* ("*Girsh*"), 521 F.2d 153 (3d Cir. 1975). Courts must also find that notice was adequate under Federal Rules of Civil Procedure 23(c)(2) and 23(e).

For the reasons explained below, the Court finds that: (a) the *Girsh* factors weigh in favor of approving of the Settlement; (b) the few objections that were made by Class members do not counsel against approval; and (c) Class notice was adequate under Rules 23(c)(2) and 23(e).

### a. The *Girsh* Factors

The Third Circuit's decision in *Girsh* sets forth nine factors to be considered by courts when evaluating the fairness of a proposed settlement. *See Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). Those factors are:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action [through trial]; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157. Each factor will be addressed in turn.

### 1. The complexity and duration of the litigation.

The first *Girsh* factor considers whether the settlement avoids the continuation of lengthy, complex, and expensive litigation. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 233-34 (3d Cir. 2001) ("[This factor] captures the probable costs, in both time and

money, of continued litigation."). This case involves complex questions of law and fact and there is little doubt that continued litigation would be both time-consuming and expensive. Discovery alone would be lengthy and unwieldy, given that LG's parent company is located in Korea and the claims encompass failures in more than a dozen models of refrigerators. The risks of delay are also substantial. It likely would take years to bring this case to trial, and even then, it is likely that the litigation would be further prolonged through post-trial motions and appeals. Under the circumstances, a certain result now, rather than an uncertain result many years in the future, weighs in favor of approving the Settlement.

### 2. The reaction of the class to the settlement.

The second *Girsh* factor attempts to gauge whether members of the Class support the settlement. Although the response rate in a 23(b)(3) class action is relevant to the fairness determination, "a combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *G.M. Trucks*, 55 F.3d at 812 (citation omitted). In this case, there are approximately 600,000 members of the Settlement Class, and individual notice was mailed to 418,411 Class members. Johnson Decl. ¶ 6. There were 107 opt-outs, meaning that less than 0.02% of the Class opted out of the Settlement. *See* Supp. Johnson Decl. ¶ 11. In addition, only six objections were filed, and not a single objector appeared at the Fairness Hearing. Although the small number of negative responses is not dispositive, it certainly weighs in favor of final approval.

### 3. The stage of the proceedings and amount of discovery completed.

To satisfy the third *Girsh* factor, the Court must find that the parties had an "adequate appreciation of the merits of the case before negotiating." *G.M. Trucks*, 55 F.3d at 813. To ensure that a proposed settlement is the product of informed negotiations, there should be an inquiry into the type and amount of discovery the parties have undertaken. *In re Prudential*, 148 F.3d at 319.

In this case, the parties reached a settlement prior to engaging in formal discovery. However, the record reflects that the parties nonetheless engaged in a preliminary investigation of the case. Plaintiffs, for example, gathered information from more than 100 customers who reported their experiences with the Light Issue in the relevant models of LG refrigerators. Plaintiffs also worked with an expert to investigate and assess the Light Issue. Similarly, LG (via informal discovery) provided documents and information to Plaintiffs related to the manifestation of the Light Issue. Thus, while discovery was not advanced here, the Court is satisfied that the parties had an adequate appreciation of the merits of the case. Accordingly, this factor does not weigh against final approval. *Cf.*

*Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) (approving a settlement even though the case was still in the early stages of discovery).

### 4. The risks of establishing liability and damages.

The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the benefits of an immediate settlement against the likelihood of success at trial and the resulting damage award. *In re Prudential*, 148 F.3d at 319. "[T]he risks surrounding a trial on the merits are always considerable," and this case is no exception. *Weiss*, 899 F. Supp. at 1301. Plaintiffs would face a difficult burden at trial demonstrating, *inter alia*, (1) that their claims are not barred by the applicable statutes of limitations; (2) that their claims are not preempted by state products liability statutes; and (3) that LG's statements about their refrigerators were misleading or incomplete when they were made. Thus, the risks and delays inherent in taking the case to trial, viewed against the certainty of the benefits of the Settlement, weigh in favor of final approval.

### 5. The risks of maintaining the class action through trial.

Under Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable. *G.M. Trucks*, 55 F.3d at 815. In this case, as in other class actions, there is a risk that the case might eventually be decertified. This risk is particularly acute where, as here, choice of law principles likely require the application of the state law of each plaintiff's home state. To the extent that this factor should still be considered, it weighs in favor of settlement. *See In re Prudential*, 148 F.3d at 321 (noting that, after *Amchem*, the manageability inquiry in settlement-only class actions may not be significant).

### 6. The ability of the defendants to withstand a greater judgment.

There can be no dispute that LG is a company with ample resources. Where, as here, the defendant's ability to pay greatly exceeds the potential liability, and was not a factor in settlement negotiations, the factor is neutral. *See In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 489 (E.D. Pa. 2010) ("[B]ecause ability to pay was not an issue in the settlement negotiations, this factor is neutral"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) ("[The] fact that [Defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached").

### 7. The range of reasonableness of the settlement in light of the best possible recovery and the attendant risks of litigation.

The last two *Girsh* factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial. In order to assess the reasonableness of a proposed settlement seeking monetary relief, courts compare "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement." *G.M. Trucks*, 55 F.3d at 806. The Settlement in this case provides for both the complete reimbursement of out-of-pocket expenses for repairs fixing the Light Issue, as well as a warranty for ten years from the date of refrigerator purchase. It would be hard to imagine a better recovery for the Class had the litigation gone to trial. Because Class members will essentially receive all of the relief to which they would have been entitled after a successful trial, this factor weighs heavily in favor of settlement.

### 8. Conclusion

Overall, the *Girsh* factors militate in favor of approving the Settlement. The Settlement provides all Class members a real recovery today and protection going forward, rather than forcing the Class to wait years for a potential recovery that might have been no more than the amount of the Settlement.

### b. Other Objections

A total of six objections to the Settlement were filed. One of these objections has since been withdrawn.[3] *See* 1/17/12 Minutes of Proceedings, ECF No. 66. For the reasons set forth below, the Court finds that the remaining objections are not a basis upon which to deny approval of the Settlement.[4]

#### 1. Generalized Objections to the Concept of Class Action Litigation Are Not a Basis for Denying Approval.

Walt and Cecelia Zettlemoyer object to the notion of classwide relief and compensation for Class counsel, generally. *See* Letter of Objection, ECF No. 54 (referring to the lawsuit as "legal blackmail"). It is well-established that such generalized objections should be overruled. *See, e.g.*, *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 474 (W.D. Va. 2011) ("[A] philosophical disagreement with class action litigation . . . do[es] not impugn the adequacy of the settlement itself."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 151 (S.D.N.Y. 2010).

#### 2. Objections Seeking Broader Relief Fail to Account For the Compromise Nature of Settlements.

---

[3] The objection filed by Lisa and Michael Perotta was withdrawn after the parties agreed to adopt the modified version of paragraph 12(a) of the Settlement set forth in page 4 and 5 of Plaintiffs' Reply in Support of Final Approval of Class Settlement (ECF No. 61).
[4] The Court will address the merits of these five objections, even though several of the objections were not filed by the January 5, 2012 deadline. Any objections filed after January 31, 2012 are overruled as untimely.

The other four objectors request relief that is provided by the settlement or outside the scope of the case. David and Loretta Sutter object on the ground that their refrigerator experienced problems with the Light Issue, the storage compartment door buttons, the wheels for the sliding shelves, and the track system. *See* ECF Nos. 57 and 58. The Sutters would like LG to address all of these issues. *Id.* Elaine Cohen objects on the ground that her refrigerator experienced circuitry problems, problems with the Light Issue, and problems with the water distribution valve. *See* ECF Nos. 59 and 69. Mrs. Cohen would like to be reimbursed for the cost of the refrigerator. *Id.* Jewel Elaine Nelson objects on the ground that her refrigerator experienced the Light Issue and problems with its drawers. *See* ECF No. 67. She also alleges that Sears advertised that she would receive free delivery and a rebate, and she received neither. *Id.* She seeks compensation for all of these harms. *Id.* Finally, Michael Selvaggio objects on the ground that the Light Issue caused so much damage to his refrigerator that his refrigerator no longer works at all. *See* ECF Nos. 60 and 64. He would like a replacement refrigerator rather than a repair. *Id.*

To the extent that these objections pertain to the Light Issue, the objectors' concerns will be addressed by the Settlement. The Settlement provides that LG will repair, and in some cases the replace, refrigerators experiencing problems with the Light Issue for ten years after the date of purchase. *See* Settlement ¶ 2. To the extent that these objections pertain to other problems arising in the same refrigerators, the relief sought is outside the scope of the case: no amount of success in this litigation could have provided relief for these problems.[5] Even if the objectors sought relief that could plausibly have been obtained through trial, the possibility "that the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998*); see also In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006).

### c. Adequacy of Class Notice

Rule 23 of the Federal Rules of Civil Procedure contains two distinct notice provisions. Rule 23(c)(2) requires notice be given to all potential members of a Rule 23(b)(3) class informing them of the existence of the class action, the requirements for opting out of the class and entering an appearance with the court, and the applicability of any final judgment to all members who do not opt out of the class. Fed. R. Civ. P. 23(c)(2). Rule 23(e) requires all members of the class be notified of the terms of any proposed settlement. Fed. R. Civ. P. 23(e). The Rule 23(e) notice is designed to summarize the litigation and the settlement and to apprise class members of the right to inspect the settlement documents, papers, and pleadings filed in the litigation. *See In re Prudential*, 148 F.3d at 327.

---

[5] The objectors are not barred from asserting these claims against LG in a different litigation.

10

The Court finds that the Class members in this case received notice of the Settlement in conformance with Rule 23(c)(2) and Rule 23(e). Over 418,411 summary notices were mailed to potential Class members, and the wider publication notice, including the website, informed Class members of their rights and benefits under the Settlement. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 527 (D.N.J. 1997) (actual notice by mail and published notice was "ideal"). Moreover, the Court finds that all required points of information were fully and clearly presented. As such, the content of the notice was adequate under Rule 23(c)(2) and Rule 23(e).

### d. Conclusion

For the forgoing reasons, the Court finds that the Settlement is fair, reasonable, and adequate. The Settlement is therefore approved.

## C. ATTORNEYS' FEES AND SERVICE AWARDS TO CLASS REPRESENTATIVES

Class counsel has submitted an uncontested motion for an award of attorneys' fees and costs totaling $1.0 million, plus an incentive payment in the amount of $1,000 to each Class representative for the services they rendered to the Class during the litigation. The requested amount of $1.0 million is inclusive of both attorneys' fees and litigation costs. The fees are to be paid by LG, in addition to (not out of) the relief made available to the Class. For the reasons that follow, the Court finds both the attorneys' fees and the incentive payments to be reasonable.

A thorough judicial review of fee applications is required in all class action settlements. *G.M. Trucks*, 55 F.3d at 819. Under both New Jersey and Third Circuit precedent, a court may exercise its discretion to award attorneys' fees by applying either (1) the lodestar/multiplier method, or (2) the percentage-of-the-fund method. *See In re AT&T*, 455 F.3d at 164; *G.M. Trucks*, 55 F.3d at 820. The lodestar method is more appropriate in cases where the nature of the recovery does not allow the determination of the settlement's value, while the percentage-of-recovery method is generally favored in cases involving a common settlement fund. *See In re Prudential*, 148 F.3d at 333; *G.M. Trucks*, 55 F.3d at 821. Regardless of the method a court applies or the specific factors considered, the fundamental requirement is that any fee be fair and reasonable. *See In re AT&T Corp. Sec. Litig.*, No. 00-5364, 2005 U.S. Dist. LEXIS 46144, at *29 (D.N.J. Apr. 22, 2005), *aff'd*, 455 F.3d 160 (3d Cir. 2006).

The Court finds that application of the lodestar method is appropriate in this case because there is a claims-made settlement with an indefinite total value and no upper cap on relief. Courts in this district have previously found the lodestar method to be appropriate in these cases, as claims-made settlements cannot be characterized as true "common fund[s]" for purposes of the percentage-of-the-fund analysis. *See Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 593 (D.N.J. 2010).

11

### a. Class Counsel's Fee Request Is Appropriate Under The Lodestar Method

A district court begins the analysis by determining a lodestar amount as a starting point. *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 150 (3d Cir. 2009). The court may then increase or decrease the lodestar amount through the use of a multiplier. *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009).

### 1. The Lodestar Amount.

Multiplying the numbers of hours counsel worked by a reasonable hourly rate establishes the lodestar. As of November 18, 2011, Class counsel worked a total of 773 hours, which, when multiplied by their hourly rates, results in a total lodestar of $332,800.75. Selbin Decl. ¶ 19, ECF No. 42.

The Court finds that Class counsel's hours and hourly rates are reasonable. Class Counsel's hourly rates reflect the experience and skill of the lawyers involved and are in line with the prevailing market rate in this District for similar services. *See In re Mercedes-Benz Tele Aid Contract Litig.*, MDL No. 1914, 2011 U.S. Dist. LEXIS 101995, at *19 (D.N.J. Sept. 9, 2011) (approving the same rates). Similarly, the Court finds that the number of hours worked is reasonable, considering that Class counsel (1) investigated and filed the action; (2) responded to inquiries and collected information from Class members who made inquiries; (3) retained and worked with experts; (4) opposed a motion to dismiss, (5) crafted a Settlement after extensive negotiations; (6) made several court appearances; (7) developed the Class notice materials and claim form; and (8) responded to Class member questions concerning the Settlement. *See* Selbin Decl. ¶ 7; Cecchi Decl. ¶ 4, ECF No. 43.

### 2. The Multiplier.

The requested fee amount of $1.0 million includes both attorneys' fees and costs. Of the requested $1.0 million total, $24,579.60 has been designated for reimbursement of out-of-pocket costs, leaving $975,420.40 for attorneys' fees. Thus, the requested fee reflects a multiplier of approximately 2.93 and an average hourly rate of $1,261.86.

The Court finds that application of a multiplier of 2.93 is justified for several reasons. First, the Settlement represents a great result for the Class. LG has agreed to reimburse Class members for 100% of the costs they incurred repairing their refrigerators and has agreed to pay for all repair costs for ten years from the date of purchase. Second, Class counsel achieved this result in a time and cost-efficient manner, without expending thousands of additional hours engaging in protracted litigation. *See Merola v. Atlantic Richfield Co.*, 515 F.2d 165, 168 (3d Cir. 1975) (noting that the lodestar method "permits the court to recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested."). Third, Class counsel prosecuted this matter on a wholly contingent basis, which placed at risk their own resources, with no guarantee of recovery. *See* Selbin Decl. at ¶¶ 17, 21. Finally, the multiplier is well within the range of multipliers that courts in this circuit

typically apply in these cases. *See, e.g.*, *Frederick v. Range Res.-Appalachia, LLC*, No. 08-288, 2011 U.S. Dist. LEXIS 27350, at *36 (W.D. Pa. Mar. 17, 2011) ("Federal courts in this circuit have frequently approved fee award multipliers in the range of 1 to 4." (collecting cases)); *Hall v. AT&T Mobility LLC*, 2010 U.S. Dist. LEXIS 109355, at *44 (D.N.J. Oct. 13, 2010) ("In fact, in *Cendant PRIDES*, the Third Circuit approved a lodestar multiplier of 2.99 in a case it described as 'relatively simple in terms of proof' in which 'discovery was virtually nonexistent.'").

### b. The Requested Class Representative Incentive Payments Are Reasonable

"Courts have ample authority to award incentive or 'service' payments to particular class members where the individual provided a benefit to the class or incurred risks during the course of litigation." *Bredbenner v. Liberty Travel, Inc.*, No. 09-1248, 2011 U.S. Dist. LEXIS 38663, at *64-65 (D.N.J. Apr. 8, 2011) (collecting cases). The Court finds that the modest incentive payments requested in this case are reasonable, as Plaintiffs (1) assisted counsel with the preparation of the Complaint and Amended Complaint; (2) supplied documentation to support their claims; (3) stayed abreast of the settlement negotiations; and (4) reviewed and approved Settlement terms. Further, the incentive payments do not reduce the recovery of other Class members, and are not opposed by LG.

### c. Conclusion

For the forgoing reasons, the Court finds the requested attorneys' fees and service awards to Class representatives to be reasonable. Therefore, Plaintiffs' motion for fees and awards is granted.

## III. CONCLUSION

For the reasons stated above, the proposed Class is **CERTIFIED**, the Settlement is **APPROVED**, and Plaintiffs' motion for attorneys' fees is **GRANTED**. An appropriate Order follows.

                                                /s/ William J. Martini
                                    **WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 2, 2012**